1 | TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
NATASHA CHESLER (S.B. #227540)
2 | THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
A Professional Corporation
3 | 11377 West Olympic Boulevard, Suite 500
Los Angeles, California  90064-1683
4 | Telephone: (310) 882-6407
Facsimile: (310) 882-6359
5 |
Attorneys for Plaintiff
6 | Miguel de la Cueva

7

8

9

10

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

11 | MIGUEL DE LA CUEVA, individually
and on behalf of other persons similarly
12 | situated,

13 |             Plaintiff,

14 |       vs.

15 | ALTA DENA CERTIFIED DAIRY,
LLC,
16 | a Delaware Limited Liability Company;
ALTA-DENA CERTIFIED DAIRY,
17 | INC.,
a Delaware Corporation, and DOES 1
18 | through 10, inclusive,

19 |          Defendants.

20

CASE NO. CV12-01804 GHK (CWx)

**DECLARATION OF NATASHA CHESLER IN SUPPORT OF JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO REQUESTS FOR PRODUCTION, SPECIAL INTERROGATORIES, AND PMK TESTIMONY**

Hearing Date:     December 4, 2012
Time:            10:00 a.m.
Courtroom:      640

Motion For Class Cert:January 18, 2013
Discovery Cut-Off:   August 6, 2013
Pre-Trial Conference: TBD
Trial Date:        TBD

21

22

23

24

25

26

27

28

# DECLARATION OF NATASHA CHESLER

I, Natasha Chesler, declare as follows:

1.     I am an attorney of record for plaintiff Miguel de la Cueva ("Plaintiff" or "Mr. de la Cueva").  If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief.

2.     Plaintiff Miguel de la Cueva ("Plaintiff") brings the instant action against his former employer Alta Dena Certified Dairy, LLC ("Defendant") alleging individual claims for disability discrimination and failure to accommodate and class action claims on behalf of current and former employees for wage and hour violations stemming from Defendant's failure to provide meal and rest breaks.  Plaintiff's motion for class certification is currently due on January 18, 2013.

3.     Unfortunately, meet and confer efforts in this case have been time consuming and largely unsuccessful.  Defendant's caption lists three attorneys working on this matter: Steven G. Sklaver (admitted 2005), Kalpana Srinivasan (admitted 2005) and Amanda Bonn (admitted 2010).  <u>All meet and confer efforts</u> have been conducted by Ms. Bonn.  It has become readily apparent , however, that Ms. Bonn has no authority to make decisions on this case.  Thus, every meet and confer conference consists of me (or my co-counsel) explaining our position, offering various compromises, and Ms. Bonn replying that she will "have to circle back with [her] team and let [us] know."  On the rare occasion where Ms. Bonn does agree to something, after she later confers with her team, that agreement is often revoked.   When I attended the in-person meet and confer – at defense counsel's office per their request – again only Ms. Bonn was in attendance.  Again, nothing was accomplished other than Ms. Bonn agreeing to take it back to the team and then respond (and the few matters agreed upon were later denied).  This has the frustrating result of making everything take much longer, having issues and proposals fall through the cracks like a game of "telephone," and most importantly hampering any chance of making cooperative

DECLARATION OF NATASHA CHESLER IN SUPPORT OF JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO REQUESTS FOR PRODUCTION, SPECIAL INTERROGATORIES, AND PMK TESTIMONY

1 | resolutions to outstanding issues.   Plaintiff submits this is not a good-faith meet and
2 | confer.

3 |      4.    In addition, Defendant has been dilatory in producing documents, which
4 | has also delayed the filing of this submission (*i.e.* Plaintiff hoped the "rolling"
5 | document production would alleviate the need for a motion).   Defendant originally
6 | served its responses to Plaintiff's requests for production (after receiving two
7 | extensions) on August 23, 2012.  But Defendant did not produce any documents until
8 | October 5, 2012 – after much prodding – and even that production was seriously
9 | deficient.  While it was almost 1000 pages, it was mostly duplicates and missing
10 | important requested documents such as Plaintiff's paystubs and work schedules.
11 | Defendant then made a further production of <u>some</u> documents (652 pages) on October
12 | 15, 2012 (but still no paystubs or work schedules).  Finally, on October 16, 2012,
13 | Defendant produced the paystubs, yet several deficiencies remained.  More meet and
14 | confer efforts ensued with more of Ms. Bonn saying "I have to circle back."
15 | Defendant promised to produce documents on Tuesday, October 30, 2012, but failed to
16 | do so.  Defendant then claimed there was a "vendor glitch" and that documents would
17 | be produced on Wednesday, October 31, 2012.  Again, Defendant failed to do so.
18 | Each time, I explained that the delay was hampering the ability to adequately prepare
19 | for pending depositions. Finally on November 1, 2012, Defendant produced more
20 | missing documents but there were over 2500 with a deposition pending less than a
21 | week later.

22 |      5.    At one point, Defendant claimed this delay was because Plaintiff took
23 | some time to respond regarding a protective order and ESI search terms.  But this is
24 | just Defendant's poor excuse to avoid taking any responsibility and ownership for its
25 | conduct.  Indeed, the ESI search terms do not relieve Defendant's obligation to
26 | respond to discovery and search for responsive documents.  Nor do documents such as
27 | Plaintiff's paystubs require a protective order as it is *Plaintiff's* privacy right, if any, at
28 |

DECLARATION OF NATASHA CHESLER IN SUPPORT OF JOINT STIPULATION RE: PLAINTIFF'S MOTION
TO COMPEL FURTHER RESPONSES TO REQUESTS FOR PRODUCTION, SPECIAL INTERROGATORIES, AND
PMK TESTIMONY

1  issue.  Finally, despite promising to produce ESI documents on a "rolling basis" –

2  Defendant now claims ESI documents will be produced by November 30, 2012.  As a

3  result, Plaintiff is left with a Hobson's choice of taking important depositions without a

4  complete document production or risk being unprepared to file his class certification

5  motion (currently due January 18, 2013).[1]

6      6.    To aid the Court, Plaintiff offers the following time-line of meet and

7  confer efforts along with copies of the parties meet and confer correspondence:

8          a.    September 18, 2012: I sent Ms. Bonn a meet and confer letter

9  regarding Defendant's objections and responses to Plaintiff's document requests and

10 interrogatories.  (A true and correct copy of my letter is attached hereto as Exhibit A.)

11 In that letter, Plaintiff noted that no documents had been produced and asked that at the

12 very least documents not subject to any privacy concerns (for a future protective order)

13 be produced immediately.  In addition, Plaintiff offered – in the spirit of compromise –

14 to limit the request for putative class members' contact information to names and

15 addresses only.  (Ex. A at 2 ("Accordingly, in an effort to reach a cooperative

16 resolution, Plaintiff is willing to narrow the request to only names and addresses.")

17 Finally, I also noted that Defendant answered virtually all document requests where it

18 agreed to produce documents, that it would do so "to the extent they exist."  I

19 explained that such a response did not comply with the FRCP and left Plaintiff

20 wondering what had or had not been produced, what had been destroyed, never

21 existed, etc.[2]  I asked for a response to this letter no later than September 25, 2012.

22

23 [1] Thus, Plaintiff is concurrently seeking relief from the class certification filing
24 deadline.

25 [2] For example, while Defendant responded to some document requests that it would
26 produce documents "to the extent they exist," Ms. Bonn clarified in meet and confer
   discussions that documents had in fact been withheld based on objections noted
27 regarding Plaintiff's standing.

28

1         b.     September 19, 2012:  Defendant asked for an extension to respond

2    to the meet and confer letter to October 2, 2012.  Plaintiff agreed, but I asked again

3    that documents that need not be protected by a protective order be produced in the

4    meantime.  (A true and correct copy of this email communication is attached hereto as

5    Exhibit B.)  I received no response to this request.  Nor did I receive any response to

6    my meet and confer letter on October 2, 2012 as promised.

7         c.     Thus, on October 4, 2012, I inquired as to the status.  Later that

8    day, Defendant sent an email responding in part to my letter.  (A true and correct copy

9    of this email chain is attached hereto as Exhibit C.)   In this email, Defendant

10   continued to refuse to provide contact information of putative class members/witnesses

11   and instead asked that "[a]t the very least, any such production [of this information]

12   should follow an opt-out procedure that California courts have used in such

13   circumstances."  (Id. Ex. C at 3-4.)  Defendant, still, however, produced no documents.

14        d.     October 5, 2012:  Defendant finally produces some documents,

15   but while there are nearly 1000 pages, the production is seriously deficient missing

16   essential items such as Plaintiff's paystubs and all work schedules for the statutory

17   time-frame.

18        e.     October 8, 2012:  I sent another meet and confer letter in which

19   Plaintiff agreed to use the opt-out procedure Defendant suggested to handle the contact

20   information for putative class-members/witnesses, but requested Defendant bear the

21   costs and arrange for notices to be sent out by October 22, 2012, with a two-week

22   period to opt-out (given the parties' deadline to file a motion for class certification).

23   The following day (after having had a chance to review the document production in

24   detail), I sent Ms. Bonn an email detailing the deficiencies in the document production.

25   (True and correct copy of these communications are  attached hereto as Exhibit D.)

26        f.     October 10, 2012:  Ms. Bonn responded and then seemingly back-

27   tracked and stated that Defendant would not agree to use of an opt-out procedure

28

DECLARATION OF NATASHA CHESLER IN SUPPORT OF JOINT STIPULATION RE: PLAINTIFF'S MOTION
TO COMPEL FURTHER RESPONSES TO REQUESTS FOR PRODUCTION, SPECIAL INTERROGATORIES, AND
PMK TESTIMONY

1  without Court order and requested a 45 day period in which to opt-out (if the Court so

2  ordered).  (A true and correct copy of this email is attached hereto as Exhibit E.)

3          g.      October 11, 2012:  I responded to Ms. Bonn's email and requested

4  a telephone conference, which I participated in (along with my co-counsel Mr.

5  McCaffrey) with Ms. Bonn on October 15, 2012.  (A copy of my letter requesting this

6  call is attached hereto as Exhibit F.)  During this telephone conversation, we discussed

7  among other things the discoverability of the contact information for putative class

8  members. Ms. Bonn claimed that it was "unlikely" that Defendant would agree to even

9  a 45 day period to opt-out, but that she would "circle back with the team" and let

10 Plaintiff know.  Ms. Bonn further claimed that she would provide formal objections to

11 the PMK deposition notice (originally propounded on June 19, 2012) no later than

12 October 16, 2012 so that the parties could address scheduling and deal with any

13 objections to certain topics, as well as provide proposed deposition dates.  We

14 attempted to address some of the "possible objections," but every solution proposed

15 was met with "have to circle back with the team and let you know."

16         h.      October 15, 2012:  Defendant finally produced more documents

17 (approximately 652 pages), but important documents such as paystubs and work

18 schedules were still missing.  Thus, again I contacted Ms. Bonn.  (A true and correct

19 copy of this email is attached hereto as Exhibit G.)  This email too was simply ignored.

20 Defendant did, however, finally produce the paystubs the following day, October 16,

21 2012.

22         i.      October 17, 2012:  I sent Ms. Bonn a detailed letter concerning the

23 deficiencies in Defendant's second document production.  This included things such as

24 documents that were marked page 1 of 9, but where Defendant only produced page 3.

25 Missing documents such as Plaintiff's work schedules, time records, etc.  I explained

26 that this sloppy production only compounded the fact that Defendant often responded

27 documents were being produced "to the extent they exist" and again asked those

28

DECLARATION OF NATASHA CHESLER IN SUPPORT OF JOINT STIPULATION RE: PLAINTIFF'S MOTION
TO COMPEL FURTHER RESPONSES TO REQUESTS FOR PRODUCTION, SPECIAL INTERROGATORIES, AND
PMK TESTIMONY

1  responses be supplemented.  I also later sent Ms. Bonn an email inquiring to the status

2  of the objections to the PMK Deposition Notice that she had promised to provide by

3  October 16 along with proposed deposition dates.  (True and correct copies of these

4  correspondence are attached hereto as Exhibit H.)  I further asked for proposed

5  deposition dates as promised (given that we had been trying to schedule these for some

6  time) no later than the close of business that day and that if I did not hear back,

7  Plaintiff would unilaterally notice them.  (Ex. H.)  Again no response.  Thus, on

8  October 18, 2012, when I still had no response, Plaintiff unilaterally noticed the

9  depositions.

10            j.        October 19, 2012:  Ms. Bonn emailed me and finally provided

11  proposed deposition dates.  (A true and correct copy of this email chain is attached

12  hereto as Exhibit I.)  For the first time Defendant provided any sort of written

13  objection to the PMK Notice, and this was just an email rather than a formal notice of

14  objection.  (See Ex. I at 3-4.)  These included in pertinent part:

15            i.        Topic No. 8 (the number of drivers employed and scheduled

16  to work at least four hours a day broken down by daily tallies) – no objection other

17  than Defendant suggesting that it first provide written answers by November 30 and

18  then if Plaintiff still felt the need for a deposition "that's fine and we can schedule"

19  (Id.);

20            ii.       Topic 17 (information regarding cases where Defendant has

21  offered testimony in deposition related to the failure to authorize and/or permit

22  meal/rest breaks) – no objection other than Defendant suggesting that it first provide

23  written answers by November 30 and then if Plaintiff still felt the need for a

24  deposition, we could schedule it. (Id.)

25            iii.      Topic 18 (publications, memos, letters, documents sent to

26  employees or former employees by Defendant concerning this litigation) – Defendant

27

28

DECLARATION OF NATASHA CHESLER IN SUPPORT OF JOINT STIPULATION RE: PLAINTIFF'S MOTION
TO COMPEL FURTHER RESPONSES TO REQUESTS FOR PRODUCTION, SPECIAL INTERROGATORIES, AND
PMK TESTIMONY

1  objected that the topic was overly broad, unduly burdensome, and calls for privileged

2  information (Id.); and

3            iv.    Topic No. 21 (all facts related to Defendant's claim that

4  providing meal/rest breaks to its DRIVERS impacts its prices, routes, and/or services)

5  – Defendant objected that the topic was "overly broad, unduly burdensome, and is the

6  equivalent of a premature contention interrogatory." (Id.).

7            k.     October 22, 2012:  Defendant agreed to supplement its document

8  request responses to clarify the "to the extent they exist" issue no later than November

9  30, 2012.  (A true and correct copy of Ms. Bonn's email to this effect is attached

10  hereto as Exhibit J.)  Defendant also agreed to produce the missing documents.  (Ex.

11  J.)

12            l.     October 23, 2012:  As the issues were mounting, I proposed an in

13  person meet and confer.  (Ex. I at 2.)  Ms. Bonn provided her availability, but

14  requested that the meeting be at her office.  (Id. at 1.)  I agreed to do so in the spirit of

15  cooperation.

16            m.    October 24, 2012:  In an effort to narrow and focus the meeting, I

17  sent Ms. Bonn another letter documenting what was still missing in the production, but

18  had not been produced either as promised, or adequately explained.  Ms. Bonn

19  responded the following day and promised a production by October 26 containing

20  among other things, the 2005 Handbook and Plaintiff's work schedules.  (A true and

21  correct copy of my letter and Ms. Bonn's response is attached hereto as Exhibit K.)

22  No production, however was made on October 26 as promised.  (Indeed, this

23  production did not arrive until November 1, 2012 and still remains deficient.)

24            n.     October 31, 2012:  At the parties in-person meet and confer, Ms.

25  Bonn confirmed that no contact information whatsoever would be produced absent

26  Court order – even if Plaintiff agreed to the opt-out letter.  I also explained that we

27  accepted Defendant's offer to respond to certain PMK topics, including Topic No. 8

28

DECLARATION OF NATASHA CHESLER IN SUPPORT OF JOINT STIPULATION RE: PLAINTIFF'S MOTION
TO COMPEL FURTHER RESPONSES TO REQUESTS FOR PRODUCTION, SPECIAL INTERROGATORIES, AND
PMK TESTIMONY

1  and 17 by written response and take it from there. I did ask, however, that if a written

2  response was provided to Topic No. 17 (involving testimony regarding meal/rest

3  breaks in other cases) that a copy of the testimony itself be provided. Ms. Bonn stated

4  she would "circle back with the team" and confirm, but that it would probably be ok.

