1  TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
   NATASHA CHESLER (S.B. #227540)
2  THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
   A Professional Corporation
3  11377 West Olympic Boulevard, Suite 500
   Los Angeles, California  90064-1683
4  Telephone: (310) 882-6407
   Facsimile: (310) 882-6359
5  E-Mail:   tmccaffrey@tbmlaw.net
   E-Mail:   nchesler@tbmlaw.net
6
   Attorneys for Plaintiff and Class
7  Representative Miguel de la Cueva

8

9              UNITED STATES DISTRICT COURT

10    CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12  MIGUEL DE LA CUEVA, on behalf of        CASE NO. CV 12-1804-GHK (CWx)
    himself and those similarly situated,
13                                          **PLAINTIFF'S *EX PARTE***
                    Plaintiff,              **APPLICATION FOR LEAVE TO**
14                                          **FILE FIRST AMENDED**
                    vs.                     **COMPLAINT OR, IN THE**
15                                          **ALTERNATIVE, FOR LEAVE TO**
    ALTA DENA CERTIFIED DAIRY,              **FILE ON SHORTENED TIME**
16  LLC, a Delaware Limited Liability       **MOTION FOR LEAVE TO FILE**
    Company, ALTA-DENA CERTIFIED            **FIRST AMENDED COMPLAINT**
17  DAIRY, INC., a Delaware Corporation,
    and DOES 1 through 10, inclusive,       Date:          February 5, 2013
18
                    Defendants.             Trial Date:    None Set
19

20

21         Pursuant to Local Rule 7-19, Plaintiff and Class Representative Miguel de la

22  Cueva ("Plaintiff") hereby submits the following *ex parte* application seeking

23  modification of the pretrial scheduling order for leave to file a first amended complaint

24  or, in the alternative, leave to file on shortened time a motion for leave to file a first

25  amended complaint.  This *ex parte* application is made on the following grounds:

26         First, Plaintiff recently learned at Defendant's FRCP 30(b)(6) deposition (on

27  January 16 and 23, 2013) that Defendant has a uniform policy and/or practice of

28

1  automatically deducting 30 minutes of time (and, thus, pay) from all of its drivers (the

2  putative class) regardless of whether they actually take a 30 minute duty free meal

3  period.  This policy and/or practice is directly related to Plaintiff's current class

4  allegations regarding failure to provide meal and rest breaks in violation of California

5  Labor Code § 512 (first cause of action), failure to pay all wages in a timely manner

6  during and after employment in violation of California Labor Code § 201-204 (second

7  cause of action), failure to provide a complete and accurate paystub under California

8  Labor Code § 226 (defendant does not indicate that any time is being removed from

9  the putative class member's working hours) (third cause of action); and violation of

10  Business & Professions Code § 17200 (return of unpaid wages for alleged unlawful,

11  unfair, or fraudulent business practices) (fourth cause of action).  While the current

12  complaint arguably embodies the unpaid wages related to Defendant's practice of

13  automatically deducting 30 minutes for alleged meal breaks, it does not include the

14  penalties portion, including liquidated damages.  Thus, Plaintiff seeks leave to file a

15  first amended complaint to add a cause of action for California Labor Code violations

16  associated with the above-described policy and/or practice.

17       Second, Plaintiff seeks leave to amend to add an additional class representative,

18  Scott Parker.  The Magistrate ordered the parties to use an opt-out letter so that

19  Plaintiff could obtain putative class members' information, and for Defendant to turn

20  over resulting contact information on January 7, 2013.  As a result of the opt-out letter,

21  Mr. Parker contacted Plaintiff's counsel, retained them, and seeks to pursue his claims

22  in this case.  Thus, Mr. Parker's appropriateness as an additional named representative

23  has only recently become known.

24       Finally, Plaintiff recently learned through discovery that Defendant has made

25  several changes to its corporate structure affecting putative class members.  Most

26  recently, in approximately 2011 (after Plaintiff's discharge), Alta Dena changed the

27  employer of putative class members from defendant Alta Dena Certified Dairy, LLC

28

PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT OR, IN THE
ALTERNATIVE, FOR LEAVE TO FILE ON SHORTEN TIME MOTION FOR LEAVE TO FILE FIRST AMENDED
COMPLAINT

1   ("Defendant" or "Alta Dena") to Dean Transportation, Inc. (Alta Dena and Dean

2   Transportation, Inc. are both subsidiaries of Fresh Dairy Direct So Cal ("FDD So Cal")

3   and Dean Foods.) The putative class members, however, remain at the same locations,

4   perform the same job, and are subject to the same policies/practices and general

5   management. All that changed was the name of the entity that employed them. Thus,

6   these putative class members should all be part of this case and Dean Transportation

7   added as a defendant.

8       In addition, this is not the only corporate "change" that has occurred during the

9   relevant time period. Plaintiff is still trying to get a straight answer from Defendant as

10   to which entities are appropriate defendants. Plaintiff's understanding at this point is

11   as follows: Dean Foods Company and/or Fresh Dairy Direct So Cal are the parent(s)

12   company. From 2008 through approximately 2010, there were three subsidiaries in

13   Southern California – Alta Dena, Swiss II, LLC, and Heartland Farms. (Mr. de la

14   Cueva worked for Alta Dena during this time and Mr. Parker for Heartland Farms.) In

15   approximately 2010, Alta Dena, Swiss II, LLC and Heartland Farms were all rolled up

16   into Alta Dena, which became the successor entity for Swiss II, LLC and Heartland

17   Farms. In approximately 2011, the drivers for these entities were then transferred over

18   to Dean Transportation, Inc. (as noted above).

19       Defendant objects to adding Dean Transportation, Inc. because Mr. de la Cueva

20   never worked for that company. But this is an inequitable result given that Dean

21   Transportation, Inc. is nothing more than a name change. Moreover, if Mr. Parker is

22   joined as a class representative, Defendant's argument is moot given that he was still at

23   Alta Dena when this name "change" occurred. In addition, Mr. de la Cueva seeks to

24   add the corporate parent(s), which he did work under, to avoid any unjust result. This

25   is because Defendant's corporate representatives testified that that the parent company

26   (FDD So Cal/Dean Foods) controlled the subsidiaries (Alta Dena, Swiss, and

27   Heartland Farms) by issuing uniform policies and procedures from 2008 to the present.

28

3          CV 12-1804-GHK (CWx)

PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT OR, IN THE
ALTERNATIVE, FOR LEAVE TO FILE ON SHORTEN TIME MOTION FOR LEAVE TO FILE FIRST AMENDED
COMPLAINT

1  And with respect to Mr. Parker's claim, he seeks to add Heartland Farms as a
2  defendant to cover the time period of 2008-2010.[1] In the absence of a definitive
3  response from Defendant as to who the appropriate defendants are, Plaintiff seeks to
4  add those entities. Defendant should not be able to circumvent liability by moving
5  employees from one affiliated entity to another.

6       The discovery cut-off in this case is not until August 6, 2013. Plaintiff believes
7  he can still adhere to the Court's current Scheduling Order and file his motion for class
8  certification by February 19, 2013. Defendant's opposition is due on March 11, 2013.
9  Defendant has not yet conducted a deposition. Thus, there is no prejudice to
10  Defendant as it still has time to depose both class representatives and discovery
11  conducted to date by Plaintiff has already covered the 30-minute deduction for meals.
12  With respect to Dean Transportation, Inc., and the other entities, Defendant knew or
13  should have known that they were proper parties and the claims against it arise from
14  the same facts already alleged.

15       In addition, the statute of limitations has not run on the claims (or additional
16  parties) Plaintiff seeks to add. Thus, Plaintiff and Mr. Parker could file another
17  separate action, which may or may not be joined with the instant case. That, however,
18  would needlessly waste judicial resources, as evidence produced in any parallel court
19  action would likely be relevant here, and vice-versa.

20       Pursuant to Local Rule 7-19, defense counsel's name, address, phone number,
21  fax number, and email addresses are as follows:

22  _____

23  [1] Notably, another class action, *Ikeda v. Alta Dena Certified Dairy, LLC*, Case No.
24  CV12-03034, was pending in California Central District Court concurrently with this
   matter last year. Yet Defendant failed to notify the Court or Plaintiff of this apparently
25  related matter involving the same Defendant and some of the same allegations (failure
   to provide meal breaks to drivers) while it was pending. The *Ikeda* matter has since
   been dismissed at the pleadings stage. Defendant represented in that case that Alta
26  Dena was the appropriate corporate entity to follow the Swiss subsidiary as it was the
   surviving entity after 2010. But Defendant is seemingly taking a different position in
27  this case. Thus, Mr. Parker seeks to add Heartland Farms in an abundance of caution.

28

Marc M. Seltzer
Steven G. Sklaver
Kalpana Srinivasan
Amanda Bonn
Susman Godrey, L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067
Tel:  310-789-3100
Fax:  310-789-3150
Email: mseltzer@susmangodrey.com
        ssklaver@susmangodrey.com
        ksrinisvasan@susmangodrey.com
        abonn@susmangodrey.com

This application is made following good faith meet and confer efforts between Plaintiff's counsel and Defendant's counsel concerning the issues raised herein.  Based on those communications, Plaintiff believes that Defendant opposes the relief sought herein.

This application is based on this application, the attached memorandum of points and authorities, and the Declaration of Natasha Chesler filed in support thereof.

DATED: February 5, 2013

Respectfully submitted,

THE LAW OFFICES OF
TIMOTHY B. McCAFFREY, JR.

By /s Natasha Chesler
   Natasha Chesler

Attorneys for Plaintiff and Class
Representative Miguel de la Cueva

# **TABLE OF CONTENTS**

**Page**

I.    Introduction ................................................................................. 6

II.   Factual And Procedural History ................................................. 6

III.  The Court Should Modify The Scheduling Order Pursuant to FRCP 16 And Grant Leave Pursuant To FRCP 15(a) ................................. 11

    A.    Good Cause Exists Under Rule 16 ................................... 11

        1.    There has been no undue delay. ................................. 11

        2.    The rights of the parties, the ends of justice, and judicial economy call for modification of the scheduling order. ................. 14

    B.    Amendment Is Appropriate Under Rule 15 ..................... 15

IV.   In The Alternative, Plaintiff Seeks Leave To File A Motion For Leave To Amend On Shortened Time ................................................. 17

PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE ON SHORTEN TIME MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page**

## CASES

*Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241 (N.D. Cal. 2012) ..........................14

*Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097 (9th Cir. 2004)................................15

*Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876 (9th Cir. 2010)............................15

*Crawford v. Delta Sci. Corp.*, 2011 U.S. Dist. LEXIS 47759 (C.D. Cal. 2011).....11, 13

*Foman v. Davis*, 371 U.S. 178 (1962) ...........................................................................15

*Rios v. Ames True Temper, Inc.*, 2012 U.S. Dist. LEXIS 23112 (C.D. Cal. 2012).......13

*U.S. v. Dang*, 488 F.3d 1135 (9th Cir. 2007) .................................................................11

## RULES

Fed. Rules of Civ. Proc. Rule 15(a)(2) ...........................................................................11

Fed. Rules of Civ. Proc. Rule 16(b)(4)...........................................................................11

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    Introduction**

By this *ex parte* application, Plaintiff Miguel de la Cueva ("Mr. de la Cueva" or "Plaintiff") hereby seeks modification of the scheduling order to allow leave to file a First Amended Complaint.  Specifically, Plaintiff seeks leave to amend the complaint based on information only recently uncovered through discovery as follows:  (1) to add California Labor Code claims related to Defendant's uniform policy/practice of automatically deducting 30-minutes of pay from putative class members; (2) to add Scott Parker ("Mr. Parker") as an additional class representative; and (3) to add related entities Dean Transportation, Inc., Dean Foods Company, Fresh Dairy Direct So Cal ("FDD So Cal"), and Heartland Farms as defendants.