5  Finally, Ms. Bonn informed me that a vendor "glitch" was holding up the production

6  but that she expected it to go out that afternoon. I explained that the delay in

7  production was hampering the ability to prepare for upcoming depositions, which I had

8  previously explained on several other occasions. That afternoon I sent a confirming

9  letter summarizing our meeting and other remaining outstanding items. (A true and

10  correct copy of this letter is attached hereto as Exhibit L.)

11              o.    Suddenly, on November 2, 2010, faced with the pending motion,

12  Defendant then did another about-face. This time, Ms. Bonn wrote and denied several

13  communications we did indeed have. More importantly, Defendant began making

14  claims that were simply untrue – such as that Plaintiff had never previously agreed to

15  narrow the request for contact information to names and addresses. But it plainly says

16  that in my September 18, 2012 letter! (Ex. A.) Then Ms. Bonn went on to say that

17  Defendant might agree to using a 30 day opt-out letter "but [] need[s] to discuss this

18  entire issue with [their] client…" But counsel should have addressed this issue with

19  their client long ago when it was first raised if this is to truly be a good faith meet and

20  confer. As yet another example, Ms. Bonn now apparently took issue with Topic 8 of

21  the PMK notice, claiming it is unduly burdensome (even though her "email of

22  objections" contained no such objection and it was Ms. Bonn who suggested

23  answering this by written form (see Ex. I at 3-4). Ms. Bonn also claimed that they

24  were now refusing to answer by written form Topic 17 and similarly for the first time

25  raised objections to that specific discovery matter – even though again it was Ms. Bonn

26  who first offered to answer this topic by written form (id.). Finally, Ms. Bonn

27  backtracked on her agreement to revise Defendant's document responses to clarify

28

what had actually been produced or not (as opposed to "to the extent they exist) (as she originally promised in her October 22 email (Ex. J). Now Defendant did not think it was required by the Federal Rules of Civil Procedure to provide anything more specific. I responded in an attempt to clarify these and other misstatements in a letter on November 3, 2012. (True and correct copies of this correspondence is attached hereto as Exhibit M.)

        p.    While I had hoped that Ms. Bonn would have finally been able to carry messages to and from "the team," or that she would have had authority by the time of the in person conference (or that another team member would also attend), such that cooperative resolutions could be had, too much time is now being eaten and Plaintiff has no choice but to file the instant motion. Furthermore, given that further issues have arisen for the first time via Defendant's November 2, 2012 email, Plaintiff will likely need to file another discovery motion. Given the tight current deadline on the parties' class certification motion, however, Plaintiff must move forward with these issues now and seek guidance from the Court.

     I declare under penalty of perjury under the laws of the State of California, and the United States of America, that the foregoing is true and correct.

     Executed November 3, 2012, at Los Angeles, California.

_____
Natasha Chesler

DECLARATION OF NATASHA CHESLER IN SUPPORT OF JOINT STIPULATION RE: PLAINTIFF'S MOTION
TO COMPEL FURTHER RESPONSES TO REQUESTS FOR PRODUCTION, SPECIAL INTERROGATORIES, AND
PMK TESTIMONY

**EXHIBIT A**

The Law Offices of

# Timothy B. McCaffrey, Jr.

*A Professional Corporation*

11377 West Olympic Boulevard Suite 500
Los Angeles, California  90064-1683
Telephone (310) 882-6407
Facsimile  (310) 882-6359
nchesler@tbmlaw.net

September 18, 2012

<u>**VIA FACSIMILE AND U.S. MAIL**</u>

Amanda Bonn, Esq.
Susman Godfrey LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067-6029

> *Re:*   <u>*De la Cueva v. Alta Dena Certified Dairy, LLC*</u>

Dear Amanda:

I write to meet and confer regarding Defendant Alta Dena Certified Dairy, LLC's ("Defendant's" or "Alta Dena's") objections and responses to Plaintiff Miguel de la Cueva's ("Plaintiff's" or "Mr. de la Cueva's") Request for Production (Set One) and Interrogatories (Set One).

As a threshold matter, no documents were produced.  Defendant claimed it would do so only once a protective order is in place.  This is unacceptable.  Are you saying that Defendant has no responsive documents that it believes it can produce without a protective order?  Please produce all responsive documents that Defendant does not believe are "confidential" immediately.

Similarly difficult to believe are special interrogatories seeking basic non-confidential information, that Defendant refused to answer until a protective order was in place (such as drivers' job duties, Defendant's policy/practice in tracking hours worked by drivers, and Defendant's policy/practice in recording meal/rest breaks taken by drivers (Special Interrogatory Nos. 5, 12, and 13)).  This is not information requiring a protective order.  Indeed, Defendant's disingenuousness is evidenced by the fact that no objection was made on the grounds of right to privacy, confidential or proprietary information.  Please provide supplemental responses to these interrogatories.

I will now first address general issues applicable to both the requests for production and the special interrogatories, and then turn to remaining deficiencies in each set of responses.

Amanda Bonn, Esq.
September 18, 2012
Page 2

## Identity of Percipient Witnesses / Putative Class Members

RFP No. 20 and Special Interrogatory No. 1 seek the identity/contact information of putative class members. Defendant refused to provide this information on privacy grounds. It is our position that such employees are percipient witnesses to Defendant's wage and hour practices (and those that worked alongside Plaintiff may also be percipient witnesses to Plaintiff's individual claims) and, therefore their contact information is properly discoverable. *See e.g. Puerto v. Sup. Ct. (Wild Oats Markets, Inc.)*, 158 Cal. App. 4th 1242, 1247-59 (2008); *Murphy v. Target Corp.*, 2011 U.S. Dist. LEXIS 74813 at *9-13 (S.D. Cal. 2011). It is also worth noting that Defendant did not identify a single putative class member in its initial disclosures. This suggests that Defendant's concern about potential class members' privacy rights is actually driven more by the employer's self-interest. *See Salazar v. Avis Budget Group, Inc.*, 2007 U.S. Dist. LEXIS 97310 at * 7-8 (S.D. Cal. 2007).

In any event, the right to privacy is not absolute. "In the class action context, disclosure of names, addresses, and telephone numbers is common practice. Moreover, federal courts faced with these types of discovery issues routinely overcome objections as to privacy interests when balanced against reasonable discovery needs." *Enriquez v. Interstate Group, LLC*, 2012 U.S. Dist. LEXIS 97729 at *5 (N.D. Cal. 2012) (internal citations omitted). Thus, courts have consistently found that the need of class counsel to communicate with potential plaintiffs/percipient witnesses in wage and hour class actions outweigh minimal privacy concerns – especially with respect to names and addresses. *See e.g., Tomassi v. City of Los Angeles*, 2008 U.S. Dist. LEXIS 111676 at *6- 11 (C.D. Cal. 2008); *Tierno v. Rite Aid Corp.*, 2008 U.S. Dist. LEXIS 58748 at *9 (N.D. Cal. 2008); *Enriquez v. Interstate Group, LLC*, 2012 U.S. Dist. LEXIS 97729 at *2-3 (N.D. Cal. 2012); *Alvarez v. The Hyatt Regency Long Beach*, 2010 U.S. Dist. LEXIS 99281 at * 4-7 (C.D. Cal. 2010). Further, such information is appropriately safeguarded by use of a protective order in this case.

Accordingly, in an effort to reach a cooperative resolution, Plaintiff is willing to narrow the request to only names and addresses. In addition, Plaintiff agrees to notify each individual contacted that he/she has a right not to talk to counsel and that if he/she so elects, counsel will then terminate the contact and not re-contact that individual. Plaintiff further agrees to keep a list of all individuals contacted and preserve that list so that it may be filed with the Court, if required, along with Plaintiff's certification motion and any other pertinent documents – so long as Defendant agrees to do the same. Finally, Plaintiff agrees not to use this contact information for any purpose outside of this litigation and will not disseminate the information to anyone who

Amanda Bonn, Esq.
September 18, 2012
Page 3

is not necessary to the prosecution of this action.  Please provide a supplemental response with the names and address of putative class members/percipient witnesses.[1]

## Relevant Time Period

Defendant responded to a vast majority of documents requests and special interrogatories by limiting the time period to Plaintiff's employment.  (RFP Nos. 21-23, 26, 28-30, 32-33, 36-38, 40-52, and 64 and Special Interrogatory Nos. 2-6, 10-13, and 15-19.)  It did so on two separate grounds.  First, that Plaintiff somehow cannot represent current employees (or those employed after him).  Second, that Plaintiff's individual claim was restricted in time to the statute of limitations period.  Both of these arguments lack merit.

As you well know, wage and hour class actions are almost always brought by former employees, who represent current and former similarly situated workers.  *See i.e., Glass v. UBS Fin. Servs.*, 15 Wage & Hour Cas. 2d (BNA) 1330 (N.D. Cal. 2007).  If you have contrary authority, please provide it.

In addition, just because there is a certain limitations period on Plaintiff's individual claims, does not mean Defendant may then limit discovery to that time period.  Indeed, FEHA claims are often shown by establishing a pattern and practice.  And moreover, under the continuing violation theory, time-barred discriminatory conduct may be used to show a systematic policy or practice of discrimination.  *See e.g., Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 823-24 *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1056 (2005); *Paige v. State of Cal.*, 291 F.3d 1141, 1149 (9th Cir. 2002).

Defendant's refusal to comply with the requested time-frames lacks justification.  Please provide supplemental responses accordingly.

## Requests For Production

As a threshold matter, where Defendant agreed to provide a response, it merely stated that it would produce documents "to the extent they exist."  (RFP Nos. 1-12, 18-19, 24-27, 30, 34-56, 58-63, 67-78, and 81-82.)  This is insufficient.  The response must make clear whether the responding party will comply with the demand, and if unable to comply, state the reason for

---

[1] Similarly, RFP No. 21 seeks the identity and contact information of managers.  As percipient witnesses, their contact information is discoverable and responding that they may be reached through counsel is insufficient as demonstrated above.  Again, in an effort to reach a cooperative resolution, Plaintiff is willing to limit this request to names and addresses.  Please provide a supplemental response accordingly.

Amanda Bonn, Esq.
September 18, 2012
Page 4

noncompliance (*e.g.*, the document never existed, was inadvertently destroyed, etc.) *See* FRCP Rule 34; *see also* Fed. Civ. Proc. Before Trial, ¶ 11:1912-1913 (The Rutter Group 2012). Accordingly, please provide supplemental responses explaining whether documents will be produced, and if not, whether they have not existed, been destroyed, etc. Notably, Defendant was able to appropriately respond on some occasions, explaining that in certain circumstances no such documents exist. (See RFP Nos. 79-80.)

RFP Nos. 64-67 seek communications between certain parties either involving Plaintiff or concerning Plaintiff. Defendant agreed to produce documents limited to "the subject matter of this lawsuit." Please confirm that this means any and all claims and allegations made by Plaintiff in the instant matter.

**Special Interrogatories**

Special Interrogatory No. 6 seeks information pertaining to computerized systems Defendant has used regarding recording Drivers' activities. Defendant's response identified various programs/devices, but failed to supply other requested information. Specifically, Defendant failed to identify whether any time-stamp information is created or recorded, and a description of the types of summary and/or user-created reports that can be generated. Please provide a supplemental response with this information.

Special Interrogatory Nos. 8 and 9 seek information regarding tracking of information, including the manufacturer information. Defendant previously identified that "Kronos" is used in conjunction with "Xata." Defendant provided manufacturer information for Xata, but not Kronos. Please provide a supplemental response accordingly.

Special Interrogatory No. 17 seeks information (by DOE designation) regarding employee's terminated for being involved in an accident and the damage to the vehicle. Defendant's response is vague. It fails to explain what exactly the damage to the vehicles were. Please provide a supplemental response, or alternatively, please provide accident reports (identifying information may be redacted).

Please provide the requested supplemental information no later than September 25, 2012, so that we may avoid motion practice. Should you have any questions, or wish to discuss further, please do not hesitate to contact me.

Very truly yours,

Natasha Chesler

**EXHIBIT B**

**Subject:** Re: De la Cueva v. Alta Dena
**Date:** Wednesday, September 19, 2012 3:17 PM
**From:** Natasha Chesler <nchesler@tbmlaw.net>
**To:** Amanda Bonn <abonn@SusmanGodfrey.com>
**Cc:** "Steven G. Sklaver" <ssklaver@SusmanGodfrey.com>, Kalpana Srinivasan <ksrinivasan@SusmanGodfrey.com>,
"Alisha R. Chandler" <achandler@susmangodfrey.com>, Tim McCaffrey <tmccaffrey@tbmlaw.net>

Amanda, That's fine.  I did request in our letter, however, that Defendant
produce those documents now that it does not believe need to be protected
by a protective order.  We would appreciate it if you could get those to
us soon.  Thanks.

On 9/19/12 3:07 PM, "Amanda Bonn" <abonn@SusmanGodfrey.com> wrote:

> Natasha,
> We will agree to an extension to Monday, 9/24 if you will agree to serve
> Plaintiff's responses by email and also to grant us an additional week
beyond
> 9/25 to respond to the letter concerning discovery that you sent
yesterday.
> Please advise if that is acceptable to Plaintiff.
>
> Amanda
>
> On Sep 19, 2012, at 2:10 PM, "Natasha Chesler"
> <nchesler@tbmlaw.net<mailto:nchesler@tbmlaw.net>> wrote:
>
> Amanda — I left you a voicemail earlier.  May we have a few more days to
> finalize our objections and responses — until Monday September 24.  We'd
> really appreciate it.  Please let me know.  Thanks.
>
>
> On 9/4/12 12:35 PM, "Amanda Bonn" <abonn@SusmanGodfrey.com> wrote:
>
> Hi Natasha,
> We agree to the two-week extension you propose below.
>
> Regards,
>
> Amanda
>
> Amanda Bonn | Susman Godfrey LLP
> 1901 Ave. of the Stars, Suite 950 | Los Angeles, CA 90067
> (T) 310-789-3131 | (M) 408-832-5193 abonn@susmangodfrey.com
> <mailto:408-832-5193abonn@susmangodfrey.com>
>
>
>
>
> From: Natasha Chesler [mailto:nchesler@tbmlaw.net]
> Sent: Tuesday, September 04, 2012 12:33 PM
> To: Amanda Bonn
> Subject: De la Cueva v. Alta Dena
>
> Amanda — I write to request a two week extension to object and respond

to
> Defendant's interrogatories and request for production of documents,
such that
> our objections and responses would now be due up to and including
September
> 19, 2012.  Please let me know if that's ok.  Your cooperation would be
> appreciated.  Thanks.
>
> - Natasha
>
>
> Natasha R. Chesler
> The Law Offices of Timothy B. McCaffrey, Jr.
> 11377 West Olympic Boulevard
> Suite 500
> Los Angeles, California 90064-1683
> Phone:  (310) 882-6407
> Facsimile:  (310) 882-6359
> Web:  www.tbmlaw.net<http://www.tbmlaw.net> <http://www.tbmlaw.net>
>
>
> The information contained in this communication is protected by the
> attorney-client and/or the attorney work-product privilege. It is
intended
> only for the use of the addressee, and the privileges are not waived by
virtue
> of this having been sent by e-mail. If the person actually receiving
this
> communication or any other reader of the communication is not the named
> recipient, or the employee or agent responsible to deliver it to the
> recipient, any use, dissemination, distribution or copying of this
> communication is strictly prohibited.  If you have received this
communication
> in error, please immediately notify us by return e-mail or by e-mail to
> nchesler@tbmlaw.net, and destroy this communication and all copies
thereof,
> including all attachments.
>
>

**EXHIBIT C**

**Subject: Re: De la Cueva v. Alta Dena**
**Date:** Thursday, October 4, 2012 4:12 PM
**From:** Natasha Chesler <nchesler@tbmlaw.net>
**To:** Amanda Bonn <abonn@SusmanGodfrey.com>
**Cc:** Tim McCaffrey <tmccaffrey@tbmlaw.net>, "Steven G. Sklaver" <ssklaver@SusmanGodfrey.com>, Kalpana Srinivasan <ksrinivasan@SusmanGodfrey.com>, "Alisha R. Chandler" <achandler@susmangodfrey.com>

Amanda, I will address your email in depth tomorrow. In the meantime, not a single document has been produced by Defendant. Not in response to the initial disclosures or any of the requests. As stated in our letter, certainly every single responsive document is not "confidential" - such as Plaintiff's own personnel file, time records, etc. Thus, we request again that Defendant immediately produce at least those documents that are not "confidential." Please let me know if Defendant refuses to do so. Finally, congratulations on your upcoming wedding. Given our current class certification motion deadline, however, these depositions cannot be put off much longer. (And at no time did anyone apprise us of this calendaring issue, otherwise we certainly would have accommodated you in scheduling with the Court.) Hopefully we can work out dates by early next week. Thanks.