As explained more fully below, there is good cause to modify the scheduling order because the information has just come to light through Plaintiff's diligent discovery efforts and granting Plaintiff's application will not delay or otherwise effect the current scheduling order in any other way.  Further, allowing leave to amend is consistent with FRCP 15, serves the interest of justice, and promotes judicial economy because the statute of limitations has not yet run on any of these claims, and, thus, Plaintiff and Mr. Parker can simply file a separate lawsuit to pursue these claims against all of these entities.  But that would obviously and needlessly waste the parties' and Court's resources.  Accordingly, the Court should grant Plaintiff's *ex parte* application.

**II.    Factual And Procedural History**

Plaintiff filed the instant action on February 1, 2012 in California Superior Court.  (Declaration of Natasha Chesler ("Chesler Decl.") ¶ 2.)  Defendant removed the action to Federal Court on March 2, 2012.  (Id.)  On April 9, 2012, Defendant moved to dismiss the class claims.  (Id.)  The parties agreed to wait until the Court's ruling on Defendant's motion to dismiss before engaging in the early meeting of

1   counsel (and then conducting discovery).  (Id.)[2]

2   On May 7, 2012, the Court denied Defendant's motion to dismiss.  (Id. ¶ 2.)  On

3   May 22, 2012, the parties held their early meeting of counsel.[3]  (Id.)  On June 12,

4   2012, the parties exchanged initial disclosures.  (Id.)  On June 19, 2012, Plaintiff

5   propounded written discovery requests, as well as noticed the depositions of several

6   individuals and Defendant pursuant to FRCP 30(b)(6).  (Id.)

7   On August 3, 2012, the Court issued the current Scheduling Order, which

8   included a deadline of September 4, 2012 to amend as to any claims, defenses, and/or

9   parties.  (Id. ¶ 3.)  At the time the Scheduling Order was issued, Plaintiff anticipated

10  being able to comply.  (Id.)

11  Defendant requested two extensions of time to respond to the written discovery

12  and ultimately provided written responses on August 23, 2012.  (Id. ¶ 4.)  Defendant,

13  however, produced no documents and made numerous objections – including refusing

14  discovery because Plaintiff allegedly was an inadequate class representative for current

15  employees (since he no longer was employed there).  (Id.)  Thus, Plaintiff's counsel

16  researched the multitude of objections and sent opposing counsel a meet and confer

17  letter on September 18, 2012.  (Id.)  Defendant did not respond until October 4, 2012.

18  (Id.)

19  On October 5, 2012, Defendant began slowly producing documents on a "rolling

20  basis."  (Id. ¶ 5.)  The first production was deficient and missing essential items such

21  as Plaintiff's paystubs.[4]  (Id.)  On October 18, 2012, Plaintiff served an amended

22  FRCP 30(b)(6) deposition notice, setting the deposition for November 13, 2012,

23

24  _____

25  [2] Plaintiff initially served written discovery prior to removal, on February 15, 2012.
    (Chesler Decl. ¶ 1.)

26  [3] Plaintiff initiated the scheduling of this conference on May 9, 2012, but May 22, was
    the first day upon which both sides were available.  (Chesler Decl. ¶ 2.)

27  [4] In fact, Plaintiff's actual paystubs were not produced until January 2013.

28

1   believing that documents would be produced by then and discovery issues worked out.

2   (Id.)

3       At one point, Defendant claimed documents were late to come because Plaintiff

4   did not timely respond regarding ESI search terms. (Id. ¶ 6.) But the documents that

5   were missing were plainly responsive to requests and did not require an "ESI" search –

6   such as Plaintiff's paystubs and reports regarding hours worked and breaks taken. (Id.)

7       Despite the parties' meet and confer efforts, Plaintiff was forced to file a motion

8   to compel on November 13, 2012. (Id. ¶ 7.) The Court (through the Magistrate Judge)

9   ruled on the motion on December 4, 2012, ordered Defendant to produce further

10  documents post-dating Plaintiff's termination, and ordered the parties to use a third-

11  party administrator to send out opt-out notices, with the putative class members'

12  contact information to be produced to Plaintiff by January 7, 2013. (Id.)

13      Plaintiff thereafter sent a Second Amended Rule 30(b)(6) Deposition Notice,

14  setting the deposition for December 18, 2012. (Id. ¶ 8.) Then, the Friday before the

15  deposition, Defendant produced 10,000 pages of documents. (Id.) The parties then

16  participated in a call with the Magistrate, during which Defendant indicated the

17  document production would be complete by December 31. (Id.) Thus, Plaintiff

18  scheduled the FRCP 30(b)(6) Deposition for January 16, 2013 to allow time to review

19  the documents produced. (Id.)

20      Defendant continued producing documents through December, and indeed, even

21  as recently as January 22, 2013 (producing Plaintiff's paystubs because those

22  previously produced were only summary versions and not the actual paystubs). (Id.

23  ¶ 9.) All told, between October 5, 2012 through January 22, 2013, Defendant

24  produced on a "rolling basis" through 16 separate productions 42,296 pages of

25  documents, which Plaintiff has been diligently reviewing. (Id.)

26      The deposition of Defendant's FRCP 30(b)(6) representative regarding meal and

27  rest breaks policies and practices proceeded on January 16, 2013. (Id. ¶ 10.) The

28

PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE ON SHORTEN TIME MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

1  deposition of Defendant's FRCP 30(b)(6) representative regarding payroll policies and
2  practices proceeded on January 23, 2013. (Id.) During these depositions, Plaintiff
3  learned that the putative class members had their "employer" changed approximately
4  two years ago from Alta Dena Certified Dairy, LLC to Dean Transportation, Inc. (Id.,
5  Ex. B at 27:23-28:7.) This appears to be a change in form and not substance as the
6  drivers continue in the same job, at the same locations, same duties, same policies and
7  procedures, just the "name" of the employer has changed.

8       The FRCP 30(b)(6) deponents explained the corporate structure as follows. The
9  parent company is Dean Foods. (Id. ¶ 11, Ex. B at 12:16-18.) Dean Foods'
10 subsidiaries include FDD So Cal. (Id., Ex. B at 26:8-19.) From approximately 2008-
11 2010, FDD So Cal had several subsidiaries, including Alta Dena, Swiss Dairy and
12 Heartland Farms.[5] Swiss Dairy and Heartland Farms merged into Alta Dena in 2010.
13 Then in approximately 2011 (until the present), the drivers at Alta Dena were
14 transferred over to Dean Transportation, Inc. (Id.)

15      But according to the company's FRCP 30(b)(6) witness, notwithstanding these
16 corporate changes, from 2008 until the present, all of the drivers under FDD So Cal
17 were subject to the same policies at issue relating to meal and rest breaks. (Id., Ex. A.
18 at 22:13-25; 44:18-45:11; 66:25-67:9, 93:25-94:9; 99:4-20109:7-23; 155:20-156:8.)
19 Indeed, from 2008 until the present the same "Standard Operating Procedures" applied
20 to all drivers in all locations from 2008 to the present. (Id., Ex. A at 163:15-19.) And
21 since at least 2010, they shared the same general manager and the same operations

22 
_____

23 [5] In *Ikeda v. Alta Dena Certified Dairy, LLC*, which Defendant failed to notify the
   Court of despite simultaneously pending at one point in the same Court, Defendant
24 represented that Swiss II, LLC had merged with and into Alta Dena Certified Dairy,
   LLC. (Case No. CV12-03034, Docket No. 1 at 1:27-2:3; Docket No. 9 at 1, fn. 1.)
25 And the plaintiff in that case – based on Defendant's representation, dismissed Swiss
   II, LLC from the case. (Docket No. 2-6 at p. 46.) (The *Ikeda* matter was subsequently
26 dismissed.) Plaintiff believes that Alta Dena, similarly, is likely the appropriate
   defendant for claims attributable to Heartland Farms. But Defendant to date has failed
27 to provide Plaintiff with an answer to this issue. (Chesler Decl. ¶ 11, Ex. C.)

28

1  distribution manager.  (Id., Ex. A at 32:5-14, 37:7-13.)

2       Plaintiff further learned at these depositions that all of these entities

3  automatically deducted 30 minutes of time (that is not reflected on the paystub) and

4  that Defendant had a consistent policy and practice during the relevant time period of

5  making such deduction from putative class members wages for a meal break –

6  regardless of whether a break was actually taken – when an employee worked over

7  his/her regular shift.  (Id. ¶ 12; Ex. A at 22:13-25, 44:18-45:11, 109:7-23, 155:20-

8  156:8; Ex. B. at 41:22-25, 42:20-21, 44:9-11, 45:14-23, 135:11-17.)

9       Finally, while Plaintiff was aware that he may not be an adequate class

10 representative with respect to <u>penalties</u> under California Labor Code § 226,[6] it was not

11 until January 31, 2013, that a suitable additional class representative was found.  (Id.

12 ¶ 13.)  Scott Parker's identity was revealed in the January 7, 2013 discovery response

13 for putative class members contact information.  (Id.)  That list contained over 100

14 names and, thus, it took Plaintiff some time to interview those on the list.  Plaintiff did

15 not solicit Mr. Parker or anyone else.  (Id.)  Mr. Parker confirmed his desire and ability

16 to join as a class representative on January 31, 2013.  (Id.)

17      The discovery cut-off is August 6, 2013.  (Id. ¶ 15.)  Plaintiff's class

18 certification motion is due on February 19, 2013.  (Id.)  Defendant's opposition thereto

19 is due on March 11, 2013.  (Id.)  Defendant has not yet taken any depositions.  (Id.)

20 Defendant recently scheduled Plaintiff's deposition for February 15, 2013.  (Id.)

21 Plaintiff believes that both parties can continue to comply with the remainder of the

22 Court's scheduling order and requests no further modification other than with respect

23 to filing the amended complaint, attached hereto as Exhibit A.  (Id.)

24

25

26

27 [6] Plaintiff is an adequate class representative with respect to damages, or return of
   unpaid wages on all claims plead in the complaint.

28

**III.   The Court Should Modify The Scheduling Order Pursuant to FRCP 16 And Grant Leave Pursuant To FRCP 15(a)**

Plaintiff brings the instant motion pursuant to Rules 15 and 16 of the Federal Rules of Civil Procedure.  Rule 15(a)(2) provides that the Court "should freely grant leave when justice so requires."  When a party moves to amend his pleadings after a deadline set in a pretrial scheduling order, as is the case here, the schedule may be modified to allow the amendment "for good cause."  Fed. Rules of Civ. Proc. 16(b)(4); *see also Crawford v. Delta Sci. Corp.*, 2011 U.S. Dist. LEXIS 47759, at *3 (C.D. Cal. 2011).  "The 'good cause' standard 'primarily considers the diligence of the party seeking amendment. . . . Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Crawford*, 2011 U.S. Dist. LEXIS 47759 at *3.  In addition, even if the Court finds the moving party was dilatory, the Court may still consider an "overall evaluation of '[t]he rights of the parties, the ends of justice, and judicial economy.'"  *U.S. v. Dang*, 488 F.3d 1135, 1142-43 (9th Cir. 2007).  If good cause is shown, the Court then turns to whether the amendment is proper under Rule 15, which as noted should be "freely given."