On 10/4/12 3:35 PM, "Amanda Bonn" <abonn@SusmanGodfrey.com> wrote:

Natasha,
We write to continue the meet and confer process concerning our mutual responses to document requests and interrogatories, as well as the protective order.

With respect to the protective order, we are concerned about Plaintiff's deletion of the "Attorney's Eyes Only" level of confidentiality. For example, should there ever be discovery concerning putative class members' contact information, wages, or hours worked, we believe such information should be produced on an AEO basis in light of significant privacy concerns. We are also concerned about the elimination of the provision for filing documents under seal. We hope we can resolve these issues.

We have the following concerns regarding Plaintiff's responses to Alta-Dena's interrogatories:

(1) Please confirm that, following production of Plaintiff's timecards, schedules, driver logs, and payroll records, Plaintiff will promptly supplement responses to Interrogatory Nos. 1-5 to (a) identify meal or rest periods Plaintiff claims were not provided and (b) identify documents supporting Plaintiff's contentions that such meal or rest periods were missed.

(2)  Plaintiff's response to Interrogatory No. 10 is insufficient.  Although Plaintiff responds that he has never been treated by a psychiatrist, psychologist, therapist, or other mental health care professional, the response says nothing about whether Plaintiff has "undergone or received any treatment for any mental or emotional disturbance since the date of the alleged occurrence . . . ."  Please either supplement to provide the information requested, or to confirm that Plaintiff has not "undergone or received any treatment for any mental or emotional disturbance," regardless of who provided the treatment.

(3)  Likewise, Plaintiff's response to Interrogatory No. 11 is insufficient. Plaintiff has not responded whether he has "undergone or received any psychiatric or other mental health treatment," but instead has only responded that he was never treated by certain types of providers.  Please either supplement to provide the information requested, or to confirm that Plaintiff has not "undergone or received any psychiatric or other mental health treatment."

(4)  Plaintiff's response to Interrogatory No. 13 is insufficient. In fact, Plaintiff was required to produce a <u>computation</u> of damages as part of his initial disclosures, which he failed to do. This interrogatory requests that Plaintiff state with <u>specificity</u> the <u>amount</u> of damages being sought, which Plaintiff's response fails to do. Furthermore, this interrogatory requires that Plaintiff identify all <u>facts</u> on which his claim for damages is based, which Plaintiff has not done.  Instead, Plaintiff has merely identified broadly the categories of damages he seeks, which is insufficient. Please supplement to state (a) the amount of damages Plaintiff is seeking and (b) all facts upon which his claim for such damages is based.

We have the following concerns regarding Plaintiff's responses to Alta-Dena's requests for production:
(1)   Is Plaintiff withholding any responsive documents as privileged or protected by privacy rights under RFP Nos. 6, 7, or 13?

(2)  RFP No. 16 requests all documents relating to monetary or other benefits Plaintiff has received since his termination, but the response is limited to "non-privileged documents evidencing any <u>income</u>" Plaintiff has received since termination. Are Plaintiffs refusing to produce documents concerning any other benefits Plaintiff has received since termination (i.e., unemployment benefits, medical benefits, etc.)?

(3)  We are concerned that Plaintiff has not conducted a diligent inquiry in responding to RFP No. 14, which calls for all documents "relating to any medical treatment you received in connection with any emotional or mental disability, disturbance, illness, or harm."  Plaintiff's response indicates that "Plaintiff has never treated with a mental health professional, and, thus, does not believe any responsive documents exist."  The RFP is not limited to treatment by a mental health professional, but rather <u>any</u> treatment concerning <u>any</u> emotional or mental disability, disturbance, illness, or harm, whether rendered by a mental health professional or not.  For example, if Plaintiff was ever treated by a general practitioner or a nurse or nurse practitioner concerning any emotional or mental illness, any documents relating to such treatment would be responsive to this request.  Please confirm that Plaintiff will produce all documents responsive to this request.

In response to the concerns Plaintiff raised regarding Alta-Dena's responses, we submit the following:
(1)  We disagree with Plaintiff's position concerning the identity and contact information of putative class members.  The scope of pre-certification discovery is in the sound discretion of the Court, and some courts have held that pre-certification discovery of putative class members' identity and contact information is unwarranted. *See, e.g., Palmer v. Stassinos*, No. 5:04-CV-3026 RMW (RS), 2005 WL 3868003, at *4-5 (N.D. Cal. May 18, 2005).  Absent a threshold showing from Plaintiff that "the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations," a court's "refusal to allow class discovery is not an abuse of discretion." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) (internal quotation marks and citation omitted).  At the very least, any such production should follow an opt-out procedure that

California courts have used in such circumstances.

(2)  In response to Footnote 1 of Plaintiff's letter, Susman Godfrey LLP represents Alta-Dena's management-level employees.  As you are aware, it would unethical for Plaintiff's counsel to contact any such management employees directly rather than through Susman Godfrey.  Accordingly, Alta-Dena will not provide contact information for management employees, apart from stating that they may be contacted through the undersigned counsel.

(3)  With respect to time period, former employees like Plaintiff lack standing to pursue injunctive or declaratory relief on behalf of a putative class that includes present employees. *See, e.g., Nevada Dept. of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006).  Furthermore, courts have held that plaintiffs who are former employees may not adequately represent a class of current employees when they are unfamiliar with current policies due to the amount of time that has lapsed since termination.  *See, e.g., Linder v. Litton Sys., Inc. v. Amecom Division*, 81 F.R.D. 14, 19 (D. Md. 1978). Finally, courts have held that a plaintiff lacks standing to represent a proposed class "with regard to actions that occurred during specific time periods when the lead plaintiff was not [himself] injured, even if other members of the class may have been." *In re Connetics Corp. Securities Litig.*, 542 F. Supp. 2d 966, 1003 (N.D. Cal. 2008).  Indeed, where a named Plaintiff has standing to pursue claims only during a specific time period, "courts have strictly limited the class period to the period for which that named representative has standing." *Shurkin v. Golden State Vintners Inc.*, 471 F. Supp. 2d 998, 1022 (N.D. Cal. 2006) (internal quotation marks and citation omitted) (citing cases).  In this case, Plaintiff could not have suffered the denial of a meal or rest period—or any of the other class claims he asserts—after the date of his termination and therefore lacks standing to complain of any such injury on behalf of a putative class.

(4)  With respect to Alta-Dena's response to RFP Nos. 64-67, "the subject matter of this lawsuit" means the claims and allegations made by Plaintiff in the operative Complaint.

(5)  Special Interrogatory No. 6: Pending entry of a protective order, Alta-Dena will produce records sufficient to identify the information you request concerning creation of time-stamps and the type of reports that may be generated.

(6)  Special Interrogatory Nos. 8 and 9: Alta-Dena will supplement to identify manufacturer information for Kronos.

(7)  Special Interrogatory No. 17.  Pending entry of a protective order, Alta-Dena will produce accident reports with identifying information redacted.

With respect to deposition dates, we will provide dates early next week. Because of the November holidays—and the fact that I will be out of town for my wedding during part of that month—it is going to take a little finessing. Along similar lines, please copy my colleagues Steven, Kalpana, and Alisha on all future e-mail traffic so we can ensure nothing gets lost in the shuffle.

Please let me know your availability for a phone call to discuss these outstanding issues. I am available next Tuesday afternoon for a call.

Thank you,

Amanda

**From:** Natasha Chesler [mailto:nchesler@tbmlaw.net]
**Sent:** Thursday, October 04, 2012 10:40 AM
**To:** Amanda Bonn
**Cc:** Tim McCaffrey
**Subject:** De la Cueva v. Alta Dena

Amanda, I write to follow up on some outstanding items noted below.  Please let us know status.  Thank you.
1.  We have not received any response to our meet and confer letter, which you

had promised to provide by October 2.

2. Please let us know status of the protective order.  We sent you our proposed changes on September 18.
3. Please let us know status of ESI search terms.  We sent you our proposals on September 28.
4. Finally, the proposed dates you provided for the PMK on topics 22-35 obviously were not workable.  I apologize for not getting back to you sooner on that.  Please provide deposition dates for all PMK topics, as well as Joe Llamas, Jesse Sanchez, and Susana Correa for the month of November.

Natasha R. Chesler
The Law Offices of Timothy B. McCaffrey, Jr.
11377 West Olympic Boulevard
Suite 500
Los Angeles, California 90064-1683
Phone:  (310) 882-6407
Facsimile:  (310) 882-6359
Web:  www.tbmlaw.net <http://www.tbmlaw.net>

The information contained in this communication is protected by the attorney-client and/or the attorney work-product privilege. It is intended only for the use of the addressee, and the privileges are not waived by virtue of this having been sent by e-mail. If the person actually receiving this communication or any other reader of the communication is not the named recipient, or the employee or agent responsible to deliver it to the recipient, any use, dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by return e-mail or by e-mail to nchesler@tbmlaw.net, and destroy this communication and all copies thereof, including all attachments.

**EXHIBIT D**

The Law Offices of

# Timothy B. McCaffrey, Jr.

*A Professional Corporation*

11377 West Olympic Boulevard Suite 500
Los Angeles, California  90064-1683
Telephone (310) 882-6407
Facsimile  (310) 882-6359
nchesler@tbmlaw.net


October 8, 2012


**VIA FACSIMILE AND U.S. MAIL**

Amanda Bonn, Esq.
Susman Godfrey LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067-6029


       *Re:*    ***De la Cueva v. Alta Dena Certified Dairy, LLC***


Dear Amanda:

      I write in response to your email of October 4, 2012, regarding the parties' respective discovery responses.  I will first address your responses to our meet and confer letter of September 18, 2012 concerning Defendant's responses and then turn to the items you raise concerning Plaintiff's responses.

      As a threshold matter, we are beginning to feel that Defendant is engaging in a systematic effort to delay discovery.  Defendant requested extra time to respond to our meet and confer letter, which we agreed to in the spirit of cooperation.  Then Defendant did not even provide the letter on the date promised.  And when Defendant finally responded, several items were simply ignored.  So was a great deal of pertinent authority.  Instead, Defendant continues to claim that certain information cannot be provided until a protective order is in place.  This claim is dubious for several reasons – most importantly given that Defendant did not even object to Plaintiff's requests on any type of privacy grounds.  Nor do we see how production of documents with personal identifying information redacted needs to be covered by a protective order.[1]

---

[1] Similarly, Defendant did not a produce a single document – again claiming a protective order needed to be in place – until late last Friday, October 5, 2012.  We are still going through these documents and will follow up in separate correspondence regarding issues therein.

Amanda Bonn, Esq.
October 8, 2012
Page 2

While we remain hopeful that we may cooperatively resolve these issues, we are growing very concerned about adherence to the case management schedule. Our motion for class certification is due on January 18, 2013, and considering the holiday season, time is of the essence. Thus, your prompt addressing of these issues would be appreciated.

## A.    Defendant's Responses

### 1.    Requests For Production

As explained in our initial letter, in response to most requests, Defendant merely stated that it would produce documents "to the extent they exist." (RFP Nos. 1-12, 18-19, 24-27, 30, 34-56, 58-63, 67-78, and 81-82.) This is insufficient. The response must make clear whether the responding party will comply with the demand, and if unable to comply, state the reason for noncompliance (*e.g.*, the document never existed, was inadvertently destroyed, etc.) *See* FRCP Rule 34; *see also* Fed. Civ. Proc. Before Trial, ¶ 11:1912-1913 (The Rutter Group 2012). For some reason, you did not respond to this in your meet and confer correspondence. Please let us know if Defendant will supplement these responses to conform to the rules so that we do not need to file a discovery motion.

#### a.    Identity of Percipient Witnesses / Putative Class Members

In our original meet and confer letter, we identified authority for the proposition that the identity of co-workers is discoverable in an employment class action because such individuals are percipient witnesses. We further identified authority supporting the disclosure of putative class members in an employment class action with respect to names and addresses (and offered to so limit our request). Your reply does not even address any of these authorities. Instead, you cite to *Palmer v. Stassinos*, 2005 U.S. Dist. LEXIS 41270 (N.D. Cal. 2005), which is not even an employment case, and *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985), which does not even deal with the discoverability of the identity of putative class members or percipient witnesses. Your email is further unclear in its reference to using an opt-out procedure. Is Defendant offering to do so? While we do not believe such a procedure is necessary here, we are willing to do so if Defendant will bear the costs and if arrangements are made to have notices sent out no later than October 22, 2012, with a two week period to opt-out.

Further, with respect to the contact information of managers, is it Defendant's contention that it is representing all managers – including those that are no longer with the company? Please identify every manager that your firm represents. And please provide contact information as to those that are no longer employed whom your firm does not represent.

Amanda Bonn, Esq.
October 8, 2012
Page 3

       **b.**     **Relevant Time Period**

     There is absolutely no basis to limit discovery on Plaintiff's individual claims to the statute of limitations period.  I have provided substantial authority in this regard, which again you conveniently ignore.  Defendant must supplement these responses.

     With respect to the class allegations, the cases you cite do not support your claims. *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) is not even a putative class action.  And as you know, Plaintiff seeks more than just injuctive relief here.  In *Linder v. Litton Systems, Inc.*, 81 F.R.D. 14 (D. Md. 1978), Plaintiff was alleging discrimination and there were several factors that made him an inadequate class representative, including that it had been over five years since he had any contact with the company.  Here, Plaintiff was terminated less than two years ago.  Moreover, Plaintiff alleges a corporate policy/practice of the denial of meal and rest breaks.  Judging from Defendant's discovery responses, it appears that Defendant concedes such breaks are not provided (but merely claims that it is exempt from such requirements).  This makes the cases you cite irrelevant.  More importantly, you are focusing on ultimate class certification questions, as opposed to the broader standard applicable to discovery requests.  Please supplement your responses to RFP Nos. 21-23, 26, 28-30, 32-33, 36-38, 40-52, and 64 and Special Interrogatory Nos. 2-6, 10-13, and 15-19 by no later than October 15, 2012.

     **2.**     **Special Interrogatories**

     Special Interrogatory No. 6 seeks information pertaining to computerized systems Defendant has used regarding recording drivers' activities.  Defendant's response identified various programs/devices, but failed to supply other requested information.  Specifically, Defendant failed to identify whether any time-stamp information is created or recorded, and a description of the types of summary and/or user-created reports that can be generated.  Now Defendant claims that it will do so following entry of a protective order.  Please explain why this information is confidential such that a protective order is necessary, as we do not agree.

     Special Interrogatory No. 17 seeks information (by DOE designation) regarding other employee's terminated for being involved in an accident and the damage to the vehicle.  Defendant has agreed to provide a response with employee identifying information redacted after entry of a protective order.  But if there is no identifying information, the protective order is unnecessary.

     Finally, Defendant did not even respond to our request for a response to Special Interrogatory Nos. 5, 12 and 13, which seek basic non-confidential information (such as drivers' job duties, Defendant's policy/practice in tracking hours worked by drivers, and Defendant's policy/practice in recording meal/rest breaks taken by drivers).  Defendant is apparently refusing to provide this information until a protective order is in place.  This makes no sense and feels

Amanda Bonn, Esq.
October 8, 2012
Page 4

very much like an improper attempt to stymie discovery efforts, especially considering that
Defendant did not even object on the grounds of right to privacy, confidential or proprietary
information. The fact that you simply ignore these issues in your meet and confer response is
further concerning. Please provide the information as soon as possible and by no later than
October 15, 2012.

### B.     Plaintiff's Responses

Plaintiff will supplement his responses to Special Interrogatory Nos. 1-5 in a timely
manner under Rule 26(e) following production by Defendant of all of Plaintiff's timecards,
schedules, driver logs, and payroll records.