**A.   Good Cause Exists Under Rule 16**

**1.   There has been no undue delay.**

It was not until the depositions of defendant's corporate representatives on January 16 and 23, 2013, that Plaintiff's counsel became aware of defendant's uniform policy and/or practice of deducting automatically 30 minutes from the putative class members' work-day if they worked more than their minimum shift.  (Id. ¶ 12, Ex. A at 41:22-25; 42:20-21; 45:14-23; 135:11-17; Ex. B. at 22:13-25; 44:18-45:11; 109:7-23; 155:20-156:8.)  The deduction does not show up on Plaintiff's or anyone else's paystubs, and Plaintiff did not have any discussions with his co-workers about this

1  policy and/or practice. (Id.; Ex. B at 44:9-11.)  Nor does the company communicate

2  this to drivers in writing or obtain written authorization from them. (Id.; Ex. B at

3  44:12-24.)  Furthermore, neither Plaintiff nor his counsel obtained the internal XATA,

4  Kronos, and paystub records necessary to ascertain whether or not defendant actually

5  engaged in this policy and/or practice until December 2012 – January 2013. (Id.)  In

6  fact, it was not until January 2013 that defendant's production was complete and it

7  consisted of more than 40,000 pages of documents. (Id.)  And Defendant did not

8  produce the paystubs until January 22, 2013. (Id.)  Moreover, even the records

9  Defendant has been produced thus far are not self-explanatory on this issue, but instead

10 require computation and/or explanation for a clear understanding of Defendant's

11 policies and/or practices. (Id.)  Thus, it was not until Defendant's corporate

12 representatives were asked about the 30-minute deduct at deposition on January 16 and

13 23, 2013 respectively, that it was clear that Defendant followed this uniform policy

14 and/or practice with respect to all drivers (*i.e.*, Plaintiff and putative class members).

15 (Id.)

16       Similarly, Plaintiff did not obtain the contact information for putative class

17 members until Defendant produced the information pursuant to Court Order on

18 January 7, 2013. (Id. ¶¶ 7 and 13.)  Thus, Plaintiff did not learn of Mr. Parker's

19 identity until recently and only confirmed his desire and ability to join as class

20 representative on January 31, 2013. (Id. ¶ 13.)

21       Finally, it was not until the deposition of Defendant's corporate representatives

22 on January 16 and 23, 2013, respectively, that Plaintiff became aware of the existence

23 of Dean Transportation, Inc. (Chesler Decl. ¶ 10.; Ex. B at 27:23-28:7.)  Defendant

24 did not list this entity on its Notice of Interested Parties. (Id.)  Nor did Defendant

25 identify Dean Transportation, Inc. in any discovery responses. (Id.)  Indeed, Plaintiff's

26 motion to compel was in part focused on refusal to produce information related to

27 policies/practices post-dating Plaintiff's termination. (Id.)  Defendant argued only

28

PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE ON SHORTEN TIME MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

1  standing to the Magistrate and at no time indicated that the entity no longer existed.

2  (Id.)  And the Magistrate ultimately overruled Defendant's objection and ordered it to

3  produce information post-dating Plaintiff's termination.  (Id.)  But Defendant still did

4  not notify Plaintiff – or produce any documentation showing – that Dean

5  Transportation, Inc. took over after Plaintiff's termination.  (Id.)[7]  Instead, Defendant

6  apparently lay in wait knowing full well the putative class members' had their

7  employment technically switched to a sister company.  (Id.)  The Court should not

8  allow Defendant to play such a shell game.  Plaintiff has promptly sought to address

9  the issue upon learning of it.

10       Further, Plaintiff only recently learned at these depositions that the Swiss and

11  Heartland Farms locations were subsidiaries of FDD So Cal, which was a subsidiary of

12  Dean Foods.  Although they may have been separate subsidiaries at one point, they

13  were all subject to uniform employment policies (including relating to meal and rest

14  breaks) and shared the same "Standard Operating Procedures" that governed Plaintiff's

15  employment.  (Id. ¶ 11, Ex. A. at 22:13-25; 44:18-45:11; 66:25-67:9, 93:25-94:9; 99:4-

16  20109:7-23; 155:20-156:8, 163:15-19.)  Accordingly, Plaintiff respectfully submits

17  that there has been no undue delay in raising these issues.

18       Courts have permitted leave under similar circumstances.  *See, e.g., Crawford*,

19  2011 U.S. Dist. LEXIS 47759 at *5-6 (finding good cause to modify scheduling order

20  and allow leave to amend to add party, noting "it cannot be said that Plaintiffs lacked

21  diligence simply because they chose to seek further discovery before amending their

22  complaint"); *Rios v. Ames True Temper, Inc.*, 2012 U.S. Dist. LEXIS 23112, at *8

23  (C.D. Cal. 2012) (granting modification of scheduling order to allow leave to amend to

24

25  _____

26  [7] Nor does it appear Defendant sent the opt-out letter ordered by the Magistrate to the
    employees of Swiss and/or Heartland Farms that were merged with Alta Dena in 2010.

27  (Chesler Decl. ¶ 10, fn. 4.)

28

1  add punitive damages because plaintiff did not discover facts until deposition, which
2  was taken after deadline).

3    **2.    The rights of the parties, the ends of justice, and judicial**
4    **economy call for modification of the scheduling order.**

5    Allowing the amendment is in the interests of justice because:  (a) the 30-minute
6  automatic deduction relates to the class claims in Plaintiff's current complaint[8]; (b) the
7  interests of the class are served by having an additional class representative that clearly
8  satisfies the statute of limitations for purposes of California Labor Code § 226 and
9  other statutory and civil penalties; (c) Defendant should not be permitted to limit its
10  liability by playing a shell game.

11    Likewise, allowing the amendment is consistent with principles of judicial
12  economy.  Plaintiffs can pursue claims related to the 30-minute policy against Alta
13  Dena, Dean Transportation, Inc., and the other related corporate entities, with or
14  without the amendment because they can file a separate lawsuit.  (Chesler Decl. ¶ 16.)
15  But having two lawsuits with similar issues does not make much sense for the parties
16  or the Court.  Indeed, that would needlessly waste judicial resources, as evidence
17  produced in any parallel court action would likely be relevant here, and vice-versa.

18    Defendant erroneously claims allowing the amendments would be futile because
19  Plaintiff did not work for Dean Transportation, Inc.  But Scott Parker, who plaintiff
20  seeks to add as a class representative did work for Dean Transportation, Inc.  (Chesler
21  Decl. ¶ 13.)  Moreover, where a parent "employed or exercised control over wages,
22  hours, or working conditions," the parent may be named in a wage and hour class
23  action by a plaintiff who only worked at a particular subsidiary.  *Akaosugi v. Benihana*
24  *Nat'l Corp.*, 282 F.R.D. 241, 258-59 (N.D. Cal. 2012).  Defendant's corporate

25  _____

26  [8] Indeed, the 30-minute deduction for alleged meal breaks is directly related to the
27  current claims – if not encompassed by them – depending on how liberally the Court
    construes the operative complaint.

28

1   representatives made clear at deposition that as of at least 2010 the corporate structure

2   included Dean Foods/FDD So Cal as the parent company to both Alta Dena and Dean

3   Transportation Inc. (Chesler Decl, Ex. B at 12:16-18, 26:8-19.) It is clear that from

4   2008 to the present, Defendant's policies at issue here were uniform for all former

5   subsidiaries under Dean Foods/FDD So Cal. (Id., Ex. A at 93:25-94:9; 99:4-20 (meal

6   and rest policy) 22:13-25; 44:18-45:11; 109:7-23; 155:20-156:8 (30-minute automatic

7   deduction)). Indeed, the same "Standard Operating Procedures" applied to all drivers

8   in all locations/subsidiaries from 2008 to the present. (Id., Ex. A at 163:15-19.)

9   Moreover, since at least mid-2010 to the present, all of these subsidiaries shared the

10  same general managers and operations distribution managers. (Id., Ex. A. at 32:5-14

11  and 37:7-13.) Thus, consistent with *Akosugi*, plaintiff Miguel de la Cueva and

12  proposed plaintiff Scott Parker both have standing with respect to Dean Foods and/or

13  FDD So Cal.

14          **B.      <u>Amendment Is Appropriate Under Rule 15</u>**

15          Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

16  should be freely granted. *See, e.g., Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d

17  876, 892 (9th Cir. 2010) (leave to amend shall be freely given when justice so

18  requires," but a "district court may exercise its discretion to deny leave to amend due

19  to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to

20  cure deficiencies by amendments previously allowed, undue prejudice to the opposing

21  party ..., [or] futility of amendment.'); *see also Smith v. Pac. Props. & Dev. Corp.*, 358

22  F.3d 1097, 1101 (9th Cir. 2004) (leave to amend should be freely given in the absence

23  of reasons such as undue delay, bad faith, repeated failure to cure deficiencies by

24  previously allowed amendments or undue prejudice to the opposing party); *see also*

25  *Foman v. Davis*, 371 U.S. 178, 182 (1962) (same).

26          These factors all weigh in favor of permitting the amendment. First, as

27  previously explained, there is no undue delay in addressing these issues, which only

28

PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT OR, IN THE
ALTERNATIVE, FOR LEAVE TO FILE ON SHORTEN TIME MOTION FOR LEAVE TO FILE FIRST AMENDED
COMPLAINT

1  recently came to light despite reasonable diligence on Plaintiff's part.  Second,

2  Plaintiff is not acting in bad faith in attempting to add these parties and claims.

3  Instead, Plaintiff is merely acting in light of what discovery has revealed and the

4  interest of justice requires.  Nor is Plaintiff seeking any other modification of the

5  scheduling order, such as to obtain more time to file his motion for class certification.

6  Plaintiff believes even with these amendments the parties will still be able to comply

7  with the rest of the Court's scheduling order.[9]  Third, this is the first time Plaintiff has

8  sought to amend the complaint.

9      Finally, there is no undue prejudice to defendant.  As noted, Plaintiff could file a

10  separate lawsuit, which presumably would only increase litigation costs and waste the

11  Court's and parties' resources.  Furthermore, the discovery cut-off in this case is

12  August 6, 2013.  Defendant has not yet taken a deposition.  Plaintiff is willing to

13  provide all documentation that Mr. Parker has within one-week of the amendment, and

14  to produce Mr. Parker for deposition upon Defendant's request.  Despite the addition

15  of the parent companies and/or Dean Transportation, the parties have already

16  conducted discovery on these issues as a result of the fact that the policies are uniform.

17  Thus, allowing leave to file the amended complaint will not unduly prejudice

18  Defendant.

19      For all the foregoing reasons, the Court should grant Plaintiff leave to file the

20  First Amended Complaint attached hereto as Exhibit A.

21

22

23

24

---

25  [9] Plaintiff's claim for penalties under Cal. Labor Code § 2699 requires notification of such claims to the LWDA and if no response is given within 33 days, then penalties may be sought.  Plaintiff and Mr. Parker sent their notification to the LWDA on

26  February 1, 2013.  Thus, as noted in the FAC, Plaintiff respectfully requests that the scheduling order permit him to file a second amendment on March 7, 2013, solely to

27  confirm whether or not the LWDA seeks to pursue an action.

28

**IV.**   **In The Alternative, Plaintiff Seeks Leave To File A Motion For Leave To Amend On Shortened Time**

In the alternative, Plaintiff hereby requests that the Court allow Plaintiff leave to file on shortened time a noticed motion for leave to file the first amended complaint. Plaintiff requests this *ex parte* application be deemed his opening papers and that the motion be set for hearing on February 11, 2013 so that the parties may have a ruling on the issue sufficiently in advance of the February 19, 2013 motion for class certification deadline.  Plaintiff further proposes that Defendant have until February 7, 2013 to file its opposition and that Plaintiff have until February 8, 2013 to file his reply.

DATED: February 1, 2013                    Respectfully submitted,

                                           THE LAW OFFICES OF
                                           TIMOTHY B. McCAFFREY, JR.