While we believe Plaintiff's responses to Special Interrogatory Nos. 10 and 11 are clear
and sufficient, in the spirit of cooperation we will provide a supplemental response confirming
that Plaintiff has not received any treatment for a mental or emotional illness. (The same applies
to Plaintiff's response to RFP No. 14.)

Regarding Special Interrogatory No. 13, Plaintiff's cannot precisely compute damages at
this time, and may even require an expert to do so. Defendant has not yet provided any
information concerning the value of Plaintiff's benefits. Nor has Defendant provided any
documents, such as Plaintiff's schedules, timecards, driver logs, payroll records, from which
Plaintiff can more accurately provide the requested information. Plaintiff is willing to
supplement this interrogatory later in the discovery process, after the information is produced by
Defendant and after expert witness testimony.

Plaintiff is not withholding any responsive documents as privileged or protected by the
right to privacy, other than attorney-client communications and/or attorney work-product.

RFP No. 16 seeks all documents relating to any monetary or other benefits Plaintiff has
received since his termination. We believe this request is overbroad, unduly burdensome, and
vague and ambiguous. Plaintiff will produce documents that will evidence all income and/or
unemployment benefits he has received since his termination to date.

### C.     Protective Order

Finally, regarding your request for a protective order, we are willing to limit personal
contact information (such as names, addresses, telephone numbers, and email addresses) to
"Attorney's Eyes Only." We are similarly willing to agree that no court documents will be filed
with such personal contact information and that it will either be redacted or filed under seal.
Given the arduousness of filing documents under seal – to both the litigants and the Court – we
simply do not believe following that method is necessary or appropriate here. Indeed, Defendant

Amanda Bonn, Esq.
October 8, 2012
Page 5

has marked <u>every single document it produced to date (1-934)</u> as "confidential." This includes documents that clearly should not be covered by a protective order or filed under seal, such as Plaintiff's time records and personnel file. If you have specific documents that you are concerned about, we are more than happy to discuss on a case-by-case basis.

Please provide the requested supplemental information no later than October 15, 2012, so that we may avoid motion practice. Should you have any questions, or wish to discuss further, please do not hesitate to contact me. If you still wish to confer by phone, I am available most of tomorrow Tuesday, October 9, 2012, as well as Wednesday, October 10, 2012. Thank you.

Very truly yours,

Natasha Chesler

**Subject: de la Cueva v. Alta Dena**
**Date:** Tuesday, October 9, 2012 1:16 PM
**From:** Natasha Chesler <nchesler@tbmlaw.net>
**To:** Amanda Bonn <abonn@SusmanGodfrey.com>
**Cc:** Tim McCaffrey <tmccaffrey@tbmlaw.net>, "Steven G. Sklaver" <ssklaver@SusmanGodfrey.com>, Kalpana Srinivasan <ksrinivasan@SusmanGodfrey.com>, "Alisha R. Chandler" <achandler@susmangodfrey.com>

Amanda – I write regarding Defendant's document production, which is woefully deficient and mostly contains hundreds of duplicate pages. I have noted the issues below. We do not believe any of these items are remotely covered by any potential protective order. Accordingly, please produce these documents by no later than Friday, October 12, as we have been patiently waiting their production for some time now. Please let me know if you would like to discuss further.

1. Defendant did not produce Plaintiff's paystubs, other than a small few (and those are from 2001-2004, notably belying Defendant's claim that producing documents that far back is burdensome). Please produce all of Plaintiff's paystubs from at least 2008 to the time of his termination.
2. Defendant did not produce a single policy, manual, or handbook. Please produce all policies applicable to Plaintiff during his employment with Defendant.
3. Defendant produced Plaintiff's "Driver Break Report" for part of 2009 (March 4 – December 30) and 2010. Please produce this report for January 1-March 3, 2009, and for 2008 as well.
4. Defendant produced Plaintiff's "Punch Detail History" for 2009 and 2010. Please produce this report for 2008 as well.
5. Defendant produced "Work Schedules" for 2010. Please produce these reports for 2008 and 2009.
6. Document Nos. ADCD 40, 41, 65, and 170 are blank. Please advise.
7. Document Nos. ADCD 42, 129, 192, 506, 507, and 508 are missing noted attachments. Please produce them.
8. Document No. ADCD 520 is covered with post-its so that it cannot be clearly read. Please produce a clean copy of the document.

Natasha R. Chesler
The Law Offices of Timothy B. McCaffrey, Jr.
11377 West Olympic Boulevard
Suite 500
Los Angeles, California 90064-1683
Phone:  (310) 882-6407

Facsimile:  (310) 882-6359
Web:  www.tbmlaw.net

The information contained in this communication is protected by the attorney-client and/or the attorney work-product privilege. It is intended only for the use of the addressee, and the privileges are not waived by virtue of this having been sent by e-mail. If the person actually receiving this communication or any other reader of the communication is not the named recipient, or the employee or agent responsible to deliver it to the recipient, any use, dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by return e-mail or by e-mail to nchesler@tbmlaw.net, and destroy this communication and all copies thereof, including all attachments.

**EXHIBIT E**

**Subject: De la Cueva: Meet and Confer Follow Up**
**Date:** Wednesday, October 10, 2012 5:23 PM
**From:** Amanda Bonn <abonn@SusmanGodfrey.com>
**To:** natasha chesler <nchesler@tbmlaw.net>
**Cc:** Tim McCaffrey <tmccaffrey@tbmlaw.net>, "Steven G. Sklaver" <ssklaver@SusmanGodfrey.com>, Kalpana Srinivasan <ksrinivasan@SusmanGodfrey.com>, "Alisha R. Chandler" <achandler@susmangodfrey.com>

Natasha,
I write in response to your October 8, 2012 letter and your e-mails from Tuesday, October 9.

As an initial matter, we disagree with your characterization of the timing of events and your suggestion that there has been an improper delay in discovery on Alta-Dena's part.  To the contrary, while Alta-Dena has repeatedly reached out to try to meet and confer regarding the protective order, a procedure for searching and producing ESI, and deposition availability dates, Plaintiff has routinely allowed weeks at a time to go by without any response whatsoever. To the extent there has been any delay, it is because Plaintiff has failed to respond to our efforts to meet and confer for extended periods of time before suddenly finding a sense of false urgency in the last two weeks.

For example, we sent Plaintiff an e-mail on June 27, 2012 raising concerns about Plaintiff's initial disclosures—namely, the absence of a "computation of each category of damages" required by Rule 26(a)—to which Plaintiff never responded.  Likewise, we sent Plaintiff a proposed protective order in an e-mail dated July 6, 2012, in which we also requested to "meet and confer next week regarding custodians and search terms to be used in collecting responsive documents and ESI and also to discuss scheduling of the depositions that Plaintiff has noticed."  Plaintiff did not respond to our request for nearly two months.  On August 28, 2012, we again e-mailed to request that Plaintiff "let us know if the proposed protective order we sent . . . is acceptable to Plaintiffs," so that we could "file a stipulation to entry of the protective order with the Court." We also informed you in the same e-mail that we were prepared to offer a 30(b)(6) witness on certain topics on September 24 or 25, and that we would work to find available dates for other deponents.  Finally, we also proposed a procedure for searching certain custodians' ESI and provided a list of proposed search terms. Although Plaintiff promised to respond to our e-mail "early next week," Plaintiff did not provide provisions to the proposed protective order until September 18, did not provide revisions to the proposed ESI terms until September 28, and did not comment on our offer to make a 30(b)(6) deponent available on September 24 or 25 until October 4, after those dates had passed without comment from Plaintiff.

During our telephone call yesterday, you suggested that an extension on the deadlines to move for class certification may be appropriate.  We think there is no need for an extension in the deadline that Plaintiff pressed for in our Rule 26(f) submissions to the Court, particularly in

light of the fact that we previously agreed to waive the more stringent deadlines under the local rules. To the extent there has been any delay to date, we think it is the result of lack of diligence on Plaintiff's part. Nonetheless, as set forth below, we are willing to work with Plaintiff to produce additional documents on Monday, October 15, and to search for ESI using the search terms we have agreed upon and to produce documents generated by such search in due course. Furthermore, as set forth below, we are providing dates during which deponents can be available to testify during the month of November. We hope that the recent flurry of letters and e-mails on Plaintiff's part is a genuine effort to resolve outstanding issues so that we can move forward with discovery in this matter, rather than an effort to cause further delay by needlessly requesting an extension of deadlines that Plaintiff requested in the first place.

With respect to the issues you have raised, we submit the following:

## Document Production:
As a threshold matter, we disagree about Plaintiff's characterization of any delay in producing documents. Notwithstanding Plaintiff's delay of over two months in responding to our proposed protective order, we have made a production of documents last week and intend to produce additional documents by Monday, October 15 if Plaintiff will agree to treat them as confidential pending entry of a protective order. Please let us know if Plaintiff will do so.

We agree to the revisions to ESI search terms you proposed. However, because you have added such general terms as "meal," "lunch," and "rest," the additional search terms you have proposed result in over 8,000 additional documents being generated by the search, which take additional time to review. Your letter of October 8, 2012 asks that we supplement our responses to requests for production insofar as our responses stated we would produce responsive documents "to the extent they exist." We agree to seasonably supplement our responses, but believe it is premature at this time because we have only recently reached an agreement on ESI search procedures that will enable us to complete our review of ESI.

Finally, in an e-mail yesterday, you raised several questions about the document production we made last week, to which I respond below:

(1) Paystubs. We are conferring with our client about the issue you raised regarding paystubs and will get back to you about that issue on Monday.

(2) Policies, Manuals, Handbooks. We will make a supplemental production on Monday, October 15 including handbooks, manuals, and policy documents.

(3) Driver Break Report. We believe we have produced the Driver Break Reports that are

available. We will confer with our client and will confirm with you by Monday.

(4)  <u>Punch Detail Report.</u>  We have produced punch detail records dating back to 2008. Please check documents bates stamped ADCD1-26.

(5)  <u>Work Schedules.</u> It would help if you would please tell me the Bates numbers for the documents to which you are referring. Once I have that, I can check and get back to you promptly.

(6)  <u>Blank Pages.</u>  These documents were produced as they appear in Plaintiff's personnel file.

(7)  <u>E-mail attachments.</u>  These documents were produced as they appear in Plaintiff's personnel file.

(8)  <u>Post-Its.</u>  We will produce a clean copy of this document without the post-it notes.


**Protective Order**:
With respect to the protective order, it seems we agree on the bulk of the terms, but we disagree on (1) the Attorney's Eyes Only level of confidentiality and (2) the sealing procedure. With respect to Attorney's Eyes Only, we believe that the Protective Order should provide for an Attorney's Eyes Only category and a procedure by which a party may object to any designation that it believes to be improper. The draft you have proposed would eliminate our ability to ever mark anything Attorney's Eyes Only, apart from the limited category of personal information you have identified.  For example, we anticipate the possibility that we may be required to produce sensitive earnings information for other putative class members at some point in the future and that such documents would be entitled to AEO protection.  If Plaintiff will not agree to include an AEO provision or a sealing provision in the protective order, we propose that we should file a joint motion for entry of a protective order, submit our competing drafts, and brief the areas where we disagree. Please let us know if this approach is agreeable to Plaintiff.

**Plaintiff's Interrogatories**:
<u>Special Interrogatory 6.</u>  With respect to Special Interrogatory No. 6, we have produced Plaintiff's Kronos punch detail records as well as his Xata break reports pursuant to Federal Rule of Civil Procedure 33(d).  We will also produce by Monday, October 15 additional documents sufficient to identify other reports that can be generated.

<u>Special Interrogatories 5, 12, 13.</u>  We agree to produce documents in connection with our

Federal Rule of Civil Procedure 33(d) responses to Special Interrogatory Nos. 5, 12, and 13 by Monday, October 15, provided Plaintiff will treat any documents marked confidential as confidential pending entry of a protective order.

Special Interrogatory 17. We agree to produce accident reports with confidential information redacted by Monday, October 15.

**Contact Information for Managers and Putative Class Members:**
Managers: You have asked us to provide the names of managers that we represent and contact information for those we don't. We have responded to Interrogatory No. 4 by identifying the managers that we were asked to identify, by explaining that one such manager has passed away, and by stating that the remaining managers may be contacted through undersigned counsel. We are not sure what information you believe is missing from our interrogatory response.

Putative Class Members: We believe that Plaintiff has not demonstrated that discovery of putative class members' names and contact information is warranted at this point. To the extent a Court orders otherwise, we believe an opt-out procedure is appropriate. The two week opt-out procedure that you propose does not provide sufficient time for putative class members to consider and respond to any opt-out notice. Instead, we believe that a 45 day period in which to opt out after notices are mailed is appropriate.

**Time Period For Class Discovery:**
You have not responded to the authority we cited for the proposition that a plaintiff lacks standing to represent a proposed class "with regard to actions that occurred during specific time periods when the lead plaintiff was not [himself] injured, even if other members of the class may have been." *In re Connetics Corp. Securities Litig.*, 542 F. Supp. 2d 966, 1003 (N.D. Cal. 2008); *see also Shurkin v. Golden State Vintners Inc.*, 471 F. Supp. 2d 998, 1022 (N.D. Cal. 2006) (holding courts should "strictly limit[] the class period to the period for which that named representative has standing"). Our position that Plaintiff lacks standing to represent a class of employees who suffered wage and hour violations after the date of Plaintiff's termination is supported by case law within the Ninth Circuit. As a result, we do not agree to supplement our discovery responses to extend the time period beyond the date of Plaintiff's termination, which discovery is irrelevant. Finally, we disagree with Plaintiff's baseless assertion that Alta-Dena "concedes [meal and rest ] breaks are not provided . . . ."

**Plaintiff's Responses to Interrogatories:**
Special Interrogatory 13. Plaintiff has refused to compute damages. The obligation to provide a computation of damages arose in connection with Plaintiff's initial disclosures, which

provided no such computation. Furthermore, Plaintiff has not provided any facts supporting his claim for damages including, for example, facts concerning his claim for damages arising from emotional distress. If Plaintiff will not agree to supplement this response by Monday, October 15, we will be forced to resort to motion practice to resolve this issue.

Verification. Plaintiff has not yet verified his responses to Alta-Dena's interrogatories. Please provide a verification from Mr. de la Cueva by this Friday.

## Plaintiff's Initial Disclosures:

Doctors. In Plaintiff's initial disclosures, he indicated that he was treated at "Western Pulmonology Medical Group, 220 Laguna Road, Suite #2, Fullerton, CA 92835" by doctors including James Pearja Pearle. That medical group has indicated that they lack any records of Mr. de la Cueva being treated there. If Mr. de la Cueva was treated at a different facility from this one, please supplement the initial disclosures to let us know the correct contact information.

Computation of Damages: As described above, Plaintiff was required to provide a computation of damages in his initial disclosures, which he did not do. Please supplement the initial disclosures accordingly.

## Deposition Dates:
In terms of deposition availability, we tentatively propose the following:

Marielos Vivas. Marielos Vivas can be available to testify on certain 30(b)(6) topics on November 15. Please let us know if that date works for you.

Joe Llamas. Joe Llamas can be available to testify on November 30. Please let us know if that date works for you.

Jesse Sanchez. We are trying to find a date to make Jesse Sanchez available during the week of November 5. He works a night shift, so we are trying to pin down a date that will work with his schedule, because we will not produce him for a deposition during a day when he has worked the night shift the previous evening. It would help if you would please let us know dates during that week that would work for you and we will figure out a solution.

Susana Correa. You asked us to provide deposition dates for Susana Correa. No deposition notice has yet been served for Susana Correa. However, in the interest of trying to agree upon a date that is mutually convenient, we have reached out to her to see what dates she can be available and will get back to you shortly.

To the extent it is helpful to discuss this further by telephone, I am available this Friday for a phone call. Please let me know what time works best for you.