                                           By /s Natasha Chesler
                                              Natasha Chesler

                                              Attorneys for Plaintiff and Class
                                              Representative Miguel de la Cueva

PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE ON SHORTEN TIME MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

**EXHIBIT A**

TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
NATASHA CHESLER (S.B. #227540)
THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
A Professional Corporation
11377 West Olympic Boulevard, Suite 500
Los Angeles, California 90064-1683
Telephone: (310) 882-6407
Facsimile: (310) 882-6359

Attorneys for Plaintiffs and Class Representatives
Miguel de la Cueva and Scott Parker

## UNITED STATES DISTRICT COURT FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL DE LA CUEVA, and SCOTT PARKER, on behalf of themselves and those similarly situated, | CASE NO. CV 12-1804-GHK (CWx) |
| | **CLASS ACTION** |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR:** |
| vs. | **CLASS CLAIMS** |
| ALTA DENA CERTIFIED DAIRY, LLC, a Delaware Limited Liability Company, DEAN TRANSPORTATION, INC., a Delaware Corporation; HEARTLAND FARMS, an entity unknown; FRESH DAIRY DIRECT OF SO. CAL., an entity unknown; DEAN FOODS COMPANY, a Delaware Corporation; and DOES 1 through 10, inclusive, | **ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED:** |
| | **1) FAILURE TO PROVIDE MEAL AND/OR REST BREAKS IN VIOLATION OF CAL. LABOR CODE §§ 226.7, 512;** |
| Defendants. | **2) FAILURE TO PAY ALL WAGES DUE UPON TERMINATION OF EMPLOYMENT IN VIOLATION OF CAL. LABOR CODE §§ 201-204;** |
| | **3) FAILURE TO PAY ALL WAGES EARNED IN VIOLATION OF CALIFORNIA LABOR CODE §§ 221, 223, 224, 510, and 1194;** |
| | **4) FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF CALIFORNIA LABOR CODE § 1182.12;** |
| | **5) FAILURE TO PROVIDE ACCURATE PAYSTUB IN VIOLATION OF CAL. LABOR CODE § 226;** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**6)  UNFAIR BUSINESS PRACTICES IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*;**

**INDIVIDUAL CLAIMS:**

**7) DISABILITY DISCRIMINATION IN VIOLATION OF FEHA;**

**8) FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF FEHA;**

**9) FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF FEHA;**

**10)  RETALIATION IN VIOLATION OF FEHA;**

**11) VIOLATION OF CAL. LABOR CODE § 1102.5;**

**12) WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY;**

**AND**

**13) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

**DEMAND FOR JURY TRIAL.**

1    Plaintiffs Miguel de la Cueva ("Mr. de la Cueva") and Scott Parker ("Mr. Parker")
2  (collectively Plaintiffs) hereby bring this first amended complaint against the above-named
3  defendants and states and alleges as follows:

4                                **General Allegations**

5    1.    Plaintiffs are informed and believe and thereupon allege that at all times
6  mentioned herein defendant Alta Dena Certified Dairy LLC ("Alta Dena") is and was a
7  Delaware limited liability company with no members in California. Plaintiffs are further
8  informed and believe and thereupon allege that at all times mentioned herein defendant Dean
9  Transportation, Inc. ("Dean Transportation") is and was a Delaware corporation with its
10 principal place of business in Dallas, Texas. Plaintiff is informed and believes that Dean
11 Foods Company is a Delaware Corporation with its principal place of business in Dallas,
12 Texas. Plaintiff lacks information and belief as to what form of entity Fresh Dairy Direct of
13 So. Cal. ("FDD So. Cal.") and Heartland Farms takes. Plaintiff is informed and believes that
14 Alta Dena is a subsidiary of FDD So. Cal. Plaintiff is further informed and believes both
15 FDD So. Cal. and Dean Transportation, Inc. are subsidiaries of Dean Foods Company.
16 Plaintiff is further informed and believes that all drivers in Southern California employed by
17 FDD So. Cal./Dean Foods and/or subsidiaries thereof are subject to uniform employment
18 policies and practices.

19    2.    At all times mentioned herein, and at the time the causes of action arose, Mr. de
20 la Cueva was an individual and citizen of the County of Los Angeles, State of California, and
21 at all relevant times was employed by Defendants in the County of Los Angeles. The acts
22 giving rise to Mr. de la Cueva's claims occurred in the County of Los Angeles. At all times
23 mentioned herein, and at the time the causes of action arose, Mr. Parker was an individual
24 and citizen of the County of San Bernardino, State of California, and at all relevant times was
25 employed by Defendants in the County of Los Angeles. The acts giving rise to Mr. Parker's
26 claims occurred in the County of Los Angeles.

27    3.    Jurisdiction is proper under 28 U.S.C. § 1332(a) because there is complete
28 diversity of citizenship as detailed above and the amount in controversy exceeds the sum or

---

1 value of $75,000, exclusive of interest and costs.

2     4.    Plaintiffs are unaware of the true names and capacities of Defendants sued
3 herein as DOES 1-10, inclusive, and for that reason sues said Defendants by such fictitious
4 names. Plaintiffs will file and serve an amendment to this complaint alleging the true names
5 and capacities of said fictitiously named Defendants if and when such true names and
6 capacities become known to Plaintiffs.

7     5.    Plaintiffs are informed and believe, and based thereon allege, that each of the
8 fictitiously named Defendants is responsible in some manner for, and proximately caused, the
9 harm and damages alleged herein below.

10     6.    Plaintiffs are informed and believe, and based thereon allege, that each of the
11 Defendants and individuals named herein acted as the employee, agent, partner, alter-ego
12 and/or joint venturer of each of the other Defendants named herein and, in doing the acts and
13 in carrying out the wrongful conduct alleged herein, each of said Defendants acted within the
14 scope of said relationship and with the permission, consent and ratification of each of the
15 other Defendants named herein.

16     7.    Hereinafter in the complaint, unless otherwise specified, reference to a
17 Defendant or Defendants shall refer to all Defendants, and each of them.

18     8.    Mr. de la Cueva began working as a truck driver for Adohr Farms in
19 approximately 1990. Defendant then acquired Adohr Farms in or about 2004. Mr. de la
20 Cueva continued to work for Defendant thereafter. At all times, Mr. de la Cueva performed
21 his job in an exemplary manner. Indeed, he was repeatedly awarded Certificate of
22 Achievements as an "accident free" driver.

23     9.    Defendant has a progressive discipline policy that provides that upon a first
24 accident an employee receives a written warning, upon a second accident the employee may
25 be placed on probation, and upon a third accident the employee may be discharged. This
26 progressive disciplinary policy covers a twelve-month period (*i.e.*, an accident is only
27 counted for twelve months). In addition, Mr. de la Cueva is informed and believes that
28 Defendant has a practice of not discharging employees when accidents are "minor" (*i.e.*,

1 | resulting in no harm to any person and only property damage of less than $500).

2       10.     On or about February 7, 2009, Mr. de la Cueva began suffering from a stomach
3 | illness. Specifically, he suffered from what was later diagnosed as diverticulitis, which
4 | caused him weakness, nausea, severe stomach pain, fever, sweats, and chills, among other
5 | symptoms. In the beginning, Mr. de la Cueva just took a few sick days as needed. But his
6 | symptoms progressively worsened.

7       11.     On or about March 30, 2009, Mr. de la Cueva's physician provided Defendant
8 | with a note indicating that Mr. de la Cueva was under his care for a medical condition and
9 | would be able to return to work on April 6, 2009. Mr. de la Cueva discussed his condition
10 | and need for time off with his supervisor, Joe Llamas, and Defendant's HR representative,
11 | Susana Correa.

12       12.     Immediately, Defendant gave Mr. de la Cueva push back for his requested
13 | leave. Ms. Correa questioned his medical condition. She questioned which doctors he was
14 | seeing and why. She made Mr. de la Cueva feel very uncomfortable. Mr. Sanchez also
15 | expressed obvious upset with Mr. de la Cueva's request for time off to treat his medical
16 | condition. Ultimately, Defendant purported to grant the requested leave and Mr. de la Cueva
17 | returned on April 6, 2009, consistent with his physician's plan.

18       13.     On or about April 15, 2009, there was minor damage to the truck Mr. de la
19 | Cueva drove. While he was backing up the trailer, one of the trailer doors unlatched from the
20 | door holder and came into contact with the building wall. The damage was minor and Mr. de
21 | la Cueva believed it to be less than $500. Nevertheless, Mr. de la Cueva reported this
22 | damage. Defendant's policy called for a verbal warning because this was the first accident in
23 | a twelve-month period. But Defendant violated its policy and suspended Mr. de la Cueva for
24 | three days as a result of this accident.

25       14.     During this time, on or about April 17, 2009, Mr. de la Cueva underwent a
26 | gastrointestinal endoscopy. He requested disability leave from approximately April 29, 2009
27 | through May 13, 2009, so that he could recover from surgery. But Defendant refused this
28 | request. Again, Defendant gave Mr. de la Cueva significant pushback. At first, Ms. Correa

1  claimed not to get the paperwork, which Mr. de la Cueva had given to his supervisor (as

2  instructed). So Mr. de la Cueva brought her another copy.

3    15.    In response, Defendant made it very clear that it did not want Mr. de la Cueva

4  to take two weeks off for a disability leave. Defendant further made Mr. de la Cueva fear

5  retaliation (*i.e.*, losing his job) if he took such a leave. Thus, Mr. de la Cueva returned to

6  work the day following his surgery and was not able to take the requested and needed time

7  off.

8    16.    Mr. de la Cueva tried to continue doing his job. But thereafter, his supervisor

9  continued to treat him differently than the others, and consistently gave him a hard time for

10  anything he could think of.

11    17.    On or about May 4, 2009, Mr. de la Cueva's physician requested that he be

12  granted time off as needed to attend medical appointments. Again, Defendant played games

13  with Mr. de la Cueva and claimed it did not have the necessary paperwork. Mr. de la Cueva

14  kept turning in additional copies of the necessary documents. Then, Defendant refused the

15  request on the grounds that it could not grant an "indefinite" accommodation. But that was

16  not what Mr. de la Cueva was asking for. Nonetheless, Mr. de la Cueva's physician clarified

17  his request for time off to 1-3 times per month for physician appointments. Defendant

18  purported to grant this request, but continued to treat Mr. de la Cueva with hostility thereafter.

19    18.    On or about May 15, 2009, Mr. Llamas and Ms. Correa discussed Mr. de la

20  Cueva's request for accommodation. They were very stern. They made Mr. de la Cueva sign

21  a document essentially stating that the "maximum" number of sick days he could take for his

22  illness was three per month.

23    19.    Throughout the rest of 2009, Defendant continued to give Mr. de la Cueva a

24  difficult time accommodating his disability / medical condition. At one point, Mr. de la

25  Cueva was forced to file an appeal concerning his disability benefits from the government

26  because of Defendant's initial refusals to grant requested leaves. Then in approximately June

27  2009, Ms. Correa demanded specific paperwork from Mr. de la Cueva's physician. Mr. de la

28  Cueva explained that his physician was away on vacation, but that he had left a message and

1  would make sure to get it promptly upon the doctor's return.  Ms. Correa again became

2  hostile.  She threatened Mr. de la Cueva's employment, making comments such as "You want

3  to keep your job, don't you."  He underwent another colonoscopy on June 10, 2009 and was

4  forced to return to work the very next day.

5       20.    Reaching a limit of this harassing conduct, Mr. de la Cueva filed a complaint

6  with the Department of Labor on or about April 20, 2009, explaining that he was being

7  denied leave of absence and/or other reasonable accommodation(s) for his medical condition.