Thank you,

Amanda Bonn | Susman Godfrey LLP
1901 Ave. of the Stars, Suite 950 | Los Angeles, CA 90067
(T) 310-789-3131 | (M) 408-832-5193 abonn@susmangodfrey.com <mailto: 408-832-5193abonn@susmangodfrey.com>

**EXHIBIT F**

The Law Offices of
# Timothy B. McCaffrey, Jr.
*A Professional Corporation*

11377 West Olympic Boulevard Suite 500
Los Angeles, California  90064-1683
Telephone (310) 882-6407
Facsimile  (310) 882-6359
nchesler@tbmlaw.net


October 11, 2012


**VIA U.S. MAIL AND ELECTRONIC MAIL**

Amanda Bonn, Esq.
Susman Godfrey LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067-6029


     ***Re:***    ***De la Cueva v. Alta Dena Certified Dairy, LLC***

Dear Amanda:

     I write in response to your email of yesterday, October 10, 2012.  As a threshold matter, you continually send very lengthy correspondence in the text of an email.  It makes it difficult to read easily.  Could you please send long letters in an actual letter document, by either fax or as an email attachment.  It would really help.

     I do not appreciate your accusation that Plaintiff has been somehow dilatory.  Both sides have obviously been tied up on other matters and certain items, such as the proposed protective order and ESI search terms, have taken a while.  At no time, however, did I ignore any communications by you.  While you originally sent the proposed protective order on July 6, 2012, I did not hear again from you at all concerning the matter until August 29, 2012.  Nor did any alleged delay in the protective order or ESI search terms, have anything to do with Defendant's obligation to produce documents as part of its Initial Disclosures, or those responsive to Plaintiff's document requests.  Indeed, the majority of documents at issue concern Plaintiff (such as his personnel file and his paystubs).  Thus, any right to privacy belongs to him. Despite repeated requests, however, Defendant did not produce a single document until last Friday.

     Defendant has asked for several extensions on various things.  Plaintiff has asked for extensions too.  Each side feels the other has taken longer than necessary to do things.  I am not going to go through a laundry list of Defendant's delay (like you do in your email) because I do not believe it to be beneficial.  That may be an issue for the Court in a discovery motion if we cannot reach a cooperative resolution.  Right now, our focus should simply be on how to

Amanda Bonn, Esq.
October 11, 2012
Page 2

cooperatively resolve things moving forward so that we don't have to burden each other – or the Court – in motion practice.  We are where we are.  The motion for class certification deadline is soon approaching. If both sides work together without any more delays moving forward, we will be able to meet it.

I did not state otherwise in our telephone call of October 9.  You recently informed us that you were getting married in November and would be out of town for your wedding.  In our phone call, I explained that given the pending motion for class certification deadline in January, the next few months will likely be very busy on this case.  I offered – in the spirit of fostering positive relationships between counsel – that if you needed to push things off to enjoy this special time in your life, that we would not object to any request by you for a commensurate extension on the parties' deadlines.  I certainly did not state that Plaintiff needed an extension. And you seemed to understand given that you replied, "Thanks.  That's really sweet of you."

At this point, perhaps a conference call concerning our respective outstanding discovery issues would be helpful.  I am available any time today, October 11, 2012, as well as tomorrow, Friday October 12, 2012.  Please let me know what time works for you.  Thanks.

Very truly yours,

Natasha Chesler

**Subject:** Re: de la Cueva v. Alta Dena
**Date:** Friday, October 12, 2012 5:27 PM
**From:** Amanda Bonn <abonn@SusmanGodfrey.com>
**To:** natasha chesler <nchesler@tbmlaw.net>
**Cc:** Tim McCaffrey <tmccaffrey@tbmlaw.net>, "Steven G. Sklaver" <ssklaver@SusmanGodfrey.com>, Kalpana Srinivasan <ksrinivasan@SusmanGodfrey.com>, "Alisha R. Chandler" <achandler@susmangodfrey.com>

That works for me.

On Oct 12, 2012, at 5:16 PM, "Natasha Chesler"
<nchesler@tbmlaw.net<mailto:nchesler@tbmlaw.net>> wrote:

Thanks Amanda. How is Monday around 2pm?

On Oct 12, 2012, at 4:57 PM, "Amanda Bonn"
<abonn@SusmanGodfrey.com<mailto:abonn@SusmanGodfrey.com>> wrote:

Natasha,
I apologize that I was unable to participate in a phone call today. I am
available Monday afternoon and Tuesday morning. Please let me know if
there is a time that works for you.

Please also copy my colleagues Steven Sklaver, Kalpana Srinivasan, and
Alisha Chandler on all communications moving forward. Thank you.

Regards,

Amanda

Amanda Bonn | Susman Godfrey LLP
1901 Ave. of the Stars, Suite 950 | Los Angeles, CA 90067
(T) 310-789-3131 | (M) 408-832-5193 abonn@susmangodfrey.com<mailto:
408-832-5193abonn@susmangodfrey.com>


From: Natasha Chesler [mailto:nchesler@tbmlaw.net]
Sent: Thursday, October 11, 2012 12:40 PM
To: Amanda Bonn
Cc: Tim McCaffrey
Subject: de la Cueva v. Alta Dena

Correspondence attached.

**EXHIBIT G**

**Subject: Re: De la Cueva et al. v. Alta-Dena Certified Dairy, LLC: Production of Documents**
**Date:** Tuesday, October 16, 2012 4:12 PM
**From:** Natasha Chesler <nchesler@tbmlaw.net>
**To:** Amanda Bonn <abonn@SusmanGodfrey.com>
**Cc:** "Alisha R. Chandler" <achandler@susmangodfrey.com>, "Steven G. Sklaver" <ssklaver@SusmanGodfrey.com>, Kalpana Srinivasan <ksrinivasan@SusmanGodfrey.com>, Tim McCaffrey <tmccaffrey@tbmlaw.net>

Amanda – I am still doing a detailed review of these documents, but we did not see Plaintiff's paystubs anywhere.  Did you produce them as promised?  Please let us know.  Thanks.


On 10/15/12 6:43 PM, "Amanda Bonn" <abonn@SusmanGodfrey.com> wrote:

Natasha,
Attached please find Alta-Dena Certified Dairy, LLC's production of documents Bates stamped ADCD0000935 – ADCD0001587.

The document Bates stamped ADCD0000935, which is a clean copy of the document you identified as having been copied with post-it notes, can be found in the attached zip file.  The remaining documents may be accessed via the below ftp folder:

FTP Server:
ftp.knjgroup.net <ftp://ftp.knjgroup.net>

Username:
20121015_ADCD
Password:
@Adcd^1

Per our earlier agreement, please treat documents marked "Confidential" as confidential in accordance with the terms we have proposed in the draft protective order pending entry of the protective order.

Thank you,

Amanda

Amanda Bonn | Susman Godfrey LLP
1901 Ave. of the Stars, Suite 950 | Los Angeles, CA 90067
(T) 310-789-3131 | (M) 408-832-5193 abonn@susmangodfrey.com

<mailto:408-832-5193abonn@susmangodfrey.com>

**EXHIBIT H**

The Law Offices of

# Timothy B. McCaffrey, Jr.

*A Professional Corporation*

11377 West Olympic Boulevard Suite 500
Los Angeles, California  90064-1683
Telephone (310) 882-6407
Facsimile  (310) 882-6359
nchesler@tbmlaw.net

October 17, 2012

**VIA U.S. MAIL AND ELECTRONIC MAIL**

Amanda Bonn, Esq.
Susman Godfrey LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067-6029

   *Re:*   *De la Cueva v. Alta Dena Certified Dairy, LLC*

Dear Amanda:

   I write concerning deficiencies that remain in Defendant's document production and to continue our meet and confer efforts regarding such.

   As a threshold matter, we have repeatedly explained that Defendant's response that it will produce documents "to the extent they exist" is improper.  (See RFP Nos. Nos. 1-12, 18-19, 24-27, 30, 34-56, 58-63, 67-78, and 81-82.)  Defendant has taken the position that it cannot provide a different response because of the ESI search terms, which is still underway.  We disagree and don't think one thing has anything to do with the other.  This is especially so with respect to requests seeking things like Plaintiff's personnel file, or reprimands of Plaintiff, performance reviews, etc.  We are entitled to know what you have or have not been able to locate thus far, and/or whether Defendant is aware of any documents that have been destroyed, lost, never existed, etc.  I suggest we solve this issue by having Defendant provide a supplemental response that complies with the FRCP and where a search for additional responsive documents is still underway through ESI, so stating.

   This is important because Defendant's production is difficult to understand.  It is entirely unclear what has or has not been produced.  For example, we have no idea whether you have produced all performance evaluations, warnings (or any other form of disciplinary action), training forms, and/or accident reports pertaining to Plaintiff.  There is also a significant amount of duplication, sometimes spread out, sometimes just the same document copied multiple times.  (See e.g. ADCD 1525-27.)  Thus, please let us know if Defendant will provide supplemental

Amanda Bonn, Esq.
October 17, 2012
Page 2

responses conforming to the FRCP, with a notation on specific ones that may or may not turn up
further responsive documents pursuant to ESI.

I will now turn to specific issues remaining in the document production:

1. We believe Defendant produced documents as they were kept in the ordinary
   course of business, but it is still difficult to tell.  Please confirm whether
   Defendant did so.  Also, could you please identify for us the Bates Numbers
   comprising Plaintiff's personnel file as we cannot determine where in the
   production it falls.

2. MISSING REPORTS:

   a. As previously explained, we are missing work schedules for 2008 and
      2009.  (See e.g. ADCD 360-408.)

   b. As previously noted, we are missing Driver Break Reports from January
      1-March 3, 2009, and all of 2008.  You stated that you would confirm with
      Defendant as to whether they exist.  Please let us know.

   c. Plaintiff's XATANET Vehicle Trip Reports from 2008 to Plaintiff's
      termination.  Other than a single instance, none were produced.

   d. Plaintiff's Driver Log Daily Reports from 2008 to Plaintiff's termination.
      Other than a single instance, none were produced.

   e. Plaintiff's Driver Trip Reports from 2008 to Plaintiff's termination.  Other
      than a single instance, none were produced.

   f. No KRONOS documents/reports pertaining to Plaintiff were produced.
      Are there any?

3. DOCUMENTS THAT WERE ONLY PARTIALLY PRODUCED:

   a. 2005 Handbook begins at Bates ADCD 992, which is blank, and then
      jumps to page 16, also missing pages 20-21, and everything after 23.

   b. The "Hand-held Driver Manual" appears to be cut-off in some places.  For
      example, it jumps from ending on Item #3 on ADCD 1456, to beginning
      with Item #8 on ADCD 1457.  This continues in various places throughout
      the manual (ADCD 1453-82).

   c. Plaintiff's Driver Log Daily for 11/3/10 is missing page 2 of 3.  (ADCD
      1523-24.)

Amanda Bonn, Esq.
October 17, 2012
Page 3

    d.  Defendant produced a policy that appears to come from some type of larger manual (ADCD 1491).  If it is from a larger manual, please produce the entire document.  If not, please confirm.

    e.  XATANET Vehicle Trip Report (ADCD 1529) – Defendant only produced page 9 from a 16 page document.

    f.  Plaintiff's Driver Break Report (ADCD 1530) – Defendant only produced page 6 from a 60 page document.

    g.  Plaintiff's Driver Log Daily (ADCD 1531-32) – Defendant only produced 2 pages of a 3 page report.

    h.  Driver Trip Report (ADCD 1533) - Defendant only produced 1 of 3 pages.

4.  <u>BLANK DOCUMENTS</u>.  The following documents are blank (yet notably marked "CONFIDENTIAL"), please confirm that these are not errors: ADCD 1002, 1573.

5.  ADCD 1548 was scanned improperly and cannot be read.  Please reproduce.

6.  You produced a driver evaluation form for Jesse Sanchez (ADCD 1550). Defendant did not produce such forms for Plaintiff.  Please do so, or confirm that there are none.

7.  Defendant also produced a variety of "sample" logs, and other various forms (ADCD 938-39, 1054-1059; 1070-71, and 1075), but none that were filled out for Plaintiff.  Please produce such documents, or confirm that there are none.

8.  There appears to be an "Ata Dena Driver Monthly Newsletter" (ADCD 1157). These newsletters during the time Plaintiff was employed are responsive and should be produced, at the very least from 2008 to his termination.

9.  ADCD 1451 appears to be a map, but it is unmarked.  Can you please tell us what it represents?

10.  We did not see any organizational charts in the production, were any produced?  If not, please do so.  If so, please identify the Bates Numbers for us.

11.  Defendant agreed to produce redacted documents (such as accident reports) regarding other drivers that were allegedly disciplined for accidents identified in response to Special Interrogatory No. 17.  But it appears Defendant only produced documents for one such incident (ADCD 1168-69), which is not

Amanda Bonn, Esq.
October 17, 2012
Page 4

even designated as Doe-1, etc. (to correspond to the Interrogatory Response).
Moreover, it appears to have been redacted, without the appropriate
"REDACTED" notation.  Please confirm this has been redacted and ensure
that no other documents have been redacted without being appropriately
marked as such.  Also, please produce the accident reports you agreed to
provide regarding the other incidents and mark them appropriately Doe-1,
Doe-2, etc. to correspond to Defendant's Special Interrogatory Responses.

Please provide the documents requested herein no later than Monday, October 22, 2012.
To the extent there are any issues in doing so, please let me know no later than Friday, October
19, 2012.  As always, should you wish to discuss this further, please don't hesitate to call.  Thank
you.

Very truly yours,

Natasha Chesler

**Subject: de la Cueva v. Alta Dena**
**Date:** Wednesday, October 17, 2012 1:10 PM
**From:** Natasha Chesler <nchesler@tbmlaw.net>
**To:** Amanda Bonn <abonn@SusmanGodfrey.com>
**Cc:** Tim McCaffrey <tmccaffrey@tbmlaw.net>, "Steven G. Sklaver" <ssklaver@SusmanGodfrey.com>, Kalpana Srinivasan <ksrinivasan@SusmanGodfrey.com>, "Alisha R. Chandler" <achandler@susmangodfrey.com>

Amanda,

You promised to get us objections to Plaintiff's PMK notice by yesterday, as well as some dates/ identifying who would speak on class allegation topics, but we haven't heard from you.  Please provide that information today.   We are also still waiting for deposition dates for Jesse Sanchez and Susana Correa.  If we do not have dates by the close of business today, we will unilaterally notice these depositions due to time constraints.

Also, you indicated that Defendant would be providing a supplemental response to Special Interrogatory Nos. 5-6, 8-9, 12-13, and 17 (in some instances to state that Defendant was exercising its right to produce documents).  Please produce these supplemental responses by no later than Wednesday, October 24.

Thank you.

- Natasha

Natasha R. Chesler
The Law Offices of Timothy B. McCaffrey, Jr.
11377 West Olympic Boulevard
Suite 500
Los Angeles, California 90064-1683
Phone:  (310) 882-6407
Facsimile:  (310) 882-6359
Web:  www.tbmlaw.net

The information contained in this communication is protected by the attorney-client and/or the attorney work-product privilege. It is intended only for the use of the addressee, and the privileges are not waived by virtue of this having been sent by e-mail. If the person actually receiving this communication or any other reader of the communication is not the named recipient, or the employee or agent responsible to deliver it to the recipient, any use, dissemination, distribution or copying of this communication is strictly prohibited.  If you have

received this communication in error, please immediately notify us by return e-mail or by e-mail to nchesler@tbmlaw.net, and destroy this communication and all copies thereof, including all attachments.

**Subject: Re: De la Cueva v. Alta Dena**
**Date:** Tuesday, October 9, 2012 1:21 PM
**From:** Natasha Chesler <nchesler@tbmlaw.net>
**To:** Amanda Bonn <abonn@SusmanGodfrey.com>
**Cc:** Tim McCaffrey <tmccaffrey@tbmlaw.net>, "Steven G. Sklaver" <ssklaver@SusmanGodfrey.com>, Kalpana Srinivasan <ksrinivasan@SusmanGodfrey.com>, "Alisha R. Chandler" <achandler@susmangodfrey.com>

Amanda,  I write to follow up on a couple things.  First, please let us know status of ESI search terms.  We sent you our proposals on September 28, and asked for an update on October 4, but have not heard anything back.  Second, we are still waiting for proposed deposition dates for the PMK notice, Joe Llamas, Jesse Sanchez, and Susana Correa for the month of November. You promised dates early this week.  Please let us know by no later than tomorrow Wednesday October 10.  Thanks.