8  Ms. Correa then denied making any of the foregoing statements or engaging in conduct

9  intending to preclude Mr. de la Cueva from exercising his disability rights.  Immediately

10  following this complaint, Defendant began changing Mr. de la Cueva's schedule, thereby

11  preventing him from attending doctor's appointments.  Mr. de la Cueva explained that he

12  needed to know in advance what his days off would be so that he could make appointments

13  with his physician.  Eventually, Defendant complied – but again, only after making it

14  abundantly clear that Mr. de la Cueva's requests for accommodations were not well-received.

15       21.    Throughout 2010, Mr. de la Cueva continued to suffer symptoms from his

16  diverticulitis.  And his symptoms would worsen severely when he was unable to eat for

17  prolonged periods.  Mr. de la Cueva generally was denied meal and rest breaks.  He was

18  required to drive his load to the destination and was neither authorized nor permitted to eat

19  until after the delivery had been completed.  This meant that Mr. de la Cueva would usually

20  go at least six hours if not more without eating anything.

21       22.    Once Mr. de la Cueva began having stomach problems, the denial of his meal

22  break became even more acute physically.  On one occasion, after having driven for nearly

23  nine hours, Mr. de la Cueva's stomach was in severe pain.  He, thus, called his supervisor,

24  Jesse Sanchez, and explained again his medical condition and need to eat.  He asked if he

25  could stop for a quick fifteen-minute break to eat.  Mr. Sanchez, however, refused this

26  request.  He sternly instructed Mr. de la Cueva to complete his route and to take no breaks

27  until he did so.  Mr. de la Cueva complied.

28       23.    Thereafter, Mr. de la Cueva brought up the issue of needing meal and rest

1  breaks multiple times to his supervisors.  Each time, his requests were denied and met with
2  hostility.

3      24.    In late February 2010, Mr. de la Cueva was driving a truck and just minutes
4  after leaving the Highland Branch and making a right turn, one of the doors of the refrigerator
5  unit became dislodged due to the dips and bumps on the road.  The door opened and hit the
6  back of the tractor.  Only minor damage was caused – a small crack on the fiberglass of the
7  door.  Even though the damage was minor (it was never even repaired while Mr. de la Cueva
8  worked there), he reported the incident.

9      25.    On or about February 26, 2010, Defendant issued Mr. de la Cueva a written
10  warning and placed him on twelve-month probation for this "accident."  Defendant claimed
11  this constituted Mr. de la Cueva's second accident in twelve months.  Mr. de la Cueva is
12  informed and believes that employees who were not disabled and/or did not complain about
13  lack of meal and rest breaks were treated differently and *not written up* for such minor
14  damage.  But it was clear that Defendant's supervisors had it in for Mr. de la Cueva and were
15  looking for any reason to write him up in a concerted effort ultimately to get rid of him.

16      26.    Later in 2010, Mr. de la Cueva noticed damage to a cross-member bar of a
17  truck.  He did not cause this damage, nor did he drive the truck.  He merely reported what he
18  saw in the parking lot to his supervisor.  Even though he had no involvement in this damage,
19  the company required Mr. de la Cueva to do an accident report and sent him for a DOT drug
20  test (which he passed).

21      27.    In approximately late November 2010, Mr. de la Cueva approached the General
22  Manager, Mr. Llamas and inquired about changing to another route that had a consistent
23  assignment.  (As previously explained, Mr. de la Cueva had been placed on a route that was
24  inconsistent covering "as needed" shipments.)  Mr. de la Cueva wanted this other consistent
25  route so that he could better address his disability by eating and planning doctors'
26  appointments, among other things.  Mr. de la Cueva had made this request previously, but his
27  requests had been denied without any proffered legitimate non-discriminatory or non-
28  retaliatory reason.  As the break issue was becoming increasingly difficult, Mr. de la Cueva

1 | again made this request to Mr. Llamas in late November 2010. Mr. de la Cueva further
2 | explained to Mr. Llamas that the current driver on the route that he desired had less seniority
3 | than Mr. de la Cueva. Mr. Llamas got angry and raised his voice, stating "Don't come to me
4 | with this bullshit!" Mr. de la Cueva did not want to anger his supervisors and, thus, let the
5 | matter go.

6 |      28.    Thereafter, on or about December 6, 2010, Mr. de la Cueva was attempting to
7 | attach a loaded trailer to his tractor. The trailer was too low, however, so Mr. de la Cueva
8 | backed under the trailer in an attempt to lift it, causing approximately three inches of damage
9 | on the cross-member bar of the tractor. Defendant acknowledged that this damage was no
10 | more than $300 to repair. Mr. de la Cueva reported this accident even though Company
11 | policy only required him to report damages exceeding $500.

12 |      29.    A couple weeks later, before leaving on a route, Mr. de la Cueva was given a
13 | message from a supervisor (Greg) – namely that Mr. Llamas (the General Manager), asked
14 | him to tell Mr. de la Cueva, "no lunch until he finishes his work." Mr. de la Cueva took this
15 | as a clear message that Defendant was upset with his repeated requests for meal and/or rest
16 | breaks.

17 |      30.    Barely a week after this comment, on or about December 20, 2010, Defendant
18 | suspended Mr. de la Cueva without pay pending an alleged investigation for the December 6,
19 | 2010 incident. Then, on or about December 27, 2010, Defendant summarily terminated his
20 | employment. The Company claimed this was Mr. de la Cueva's third accident in a twelve-
21 | month period. But it was not – the first accident occurred in April 2009 – more than twelve
22 | months prior. Thus, Defendant deviated from its own policy yet again.

23 |      31.    In addition, Mr. de la Cueva is informed and believes that Defendant did not
24 | fire other employees who had more accidents and/or who caused more severe damage.
25 | Defendant, however, treated Mr. de la Cueva differently. The only difference between Mr. de
26 | la Cueva and these other employees is that Mr. de la Cueva had exercised his disability leave
27 | rights, requested disability accommodations, reported complaints about his treatment in that
28 | regard to the Department of Labor, and repeatedly requested that Defendant allow meal and

1 | rest breaks.

2 |   32. Accordingly, Defendant terminated Mr. de la Cueva's employment – after over
3 | 20 years of dedicated service – for false and otherwise pretextual reasons.

4 |   33. On December 2, 2011, Mr. de la Cueva filed charges of discrimination with the
5 | Department of Fair Employment and Housing and obtained an immediate right-to-sue notice.
6 | Mr. de la Cueva has exhausted his administrative remedies.

7 | **CLASS ALLEGATIONS**

8 |   34. The class for whose benefit this action is being prosecuted is defined as
9 | follows: *All persons who were employed by Defendant as a "Driver" from December 2007*
10 | *to the present (the "putative class")*.  Plaintiff reserves the right to create sub-classes if
11 | necessary.

12 |   35. All members of the putative class have had their rights under the California
13 | Labor Code violated by Defendant's wage and hour/labor practices and have suffered injury
14 | as the result of Defendant's conduct.

15 |   36. The putative class members as described in Paragraph 34, above, are
16 | ascertainable.  Members of the class, estimated to be approximately at least 200 in number,
17 | can be readily identified from personnel files, payroll records, computer databases or other
18 | records maintained by Defendant.

19 |   37. The litigation of the questions of fact and law involved in this action will
20 | resolve the rights of all putative class members and hence will have a binding effect on all
21 | class members.

22 |   38. The class is sufficiently numerous, and joinder of separate claims brought by
23 | each and every class member is impracticable, due to both a reluctance of certain class
24 | members to join in a lawsuit that could impose costs on their current or former employer and
25 | the high cost of separate, individual litigation in comparison to the amount of monetary
26 | recovery for individual class members.

27 |   39. The putative class has a well-defined community of interest in the questions of
28 | fact and law to be litigated.  The common questions of law and fact predominate with respect

1   to the liability issues, relief issues and anticipated affirmative defenses.

2       40.     The claims of the named plaintiffs are typical of those for all putative class
3   members. Plaintiffs are informed and believe that Defendants had a corporate policy and/or
4   practice that did not permit "drivers" (such as Plaintiff") from taking a meal and/or rest break
5   until a shipment was completed (*i.e.* driven from Defendant's principal place of business in
6   City of Industry to another local California delivery destination). Often times, these routes
7   would last longer than four (4) hours. In addition, often times if a driver had two or more
8   routes in a single day, Defendants would neither authorize nor permit a meal and/or rest break
9   in between routes because that would delay delivery. Indeed, Plaintiffs are informed and
10  believe and thereupon allege that Defendant made absolutely no effort to build in any time in
11  a drivers' schedule for required meal and/or rest breaks. This meant that Plaintiffs, and other
12  drivers, often went six (6) hours if not longer without a meal and/or rest break. Thus, from at
13  least 2004, Plaintiffs and the putative class members were not authorized or permitted to take
14  a meal and/or rest break, and – in turn – received less than what was due to them on the next
15  pay check (and/or at the termination of employment). Furthermore, Defendants have a
16  uniform policy and practice of restricting all drivers' during their alleged meal periods to
17  remain within a one-mile radius of their designated routes. Thus, Defendants did not allow
18  Plaintiff or any putative class member a duty free meal period as required by the California
19  Labor Code and the applicable Industrial Welfare Commission Wage Orders. Plaintiffs are
20  informed and believe these policies and/or practices continued from at least 2004 to Mr.
21  Parkers' termination in approximately March 2012. Plaintiffs are further informed and
22  believe that this practice applied to all of Defendants' drivers.

23      41.     Furthermore, Plaintiffs are informed and believe and thereupon allege that
24  beginning in at least 2008 to the present, Defendants instituted a practice of automatically
25  deducting 30 minutes of work time and, thus, 30 minutes of pay each day from each driver
26  regardless of whether or not the driver actually took a 30 minute duty free meal period if the
27  driver worked beyond his minimum shift of eight or ten hours. Defendants did not obtain
28  Plaintiffs' or putative class members' consent for this deduction. Nor did Defendants provide

1    Plaintiffs or putative class members with any way to override this automatic deduction.  This

2    policy and/or practice resulted in Defendants not paying Plaintiffs and the putative class

3    members for all hours worked, including straight time and/or overtime compensation.

4          42.     Moreover, Plaintiffs are informed and believe and thereupon allege that

5    Defendants were and are aware that their drivers were and are not taking a 30 minute duty

6    free meal periods (or should have been aware[1]) – yet Defendants were and are deducting 30

7    minutes of pay from its drivers automatically as described hereinabove.  Defendants not only

8    made no effort to adjust routes to allow the drivers to take a 30 minute duty free meal break,

9    but Defendants control the drivers at all times (*e.g.*, limiting any break to within a one mile

10   radius of the route) and are fully aware that many drivers will often log a break even though

11   they are not actually taking one for fear of being disciplined.  Defendants made such

12   deductions without any notice or written authorization of Plaintiffs or any putative class

13   member.