- Natasha


Natasha R. Chesler
The Law Offices of Timothy B. McCaffrey, Jr.
11377 West Olympic Boulevard
Suite 500
Los Angeles, California 90064-1683
Phone:  (310) 882-6407
Facsimile:  (310) 882-6359
Web:  www.tbmlaw.net


The information contained in this communication is protected by the attorney-client and/or the attorney work-product privilege. It is intended only for the use of the addressee, and the privileges are not waived by virtue of this having been sent by e-mail. If the person actually receiving this communication or any other reader of the communication is not the named recipient, or the employee or agent responsible to deliver it to the recipient, any use, dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by return e-mail or by e-mail to nchesler@tbmlaw.net, and destroy this communication and all copies thereof, including all attachments.

**EXHIBIT I**

**Subject: RE: De la Cueva v. Alta-Dena: Deposition and Protective Order Issues**
**Date:** Tuesday, October 23, 2012 5:34 PM
**From:** Amanda Bonn <abonn@SusmanGodfrey.com>
**To:** natasha chesler <nchesler@tbmlaw.net>
**Cc:** "Alisha R. Chandler" <achandler@susmangodfrey.com>, "Steven G. Sklaver" <ssklaver@SusmanGodfrey.com>, Kalpana Srinivasan <ksrinivasan@SusmanGodfrey.com>, Tim McCaffrey <tmccaffrey@tbmlaw.net>

Natasha,

I am available to meet in the afternoon on Wednesday, 10/31, but request that the meeting be in Susman Godfrey's offices.  Please let me know if that will work for you.

We are unclear on your proposal regarding the 7 hour limit: are you proposing that we simply waive the limit altogether without any cap on how long you can question the witness, even if that means bringing them back for additional days? Or are you proposing that we agree to allow the Correa and Llamas depositions to go for, say, 8 or 9 hours on a single day? How much extra time do you think you need with each witness?

We will not agree to simply waive the 7 hour limit altogether in advance of the depositions. And we see no reason why the Correa and Llamas depositions can't be completed in 7 hours. But should it appear during the course of those depositions that 7 hours is insufficient to cover the individual and 30(b)(6) topics, we are willing to confer at that point about allowing the depositions to go longer on the same day or whether it is necessary to bring the witnesses back.

We are checking with Jesse Sanchez about whether he can be available on 11/7 and will get back to you shortly—scheduling for him is particularly difficult because he works the night shift.  With respect to Marielos Vivas, we take issue with making her available for a deposition during the two weeks after the deadline for Plaintiff's class certification motion, particularly since her topics relate solely to Plaintiff's individual claims.  We hope we can find a mutually agreeable time for her to testify either in December or perhaps in March after both parties' briefing is completed.

Regards,

Amanda

Amanda Bonn | Susman Godfrey LLP
1901 Ave. of the Stars, Suite 950 | Los Angeles, CA 90067
(T) 310-789-3131 | (M) 408-832-5193 abonn@susmangodfrey.com <mailto:
408-832-5193abonn@susmangodfrey.com>

EXHIBIT I - 1
PAGE 47

**From:** Natasha Chesler [mailto:nchesler@tbmlaw.net]
**Sent:** Tuesday, October 23, 2012 3:55 PM
**To:** Amanda Bonn
**Cc:** Alisha R. Chandler; Steven G. Sklaver; Kalpana Srinivasan; Tim McCaffrey
**Subject:** Re: De la Cueva v. Alta-Dena: Deposition and Protective Order Issues

Amanda, You never responded to my email below.  Will Defendant agree to waive the seven hour time limit for witnesses appearing in two capacities?  If so, we will agree to conduct one deposition as you propose.  If not, we will notice a separate deposition.  Please let us know.  I address scheduling below.  Regarding your remaining objections and proposal to handle certain topics by written question, we propose discussing these at the in person conference I asked about earlier today.  Hopefully we will be able to meet next week and finalize these and all other outstanding issues.  Please let me know.  Thanks.

## SCHEDULING

1.  We noticed Jesse Sanchez's deposition when we had not heard from you on November 7. Will this date work?  If not, we can try and move some things to make November 9 work.
2.  We noticed Susana Correa's deposition (in her individual capacity) on November 15.  If you agree to waive the time limit, we can move forward with this depo as planned in both capacities.
3.  We are confirmed for Janie Alfaro as corporate rep on Topics 4, 6, 11, and 13-15 on November 28.  (We will send notice once we confirm which PMK rep is going first.)
4.  We noticed Joe Llamas' deposition for November 30 (in his individual capacity).  Again, if you agree to waive the time limit, we can move forward with this depo as planned in both capacities.
5.  If Ms. Vivas is only going to testify as to topics 22-28, then we can push this deposition to January.  Please provide proposed dates the week of January 21-25 or Jan 28-February 1.

On 10/19/12 6:45 PM, "Natasha Chesler" <nchesler@tbmlaw.net> wrote:
Amanda,

I emailed you on Wednesday about these depositions, but never heard back.  As I explained, you had promised this information on Tuesday, and I asked for a response by the close of business Wednesday.  When we still had heard nothing by Thursday, we unilaterally noticed

the depositions. You should probably receive the notices by Monday, if you haven't already. Tim and I will check our calendars and see if we can make these dates work. I will let you know Monday and we will re-notice again if necessary.

We will also review your objections and the proposed protective order. I do note, however, that Defendant has marked **every single document it produced** as "CONFIDENTIAL." This includes Plaintiff's own personnel file, Plaintiff's own paystubs, and even blank documents. Thus, we would have to either move to file under seal or raise an objection to the designation of each and every single document produced by Defendant. That is unworkable and burdensome for both Plaintiff and the Court.

Finally, the individuals we noticed for deposition are witnesses to a significant amount of facts on Plaintiff's individual claims. Thus, we cannot depose them once in both capacities. They will have to appear as noticed for deposition and if you would like to also designate them as a corporate rep, that is Defendant's choice, but they will have to appear again on another date. In an effort to compromise, we will agree to a single deposition, if Defendant will agree to waive the seven hour time limit. Please let us know.

On 10/19/12 6:15 PM, "Amanda Bonn" <abonn@SusmanGodfrey.com> wrote:
Natasha,

I am writing to follow up on our discussion earlier this week concerning the protective order and the scheduling of depositions. We are prepared to make available the following persons for depositions:

(1)     Jesse Sanchez in his individual capacity on Friday, November 9.

(2)     Susana Correa in her individual capacity and as a corporate representatives on Topics 29-35 from Plaintiff's 30(b)(6) notice on Thursday, November 15.

(3)     Janie Alfaro as a corporate representatives on Topics 4, 6, 11, and 13-15 from Plaintiff's 30(b)(6) notice on Wednesday, November 28.

(4)     Joe Llamas in his individual capacity and as a corporate representative on Topics 1, 2, 3, 9, 10, 36-40, 46, and 47 from Plaintiff's 30(b)(6) notice on Friday, November 30.

(5)     Marielos Vivas on Topics 22 through 28 from Plaintiff's 30(b)(6) notice in early December. Please let us know some dates that would work for you.

Please let us know if those dates work for you. We are standing on our objections to the following topics: (1) Topic 5, which calls for a legal conclusion and privileged information; (2) Topic 16, which is overly broad, unduly burdensome, and calls for privileged communications; (3) Topic 18, which is overly broad, unduly burdensome, and calls for privileged information;

(4) Topic 20, which is overly broad, unduly burdensome, fails to describe with reasonable particularity the information sought, and is the equivalent of a premature contention interrogatory; and (5) Topic 21, which is overly broad and unduly burdensome, and is the equivalent of a premature contention interrogatory.  We propose responding to Topics 7, 8, 12, 17, 19, and 41-45 with written answers by November 30, and if after you have reviewed those written answers you'd like to have a deposition, that's fine and we can schedule.  We will serve (and, if you like, e-serve) our written objections to the 30(b)(6) notice on Monday.

With respect to our review and production of ESI, I told you earlier this week that I would try to give you a sense of the scope of our review and a rough timeline in which it can reasonably be completed.  The search terms we recently agreed upon result in over 30,000 e-mail hits alone.  We are diligently reviewing ESI and are prepared to make rolling productions.  We expect to continue producing documents identified in this extremely large search throughout October and November.  As a result, should you wish to postpone the above depositions, we will confer with the witnesses to try to make those witnesses available in early December.  However, we do not agree to put them up more than once should you wish to proceed with their depositions in November.

Concerning the protective order, I have made some adjustments to the sealing provision to bring it in line with the Local Rule's requirements.  After further reviewing the draft protective order and considering the issues we discussed on Monday's call, our position is that the protective order provides a mechanism for Plaintiff to object to any designation that he believes is inappropriate or unwarranted.  However, should Plaintiff intend to file documents that are marked Confidential or Attorneys Eyes Only to which he has not objected, we think it appropriate to move to seal in accordance with the Local Rules.  Please let us know if you will agree to this language.  If not, we intend to move for entry of our preferred form of order, and if you oppose the Local Rule's sealing rules, you will be free to argue that to the Court.  Our preference is to handle this by stipulation and sealing is the last issue here, and all we are proposing is exactly what the Local Rule requires.

We are also in receipt of your faxed letter dated Wednesday, October 17, 2012.  We are reviewing it and will provide responses to your letter on Monday.

Regards,

Amanda

Amanda Bonn | Susman Godfrey LLP
1901 Ave. of the Stars, Suite 950 | Los Angeles, CA 90067

(T) 310-789-3131 | (M) 408-832-5193 abonn@susmangodfrey.com <mailto: 408-832-5193abonn@susmangodfrey.com>

**EXHIBIT J**

**Subject: Re: De la Cueva v. Alta-Dena: Response to October 17 Letter**
**Date:** Tuesday, October 23, 2012 3:33 PM
**From:** Natasha Chesler <nchesler@tbmlaw.net>
**To:** Amanda Bonn <abonn@SusmanGodfrey.com>
**Cc:** "Steven G. Sklaver" <ssklaver@SusmanGodfrey.com>, Kalpana Srinivasan <ksrinivasan@SusmanGodfrey.com>,
"Alisha R. Chandler" <achandler@susmangodfrey.com>, Tim McCaffrey <tmccaffrey@tbmlaw.net>

Amanda, I have received your letter dated October 22, 2012. As you know, there are several
outstanding issues we are still conferring about regarding Defendant's discovery responses and
production. In our conference last Monday, October 15, 2012, you stated you would "circle
back" with your team and let us know whether your position would change regarding the
items identified in our meet and confer correspondence. We have only heard back regarding
the protective order and the supplementing of responses to conform to the FRCP (noted
below). If you are still willing to confer in an effort to reach a cooperative resolution, then we
propose conducting an in-person meeting at our office on Tuesday October 30 or Wednesday
October 31. We may also address the issues you raise in your letter of yesterday's date as well
at that time. Please let me know if either of these dates work for you. Thanks.


On 10/22/12 5:45 PM, "Amanda Bonn" <abonn@SusmanGodfrey.com> wrote:

Natasha,
I write in response to your letter dated Wednesday, October 17, 2012.

With respect to your request that Alta-Dena supplement its responses to Plaintiff's
request for production, Alta-Dena will do so by November 30, 2012. In light of the
ESI review that is underway, and the voluminous requests that plaintiff served, we
believe this is a reasonable time frame in which to supplement our written
responses. If there are specific documents as to which you wish to have an answer
sooner, let us know. Indeed, you have raised several questions concerning specific
categories of documents in your letter, and we respond below.


1.      We produced documents as they were maintained in the regular course of
business. Plaintiff's personnel file was produced as documents bearing Bates
numbers ADCD0000027- ADCD00000854.


2.      Purportedly Missing Reports:

a.    We will produce Plaintiff's work schedules.

b.    To the best of our knowledge, and after a reasonable inquiry, we have produced all of Plaintiff's XATA Driver Break Reports.

c.    XATANET Vehicle Trip Reports.  We are looking into this issue with the client and will get back to you within a week.

d.    Plaintiff's Driver Log Daily Reports.  We are looking into this issue with the client and will get back to you within a week.

e.    Plaintiff's Driver Trip Reports. We are looking into this issue and expect to have an answer to you within two days.

f.    Your statement that no Kronos documents/reports pertaining to Plaintiff have been produced is incorrect. We have produced Plaintiff's i-series timekeeper reports, which are Kronos reports.

3.    <u>Purportedly Partial Productions</u>:

a.    We will produce the 2005 Handbook in its entirety.

b.    Regarding the document bearing Beg Bates No. ADCD00001453, the document was produced as it is maintained in the ordinary course of business. Far from jumping around, the page paginations in the lower right corner of the document appear to run consecutively.

c.    The document bearing Beg Bates No. ADCD00001523 is a hard-copy document that was produced as it was kept in the regular course of business.

d.    The document bearing Beg Bates No. ADCD00001491 was produced as it was kept in the regular course of business. It is part of a larger manual and was produced as such.

e.    The document bearing Beg Bates No. ADCD00001529 is a hard-copy document that was produced as it was kept in the regular course of business.

f.    The document bearing Beg Bates No. ADCD00001530 is a hard-copy document that was produced as it was kept in the regular course of business.

g.    The document bearing Beg Bates No. ADCD00001533 is a hard-copy document that was produced as it was kept in the regular course of business.

4.    Purportedly Blank Documents:  You mentioned that the pages bearing Bates Numbers ADCD00001002 and ADCD00001573 are blank.  The document including ADCD00001573 is four pages long in native format with text on each page, but when converted to .tiff, the text was condensed such that the text that had been on page 3 is now at the bottom of page 2.  That is why Page 3 of the document appears blank.  The page bearing bates number ADCD00001002 is a blank page that appeared at the end of the larger policy document that was produced.

5.    We will re-produce page ADCD00001548.

6.    Document ADCD 1550 is a "Smith System Drive Different Driver Evaluation Form." After a reasonable search, we have not located any such "Smith System Drive Different Driver Evaluation Form" for Mr. de la Cueva.

7.    Sample logs. We produced a sample hard-copy DOT Driver Daily Log

(ADCD00001054), Interactive Process Form (ADCD0000938), Daily Route Activity Sheet (ADCD00001055), Driver's Exemption Log (ADCD00001056), Alta Dena Dairy Logistics Training Record (ADCD00001070), and Alta Dena Dairy Electric Pallet Jack/Industrial Powered Truck Certification Acknowledgement Form (ADCD00001075). We are investigating whether such documents exist that are particular to Mr. de la Cueva and will let you know.

8.    We disagree with your assessment that all documents titled "Alta Dena Driver Monthly Newsletter" during Plaintiff's employment are necessarily responsive.  We will investigate whether other monthly newsletters exist and, if so, we will produce them if they are responsive.

9.    The document speaks for itself. If you have any questions about it, you are free to serve a discovery request or question a witness about it.

10.  We do not believe Plaintiff has served a discovery request that calls for production of organizational charts. If you contend Plaintiff has done so, please identify the request.

11.  The document bearing Bates number ADCD00001168-69 is a sample accident report form that was included as part of a larger document. It has not been redacted.  We have produced documentation of the other DOE drivers' accidents. See, e.g., ADCD0001254, ADCD0001256, ADCD0001258.  We will produce the remaining documentation of the other DOE drivers' accidents.  The documents produced so far have had the driver names redacted with a "redacted" stamp.  We will either produce all of them with a "redacted" stamp and update our interrogatory responses to identify the Bates numbers of the documents at issue, or we may redact the documents using a "DOE __" stamp.