14         43.     Plaintiffs can fairly and adequately represent and protect the interests of the

15   class in that there is no conflict between their interests and the interests of the other class

16   members, this action is not collusive, the named Plaintiffs and counsel have the necessary

17   resources to litigate this action and class counsel has the experience and ability to prosecute

18   this case as a class action.  Mr. Parker worked for Defendants for approximately 15 years.  He

19   previously worked for Heartland Farms before it was acquired by Defendants.  He was

20   terminated in approximately March 2012.  Mr. Parker, like Mr. de la Cueva, was precluded

21   from taking meal and rest breaks as described herein because of the nature of the routes

22   _____

23   [1] From approximately 2009 to the present, Defendants used a computerized GPS system
     called "XATA" to track the drivers' routes.  This system generated reports that Defendants
24   reviewed on a regular basis.  These reports show when meal breaks are not logged.  Further,
     when meal breaks are logged, the reports show what time and what other work the drivers
25   have accomplished that day.  Plaintiffs are informed and believe that in many instances a
     legitimate review of these records easily demonstrates that the drivers could not have taken a
26   30 minute duty free meal break and accomplished all the other tasks completed within the
     similar time frame.
27

28

1  Defendants provided to him.  On many occasions, Mr. Parker would log a meal break even
2  though he was unable to take one for fear of reprimand – for either not logging the break or
3  not timely making his deliveries.  There were also many occasions where Mr. Parker neither
4  took nor logged a meal break in his workday.  And it was virtually impossible to take meal
5  breaks before the 6th hour worked.  Yet, Defendant also deducted 30 minutes pay from Mr.
6  Parker's wages, regardless of whether he took a meal break or not.

7        44.    In addition, pursuant to California Labor Code § 2699.3, Mr. de la Cueva took
8  the initiative to notify the Labor and Workforce Development Agency ("LWDA") of these
9  violations, including the facts and theories to support the violations, on or about December
10 12, 2011.  The LWDA did not notify Mr. de la Cueva whether it would investigate the
11 violations detailed in his December 12, 2011, letter within 33 days of that date.  Accordingly,
12 Mr. de la Cueva has followed the appropriate steps to enable Plaintiffs and the putative class
13 members to pursue civil penalties pursuant to California Labor Code § 2699 for Defendants'
14 violations of California Labor Code §§ 201-203, 226, 226.3, 226.7, and 512, and California
15 Business & Professions Code §§ 17200 et seq., as alleged herein.  Furthermore, since
16 Plaintiffs have become aware of the 30-minute automatic deduction policy and/or practice
17 described hereinabove, on February 1, 2013, Plaintiffs have notified the LWDA of this
18 unlawful practice and related Labor Code violations.  Plaintiffs reserve the right to seek leave
19 to amend this first amended complaint following the process described in California Labor
20 Code § 2699.3 in the event the LWDA does not intend to investigate or pursue the matter.

21       45.    The certification of a class in this action is superior to the separate litigation of
22 a multitude of cases by members of the putative class.  Class adjudication will conserve
23 judicial resources and will avoid the possibility of inconsistent rulings.  Moreover, there are
24 class members who are unlikely to join or bring an action due to, among other reasons, their
25 fear of retaliation for joining a lawsuit against their current or former employer and/or their
26 inability to afford the prosecution of separate, individual actions.  Finally, equity dictates that
27 all persons who stand to benefit from the relief sought herein should be subject to the lawsuit
28 and hence subject to an order spreading the costs of litigation among all class members.

## CLASS CLAIMS

### FIRST CAUSE OF ACTION

### (VIOLATION OF CALIFORNIA LABOR CODE §§ 226.7. 512

### AGAINST ALL DEFENDANTS

### ON BEHALF OF PLAINTIFFS AND ALL OTHERS SIMILARLY SITUATED)

46.     Plaintiffs, on behalf of themselves and all putative class members, hereby reallege and incorporate herein paragraphs 1 through 45 of this complaint as though fully set forth.

47.     From at least 2004 to March 2012, Defendants failed to comply with California Labor Code §§ 226.7 and 512 because they did not authorize or permit its drivers two rest periods during a work-day and/or a duty-free-meal period after five hours of work, if at all.

48.     Under California Labor Code § 226.7, Plaintiffs and putative class members are entitled to at least one hour of premium pay for each failure of Defendants to provide statutorily required rest periods and/or meal periods.

49.     Plaintiffs and the putative class members have been damaged by Defendants' violation of California Labor Code § 226.7, and they seek recovery of unpaid wages, interest, and attorneys' fees, and costs, in addition to penalties under California Labor Code §§ 203, 210, 226, 226.3, 558, 1194(a), and/or 2699 because Defendants did not pay Plaintiffs and putative class members accurately in a timely manner for the rest periods and/or meal periods they were deprived of during their employment and/or upon their discharge.

50.     Plaintiffs, on behalf of themselves and the putative class members, have been required to retain counsel to pursue their rights and the rights of the putative class members and therefore seeks attorneys' fees and costs pursuant to California Labor Code §§ 218.5, 226(g), 558 and/or 2699.

51.     Plaintiffs, on behalf of themselves and the putative class members, seek an award of interest pursuant to California Labor Code § 218.6.

**SECOND CAUSE OF ACTION**

**(VIOLATION OF CALIFORNIA LABOR CODE §§ 201-204**

**AGAINST ALL DEFENDANTS**

**ON BEHALF OF PLAINTIFFS AND ALL OTHERS SIMILARLY SITUATED)**

52.   Plaintiffs, on behalf of themselves and all putative class members, hereby reallege and incorporate herein paragraphs 1 through 51 of this complaint as though fully set forth.

53.   California Labor Code § 204 requires that an employer who pays its employees semi-monthly must pay their employees all wages earned within 10 or 11 days following the semi-monthly pay period in which work was performed.  Defendants paid Plaintiffs semi-monthly.  Plaintiffs are informed and believe all drivers were similarly paid semi-monthly.

54.   By failing to pay premium pay for meal and/or rest breaks that were not provided, Defendants failed to pay all wages earned within 10 or 11 days following the semi-monthly pay period in which work was performed.  Furthermore, as described herein, Defendants' policy and/or practice of automatically deducting 30 minutes of compensation from its employees' earned compensation if they worked more than their scheduled shift necessarily results in Defendants paying less than all wages earned and owed in a timely manner.  In fact, Defendants still owe Plaintiffs and the putative class members wages that they earned from at least 2004 to the present.  Accordingly, Defendants willfully have violated California Labor Code § 204.

55.   In addition, California Labor Code §§ 201-202 requires an employer to immediately pay due and owing upon termination.  By failing to pay Plaintiffs and the putative class members the foregoing wages upon termination, Defendants also violated California Labor Code §§ 201-202.

56.   Pursuant to California Labor Code §§ 210 and 2699, Plaintiffs and the putative class members seek civil penalties for Defendants' violation of California Labor Code §§ 201-204.

57.   Plaintiffs, on behalf of themselves and the putative class members, have been

1  required to retain counsel to pursue his rights and the rights of the putative class members and

2  therefore seek attorneys' fees and costs pursuant to California Labor Code §§ 218.5 and 2699.

3      58.    Plaintiffs, on behalf of themselves and the putative class members, seek an

4  award of interest pursuant to California Labor Code § 218.6.

5                          **THIRD CAUSE OF ACTION**

6      **(VIOLATION OF CALIFORNIA LABOR CODE §§ 221, 223, 224, 510, 511 & 1194**

7                          **AGAINST ALL DEFENDANTS**

8       **ON BEHALF OF PLAINTIFFS AND ALL OTHERS SIMILARLY SITUATED)**

9      59.    Plaintiffs, on behalf of themselves and all putative class members, hereby

10 reallege and incorporate herein paragraphs 1 through 58 of this complaint as though fully set

11 forth.

12     60.    California Labor Code § 221 prohibits employers from recollecting or

13 otherwise clawing back any earned wages from its employees.  California Labor Code § 223

14 prohibits employers from secretly paying a lower wage than that to which the parties agreed.

15 California Labor Code § 224 prohibits employers from making any deductions from

16 employees' compensation that are not authorized in writing and in any event not such

17 authorization can be used to violate Sections 221 or 223.  As set forth herein above,

18 Defendants violated these sections by automatically deducting 30 minutes of pay each day

19 from each employee if they worked more than their minimum shift.  Defendants did not have

20 any authorization for making such deductions nor did they have any legitimate basis to do so

21 given that Plaintiffs and the putative class members did not actually take a 30 minute duty

22 free meal break.  Furthermore, Defendants were and are aware (or should have been aware)

23 that their drivers routinely log a 30 minute break even though they do not actually take a 30

24 minute break (i.e., the drivers are never truly duty free and in any event rarely log a break

25 within the first six hours of their shift).  In addition, Defendants did not disclose this unlawful

26 practice in any manner reasonably calculated to inform the aggrieved employees of its

27 practice.  Nor do the paystubs that Defendants provided to Plaintiffs or any putative class

28 member indicate that Defendants have deducted automatically 30 minutes of compensation.

Defendants' unlawful policy and practice necessarily resulted in lost earned wages, whether minimum wage, straight time or overtime compensation due under California Labor Code §§ 510, 511 or 1194, to the benefit of Defendants and detriment of Plaintiffs and the putative class members.

61.     Pursuant to California Labor Code §§ 218.5, 510, 511, 1194(a), and 1194.2 (and any other applicable section), Plaintiffs on behalf of themselves and all putative class members and/or aggrieved employees, hereby seek recovery of all earned but unpaid wages whether deemed unpaid minimum wage, straight time or overtime compensation based on the above describe policy and/or practice.

62.     Pursuant to California Labor Code §§ 210, 225.5, Plaintiffs, on behalf of themselves and all putative class members, hereby seek civil penalties for Defendants' above described violations of California Labor Code §§ 204, 221, and 223, including 25% of all amounts unlawfully withheld by Defendants pursuant to California Labor Code § 225.5.

63.     Pursuant to California Labor Code §§ 218.5, 218.6, and 1194(a), Plaintiffs, on behalf of themselves and all putative class members, seek reasonable attorneys' fees, interest, and costs in an amount according to proof.

## FOURTH CAUSE OF ACTION

### (VIOLATION OF CALIFORNIA LABOR CODE § 1182.12

### AGAINST ALL DEFENDANTS

### ON BEHALF OF PLAINTIFFS AND ALL OTHERS SIMILARLY SITUATED)

64.     Plaintiffs, on behalf of themselves and all putative class members, hereby reallege and incorporate herein paragraphs 1 through 63 of this complaint as though fully set forth.

65.     Under California Labor Code § 1182.12, Defendants had a statutory obligation to pay Plaintiffs and the putative class members at least the current minimum wage for all hours worked.  By automatically deducting 30 minutes from drivers pay regardless of whether they worked during that time or not, when they worked in excess of their scheduled shift, Defendants failed to pay Plaintiffs and the putative class members at least the current

1  minimum wage for those hours worked.  Indeed, Defendants failed to pay for this time at all.

2  Such off-the-clock work is a violation of the Labor Code and the applicable IWC Order.

3       66.    Pursuant to California Labor Code § 1194(a), Plaintiffs may and hereby do

4  bring this action to recover for themselves and the putative class members the balance of

5  unpaid minimum wages, interest, reasonable attorneys' fees, and costs of suit.

6       67.    Plaintiffs and the putative class members have been damaged by Defendants'

7  violation of California Labor Code § 1182.12 and they seek recovery of unpaid wages,

8  interest, and attorneys' fees, and costs.

9       68.    Pursuant to California Labor Code § 1194.2, Plaintiffs, on behalf of themselves

10  and all putative class members, hereby seek liquidated damages in an amount to be proven at

11  trial.

12       69.    Plaintiffs, on behalf of themselves and the putative class members, have been

13  required to retain counsel to pursue their rights and the rights of the putative class members

14  and therefore seek attorneys' fees and costs pursuant to California Labor Code § 1194(a).

15       70.    Plaintiffs, on behalf of themselves and the putative class members, seek an

16  award of interest pursuant to California Labor Code § 218.6.

17                **FIFTH CAUSE OF ACTION**

18       **(VIOLATION OF CALIFORNIA LABOR CODE § 226**

19              **AGAINST ALL DEFENDANTS**

20   **ON BEHALF OF PLAINTIFFS AND ALL OTHERS SIMILARLY SITUATED)**

21       71.    Plaintiffs, on behalf of themselves and all putative class members, hereby

22  reallege and incorporate herein paragraphs 1 through 70 of this complaint as though fully set

23  forth.