Amanda Bonn | Susman Godfrey LLP
1901 Ave. of the Stars, Suite 950 | Los Angeles, CA 90067
(T) 310-789-3131 | (M) 408-832-5193 abonn@susmangodfrey.com
<mailto:408-832-5193abonn@susmangodfrey.com>

**EXHIBIT K**

The Law Offices of
# Timothy B. McCaffrey, Jr.
*A Professional Corporation*

11377 West Olympic Boulevard Suite 500
Los Angeles, California  90064-1683
Telephone (310) 882-6407
Facsimile  (310) 882-6359
nchesler@tbmlaw.net

October 24, 2012

**VIA U.S. MAIL AND ELECTRONIC MAIL**

Amanda Bonn, Esq.
Susman Godfrey LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067-6029

>   *Re:*   *De la Cueva v. Alta Dena Certified Dairy, LLC*

Dear Amanda:

I write to further meet and confer about Defendant's document production, which we hope can be rectified quickly as it is beginning to take more time than we believe necessary.  For example, while Defendant has agreed to produce some documents, they still have not been provided.  These include the following:

1.  Defendant's 2005 Handbook;

2.  Plaintiff's work schedules for 2008 and 2009; and

3.  ADCD 1548, which was scanned improperly and cannot be read.

In my correspondence of October 17, 2012, I outlined many documents that were inexplicably not produced.  These include several different records of Plaintiff's hours, which Defendant clearly has in its possession given that it produced a few "sample" pages.  There is no reason we can surmise why these have not been produced already, or why you will not agree to produce them now.  Your claim that you are "looking into" it raises serious concerns because this is precisely the reasonable inquiry Defendant is required to conduct *prior* to providing responses to the requests for production.  Thus, please produce the following without further delay:

1.  Plaintiff's XATANET Vehicle Trip Reports from 2008 to Plaintiff's termination;

2.  Plaintiff's Driver Log Daily Reports from 2008 to Plaintiff's termination; and

Amanda Bonn, Esq.
October 24, 2012
Page 2

      3.   Plaintiff's Driver Trip Reports from 2008 to Plaintiff's termination.

Regarding documents that were not produced in full, your email does not address Defendant's obligation under the FRCP. You claim that with respect to various reports where only certain pages were produced, this is because it was how they were "kept in the ordinary course of business." While the report may have been partially located in one file, that does not change the fact that the reports themselves are responsive to several requests and, thus, Defendant must produce them in their entirety even if they are located elsewhere.

Indeed, it is difficult to believe that Defendant no longer has the rest of these records. If that is the case, however, then under the FRCP Defendant must provide a response explaining what happened to the rest of the documents (*i.e.* were they lost, destroyed, etc.) Thus, we request that Defendant either produce the entire report or provide a supplemental response conforming to the FRCP. This is important because if documents were destroyed (or negligently "lost"), we will likely raise with the Court and/or jury issues concerning the spoliation of evidence, the party's ability to produce better evidence, and other similar evidentiary rules. Thus, we need to know what has happened with respect to the following documents:

1. Plaintiff's Driver Log Daily for 11/3/10 (ADCD 1523-24) – missing page 2 of 3 ;

2. XATANET Vehicle Trip Report (ADCD 1529) – Defendant only produced page 9 from a 16 page document;

3. The entire manual from which ADCD 1491 came from;

4. Plaintiff's Driver Break Report (ADCD 1530) – Defendant only produced page 6 from a 60 page document;

5. Plaintiff's Driver Log Daily (ADCD 1531-32) – Defendant only produced 2 pages of a 3 page report;

6. Driver Trip Report (ADCD 1533) – Defendant only produced 1 of 3 pages.

Regarding the "Hand-held Driver Manual" (ADCD 1453-82), while the pagination is correct, the document clearly got cut-off in many places while copying. For example, it jumps from ending on Item #3 on ADCD 1456, to beginning with Item #8 on ADCD 1457. Indeed, you can even see on many pages where the copier caught only the bottom half of text. There is no question that significant portions of the page were simply improperly copied. This continues in various places throughout the manual. Thus, we ask again that you produce a clean legible complete copy and do not understand your insistence that the document has been produced properly.

Amanda Bonn, Esq.
October 24, 2012
Page 3

As a reminder, we are still waiting to hear whether Defendant has the following documents:

        1.   Logs/Forms (ADCD 938-39, 1054-1059; 1070-71, and 1075) pertaining specifically to Plaintiff; and

        2.   The "Ata Dena Driver Monthly Newsletter" (ADCD 1157) from at least 2008 to Plaintiff's termination (responsive to RFP Nos. 4, 59, and 61).

It also appears that Defendant may have provided a written response to the NLRB regarding Plaintiff's termination (See ADCD 936-37). Communications with the NLRB concerning Plaintiff are responsive to RFP Nos. 11, 53, 56, and 62, and must be produced – even if "located" at Defendant's counsel's office. Thus, please produce these documents or provide a supplemental response explaining whether they never existed, were destroyed, etc.

With regard to the accident reports, Defendant only produced three (3) reports, but lists nine (9) DOES in its responses to Special Interrogatory Nos. 15-19. Please produce the rest of the accident reports. If Defendant wishes to leave the documents merely stating "redacted," and supplement its Form Interrogatory responses to clarify which DOE corresponds to which documents, that's fine. If you would rather reproduce with a marking of DOE-1, DOE-2, etc., that is fine as well. We have no preference, but merely ask that Defendant do so as we have been waiting for this information now for a while.

Finally, we requested that Defendant let us know what ADCD 1451, which appears to be a map, but is unmarked, represents. While technically the document speaks for itself and we can propound further discovery to find out, we did hope that you could simply tell us in the spirit of cooperation and candor so that we could dispense with more discovery if it turned out to be unnecessary. Thus, we ask that you reconsider what we believe to be an unnecessarily combative position.

Please provide the requested documents/information no later than Monday, October 29, 2012. As always, should you wish to discuss this further, please don't hesitate to call. Thank you.

Very truly yours,

Natasha Chesler

**Subject: de la Cueva v. Alta-Dena: Correspondence re Document Production**
**Date:** Monday, October 29, 2012 5:01 PM
**From:** Amanda Bonn <abonn@SusmanGodfrey.com>
**To:** natasha chesler <nchesler@tbmlaw.net>
**Cc:** "Alisha R. Chandler" <achandler@susmangodfrey.com>, "Steven G. Sklaver" <ssklaver@SusmanGodfrey.com>, Kalpana Srinivasan <ksrinivasan@SusmanGodfrey.com>, Tim McCaffrey <tmccaffrey@tbmlaw.net>

Natasha,

I write in response to your October 24, 2012 letter.

We will make a production tomorrow including, among other things, the 2005 Handbook, Plaintiff's work schedules, Plaintiff's Driver Trip Reports, accident documentation for the DOE drivers, and Alta-Dena's written response to the NLRB concerning Plaintiff's termination.

We object to producing Vehicle Trip Reports that correspond to Plaintiff. The Vehicle Trip Reports are largely duplicative of the Driver Trip Reports. The Vehicle Trip Reports are indexed by vehicle rather than by Driver and, as such, it would be unduly burdensome to identify and produce each Vehicle Trip Report that corresponds to the particular vehicle Plaintiff may have driven on any given day. Perhaps we should discuss this issue in further detail during our conference on Wednesday.

I have previously addressed the issues you raise on Pages 2 and 3 of your October 24 letter in my October 22 e-mail. To the extent my prior e-mail was unclear, I hope the below helps clarify the issues:

(1)  We have produced the particular copy of Plaintiff's Driver Daily Log for 11/3/10 as that particular copy was kept in the regular course of business. We will separately produce Plaintiff's Driver Daily Logs.

(2)  See response above concerning Vehicle Trip Reports. We have produced the copy at ADCD 1529 as it was kept in the regular course of business. We object to searching for and producing Plaintiff's entire set of Vehicle Trip Reports, as such reports are duplicative of the Driver Trip Reports and searching for such reports would be unduly burdensome.

(3)  We have already produced the entire manual from which ADCD 1491 came from, as I stated in my October 22 e-mail.

(4)  We have produced this particular copy of Plaintiff's Driver Break Report as it was kept in the regular course of business. Separately, we have produced Plaintiff's Driver Break Reports that are available between 2008 and the date of Plaintiff's termination.

**Page 1 of 3**
EXHIBIT K - 4
PAGE 60

(5)  See response #1 above concerning Plaintiff's Driver Daily Logs.

(6)  We have produced this particular copy of Plaintiff's Driver Trip Report as it was kept in the regular course of business. Tomorrow, we will produce Plaintiff's Driver Trip Reports.

(7)  As I mentioned in my October 22 e-mail, we have produced the "Hand-Held Driver Manual" as it was kept in the regular course of business. To the extent you believe there was any photocopying issue, that issue existed in the original document and was not the result of any copying errors in our production. We have compared the production copy to the original document and they are the same, as the consecutive pagination should make clear.

(8)  We will produce Alta-Dena's written response to the NLRB regarding Plaintiff's termination.

(9)  We are looking into whether there are hard-copy logs/forms pertaining to Plaintiff that you mention (e.g., ADCD 938-939, 1054-59, 1070-71, and 1075) and monthly newsletters and will get back to you as soon as possible.


Finally, attached please find a replacement .tiff image for ADCD0001548.

Regards,

Amanda

Amanda Bonn | Susman Godfrey LLP
1901 Ave. of the Stars, Suite 950 | Los Angeles, CA 90067
(T) 310-789-3131 | (M) 408-832-5193 abonn@susmangodfrey.com <mailto: 408-832-5193abonn@susmangodfrey.com>

---

**EXHIBIT L**

The Law Offices of

# Timothy B. McCaffrey, Jr.

*A Professional Corporation*

11377 West Olympic Boulevard Suite 500
Los Angeles, California  90064-1683
Telephone (310) 882-6407
Facsimile  (310) 882-6359
nchesler@tbmlaw.net

October 31, 2012

## VIA U.S. MAIL AND ELECTRONIC MAIL

Amanda Bonn, Esq.
Susman Godfrey LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067-6029

> Re:   *De la Cueva v. Alta Dena Certified Dairy, LLC*

Dear Amanda:

It was a pleasure meeting with you today.  Below is a recap of the outstanding issues we discussed.  Please update me as soon as possible given our current time frame.

### Motion For Class Certification Deadline

We both agreed that some extension of the motion for class certification is necessary at this point given that the ESI production will not be complete until at least November 30 and we do not want to proceed with depositions without the document production.

You also indicated that you would be objecting and instructing PMK witnesses not to answer any questions concerning policies and practices post-dating Plaintiff's termination.  Such testimony is clearly called for in the PMK deposition notice.  Yet this is the first time we have heard of this objection to it.  At no time prior to today did Defendant claim it was objecting on that basis or would not be providing witnesses to so testify.  As I explained, instructing a witness not to answer on the basis of relevance alone is improper at a deposition.  *See* Cal. Fed. Civ. Proc. Before Trial, Ch. 11, ¶ 11:1564-565 (The Rutter Group 2012) ("An objection alone does not excuse the deponent's obligation to testify: '(T)he testimony *is taken* subject to any objection.'  FRCP 30(c)(2) (emphasis added)... Effect of 'relevancy' objection: Rule 30(c)(2) renders 'relevancy' objections meaningless in most depositions. The deponent must even answer questions calling for blatantly irrelevant information 'subject to the objection.'...")

EXHIBIT L - 1
PAGE 62

Amanda Bonn, Esq.
October 31, 2012
Page 2

We will be moving to compel on the Requests for Production where you have made similar objections and which after our meet and confer today appear to be irresolvable. My goal is to get you the stipulation no later than Friday. That means your responsive stipulation will be due next Friday, November 9, and the motion will not be heard for at least a month after that. If you already know you are going to be instructing witnesses not to answer, it makes more sense to wait until the Court rules on your objection at least with respect to the document requests so that we do not only unnecessarily get into another delay by having to move to compel deposition testimony as well.

Given the foregoing, we believe at least a 90 day extension on the motion for class certification is reasonable and necessary. This will allow us to get the Court's ruling on the discovery issues, and also provide the time Defendant needs to finish its document production. It simply does not make sense to have depositions proceed until all that is done. Please let us know as soon as possible whether Defendant will agree so that we may act accordingly.

### Document Production

You explained that the document production was not made yesterday as you had originally promised due to a technical issue with the vendor. You indicated that you hoped the production would be made later today. To recap, we are still waiting for the following:

1. 2005 Handbook;

2. Plaintiff's work schedules for 2008 and 2009;

3. Plaintiff's Driver Log Daily Reports;

4. Plaintiff's Driver Trip Reports;

5. DOE driver documentation;

6. Documents regarding Plaintiff's NLRB case;

7. Logs/Forms pertaining to Plaintiff (ADCD 938-39, 154-59, 1070-71, 1075); and

8. Alta Dena Monthly Newsletters from 2008 to Plaintiff's termination.

We agreed to hold off for now moving to compel production of the Vehicle Trip Reports as you contend they are overly burdensome to produce and are covered by other reports. Once we review the other reports we will revisit this issue if necessary. You agreed that you would not argue we were somehow dilatory if it turns out later that we need to move to compel the Vehicle Trip Reports.

EXHIBIT L - 2
PAGE 63

Amanda Bonn, Esq.
October 31, 2012
Page 3

**Depositions**

Regarding the PMK deposition notice, we agreed to the following:

- Topic 5 – Defendant's policy or practice of ensuring that paystubs issued to its DRIVERS complied with California Labor Code § 226. You asked to rephrase the topic without referring to the Labor Code section to avoid calling for a legal conclusion. While we believe the topic is appropriately drafted, in the spirit of cooperation, we can agree that this calls for the following: **"Defendant's policy or practice of ensuring that paystubs issued to its DRIVERS provide an accurate itemized statement in writing showing: (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee; and that the deductions made from payment of wages are recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement."**

- Topic 7 & 8 – information regarding the number of drivers who have been terminated or worked at least four hours in a day broken down by daily tallies. We agreed that Defendant would provide a written response by November 30, as it offered to do and then we can address whether a deposition is still necessary, so long as Defendant provides the numbers broken down by supervisor.

- Topic 12 – I explained that we will need a deponent on this issue.

- Topic 16 – lawsuits/settlements of other meal/rest break claims. We agreed that Defendant could provide a written answer merely identifying the cases and then discuss whether further deposition is necessary. We agreed that

EXHIBIT L - 3
PAGE 64

Amanda Bonn, Esq.
October 31, 2012
Page 4

Plaintiff was not waiving its right to the deposition and Defendant was not
waiving its objections. You noted that you had to circle back with your team
before confirming.

- Topic 17 – testimony given by employees related to meal/rest breaks. We
  agreed that Defendant would provide a written response by November 30, as
  it offered to do and then we can address whether a deposition is still
  necessary, so long as Defendant also provides the actual testimony in
  documentary form. You noted that you had to circle back with your team
  before confirming.

- Topic 18 – I clarified that this topic seeks communication between Defendant
  and employees concerning this case. Please further note this would include
  any communications concerning meal/rest breaks as well. This really should
  be encompassed by the ESI search, so we are unclear why there is any
  objection. You agreed to circle back with your team and get back to us
  regarding this topic.

- Topic 20 – Plaintiff agreed to withdraw this topic.

- Topic 21 – facts supporting Defendant's allegation that providing meal/rest
  breaks to its drivers impacts prices, routes, and/or services. You stated that
  while you did not have an objection to the topic per se, it was Defendant's
  position that the request is premature because this is an affirmative defense.
  You agreed to get back to me on whether Defendant would be making any
  such argument in opposition to class certification. This is an important issue
  in this case and given that Defendant already made a motion to the court
  claiming these facts, it should be prepared now to explain the basis. Please let
  us know if your position has changed regarding this topic.

- Topics 41-45 – DOE employees terminated for reasons similar to Plaintiff.
  We agreed that Defendant would be providing supplemental interrogatory
  responses and producing further documents that may obviate the need for
  depositions on these topics. We agree to wait and revisit the issue after that is
  done.

We further agreed that the "written response" would be in some verified form (*i.e.*
declaration) that will permit its use in Court. We further agreed that Plaintiff is not waiving his
deposition notice, but merely agreeing to wait and see if the written responses suffice.

### Requests For Production

Defendant is standing on its objection to producing any contact information for putative
class members/witnesses. Defendant will not agree to do so even if the information is limited to

EXHIBIT L - 4
PAGE 65

Amanda Bonn, Esq.
October 31, 2012
Page 5

addresses only or if we use a opt-out letter. Thus, Plaintiff will be moving to compel RFP Nos. 20 & 21 (and corresponding Special Interrogatories Nos. 1 & 2.)

Defendant is standing on its objection that it will not produce any documents concerning policies or practices post-dating Plaintiff's termination on the grounds that Plaintiff allegedly lacks standing as a class rep. Thus, Plaintiff will be moving to compel RFP Nos. 23, 28-29, 32-33, 36-38, and 40. (Plaintiff will also be moving to compel Special Interrogatory Nos. 5, 12 and 13 on similar grounds.)