24       72.    California Labor Code § 226 requires employers to provide an accurate

25  itemized statement showing the total wages due to the employee for the pay period.  Cal. Lab.

26  Code §§ 226(a).  As set forth above, Defendants failed to authorize and/or permit putative

27  class members with required meal and/or rest breaks and/or failed to pay Plaintiffs and the

28  other putative class members all wages due.  Defendant accordingly owed putative class

1 members premium pay as wages for those missed meal and/or rest breaks and/or additional
2 earned compensation.  But Defendants failed to pay such wages.  Nor did they provide the
3 putative class members with a pay stub that accurately reflected these wages due, the hours
4 worked, the applicable pay rates, or any deductions that were being made.  Defendants, thus,
5 violated California Labor Code § 226 for these and other reasons.

6      73.    Defendants' failure to comply with California Labor Code § 226(a) was
7 knowing and intentional and each putative class member is entitled to statutory penalties or
8 actual damages under California Labor Code § 226(e).

9      74.    Plaintiffs, on behalf of themselves and the putative class members, also hereby
10 seek civil penalties pursuant to California Labor Code § 226.3, which provides that any
11 employer who violates California Labor Code § 226(a) shall be subject to a civil penalty in
12 the amount of $250 per employee per violation in an initial citation and $1,000 per employee
13 for each violation in a subsequent citation.  Under California Labor Code § 2699, Plaintiffs
14 and the putative class are entitled to their share of this civil penalty because Defendants'
15 violation was knowing, intentional, and certainly not inadvertent or due to a clerical error.

16      75.    Plaintiffs, on behalf of themselves and the putative class members, also hereby
17 requests attorneys' fees, costs, and interest pursuant to California Labor Code § 226(g).

18 **SIXTH CAUSE OF ACTION**

19 **(VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.***

20 **AGAINST ALL DEFENDANTS**

21 **ON BEHALF OF PLAINTIFFS AND ALL OTHERS SIMILARLY SITUATED)**

22      76.    Plaintiffs, on behalf of themselves and all putative class members, hereby
23 realleges and incorporates herein paragraphs 1 through 75 of this complaint as though fully
24 set forth.

25      77.    As described hereinabove, Defendants followed a policy and practice of failing
26 to authorize and/or permit meal and/or rest breaks, failing to timely pay wages due and
27 owing, automatically deducting 30 minutes of pay from each employee if they worked more
28 than their scheduled shift, and failing to provide an accurately itemized paystub, from at least

2004 through 2012 and/or to the present.  During this time period, Defendants failed to follow the law and failed to pay all wages due to Plaintiffs and the putative class members.

78.     Defendants knowingly, intentionally, and fraudulently concealed its unlawful payroll practices from Plaintiffs and the putative class members so that it could save money and bolster its bottom line.  Defendants engaged in this sharp, unlawful, and unfair practice to avoid payment to Plaintiffs and the putative class members of that what was legal owed to them.  In engaging in the aforementioned conduct, Defendants have engaged in unlawful, unfair, and fraudulent business practices in violation of California Business and Professions Code §§ 17200 *et seq.*

79.     Plaintiffs and the putative class members have suffered economic harm and actual injury as the result of Defendant's unlawful, unfair, and fraudulent business practices and, therefore, have standing to bring this action on behalf of themselves and the putative class members.

80.     As the result of Defendants' unlawful, unfair, and fraudulent conduct, Defendants have been unjustly enriched insofar as Defendants have withheld and recouped wages that were due to Plaintiffs and the putative class members and avoided its legal obligation to pay Plaintiffs and the putative class members wages and statutory penalties that were due to them.

81.     Plaintiffs, on behalf of themselves and the putative class members, are entitled to restitution of all of the wages earned and due to the putative class members, any other of Defendants' ill begotten gains, and injunctive relief prohibiting Defendants from engaging in the unlawful, unfair, and fraudulent payroll practices described herein.

82.     Plaintiffs, on behalf of themselves and the putative class members, also seek interest on the amount of restitution awarded to Plaintiffs and the putative class members.

83.     Plaintiffs, on behalf of themselves and the putative class members, also seek attorneys' fees under California Code of Civil Procedure § 1021.5 because this lawsuit seeks to enforce important public rights guaranteed by the California Labor Code.

**INDIVIDUAL CLAIMS**

**SEVENTH CAUSE OF ACTION**

**(DISABILITY DISCRIMINATION IN VIOLATION OF CAL. GOV'T CODE**

**§§ 12900 *ET SEQ.***

**AGAINST DEFENDANT ALTA DENA CERTIFIED DAIRY, LLC**

**ON BEHALF OF PLAINTIFF MIGUEL DE LA CUEVA ALONE)**

84.     Plaintiff Miguel de la Cueva ("Plaintiff") realleges and incorporates herein paragraphs 1 through 33 of this complaint as though fully set forth.

85.     Under the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900 *et seq.*, it is an unlawful employment practice for an employer to discharge an employee in whole or in part because of an employee's disability and/or medical condition. *See, e.g.*, Cal. Gov't Code § 12940(a).

86.     As set forth above, Plaintiff suffers from a disability under California law because he suffers from diverticulitis (and other stomach ailments), which caused him weakness, nausea, severe stomach pain, fever, sweats, and chills, among other symptoms, and limits him in several major life activities, including making him unable to go prolonged periods without eating, concentrate, and otherwise perform every day tasks. Plaintiff made Defendant aware he was disabled and requested reasonable accommodations for his disability, e.g., a disability leave of absence, a steadier route, and meal and rest breaks. In addition, Defendant clearly regarded Plaintiff as disabled given his status at time on a disability leave of absence and repeated requests for accommodation. While Defendant initially purported to grant Plaintiff the leave of absence that he required, Defendant then intimidated Plaintiff from taking all of the requested time off. At least twice, plaintiff went without disability related leaves, which caused him physical and emotional harm. Defendant also refused to adjust Plaintiff's schedule to accommodate his disability. Defendant also refused to permit Plaintiff to take meal and rest breaks to accommodate his disability. Defendant initially agreed to provide Plaintiff with an advance schedule so that Plaintiff could attend doctors' appointments, but Defendant did not ultimately do so. All of Plaintiff's

21

requests for accommodation were met with hostility.  Defendant treated Plaintiff differently than his non-disabled peers by retaliating against and ultimately terminating Plaintiff's employment.  And after 20+ years of dedicated and excellent service, Defendant terminated Plaintiff because of his disability, requests for accommodation, and other protected activity described herein.  Defendant, thus, terminated Plaintiff in violation of the FEHA.

87.    In addition, as set forth above, Defendant engaged in a consistent and continuous pattern of failing to accommodate Plaintiff's disability, discriminating, and/or retaliating against him as party of a pattern of discriminatory and unlawful conduct.  While some of this conduct occurred more than one year before Plaintiff filed his charge with the DFEH, the conduct was sufficiently similar in kind and character and had not achieved a degree of permanence such that the continuing violations doctrine applies.  Plaintiff offered several reasonable accommodations to which Defendant would initially agree only to later than renege or change its mind.  At no time, however, did Defendant engage in any informal good-faith dialogue to determine if an alternative reasonable accommodation existed when it rejected or stopped accommodating Plaintiff's disability.  Indeed, all of Plaintiff's requests for accommodation were met with hostility and ultimately retaliation and discrimination.

88.    As a direct, legal, and proximate result of Defendant's conduct, as alleged above, Plaintiff endured emotional distress, loss of wages and benefits pursuant to which Plaintiff is entitled to general and special damages according to proof.

89.    As a further direct, legal and proximate result of Defendant's conduct, Plaintiff was caused to and did employ the services of counsel to prosecute this action, and is accordingly entitled to an award of attorneys' fees according to proof.

90.    Plaintiff is informed and believes and thereupon alleges that Defendant's actions and each of them were taken with malice, oppression, fraud, and/or willful and conscious disregard of Plaintiff's rights, and were carried out by Defendant's managing agents and/or ratified by Defendant.  Plaintiff is therefore entitled to punitive damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**

**(FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF**

**CAL. GOV'T CODE §§ 12900 *ET SEQ.***

**AGAINST DEFENDANT ALTA DENA CERTIFIED DAIRY, LLC**

**ON BEHALF OF PLAINTIFF MIGUEL DE LA CUEVA ALONE)**

91.     Plaintiff realleges and incorporates herein paragraphs 1 through 33 and 84 through 90 of this complaint as though fully set forth.

92.     Under the FEHA, it is an unlawful employment practice for an employer to fail to offer a reasonable accommodation to an employee with a known disability. *See, e.g.*, Cal. Gov't Code § 12940(m).

93.     As set forth above, Plaintiff suffers from a disability under California law because he suffers from physiological impairment – diverticulitis (and other stomach ailments) – which caused him weakness, nausea, severe stomach pain, fever, sweats, and chills, among other symptoms, and limits him in several major life activities, including making him unable to go prolonged periods without eating, concentrate, and otherwise perform every day tasks.  Plaintiff made Defendant aware he was disabled and requested reasonable accommodations for his disability, *e.g.*, a disability leave of absence and meal and/or rest breaks.  In addition, Defendant clearly regarded Plaintiff as disabled given that he went on a disability leave of absence and repeatedly reminded Defendant of his physiological impairment when he requested breaks.  While Defendant initially purported to grant Plaintiff the leave of absence that he requested and required, Defendant then intimidated Plaintiff from taking all of the requested time off.  Defendant also refused to adjust Plaintiff's schedule to accommodate his disability.  Defendant also refused to permit Plaintiff to take meal and rest breaks to accommodate his disability.  Defendant initially agreed to provide Plaintiff with an advance schedule so that Plaintiff could attend doctors' appointments, but Defendant did not ultimately do so.  All of Plaintiff's requests for accommodation were met with hostility.

94.     Defendant did not provide these accommodations – or explore any alternatives. Defendant, thus, failed to reasonably accommodate Plaintiff in violation of the FEHA.  While

1  some of these failures occurred more than one year before Plaintiff filed his charge with the

2  DFEH, the conduct was sufficiently similar in kind and character and had not achieved a

3  degree of permanence such that the continuing violations doctrine applies.  Plaintiff offered

4  several reasonable accommodations that Defendant would initially agree to only to later than

5  renege or change its mind.  At no time, however, did Defendant engage in any informal good-

6  faith dialogue to determine if an alternative reasonable accommodation existed when it

7  rejected or stopped accommodating Plaintiff's disability.  Indeed, all of Plaintiff's requests

8  for accommodation were met with hostility and ultimately retaliation.

9      95.    As a direct, legal, and proximate result of Defendant's conduct, as alleged

10  above, Plaintiff endured emotional distress, loss of wages and benefits pursuant to which

11  Plaintiff is entitled to general and special damages according to proof.

12      96.    As a further direct, legal and proximate result of Defendant's conduct, Plaintiff

13  was caused to and did employ the services of counsel to prosecute this action, and is

14  accordingly entitled to an award of attorneys' fees according to proof.

15      97.    Plaintiff is informed and believes and thereupon alleges that Defendant's

16  actions and each of them were taken with malice, oppression, fraud, and/or willful and

17  conscious disregard of Plaintiff's rights, and were carried out by Defendant's managing

18  agents and/or ratified by Defendant.  Plaintiff is therefore entitled to punitive damages in an

19  amount to be determined at trial.