RFP No. 26 seeks documents regarding damage to any truck driven by Plaintiff or allegedly caused by Plaintiff. Defendant objected that only the statutory time period is relevant and thus only agreed to produce documents from 2008 to Plaintiff's termination. So long as Defendant stipulates it will not be arguing on the after-acquired evidence ground (or any other ground) information it claims it found that post-dates Plaintiff's termination, we will not move to compel. You agreed to circle back with your team and get back to me.

Defendant also objected to produce documents regarding training of its employees or complaints regarding accommodations, again limiting the time period to 2008 to Plaintiff's termination (RFP Nos. 41-43). Again, so long as Defendant will not argue evidence of any training of its employees prior to 2008 or following Plaintiff's termination, we will not move to compel. You agreed to circle back with your team and get back to me.

Defendant also objected to produce information pertaining to any accommodations requested, granted, etc. for Plaintiff prior to 2008 (RFP Nos. 44-52). Similarly, so long as Defendant agrees it will not present any evidence of prior requests, accommodations, etc., we will not move to compel. You agreed to circle back with your team and get back to me.

As a reminder, Defendant has agreed to supplement its responses to RFP Nos. 1-12, 18-19, 24-27, 30, 34-56, 58-63, 67-78, and 81-82, to comply with the FRCP by identifying whether documents have or have not been produced, whether they ever existed, etc. by November 30.

**Special Interrogatories**

Defendant agreed to provide supplemental responses to Special Interrogatory Nos. 6, 8, 9, and 15-19.

EXHIBIT L - 5
PAGE 66

Amanda Bonn, Esq.
October 31, 2012
Page 6


Should the foregoing not comport with your understanding of our conversation, please let me know. Again, it was a pleasure meeting with you in person. I remain hopeful that we can cooperatively resolve any outstanding issues. Should you have any questions or concerns, please do not hesitate to contact me.

Very truly yours,

Natasha Chesler

EXHIBIT L - 6
PAGE 67

**EXHIBIT M**

**Subject: De La Cueva: Follow Up Re Conference of Counsel**
**Date:** Thursday, November 1, 2012 6:31 PM
**From:** Amanda Bonn <abonn@SusmanGodfrey.com>
**To:** natasha chesler <nchesler@tbmlaw.net>
**Cc:** Tim McCaffrey <tmccaffrey@tbmlaw.net>, "Steven G. Sklaver" <ssklaver@SusmanGodfrey.com>, Kalpana Srinivasan <ksrinivasan@SusmanGodfrey.com>, "Alisha R. Chandler" <achandler@susmangodfrey.com>

Natasha,

I write in response to your letter dated October 31, 2012. I appreciate your taking the time to meet and confer yesterday in person. But, after having such a productive meeting, I am disappointed to see that, in some instances, your letter mischaracterizes our discussion. To the extent there remains any confusion after yesterday's meeting, I hope this letter will provide clarification.

Issue Concerning Post-Termination Evidence Re Meal and Rest Breaks:
Your letter asserts that Plaintiff has just learned that Alta-Dena objects to producing evidence of Alta-Dena's meal and rest break policies post-dating Plaintiff's termination based on Plaintiff's lack of standing. In fact, on August 23, 2012, we objected to several document requests that Plaintiff served on that basis, explaining that in light of Plaintiff's lack of standing, such requests are not reasonably calculated to seek discovery of admissible evidence and producing such evidence would be unduly burdensome. And, as I informed you yesterday, we intend to serve objections to the scope of the 30(b)(6) notice on similar grounds. Contrary to your suggestion, I did not tell you that I would instruct a witness not to answer questions during a deposition on grounds of relevance.

Extension To Class Certification Deadline:
We do not agree—nor did we agree yesterday—that an extension to the class certification deadline is "necessary." My recollection is that you suggested an extension may be warranted, and I told you I would discuss the suggestion with our team and let you know our position. We are also surprised to see your request for a 90-day extension, since I recall you stating yesterday that Plaintiff thought any extension should not exceed 2 months.

That being said, we are willing to consider a 2 or 3 week extension to the deadline as part of our efforts to reach a resolution on both parties' outstanding concerns. In light of your suggestion that some or all of the depositions presently scheduled for November be moved into early December, we think a 2 or 3 week extension of the class certification deadline is ample time to make up for this short delay. Please let us know if you would like to reschedule any depositions currently scheduled for November.

Document Production:
We made a document production yesterday, which you should receive in the mail today or

tomorrow.  That production included the 2005 Handbook, Plaintiff's work schedules, Plaintiff's Driver Trip Reports, DOE driver documentation, and documents relating to Plaintiff's NLRB case.  As we discussed during our meet and confer yesterday, we are collecting and will produce Plaintiff's Driver Log Daily Reports and we are investigating the issue you raised concerning logs/forms relating to Plaintiff and driver monthly newsletters.

30(b)(6) Deposition Notice:

(1)   Topic 5: We will produce a witness to testify on the following topic: "The contents of Alta-Dena's wage statements." However, we object to your rephrased request for the same reasons we articulated previously.

(2)   Topic 7: We will provide a written response indicating the number of drivers who have been terminated or separated from February 1, 2008 to the present.

(3)   Topic 8: We do not understand why Plaintiff needs this information broken down by daily tallies. Producing daily tallies for a four-year period is unduly burdensome. Please let us know what information in this topic you believe is relevant and what you hope to achieve with it.

(4)   Topic 12: We will designate a deponent on this topic.

(5)   Topics 16 and 17: You suggested during our meet and confer that Plaintiff would consider accepting a written answer on these topics, to which we previously objected.  I said that I would run that suggestion by our team and get back to you.  We are standing on our objection to these topics, as we do not believe they are reasonably calculated to lead to discovery of admissible evidence.

(6)   Topic 18: We have objected that this topic seeks privileged communications and is otherwise overly broad and unduly burdensome.  If there are specific documents in our production that you believe fall within this category, let us know the bates number and we will discuss.

(7)  Topic 21: We do not intend to argue in opposition to Plaintiff's class certification motion that, as a legal matter, the Court should deny certification of the class because the claims are preempted under the FAAAA Act.   Does that address Plaintiff's concerns?

(8)  Topics 41-45: We will supplement our interrogatory responses and we have produced further documentation concerning the DOE drivers.

(9)  We agree to provide written responses in a verified form or a declaration.

Requests for Production:

(1)  Class Member Contact Information: This is the first time you have proposed that contact information for putative class members be limited to names and addresses only.  Please let us know your view on the opt-out period. You had proposed two-weeks previously and we countered with 45 days. It seems like 30 days is a reasonable compromise, but we need to discuss this entire issue with our client given your new proposal.  Please also let us know if you would agree to an opt-out letter being provided in both English and Spanish.

(2)  Post-Termination Meal and Rest Break Documents.  We are standing on our objection to producing post-termination documents.

(3)  RFP No. 26.  Our issue with this request is that it would encompass documents concerning, for example, damage that another driver caused to a truck in 2011 or 2012 simply because Plaintiff may have previously driven the same truck in, say, 2008.  We will withdraw our objection to producing documents concerning damage that Plaintiff caused to any delivery trucks even if such documents post-date December 27, 2010.

(4)  RFP No. 41.  We are standing to our objection on RFP No. 41.

(5)   RFP Nos. 42 and 43.  The issue with these requests is that there is no date range for the request and so we limited it to the period arguably covered by the statute of limitations. If you would like to modify the request to provide a date range from which the production should begin, please let us know.  But otherwise, the request is unduly burdensome.

(6)   RFP Nos. 44-52.  We will withdraw our objection to producing documents pre-dating 2008 in response to these requests.

(7)   We disagree with your characterization concerning  RFP requests to which we responded that we would produce responsive documents "to the extent they exist."  Subsequent to completion of our document production, if you think there are categories in which no documents have been produced, please let us know.  We can eliminate the language "to the extent they exist," from our RFP responses if that is what you are asking.  We do not believe anything more than that is required by the Federal Rules of Civil Procedure. If you have case law or authority suggesting otherwise, please let us know.

Special Interrogatories:
We will supplement our responses to Special Interrogatory Nos. 6, 8, 9, and 15-19.

Protective Order Issues:
You let me know yesterday that Plaintiff would agree to the Attorney's Eyes Only provisions in the protective order, but would not agree to the sealing provisions because Plaintiff believes Alta-Dena has over-designated documents as confidential.  We believe that the protective order provides an appropriate mechanism for challenging confidentiality designations and that this issue is separate from the sealing issue.  Thus, we will file our motion.

In addition, I asked if Plaintiff would agree that any depositions taken prior to entry of a protective order will be treated as confidential subject to the terms in our proposed protective order. You stated that you were inclined to agree, but would check and get back to me. Please confirm.

Thank you,

Amanda

Amanda Bonn | Susman Godfrey LLP
1901 Ave. of the Stars, Suite 950 | Los Angeles, CA 90067
(T) 310-789-3131 | (M) 408-832-5193 abonn@susmangodfrey.com <mailto:
408-832-5193abonn@susmangodfrey.com>

The Law Offices of

# Timothy B. McCaffrey, Jr.

*A Professional Corporation*

11377 West Olympic Boulevard Suite 500
Los Angeles, California  90064-1683
Telephone (310) 882-6407
Facsimile  (310) 882-6359
nchesler@tbmlaw.net

November 3, 2012

**VIA U.S. MAIL AND ELECTRONIC MAIL**

Amanda Bonn, Esq.
Susman Godfrey LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067-6029

> *Re:*   ***De la Cueva v. Alta Dena Certified Dairy, LLC***

Dear Amanda:

As a threshold matter, I have asked you several times to refrain from using email as a form to send <u>very lengthy</u> letters. This is because when it comes time to file a motion with the Court if necessary, the correspondence is difficult to follow sometimes. I am not sure why you refuse to put anything in a proper letter. I would appreciate you doing so in the future.

Your November 2, 2012 email contains several things that are plainly not true and contradicted by our written communications. I will address the most important points below and continue to meet and confer on the outstanding issues in a later correspondence as we are tied up finalizing our portion of the joint stipulation on our motion to compel.

<u>Issue Concerning Post-Termination Evidence Re Meal and Rest Breaks In A PMK Deposition</u>: I am 100% certain you have not raised this objection before. Indeed, Plaintiff has just learned of this. In our telephone conference on October 15, 2012, you promised to provide objections to the PMK deposition notice by October 16, 2012. (Notably, we originally served the PMK deposition notice on June 19, 2012.) You failed to do so. I thus sent you an email on October 17, 2012, specifically asking for the status of the promised objections. On October 19, 2012, you provided <u>for the first time</u> any sort of objection to the PMK notice. You did so in an email. <u>Nowhere in your October 19, 2012 email do you infer in any way that you will not produce a deponent or otherwise object to the topics on the grounds that Plaintiff lacks standing</u>. I urge you to revisit this email and if I am wrong, please point out the portion to me. Merely because you previously made that objection to a document request does not serve as notice that you are objecting to a PMK category. We should not be expected to read your mind. Each

Amanda Bonn, Esq.
November 3, 2012
Page 2

discovery request must be appropriately addressed in turn.  Our authority regarding the standing issue is contained in the stipulation we are concurrently sending you regarding our motion to compel.  Please review and let us know whether you will be providing a PMK deponent on this issue without limitation to the time period and if not, please provide dates for an in-person meeting in our office next week to meet and confer before filing another motion.  We further respectfully request that if we need to meet in person to discuss that you are either given authority to make decisions on this issue or that another associate or partner with such authority attend.

Extension To Class Certification Deadline:  You absolutely agreed in our meeting on October 31 that an extension on the class certification deadline was necessary.  Indeed, you raised the issue first and did so at the start of the meeting.  We did, however, disagree as to the length of time.  In any event, I am entirely unclear why you want to make this an issue given that you later concede you will agree to a 2-3 week extension.  Given that you just produced over 2000 pages of documents, with even more "supposedly" coming on November 30, it is hardly feasible to take all these depositions in December and be adequately prepared.  This is also concerning given that you have "promised" several other productions on certain dates which have not been followed through on.  Finally, the timing is also impacted by Plaintiff's motion to compel, which cannot be heard until December 4.  Thus, please let us know no later than the close of business Monday, November 5, 2012, whether you will agree to a longer extension and if not we will have no choice but to seek relief ex parte.

PMK Notice

Topic 8:  You claim in your letter that this topic is unduly burdensome and ask why it is relevant.  It goes to damages and numerosity among other things.  More importantly, your "objections" to the PMK notice in your October 19, 2012 email raised no such objection.  In fact it was you who offered to handle this by written response.  You are now back-tracking on that, which feels unfair.

Topic 17:  I did not suggest in our meet and confer that we would consider accepting a written answer.  Nor did you previously object.  Please go re-read your October 19, 2012 email.  It was you that offered a written response and posed no objection.  I accepted your offer.  You are now back-tracking on that as well it seems.

That you have failed to provide clear objections to this deposition notice so that we can understand what needs to be part of a motion and what does not is unacceptable.  It also makes the scheduling unfair as while we think we are scheduling a deponent on a certain topic, it seems you later plan on objecting to certain aspects.  To date no formal objection has been made to the PMK notice, originally sent on June 19, 2012, and subsequently renoticed for November 13, 2012.

Amanda Bonn, Esq.
November 3, 2012
Page 3

Request For Production:

*Class Member Contact Information:* This is not the first time I have proposed narrowing the request to names and addresses. You continually make statements that are absolutely false. Please go re-read my very first letter of September 18, 2012 that started the meet and confer process wherein I offer on page 2 "in an effort to reach a cooperative resolution, Plaintiff is willing to narrow the request to only names and addresses." Moreover, you claim that you "countered" with a 45 day opt-out period in response to our request for two weeks. That is misleading. After I agreed to your request to use an opt-out letter, I suggested a two week period. Then you emailed me on October 10, 2012, and it seemed that you were saying you would only agree to an opt-out procedure if ordered by the Court and, if so, then you would ask for a 45 day period. I sought clarification in our October 15, 2012 conference, and you stated you would "circle back with the team and confirm" but that you were unlikely to agree to an opt-out without Court order. (Indeed, I remember joking that if the Court ordered Defendant to do something, we wouldn't really need your agreement.) Finally, in our October 31, 2012 meeting, you made abundantly clear that you had confirmed with your team and that Defendant was standing on the objection and would not produce the information absent Court order. I asked you if there was any point in discussing various options for an opt-out letter. You told me no, flat out, and we moved on rather quickly. Had you agreed to an opt-out letter a month ago when I brought it up, this may have been feasible. The fact that now you claim you need to discuss the issue with your client really does make us question the good faith nature of the meet and confer we had. These conversations with your client should have been conducted long ago. Now, considerable time has been eaten, with the resulting advantage on your end. We believe this to be unfair and feels like gamesmanship.

Finally, regarding your document request responses that claim you will produce documents "to the extent they exist," I asked you multiple times to supplement these responses. I already provided you several times with authority. See FRCP Rule 34; *see also* Fed. Civ. Proc. Before Trial ¶ 11:1912-13 (The Rutter Group 2012). I thought we had finally solved this issue when you agreed in your email of October 22, 2012 (responding to my request of October 17) to supplement these responses as requested. That you now are back-tracking on this issue as well is very frustrating.

I apologize if the tone of this letter comes off harsh. We are extremely frustrated and feel as if our efforts are being hampered at every turn. We cannot get anyone with authority to deal with this case – despite a whole team being copied on every communication. You constantly are having to run communications back and forth. It is unproductive and unfortunately has turned into a time-suck. Given that the deadlines are now looming, we must move on many of these issues, most of which I believe could have been cooperatively resolved if members of your "team" would simply engage with us in a good faith meet and confer.

Amanda Bonn, Esq.
November 3, 2012
Page 4


     I remain willing to discuss these and any other outstanding issues further.  As I have often stated, you – and any member of your team – may feel free to call at any time.  I traveled to your office when you asked me to do so, without any push back.  Accordingly, please do not misread this in any way to indicate that we are unwilling to meet and confer further.  But please understand, however, we have no choice but to seek Court intervention in the meantime.


     Very truly yours,


Natasha Chesler