20                          **NINTH CAUSE OF ACTION**

21  **(FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF**

22                  **CAL. GOV'T CODE §§ 12900 *ET SEQ.***

23        **AGAINST DEFENDANT ALTA DENA CERTIFIED DAIRY, LLC**

24        **ON BEHALF OF PLAINTIFF MIGUEL DE LA CUEVA ALONE)**

25      98.    Plaintiff realleges and incorporates herein paragraphs 1 through 33 and 84

26  through 97 of this complaint as though fully set forth.

27      99.    Under the FEHA, it is an unlawful employment practice for an employer to fail

28  to engage in a timely, good-faith interactive process with a disabled employee to determine if

1  a reasonable accommodation exists. *See*, *e.g.*, Cal. Gov't Code § 12940(n).

2      100.  As set forth above, Defendant engaged in a consistent and continuous pattern of
3  failing to accommodate Plaintiff's disability.  While some of these failures occurred more
4  than one year before Plaintiff filed his charge with the DFEH, the conduct was sufficiently
5  similar in kind and character and had not achieved a degree of permanence such that the
6  continuing violations doctrine applies.  Plaintiff offered several reasonable accommodations
7  that Defendant would initially agree to only to later than renege or change its mind.  At no
8  time, however, did Defendant engage in any informal good-faith dialogue to determine if an
9  alternative reasonable accommodation existed when it rejected or stopped accommodating
10 Plaintiff's disability.  Indeed, all of Plaintiff's requests for accommodation were met with
11 hostility and ultimately retaliation.

12     101.  Instead of engaging in a good-faith interactive process with Plaintiff to
13 determine what routes would work for him, when he could take a meal break, or if he needed
14 any additional accommodation to do his job, Defendant failed to provide reasonable
15 accommodation.  Accordingly, Defendant failed to engage in a good-faith interactive process
16 in violation of the FEHA.

17     102.  As a direct, legal, and proximate result of Defendant's conduct, as alleged
18 above, Plaintiff endured emotional distress, loss of wages and benefits pursuant to which
19 Plaintiff is entitled to general and special damages according to proof.

20     103.  As a further direct, legal and proximate result of Defendant's conduct, Plaintiff
21 was caused to and did employ the services of counsel to prosecute this action, and is
22 accordingly entitled to an award of attorneys' fees according to proof.

23     104.  Plaintiff is informed and believes and thereupon alleges that Defendant's
24 actions and each of them were taken with malice, oppression, fraud, and/or willful and
25 conscious disregard of Plaintiff's rights, and were carried out by Defendant's managing
26 agents and/or ratified by Defendant.  Plaintiff is therefore entitled to punitive damages in an
27 amount to be determined at trial.

28

# TENTH CAUSE OF ACTION

## (RETALIATION IN VIOLATION OF CAL. GOV'T CODE
## §§ 12900 *ET SEQ.*
## AGAINST ALL DEFENDANT
## ON BEHALF OF PLAINTIFF ALONE)

105.    Plaintiff realleges and incorporates herein paragraphs 1 through 33 and 84 through 104 of this complaint as though fully set forth.

106.    Under the FEHA, it is an unlawful employment practice for an employer to retaliate against an employee because they raise concerns about unlawful or what they perceive to be unlawful conduct under the FEHA.  As set forth more fully above, Plaintiff repeatedly complained about the denial of accommodations for his disability, including his need for disability leave, an advance schedule (for time to attend doctors' appointments), an alternate schedule, time for a meal break, and other similar accommodations.  Plaintiff complained about the denial of his disability accommodations, and for being discriminated against and treated differently because of his disability / medical status (*i.e.* being suspended for a first accident when other non-disabled or healthy employees were not).  Plaintiff made such complaints to his supervisors and Human Resources.  His supervisors and Human Resources representatives were also made aware that Plaintiff had filed a complaint with the Department of Labor.

107.    Plaintiff's supervisors and Ms. Correa made it clear to Plaintiff his complaints were not well-received.  Shortly after Plaintiff's complaints, Defendant retaliated against Plaintiff and terminated his employment in violation of the FEHA.

108.    As a direct, legal, and proximate result of Defendants' conduct, as alleged above, Plaintiff endured emotional distress, loss of wages and benefits pursuant to which Plaintiff is entitled to general and special damages according to proof.

109.    As a further direct, legal and proximate result of Defendants' conduct, Plaintiff was caused to and did employ the services of counsel to prosecute this action, and is accordingly entitled to an award of attorneys' fees according to proof.

110.    Plaintiff is informed and believes and thereupon alleges that Defendants' actions and each of them were taken with malice, oppression, fraud, and/or willful and conscious disregard of Plaintiff's rights, and were carried out by Defendants' managing agents and/or ratified by Defendant.  Plaintiff is therefore entitled to punitive damages in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION

### (VIOLATION OF CAL. LABOR CODE § 1102.5

### AGAINST DEFENDANT ALTA DENA CERTIFIED DAIRY, LLC

### ON BEHALF OF PLAINTIFF MIGUEL DE LA CUEVA ALONE)

111.    Plaintiff realleges and incorporates herein paragraphs 1 through 33 and 84 through 110 of this complaint as though fully set forth.

112.    California Labor Code § 1102.5 makes it unlawful for an employer to retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee reasonably believes a violation of state or federal statute, or violation or noncompliance with a state or federal rule or regulation has occurred.

113.    As previously explained, Mr. de la Cueva reported Defendant's refusal to provide a leave of absence and/or otherwise accommodate his medical condition to the U.S. Department of Labor.  Defendant thereafter retaliated against him – ultimately by terminating his employment.  Accordingly, Defendant thereby violated California Labor Code § 1102.5.

114.    As a direct, legal, and proximate result of Defendants' conduct, as alleged above, Plaintiff endured emotional distress, loss of wages and benefits pursuant to which Plaintiff is entitled to general and special damages according to proof.

115.    As a further direct, legal and proximate result of Defendants' conduct, Plaintiff was caused to and did employ the services of counsel to prosecute this action, and is accordingly entitled to an award of attorneys' fees according to proof.

116.    Plaintiff is informed and believes and thereupon alleges that Defendants' actions and each of them were taken with malice, oppression, fraud, and/or willful and conscious disregard of Plaintiff's rights, and were carried out by Defendants' managing

FIRST AMENDED COMPLAINT

1   agents and/or ratified by Defendant. Plaintiff is therefore entitled to punitive damages in an
2   amount to be determined at trial.

3                                   **TWELFTH CAUSE OF ACTION**

4                   **(WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

5                         **AGAINST DEFENDANT ALTA DENA CERTIFIED DAIRY, LLC**

6                          **ON BEHALF OF PLAINTIFF MIGUEL DE LA CUEVA ALONE)**

7           117.   Plaintiff realleges and incorporates herein paragraphs 1 through 33 and 84
8   through 116 of this complaint as though fully set forth.

9           118.   It is against fundamental and well-established public policy to discharge an
10  employee because of his disability, fail to accommodate the employee, and fail to engage in
11  the interactive process. This fundamental public policy is embodied in the FEHA and
12  California Constitution. *See, e.g.*, Cal. Gov't Code § 12940(a), (m), (n). It is also against
13  fundamental and well-established public policy to deny an employee a meal and/or rest break.
14  Cal. Lab. Code §§ 226.7 and 512. In addition, it is also against fundamental public policy to
15  retaliate against an employee for disclosing information to a government or law enforcement
16  agency, where the employee reasonably believes a violation of state or federal statute, or
17  violation or noncompliance with a state or federal rule or regulation has occurred. Cal. Lab.
18  Code § 1102.5.

19          119.   As set forth above, Defendant discharged Plaintiff in whole or in part in
20  violation of these fundamental public policies and/or because Plaintiff opposed these
21  practices. Defendant, thus, has committed the tort of wrongful discharge in violation of
22  public policy.

23          120.   As a direct, legal, and proximate result of Defendant's conduct, as alleged
24  above, Plaintiff endured emotional distress, loss of wages and benefits pursuant to which
25  Plaintiff is entitled to general and special damages according to proof.

26          121.   Plaintiff is informed and believes and thereupon alleges that Defendant's
27  actions and each of them were taken with malice, oppression, fraud, and/or willful and
28  conscious disregard of Plaintiff's rights, and were carried out by Defendant's managing

1 │ agents and/or ratified by Defendant.  Plaintiff is therefore entitled to punitive damages in an

2 │ amount to be determined at trial.

3 │ ### THIRTEENTH CAUSE OF ACTION

4 │ ### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

5 │ ### AGAINST DEFENDANT ALTA DENA CERTIFIED DAIRY, LLC

6 │ ### ON BEHALF OF PLAINTIFF MIGUEL DE LA CUEVA ALONE)

7 │ 122.   Plaintiff realleges and incorporates herein paragraphs 1 through 33 and 84

8 │ through 121 of this complaint as though fully set forth.

9 │ 123.   Defendant's above described conduct was extreme and outrageous and beyond

10 │ the bounds of all decency and as a violation of statute and/or public policy outside the course

11 │ and scope of the normal employment relationship.  Defendant acted with the intent to

12 │ denigrate and degrade Plaintiff.  The conduct of Defendant in terminating Plaintiff based on

13 │ his disability, refusing to accommodate a disabled employee, and/or terminating Plaintiff to

14 │ avoid having to engage in the interactive process, violated California statutory law and public

15 │ policy against such conduct and was not anticipated by Plaintiff at the inception or during the

16 │ course of his employment.

17 │ 124.   Plaintiff could not have reasonably anticipated termination in violation of

18 │ California statutory law or public policy as a consequence of his employment.

19 │ 125.   As a legal, direct, and proximate result of Defendant's extreme and outrageous

20 │ conduct, as alleged above, Plaintiff has suffered severe emotional distress, anxiety, worry,

21 │ sleeplessness, and shock, in an amount according to proof.

22 │ 126.   Plaintiff is informed and believes and thereupon alleges that Defendant's

23 │ actions and each of them were taken with malice, oppression, fraud, and/or willful and

24 │ conscious disregard of Plaintiff's rights, and were carried out by Defendant's managing

25 │ agents and/or ratified by Defendant.  Plaintiff is therefore entitled to punitive damages in an

26 │ amount to be determined at trial.

27 │

28 │

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Miguel de la Cueva and Scott Parker, on behalf of themselves and those similarly situated, pray for judgment against Defendants Alta Dena Certified Dairy LLC, Dean Transportation, Inc., Heartland Farms, Fresh Dairy Direct of So Cal, Dean Foods Company, and Does 1 through 10, inclusive, and each of them, as follows:

1.     For general damages according to proof, on each cause of action for which such damages are available;

2.     For compensatory damages, according to proof on each cause of action for which such damages are available;

3.     For special damages, including punitive damages, according to proof on each cause of action for which such damages are available;

4.     For statutory and civil penalties, according to proof on each cause of action for which such damages are available;

5.     For prejudgment and postjudgment interest on any lost or unpaid wages according to law;

6.     For reasonable attorneys' fees and costs of suit incurred herein pursuant to Government Code § 12965(b), California Labor Code §§ 218.5, 226, 1194(a), and any other relevant provision under California law that provides for attorneys' fees;

7.     For equitable relief to the extent available under law;

8.     For statutory penalties to the extent available under law; and

9.     For such other and further relief as the Court deems proper and just.

1 | **PLAINTIFFS HEREIN DEMAND A TRIAL BY JURY OF ALL CAUSES OF**

2 | **ACTION ALLEGED HEREIN.**

3 | DATED:  February 1, 2013

THE LAW OFFICES OF
TIMOTHY B. McCAFFREY, JR.

By _____
      Timothy B. McCaffrey, Jr.

Attorneys for Plaintiffs and Class
Representatives Miguel de la Cueva and
Scott Parker

FIRST AMENDED COMPLAINT