COPY

1  TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
   NATASHA CHESLER (S.B. #227540)
2  THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
   A Professional Corporation
3  11377 West Olympic Boulevard, Suite 500
   Los Angeles, California 90064-1683
4  Telephone: (310) 882-6407
   Facsimile: (310) 882-6359
5  E-Mail: tmccaffrey@tbmlaw.net
   E-Mail: nchesler@tbmlaw.net
6
7  Attorneys for Plaintiff and Class
   Representative Miguel de la Cueva

8

9              **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11

12  MIGUEL DE LA CUEVA, on behalf of       CASE NO. CV 12-1804-GHK (CWx)
    himself and those similarly situated,
13                                         **PLAINTIFF'S NOTICE OF**
                                           **MOTION AND MOTION FOR**
14          Plaintiff,                     **CLASS CERTIFICATION;**

15      vs.                                **MEMORANDUM OF POINTS AND**
                                           **AUTHORITIES**
16  ALTA DENA CERTIFIED DAIRY,
    LLC, a Delaware Limited Liability      **DECLARATIONS AND EXHIBITS**
17  Company, ALTA-DENA CERTIFIED           **FILED SEPARATELY (OR**
    DAIRY, INC., a Delaware Corporation,   **LODGED UNDER SEAL WHERE**
18  and DOES 1 through 10, inclusive,      **INDICATED)**

19          Defendants.                    **UNREDACTED VERSION**
                                           **LODGED UNDER SEAL PER**
20                                         **PROTECTIVE ORDER**

21
                                           Hearing Date:     None Set
22
                                           Trial Date:       None Set
23

24      TO DEFENDANT AND THEIR COUNSEL OF RECORD:

25      PLEASE TAKE NOTICE THAT pursuant to the above-entitled Court's

26  scheduling order dated August 3, 2012, as modified by the Magistrate Judge's order

27  dated January 3, 2013, Plaintiff Miguel de la Cueva on behalf of himself and those

28  similarly situated, as well as proposed Plaintiffs Scott Parker and Juan Perez

(collectively, "Plaintiff") will move and hereby does move for class certification of the following class:

[PROPOSED] CLASS DEFINITION

All persons employed by Alta Dena Certified Dairy, LLC and its successor Dean Transportation, Inc., as a driver in California, including wholesale drivers, retail drivers, and transport drivers, from March 2008 until the time of final judgment in this action.[1]

Plaintiff requests that this Court grant certification of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiff's counsel to serve as counsel to the class ("Class Counsel") under Rule 23(g), and authorize Notice to the Class of the pending action and its members' right to opt-out under Rule 23(c)(2).  In the alternative, Plaintiff also seeks certification of appropriate subclasses and/or of the following common issues of law and/or fact under Rule 23(c)(4).

(1) whether Defendant's policy requiring that drivers stay within one mile (or half mile) radius of their route allows for an off-duty meal and/or rest period;

(2) whether Defendant's meal and rest break policy from 2008 until mid-2011 which did not specify the drivers' rights under California Labor Code § 512 and the applicable Industrial Welfare Commission Wage Orders was lawful;

(3) whether Defendant's corporate culture, route and/or delivery schedules, and its failure to educate drivers regarding their rights pressured the drivers to perform their duties in ways that omitted breaks and/or coerced against the taking of legally protected breaks;

(4) whether Defendant's policy and/or practice of automatically deducting 30 minutes of time from each putative class member without written authorization and

---

[1] Plaintiff believes this class definition is sufficient but in the event the Court disagrees, Plaintiff respectfully requests permission to propose certification of subclasses or on particular issues.

1  regardless of whether they took a 30 minute duty free meal break is lawful;

2      (5) whether Defendant's policy and/or practice of not paying any premium pay
3  when putative class members could not take a statutorily compliant meal or rest break
4  is lawful;

5      (6) whether Defendant's paystubs violate California Labor Code § 226 given
6  that they do not accurately reflect the hours worked in the pay period, the 30 minute
7  automatic deduction, or the proper employer;

8      (7) whether Defendant failed to pay all wages earned in a timely manner during
9  employment; and

10      (8) whether Defendant knowingly failed to pay all wages due upon termination
11  of employment.

12      This motion is made following the conference of counsel pursuant to Local Rule
13  7-3, which took place starting in June 2012, and has continued on other dates
14  thereafter.

15  DATED: February 19, 2013

Respectfully submitted,

THE LAW OFFICES OF
TIMOTHY B. McCAFFREY, JR.

By _____
Timothy B. McCaffrey, Jr.

Attorneys for Plaintiff and Class
Representative Miguel de la Cueva

CV 12-1804-GHK (CWx)
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND SUMMARY OF COMMON PROOF ..........................1

   A.   Failure To Authorize Or Permit Meal And Rest Breaks...........................1

      1.   Route Radius Restriction .............................................2

      2.   Deficient Meal And Rest Policy ..................................2

      3.   Uniform Practices Did Not Authorize Or Permit Breaks .................2

   B.   Unpaid Wages/Waiting Time Penalties ..........................................3

   C.   Inaccurate Paystubs (California Labor Code § 226) ...........................3

   D.   Violation of Business and Professions Code § 17200. ........................3

II.  FACTUAL BACKGROUND AND SUMMARY OF CLAIMS ASSERTED ...............................................................................3

   A.   The Parties .........................................................................3

   B.   Defendant's Policies And Practices ..............................................5

      1.   Defendant's Uniform Route Restriction Policy..........................5

      2.   Defendant's Uniform Deficient Meal And Rest Break Policy .........6

III. LEGAL ARGUMENT..........................................................................7

   A.   Standards For Class Certification..................................................7

      1.   Numerosity Is Satisfied Under Rule 23(a)(1) ...........................8

      2.   Commonality Is Satisfied Under Rule 23(a)(2)..........................8

      3.   Typicality Is Satisfied Under F.R.C.P. 23(a)(3) .........................9

      4.   Adequacy Of Representation Is Satisfied Under F.R.C.P. 23(a)(4)....................................................................9

   B.   The Requirements Of Rule 23(b)(3) Are Also Met ...........................11

      1.   Class Action Is Superior To Individual Actions...........................11

      2.   The Rule 23(b)(3)(A)-(D) Factors Favor Class Treatement...........12

      3.   Common Questions Of Law And Fact Predominate .....................12

         (a)   Predominance Of Common Issues Is Satisfied As To

The Meal And Rest Break Claims ..................................13

(b)   Common Questions Predominate With Respect To
Plaintiff's Claims For Unpaid Wages..................................21

(c)   Predominance Exists With Respect To Plaintiff's
Paystub Claims ..................................22

(d)   Predominance Exists For The Derivative Claims ................25

IV.   CONCLUSION..................................25

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES

CV 12-1804-GHK (CWx)

1

# **TABLE OF AUTHORITIES**

2

**Page**

3 **CASES**

4 *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1033 (2012)........passim

5 *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 573 (C.D. Cal. 2008)...........................20

6 *Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949, 963 (2005).............13, 16, 20

7 *Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003)...............................................8

8 *Dilts v. Penske*, 267 F.R.D. 625, 638 (S.D. Cal. 2010) ...............................17, 18, 20

9 *Espinoza v. Domino's Pizza, LLC*, 2009 U.S. Dist. LEXIS 31093 at *5, 10, 40
    (C.D. Cal. 2009)................................................................................17, 20

10

11 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ........................8, 9, 12

12 *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 957 (9th
    Cir. 2009)...............................................................................................12

13 *Jaimez v. DAIOHS USA, Inc.*, 181 Cal. App. 4th 1286, 1304-05 (2010) ......................17

14 *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008) .........................13

15 *Krzesniak v. Cendant Corp.*, 2007 U.S. Dist. LEXIS 47518...................................11

16 *Lerwill v. Inflight Motion Pics., Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)....................10

17 *Mendez v. R+L Carriers, Inc.*, 2012 WL 5868973, *15-20 (N.D. Cal. Nov. 19,
    2012).......................................................................................13, 17, 18, 20

18

19 *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094 (2007) ..............................21

20 *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 443 (N.D. Cal. 2008) ...........8, 11

21 *Pina v. Con-Way Freight, Inc.*, 2012 WL 1278301, at *7 (N.D. Cal. 2012).....17, 18, 20

22 *Road Sprinkler Fitters v. G&G Fire Sprinklers, Inc.*, 102 Cal. App. 4th 765
    (2002)........................................................................................................25

23 *Rosenburg v. IBM Corp.*, 2006 U.S. Dist. LEXIS 41775, 2006 WL 1627108, at
    *10 (N.D. Cal. 2006)................................................................................11

24

25 *Ross v. US Bank Nat'l Assoc.*, 2009 U.S. Dist. LEXIS 116875 (N.D. Cal. 2009)........17

26 *Sarviss v. General Dynamics Information Tech., Inc.*, 663 F. Supp. 2d 883, 991
    (C.D. Cal. 2009)........................................................................................10

27 *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)...............................11

28

*Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 614 (C.D. Cal. Jan. 20, 2005) ..................................................................................................12

*Welling v. Alexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994) ............................8

*Wiegele v. Fedex Ground Package Sys., Inc.*, 2008 WL 410691, *11 (S.D. Cal. Feb. 12, 2008) ...............................................................................12

*Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 204 (N.D. Cal. 2009)............8

## STATUTES

Cal. Bus. & Prof. Code § 17200 ...................................................................25

Cal. Lab. Code §§ 201-203 ..........................................................................25

Cal. Lab. Code §§ 221-224 ..........................................................................22

Cal. Lab. Code § 226(a) ...............................................................................23

Cal. Lab. Code § 226(e) ...............................................................................24

Cal. Lab. Code § 226(e)(2) ..........................................................................24

Cal. Lab. Code § 512(a) ...............................................................................13

Cal. Lab. Code § 512(e) .................................................................................7

## OTHER AUTHORITIES

Division of Labor Standards Enforcement Policies and Interpretations Manual (Revised) ("DLSE Manual") §§ 45.1.5.1, 46.5 ........................................14

## RULES

F.R.C.P. 23 .....................................................................................................7

F.R.C.P. 23(a)(2) ............................................................................................8

F.R.C.P. 23(a)(3) ............................................................................................9

F.R.C.P. 23(a)(4) .......................................................................................9, 11

F.R.C.P. 23(b)(3) ......................................................................................11. 12

F.R.C.P. 23(b)(3) ..........................................................................................12

F.R.C.P. 23(b)(3)(A) .....................................................................................12

F.R.C.P. 23(b)(3)(B) ...................................................................................................12

F.R.C.P. 23(b)(3)(C) ...................................................................................................12

F.R.C.P. 23(g) ..............................................................................................................11

F.R.C.P. 30(b)(6)..........................................................................................................23


**TREATISES**

*Newberg On Class Actions* §§ 3:58-3:60 (5th Ed. 2011) ............................................10


**REGULATIONS**

IWC Order 9-2001 ..................................................................................................13, 14

IWC Order 13-2001 ...............................................................................................13, 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF COMMON PROOF

Defendant Alta Dena Certified Dairy, LLC ("Defendant") manufactures, distributes, and exports dairy and beverage products in Southern California.  (Ex. 113 at 2:25-27.)  Between February 1, 2008 to the present, Defendant has employed between 150-350 drivers.[2]  Plaintiff Miguel de la Cueva ("Plaintiff"), a former driver, moves for class certification based on non-compliant, *uniform policies and company-wide practices*, resulting in class-wide:  (1) unprovided meal and rest breaks; (2) unprovided wages and/or forfeiture of earned wages; (3) unprovided accurate paystubs; and (4) waiting time penalties.

Class treatment is warranted here because Plaintiff can establish his claims at a readily manageable trial using common proof of uniform company-wide policies and practices *applicable to and with common detrimental impact upon the putative class*. Plaintiff intends to prove his claims by a preponderance of evidence by presentation of class representative testimony, corporate representative testimony, corporate records, expert testimony (if necessary), and representative evidence extrapolated to the class from a random sample of class members.  By reliance on these modes of collective proof, common issues of fact and law predominate, and *negate any need* to require individualized inquiry from all 150+ putative class members other than for proof of damages.  Class action procedure provides an efficient mechanism to adjudicate the following common claims:

### A.   Failure To Authorize Or Permit Meal And Rest Breaks

Plaintiff contends that Defendant failed to authorize and permit meal and rest breaks for three separate and distinct reasons:

---

[2] Apparently, Alta Dena "transferred" these drivers to a sister-corporation on January 1, 2011.  (Docket No. 43-1 at ¶¶ 9, 13.)

### 1.    Route Radius Restriction

First, from 2008 to the present, Defendant had a uniform written policy that required meal periods to be taken within a one-half (or one mile) radius of the drivers' prescribed routes.  Plaintiff contends that by requiring drivers to stay within a specific radius of their route during meal breaks, Defendant by definition failed and continues to fail to provide a duty-free meal and rest break.

### 2.    Deficient Meal And Rest Policy

Second, from March 2008 until early 2011, Defendant's meal and rest break policy did not comply with California law on its face insofar as it did not reference the timing for first meal break, reference in any way a second meal break, and misstated the timing for rest breaks.  Defendant's admission that it did not comply with the requirement to provide a 30-minute duty free meal break before the sixth hour of a driver's shift until sometime in 2011 only serves to prove the that it did not follow the law.  Moreover, because class members often worked shifts in excess of 10 hours, they were entitled to a second meal period (which Defendant failed to offer them prior to 2011).  And at no point did Defendant notify putative class members that they would be entitled to an extra hour of premium pay in the event that they were unable to take a statutory meal or rest break.  Defendant simply did not comply with the law.

### 3.    Uniform Practices Did Not Authorize Or Permit Breaks

Third, Plaintiff intends to prove that in addition to the aforementioned policies, Defendant's uniform practices created a work environment that did not authorize or permit a duty free meal or rest break as required by California law.  Plaintiff's contention is based on common facts that will establish that Defendant:  (a) elected not to schedule meal periods for the employees; (b) scheduled shifts as tightly as possible to increase productivity; (c) discouraged employees from taking breaks until all deliveries were completed; (d) habitually used a GPS software ("XATA") to monitor the putative class members' every move and post various efficiency reports designed to discourage the drivers from taking breaks; and (e) never once paid a putative class

1  member any premium pay for missed meal and/or rest breaks even though the records
2  show it frequently happened.

### B. Unpaid Wages/Waiting Time Penalties

Defendant also had a uniform policy and/or practice of automatically deducting 30 minutes of pay from its drivers on a daily basis regardless of whether or not the drivers took a duty free meal period (which Plaintiff contends they never did because of the route radius restriction). Further, Defendant obtained no written authorization for this deduction nor was there any established means by which a driver could reverse the automatic deduction. In fact, the automatic deduction has never been reimbursed. Second, Plaintiff contends Defendant violated California Labor Code §§ 201-204 because it never paid any driver any premium pay for Defendant's failure to authorize and/or permit the putative class members to take a meal and/or rest break. As a result of these violations, Defendant necessarily failed to pay all wages due both during employment and following the termination of employment.

### C. Inaccurate Paystubs (California Labor Code § 226)

Defendant violated this section because the paystubs did not accurately reflect hours worked in the pay-period or the 30 minute automatic deduction. In addition, from 2008 through 2010, Defendant's paystubs identified the wrong employer. Thus, all putative class members suffered the same injury – they could not readily determine how their compensation was determined or the correct legal entity that employed them.

### D. Violation of Business and Professions Code § 17200.

This claim is predicated on Plaintiff's first and/or second causes of action and allows the recovery of unpaid wages as restitution.

## II. FACTUAL BACKGROUND AND SUMMARY OF CLAIMS ASSERTED

### A. The Parties

Alta-Dena is a subsidiary of Dean Foods Company ("Dean Foods"). (Ex. 113 at 2:25-27.) Dean Foods owns and operates Alta-Dena's dairy operations. (Id.) Within the relevant period, Alta-Dena has operated three distribution centers in California:

1   City of Industry, Highland, and San Diego. (Id. at 3:1-3.) From approximately 2008

2   through 2010, Alta Dena employed approximately 148 drivers at these locations,

3   whose job was to transport products to Alta-Dena's customers and make shuttle runs

4   between the facilities or to distributors. (Id. at 3:3-7; Docket No. 43-1, ¶ 21.)

5         Dean Transportation, Inc. ("DTI") is also a wholly-owned subsidiary of Dean

6   Foods. (Docket No. 43-1, ¶ 8.) Effective January 1, 2011, drivers previously

7   employed at Alta-Dena (and other Dean Foods subsidiaries in Southern California)

8   transferred to and became employees of DTI. (Id. ¶¶ 9 and 13.) The drivers'

9   supervisors and managers also transferred over to DTI. (Llamas 16:10-15.) Since

10  January 1, 2011, approximately 350+ drivers have been employed by DTI. (Id. ¶ 20.)

11        There are three basic types of drivers: (1) Transport/Relay; (2) Wholesale; and

12  (3) Shipping. (Llamas 41:16-25.) All drivers have the same basic job duties – to

13  deliver Alta Dena products within California. Transport/Relay drivers deliver products

14  to either another Alta Dena branch or a distributor branch. (Id. at 42:19-43:2.)

15  Wholesale drivers deliver products directly to stores (i.e., Target, etc.) (Id. at 43:3-6.)

16  Shipping drivers deliver products to customer warehouses (i.e., Ralphs, Safeway, etc.)

17  (Id. at 43:7-10.) In addition, until June 2011, Defendant also had "Class B" drivers,

18  who drove a smaller truck and delivered exclusively to Coffee Bean. (Id. at 42:12-15;

19  Sanchez 90:24-91:1, 92:19-25.)

20        All drivers are covered by the same employee handbook. (Llamas at 15:19-

21  16:2.) All drivers work full-time schedules and were paid for at least eight hours a

22  day. (Id. at 46:22-24.) All drivers are subject to same meal and rest break

23  requirements. (Rodriguez 90:13-17.) At all relevant times, Defendant has

24  automatically deducted 30 minutes for lunch for all drivers at all locations, regardless

25  of whether or not a driver logged a meal break. (Llamas, 109:7-23, 110:6-14, 155:20-

26  156:8, 160:12-17; Alfaro 45-49, 54.) Defendant did not obtain drivers' permission to

27  make this deduction, nor did Defendant ever pay the 30 minutes back. (Id.)

28        Defendant dictated the route for all drivers – where they are going, the order

they are supposed to go in, and the way they are taking for the most part. (Llamas 134:23-135:7, 253:10-20, 265:16-20, 266:14-19.) Defendant specifically stressed efficiency and being on time. (Llamas 51-57, 80, 85-86, 95-96, 111, 204; Rodriguez 49 & see, e.g., Exs. 59, 65, 66, 68, 83, 84.) Further, all drivers were and are subject to regulations from the Department of Transportation ("DOT"), which limits drivers to 16 hours on the clock, at which point they must have at least 10 hours off before driving again. (Id. 48:17-25.) Meal and rest breaks are included in that time worked, such that if a driver takes meal and rest breaks he will have less available hours under the DOT regulations. (Id. 228:21-229:20) Defendant does not want its drivers exceeding the DOT limits. (Id.)

**B.    Defendant's Policies And Practices**

In approximately September 2008, Defendant implemented a computer system called XATA, which is a GPS system that monitors every movement the truck makes. Defendant required drivers to enter tasks performed, including any "delay" – which included meal and rest breaks. (Llamas 142:6-23, 180:2-4, 242:17-20.) Once XATA was implemented, supervisors monitored the whereabouts of the trucks back at the plant, such that they could see where every truck was at any given point in time, (Rodriguez 216:1-8), and routinely checked whether drivers appropriately log meal and rest breaks. (Llamas 207:25-208:11, 219:15-220:10)

**1.    Defendant's Uniform Route Restriction Policy**

From 2008 to the present, Defendant required drivers to stay within route limits (within a half-mile to a mile), including during the meal period. (Llamas 66:25-67:21, 71:22-25, 256:1-23, Exs. 80, 81, and 85.) Breaking this company policy may lead to discipline. (Llamas 66:25-67:9, 67:19-23, 72:2-6.) For example, driver Juan Perez was written up for driving outside of route limits. (Llamas 68:14-23, 69:23-70:10,

1  Perez Decl., ¶ 11, Ex. A.)[3]

2      **2.   Defendant's Uniform Deficient Meal And Rest Break Policy**

3      In 2008, Defendant had a management meeting, which addressed timing

4  requirements for meal and rest breaks.  (Llamas 93:25-94:9, 94:17-95:4, 96:23-97:6,

5  100:9-101:13, 102:15-20, 262:8-16.)  This was supposed to be implemented company

6  wide, but there were concerns on the distribution side because scheduling meal/rest

7  breaks was problematic.  (Id.)  Indeed, the distribution department couldn't even

8  imagine how they could comply.  (Id. 100:9-101:13.)  Thus, Defendant made no effort

9  to inform drivers of the timing for meal or rest breaks, but merely continued its

10 practice of just telling drivers to take a meal break at their discretion at some point

11 during the day.  (See id.)  Defendant did not provide a scheduled meal or rest break in

12 the drivers' routes.  (Id. 102:15-20.)[4]  In fact, from 2008 to the present, managers have

13 never scheduled a meal or rest break time for the drivers.  (Llamas. 246:8-16.)[5]

14      Between June-August 2009, Human Resources ("HR") emailed management at

15 all locations concerning drivers who were not taking any meal break let alone one

16 _____

17 [3] When first asked whether employees could deviate from this policy, the Defendant's
   Rule 30(b)(6) witness plainly testified: "Well, I mean the driver can deviate, but
18 there's probably going to be repercussions."  (Llamas 66:25-67:9; 71:7-14, 72:2-6.)
   Then – after a break with counsel – he seemingly ran from this testimony claiming that
19 the *driver* could leave, just not the truck, and, thus, could be "relieved of his duty" if he
   chose to be picked up by someone and got permission from the company. (Id. 196:3-
20 12, 200:15-22.)  Yet, he could only recall one or two drivers that asked for such
   permission.  (Id. 199:12-18.)  This was also contradicted by the testimony of
21 supervisor Sanchez, who expects drivers to have the "truck in sight" at all times
   (including lunch) and is unaware if drivers are told they can leave the truck. (Sanchez
22 205:22-206:24, 208:5-9.)  Indeed, drivers are given this written policy without any
   such explanation. (Llamas 249-252.)

23 [4] Indeed, at least one supervisor clearly did not know what California law provides –
   and thus could not have appropriately scheduled breaks for his drivers – as he
24 repeatedly testified that prior to 2011, drivers were only entitled to one rest break of 15
   minutes regardless of how many hours worked. (Sanchez 68:25-69:1, 76:20-24, 78:4-
25 6, 231:6-232:24, 243:10-20.)  After a break with counsel, he later tried to change his
   testimony, but then seemed to backtrack to his original position again. (Id. 256:12-
26 258:20.)

27 [5] Also, during this time period, (2008-2010), Defendant had <u>no written policy</u> regarding
   a second meal period.  (See Llamas 100:1-8.)

28

1 within the first six hours of their shift.  (Exs. 60-62.)  Defendant claimed at deposition
2 that *every single* instance was driver error (*i.e.*, they took the meal period, but didn't
3 log it into XATA).  (Llamas 119:14-20.)  Indeed, Defendant claims it is batting 1,000
4 in that no driver has *ever* missed a meal period.  (Id. 116:18-21, Rodriguez 163-164.)
5 But Defendant's records tell a different story.  (See Sanchez 173-175, 177; Llamas 90,
6 241-243; Exs. 25, 79, 104-106, 127, 132, 138.)
7     **It was not until 2011** that Defendant let drivers know that meal periods were to
8 be taken before the sixth hour worked.  (Llamas 102:21-103:6, 106:12-24.)  In 2011,
9 HR told the distribution department they now had to "try and make the effort to follow
10 the California state law."  (Id. 103:2-12.)  At that time, drivers were also informed that
11 if they worked more than 12 hours, they had a mandatory 30-minute unpaid meal break
12 that had to be taken.  (Id. 99:4-20; see also Perez Decl. ¶ 8.)
13     Then in June 2011, a union contract with City of Industry was finalized.  But it
14 was not until on or about May 21, 2012, that a letter agreement was reached providing
15 for the first meal break before the 10th hour worked.  (Id. 105:25-106:11, Ex. 96.)[6]
16 Thus, from 2008 to the present, other than a short period from January to June 2011,
17 Defendant's practice was at best to make lunch available at some point before the 10th
18 hour.  (Llamas 146:3-19, 147:2-10.)  At no point has Defendant paid any premium pay
19 for to a driver failure to provide a duty free meal or rest break.  (Alfaro 45-49, 55-56.)
20 Likewise, at no point has Defendant reversed a 30 minute deduction.  (Id.)

**III.  LEGAL ARGUMENT**

    **A.  Standards For Class Certification**

    "The decision whether to certify a class is committed to the discretion of the
district court within the guidelines of Rule 23 of the Federal Rules of Civil Procedure.

---

[6] Whether this Collective Bargaining Agreement is sufficient to satisfy the requirements of California Labor Code § 512(e) is essentially a partial affirmative defense – common to all class members – that need not be addressed further at this time.

1 *Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003).  A court may certify a class if
2 a plaintiff demonstrates that all of the prerequisites of Rule 23(a) have been met, and
3 that at least one of the requirements of Rule 23(b) have been met. *Otsuka v. Polo*
4 *Ralph Lauren Corp.*, 251 F.R.D. 439, 443 (N.D. Cal. 2008).

### 1.   Numerosity Is Satisfied Under Rule 23(a)(1)

6      The prerequisite stated in F.R.C.P. 23(a)(1) is that "the class is so numerous that
7 joinder of all members is impracticable." "There is no set number cut-off." *Welling v.*
8 *Alexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994) (courts have certified classes as small as
9 14 and have often certified classes with 50-60 members).  Here there are
10 approximately 150-350 putative class members (depending on whether DTI is added to
11 this action).  Either way, this number is sufficient.

### 2.   Commonality Is Satisfied Under Rule 23(a)(2)

13      The next prerequisite stated in F.R.C.P. 23(a)(2) is "there are questions of law or
14 fact common to the class." "The Ninth Circuit has explained that the commonality
15 requirement of subsection (a)(2) is construed permissively. *Hanlon v. Chrysler Corp.*,
16 150 F.3d 1011, 1019 (9th Cir. 1998).  Under F.R.C.P. 23(a)(2), "the existence of shared
17 legal issues with divergent factual predicates is sufficient, as is a common core of
18 salient facts coupled with disparate legal remedies within the class." *Wren v. RGIS*
19 *Inventory Specialists*, 256 F.R.D. 180, 204 (N.D. Cal. 2009).

20      There are many questions of law and fact applicable to all class members.  They
21 include whether the one mile (or half mile) route radius restriction is lawful; whether
22 Defendant's meal and rest break policy before early 2011 was lawful; whether
23 Defendant's corporate culture, route and/or delivery schedules, and its failure to
24 educate drivers regarding their rights pressured the drivers to perform their duties in
25 ways that omitted breaks and/or coerced against the taking of legally protected breaks;
26 whether Defendant's policy and/or practice of automatically deducting 30 minutes of
27 time from each putative class member without written authorization and regardless of
28 whether they took a 30 minute duty free meal break is lawful; whether Defendant's

1  policy and/or practice of not paying any premium pay when putative class members
2  could not take a statutorily compliant meal or rest break is lawful; whether Defendant's
3  paystubs are compliant given that they do not accurately reflect the hours worked in
4  the pay period or the 30 minute automatic deduction; whether Defendant failed to pay
5  all wages earned in a timely manner during employment; and whether Defendant
6  knowingly failed to pay all wages due upon termination of employment.

7        3.    **Typicality Is Satisfied Under F.R.C.P. 23(a)(3)**

8        The prerequisite of F.R.C.P. 23(a)(3) is that "claims or defenses of the
9  representative parties are typical of the claims or defenses of the class." As the Ninth
10 Circuit has explained, "under the rule's permissive standards, representative claims are
11 'typical' if they are reasonably co-extensive with those of absent class members; the
12 need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

13       Plaintiff's claims are the same as those of the absent class members. The named
14 Plaintiff was subjected to the same uniform policies and practices as the other putative
15 class members. All class members were subjected to the one mile (or half mile) route
16 radius limit; all class members were subjected to the same deficient meal and rest
17 break policy; all class members were subjected to the same heavily scheduled route
18 and efficiency standards; Defendant did not believe – or at least did not inform the
19 drivers – that the law applied to any of its drivers from March 2008 until 2011; all
20 class members were subjected to the 30 minute automatic deduct; all class members
21 were not paid any premium pay when they were unable to take a compliant meal or
22 rest break; all class members received the same form of paystub; and Plaintiffs had
23 their employment terminated and thus are eligible for waiting time penalties. Thus, the
24 class representative's claims are typical of the absent putative class members.

25       4.    **Adequacy Of Representation Is Satisfied Under**
26             **F.R.C.P. 23(a)(4)**

27       The prerequisite of F.R.C.P. 23(a)(4) is "the representative parties will fairly and
28 adequately protect the interests of the class." "To satisfy this requirement . . . Plaintiffs

1  must establish that: (1) the class representatives do not have a conflict of interest; and
2  (2) class counsel will adequately represent the interests of the class." *Lerwill v.*
3  *Inflight Motion Pics., Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). "Only conflicts that are
4  fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from
5  meeting the Rule 23(a)(4) adequacy requirement." *Newberg On Class Actions* § 3:58
6  (5th Ed. 2011). "All that is required – as the phrase "absence of conflict" suggests – is
7  sufficient similarity of interest such that there is no affirmative antagonism between
8  the representative and the class." *Id.* "Conflicts that are merely speculative or
9  hypothetical will not affect the adequacy inquiry. A conflict must be manifest at the
10 time of certification rather than dependent on some future event or turn in the litigation
11 that never occur." *Id.* "When the class representative's claims are for the same type of
12 relief as those of the class, there is no obstacle to them being an adequate
13 representative." *Id.* § 3:59. Here, Plaintiff is seeking precisely the same type of relief
14 as the putative class members. Namely, Plaintiff seeks unpaid wages, statutory and
15 civil penalties, interest, and attorneys' fees.

16      While Plaintiff also brings individual claims related to the termination of his
17 employment, there is no actual conflict of interest between Plaintiff and the putative
18 class members. The remedies sought by the individual claims are distinct from the
19 relief sought by the class claims. Put another way, the class claims for unpaid wages
20 and associated penalties are not available by virtue of Plaintiff's individual wrongful
21 termination claims. Thus, nothing about the individual claims impacts or otherwise
22 affects Plaintiff's desire to fully and vigorously pursue the class wide wage and hour
23 claims. *See Newberg, supra,* §§ 3:59, 3:60 (class representative with incentive to
24 pursue claims is adequate representative).

25      Furthermore, Plaintiff's status as a former employee does not create a conflict of
26 interest. *See, e.g., Sarviss v. General Dynamics Information Tech., Inc.,* 663 F. Supp.
27 2d 883, 991 (C.D. Cal. 2009) ("Plaintiff seeks to represent both past and current
28 employees, while he himself is a past employee. The Court nevertheless sees no

1  conflict of interest in Plaintiff's representation of all such employees . . . the relief
2  Plaintiff seeks for such claims . . . will be common to all such individuals."). *See also*
3  *Krzesniak v. Cendant Corp.,* 2007 U.S. Dist. LEXIS 47518 (former employees often
4  provide "superior representation"); *Rosenburg v. IBM Corp.,* 2006 U.S. Dist. LEXIS
5  41775, 2006 WL 1627108, at *10 (N.D. Cal. 2006) (similar) (citation omitted).
6      The other aspect of Plaintiff's adequacy is his involvement in the case.  As
7  detailed in the supporting declarations, Plaintiff has been actively involved,
8  participating in meetings, telephonic conversations, and other communications
9  regarding case status, strategy, and discovery responses.  (De La Cueva Decl. ¶ 11.)
10     Likewise, under Rule 23(a)(4) and Rule 23(g), class counsel is adequate.  The
11  qualifications of class counsel are detailed in the accompanying declarations of
12  Timothy B. McCaffrey, Jr. and Natasha Chesler both of whom have been approved
13  before as adequate counsel in wage and hour class actions.
14  **B.     The Requirements Of Rule 23(b)(3) Are Also Met**
15         **1.     Class Action Is Superior To Individual Actions**
16     Plaintiff seeks certification under F.R.C.P. 23(b)(3).  There are essentially two
17  requirements – superiority and predominance.
18     As for superiority, Rule 23(b)(3) provides that the "class action is superior to
19  other available methods of fairly and efficiently adjudicating the controversy."
20  "Where classwide litigation of common issues will reduce litigation costs and promote
21  greater efficiency, a class action may be superior to other methods of litigation, and is
22  certainly superior if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.,*
23  97 F.3d 1227 (9th Cir. 1996).  In *Otsuka*, plaintiffs argued that without a class action,
24  many class members "might not otherwise attempt to litigate their relatively small
25  wage and hour claims," and Defendant argued that "plaintiffs could easily bring small
26  claims actions or file complaints with [the California Division of Labor Standards
27  Enforcement]." *Otsuka, supra,* at 448.  The court found that while they "certainly
28  could file such claims . . . it would be far more efficient and far less costly to litigate

1  their claims in a class action." *See also Wiegele v. Fedex Ground Package Sys., Inc.,*

2  2008 WL 410691, *11 (S.D. Cal. Feb. 12, 2008); *Wang v. Chinese Daily News, Inc.,*

3  231 F.R.D. 602, 614 (C.D. Cal. Jan. 20, 2005).

4  ## 2.   The Rule 23(b)(3)(A)-(D) Factors Favor Class Treatement

5  Rule 23(b)(3)(A) provides that "class members' interests in individually

6  controlling the prosecution of defense of separate actions." Class members have been

7  contacted by defendant, its/their counsel, and plaintiff's counsel, and no single one has

8  brought an individual case or expressed any interest in doing so. (Chesler Decl. ¶ 2.)

9  Rule 23(b)(3)(B) provides "the extent and nature of any litigation concerning the

10  controversy already begun by or against class members." There is none to our

11  knowledge. (Id.) Rule 23(b)(3)(C) provides "the desirability or undesirability of

12  concentrating the litigation of the claims in this particular forum." Plaintiffs accept

13  this forum. Defendant sought this Court by removing the case. Finally, there are no

14  difficulties in managing this matter as a class action under Rule 23(b)(3)(D). Indeed,

15  class certification is appropriate because of the centralized policies and practices at

16  issue. Hundreds of class actions asserting claims like those here have been managed in

17  federal and state courts in California in recent years, a great many with much larger

18  classes.

19  ## 3.   Common Questions Of Law And Fact Predominate

20  "The predominance inquiry under Rule 23(b)(3) asks whether proposed classes

21  are sufficiently cohesive to warrant adjudication by representation. The focus is on the

22  relationship between the common and individual issues." *In re Wells Fargo Home*

23  *Mortgage Overtime Pay Litig.,* 571 F.3d 953, 957 (9th Cir. 2009). "When common

24  questions present a significant aspect of the case and they can be resolved for all

25  members of the class in a single adjudication, there is a clear justification for handling

26  the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler*

27  *Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998) (citations omitted). "When the claim is that

28  an employer's policy and practices violated labor law, the key question for class

certification is whether there is a consistent employer practice that could be a basis for consistent liability." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008). "Class certification is usually appropriate where liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established. However, the existence of certain individualized or deviating facts will not preclude certification if most class members were subjected to a company policy in a way that gives rise to consistent liability or lack thereof." *Id.* . . . . Predominance is a comparative concept, and the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate. Individual issues do not render class certification inappropriate so long as such issues may effectively be managed." *Id.* (citations and internal quotes omitted); *see also Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1033 (2012) ("Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly found suitable for class treatment.") (citations omitted); *Mendez v. R+L Carriers, Inc.*, 2012 WL 5868973, *15-20 (N.D. Cal. Nov. 19, 2012) (same).

> ### (a)   *Predominance Of Common Issues Is Satisfied As To The Meal And Rest Break Claims*

Under California law, an employer must provide non-exempt employees (such as the putative class members) two 10 minute rest breaks for each three and one half hours worked, a first 30 minute duty free meal break within the first five hours worked, and a second 30 minute duty free meal break after ten hours worked. *See, e.g., Brinker*, 53 Cal. 4th 1032-34 (2012); Cal. Lab. Code § 512(a); IWC Order 9-2001 §§ 11-12; 13-2001 §§ 11-12. To satisfy its obligations under California law, an employer must "authorize and permit" these breaks to occur within the time specified by the statute and applicable wage order. *See Brinker*, 53 Cal. 4th at 1033-34. Both the meal and rest breaks must be "duty free." *See id.; see also Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949, 963 (2005). If the employer fails to authorize and permit

1   these breaks, the employee is entitled to an extra hour of premium pay. *See, e.g.,* IWC

2   Order 9-2001 §§ 11(d), 12(b); 13-2001 §§ 11(d), 12(b).

3       Plaintiff contends that Defendant failed to comply with the meal and rest break

4   laws in essentially three ways. First, Defendant had a **uniform policy** that limited

5   drivers to a one-mile (and/or half mile) radius during any break. (Exs. 80 ¶ 37, 81

6   ¶ 35, 85.) The policy provides as follows: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮." This policy applied to all drivers at all

9   locations during the relevant time period. (Llamas 66:25-67:21, 71:22-25, 256:1-23.)

10      Plaintiff contends that this uniform policy does not allow a duty free meal or rest

11  break because at all times drivers remained on duty and/or under Defendant's control.

12  *See, e.g., Brinker*, 53 Cal. 4ᵗʰ at 1040-41 ("The employer satisfies [its] obligation if it

13  relieves its employees of all duty, relinquishes control over their activities and permits

14  them a reasonable opportunity to take an uninterrupted 30-minute break, and does not

15  impede or discourage them from doing so."); Division of Labor Standards

16  Enforcement Policies and Interpretations Manual (Revised) ("DLSE Manual")

17  § 45.1.5.1 ("Restricting employees to the employer's premises, or worksite, means that

18  the employee is subject to the employer's control so as to constitute 'hours worked.'")

19  (citations omitted); *see also* DLSE Manual § 46.5 ("Where an employee – although

20  relieved of all duties – is not free to leave the work place during the time allotted to

21  such employee for eating a meal, the meal period is on duty time subject to the control

22  of the employer, and constitutes hours worked."). The legality of Defendant's route

23  restriction policy is a common question that predominates and, thus, is suitable for

24  class certification.

25      Second, Plaintiff contends that Defendant's **stated meal and rest break policy**

26  does not and did not comply with California law. Defendant's uniform meal and rest

27  break policy from 2008 until at least February 2011 provided as follows:

28      "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[redacted block]

(Ex. 51 at p. 22.)

This policy applied to all drivers during the relevant class period.[7] (Llamas 15:19-16:2.) Plaintiff contends that on its face, this policy does not comply with California law in at least two material respects.

One, as to meal breaks, the policy does not provide that drivers are entitled to a 30-minute duty free meal period within the first six hours of their shift nor does it make any mention of a possible second meal break. While the policy uses the phrase "in accordance with California state law," no explanation of the law is provided. And Defendant admits that from 2008 until mid-2011, it did not believe it had to provide the drivers with a duty free meal period within the first six hours of their shift and that it was simply too problematic to do so. (Llamas 93:25-94:9, 94:17-95:4, 96:23-97:6, 100:9-101:13, 102:15-20, 262:8-16.) In fact, it appears that Defendant still does not believe the meal and rest break laws apply to them. (See Ex. 113.)[8] Also, during this time period, Defendant had no written policy regarding a second meal period. (See id. 100:1-8.) It was not until 2011 that Defendant informed drivers if they worked more than 12 hours, they had a mandatory second 30-minute unpaid meal break that had to be taken. (Llamas 99:4-20; see also Driver Declarations.)

---

[7] Exhibit 51 contains the only applicable employee handbook policy Defendant produced. (Chesler Decl. ¶ 3.) In May 2012, Defendant entered into a Letter of Agreement with the Union that essentially provided that drivers could take their meal breaks within the first ten hours of their shift.

[8] As noted above, for a short while in 2011, Defendant did inform drivers that they had to take their meal breaks within the first six hours. As also noted, Defendant knew the drivers couldn't really do this.

1    Accordingly, given that the policy does not adequately nor accurately spell out

2    the drivers' statutory rights and that Defendant's believed and/or believe that the law

3    did not apply to them, it is reasonable to conclude that Defendant's meal break policy

4    from 2008 until at least 2011 was not lawful.  Whether this conclusion ultimately

5    proves accurate (or not) is a common question of law and fact that can and should be

6    resolved on a class wide basis.

7    Two, the rest break policy is almost identical to the policy that the *Brinker* court

8    deemed appropriate for class certification because read literally it does not allow for a

9    second rest break between the sixth and eighth hour of work.[9]  *See Brinker, supra,* at

10   1033-1034.  It is also clear that at least one supervisor believed drivers were entitled to

11   only one break regardless of how many hours worked (Sanchez 68:25-29:1, 76:20-24,

12   78:4-6, 231:6-232:24, 243:10-20)[10] and that most drivers only took one break or

13   combined breaks at the end of their shift (*see e.g.*, Declarations of Arriaga, Chapman,

14   Conedy, de la Cueva, Dritz, Fauss, Franklin, Gutierrez, Lopez, Mangan, Onorato,

15   Parker, Perez, Vasquez, Wilford).  Thus, whether Defendant's meal and rest break

16   policy is lawful is a common question that is appropriate for class treatment.

17   Third, common questions predominate as to whether Defendant's uniform

18   practices satisfied the requirements of *Brinker*.  *See Brinker, supra,* at 1040 ("An

19   employer may not undermine a formal policy of providing meal breaks by pressuring

20   employees to perform their duties in ways that omit breaks") *citing Cicairos*, 133 Cal.

21   App. 4th at 962-63; *Jaimez v. DAIOHS USA, Inc.*, 181 Cal. App. 4th 1286, 1304-05

22

23   [9] The rest break policy from 2008 until February 2011 provides:  "Unless otherwise

24   required by local or state law, for every four hours of work, you are entitled to a 15-
     minute break.  Break periods will be on a paid basis.  Your manager will assign or

25   approve the scheduling of break times according to the needs of your location.  Ex. 51
     at p. 22.

26   [10] After a break with counsel, he later tried to change his testimony, but then seemed to
     backtrack to his original position again.  (Id. 256:12-258:20.)

27

28

1  (2010) (proof of common scheduling policy that made taking breaks extremely

2  difficult would show violation); *Dilts v. Penske*, 267 F.R.D. 625, 638 (S.D. Cal. 2010)

3  (informal anti-meal-break policy "enforced through 'ridicule' or 'reprimand' would be

4  illegal").

5       Unlike the policy issues discussed above, when the plaintiff's claims are based

6  on "allegations of an unwritten practice, as opposed to a written policy," the putative

7  class members have a heavier burden  *Mendez, supra*, *15.  In order to overcome this

8  barrier to predominance, plaintiff must allege specific facts, supported by evidence, to

9  show that defendant's "informal policies of discouraging the taking of breaks would

10  likely be susceptible to common proof." *Id.* (citations omitted).  Once plaintiff has

11  produced evidence of common practice, class certification is appropriate because "the

12  meal and rest break claims can be proven principally through common proof." *Id.* at

13  *16; *Pina v. Con-Way Freight, Inc.*, 2012 WL 1278301, at *7 (N.D. Cal. 2012) ("If

14  Plaintiffs succeed in demonstrating that such a practice is common, the need for further

15  inquiry into individual decisions would be unnecessary.  Accordingly, the Court finds

16  that common issues of law and fact predominate . . .");  *Espinoza v. Domino's Pizza,*

17  *LLC*, 2009 U.S. Dist. LEXIS 31093 at *5, 10, 40 (C.D. Cal. 2009) (certifying meal/rest

18  break class where plaintiff provided declarations of putative class members stating

19  routes were so demanding and unpredictable, they placed drivers under constant,

20  intense pressure, thus making it impossible to take meal breaks, either timely or at all);

21  *Ross v. US Bank Nat'l Assoc.*, 2009 U.S. Dist. LEXIS 116875 (N.D. Cal. 2009)

22  (common issues predominated and could be adjudicated to establish liability based on

23  defendant's policies and practices of discouraging overtime, pressuring employees to

24  clock out for meal periods, and emphasis on prompt customer service).

25       For example, in *Dilts*, defendant operated a warehouse, distribution and

26  inventory management service.  267 F.R.D. at 629.  Defendant provided

27  delivery/installation schedules, but did not schedule meal periods therein for the

28  proposed class.  *Id.* at 630.  Defendant opposed class certification on the grounds that

1  the "whether, when and why" a driver missed breaks necessitated an individualized
2  inquiry and was key to questions of liability. *Id.* at 637. The Court disagreed. *Id.* at
3  637-39. Instead, the court found the appropriate question was whether defendant by its
4  policies and practices failed to provide meal breaks to class members – or, in other
5  words – whether defendant's policies and practices effectively denied class members
6  uninterrupted lunch periods. *Id.* at 638.
7      As in *Mendez* and *Pina*, to support class certification in *Dilts*, the plaintiff
8  provided anecdotal evidence through declarations of putative class members. *Id.*
9  Plaintiff also offered evidence that dispatchers did not schedule lunches, that activity
10 was tracked through XATA, and that putative class members were able to
11 communicate with dispatchers, supervisors and customers during the day. *Id.* The
12 court found such evidence was "probative of whether breaks were received and
13 whether [d]efendant's policies prevented uninterrupted meal breaks." *Id.* "Further, to
14 the extent that these policies were informal and enforced through 'ridicule' or
15 'reprimand,' they should be provable through common representative testimony." *Id.*
16 Indeed, statistical sampling, when paired with persuasive direct evidence is an
17 acceptable method of proof in a class action. *Id.* Thus, the court found predominance
18 satisfied. "These claims center around defendant's policies in terms of whether meal
19 and rest breaks were available. Although drivers' circumstances varied, they were all
20 ultimately controlled by the same set of central policies, including the delivery
21 schedules and auto-deduct system. These issues are sufficient to find predominance."
22 *Id.* at 639.
23      The rationale and conclusions of these cases apply equally here. Defendant runs
24 a "penny" conscious business where "every minute counts." (Llamas 86:15-22,
25 174:17-175:4, Ex. 65.) Being on time and making the scheduled deliveries is
26 obviously critical to Defendant's business operation. (Rodriguez 49:6-11.) Consistent
27 with its obsession with driver efficiency, Defendant monitors drivers' time, location,
28 and activities through the XATA System. (Id. 216:1-8.) Defendant provides its

1    drivers monthly "scorecards" rating their performance with respect to route delivery
2    times and on time delivery percentage. (Llamas 201:12-202:3.) Defendant posts Yard
3    Trip Reports showing the amount of time drivers take in the yard, as well as total time
4    for deliveries, etc. (Id. 79:5-80:1.) Defendant is extremely conscious of drivers' time
5    under the DOT regulations and for the purposes of overtime. (Id. 80:3-8, 85:11-86:14,
6    204:16-25, 231:12-16.) In fact, Defendant was concerned with the number of overtime
7    hours drivers worked. (Rodriguez Dep. 138:20-23, Exs. 90-92.)[11]
8         In addition, Defendant had a consistent practice of scheduling routes and/or
9    deliveries such that Plaintiff and others felt pressured to complete all routes and/or
10   deliveries before taking a break. (See Driver Declarations filed concurrently
11   herewith). Defendant refused to allow requests for breaks until a route or delivery was
12   completed. (See e.g., Declarations of de la Cueva (¶ 13); Onorato (¶ 7); Perez (¶ 6);
13   Vasquez (¶ 5).) It was not until 2011, that HR told the distribution department to "try
14   and make the effort to follow the California state law." (Id. 103:2-12.) Defendant then
15   let drivers know that meal periods were available before the sixth hour worked. (Id.
16   102:21-103:6, 106:12-24.) But Defendant admitted that it was aware that drivers were
17   having a difficult time complying with the meal period's timing requirements. (See
18   Llamas 95:18-96:4, 100:9-101:13, 111:19-25, 114:16-22,137:23-138:2). Yet
19   Defendant never scheduled breaks for the drivers. (Id. 65:20-66:4, 102:15-20, 173:9-
20   174:2, 246:8-16, 295:11-23; Ex. 51; de la Cueva Decl. ¶ 8; Franklin Decl. ¶ 9; Mangan
21   Decl. ¶ 3, Wilford Decl. ¶ 3.) Nor did Defendant factor in meal and rest breaks when
22   developing the routes and/or delivery stops. (See id. 176:4-177:9, 238:3-24.) Nor did
23   it change any route or delivery schedule to address and meal or rest break concerns.
24   
─────────────────
25   [11] Alta Dena's goal was to not have employees work more than 12 hours a day.
26   (Rodriguez Dep. 205:11-15, 209:15-18 & Ex. 91.) If a driver was going to work over
     12 hours in a day, then he needed to be sat down and counseled. (Id. 210:3-6.) In fall
27   of 2008, the routes were adjusted to ensure drivers did not work over 12 hours in a day.
     (Id. 211:6-9.)
28

1    (Rodriguez Dep. 240-41.)

2          Instead, Defendant instructed the drivers to take a break when they "wanted,"

3    but Defendant did not notify the putative class members of their rights under the Labor

4    Code and/or IWC Orders until sometime in 2011 and even then Defendant did not tell

5    the drivers of their right to premium pay if they were not authorized or permitted to

6    take a duty free meal or rest break within the time required by law.  Defendant also

7    automatically deducted 30 minutes of pay from the drivers regardless of whether they

8    actually took – or even logged – a duty free meal break.  (Llamas, 109:7-23, 110:6-14,

9    155:20-156:8, 160:12-17; Alfaro 45-46.)  The vast majority of driver breaks were

10   taken (if at all) after the sixth hour and usually after the conclusion of their route

11   and/or deliveries.  (*e.g.*, Declarations of Fauss (¶ 6), Vasquez (¶ 4).)  And Defendant's

12   claim that it has *never* paid premium pay for missed meal periods (Alfaro 45-46.)

13   combined with testimony that drivers missed first and/or second meal periods (and

14   frequently worked over 10-12 hour days) (DECLARATIONS) is also "enough to show

15   a common core of salient facts" for commonality.  *Cervantez v. Celestica Corp.*, 253

16   F.R.D. 562, 573 (C.D. Cal. 2008).

17         These uniform policies and practices created a work environment that was a

18   win-win for Defendant's productivity, but a lose-lose for workers who did not receive

19   timely uninterrupted meal and/or rest breaks.  All of the following facts can be proven

20   through common proof and if accepted by the trier of fact sufficient for a finding in

21   Plaintiffs' favor.  *See, e.g., Mendez, supra; Pina, supra; Dilts, supra; Brinker, supra,*

22   *Cicairos, supra, Espinoza, supra.*  Accordingly, common issues of fact and law

23   predominate with respect to the meal and rest break claims.

24

25

26

27

28

1

2

        (b)     *Common Questions Predominate With Respect To*

                    *Plaintiff's Claims For Unpaid Wages*

3       By his second cause of action, Plaintiff seeks recovery of unpaid wages both

4 during and after employment in the form of unpaid premium pay for missed meal and

5 rest breaks and for violation of California's minimum wage and/or overtime laws

6 because of the 30 minute automatic deduction practice.[12]

7       This claim is predicated on two common legal issues:  whether Defendant

8 "authorized and permitted" a meal and/or rest break (discussed supra); and whether

9 Defendant's 30 minute automatic deduction policy and/or practice violated the

10 California Labor Code.  We will not repeat the arguments above regarding the meal

11 and rest break policy and/or practices.  Obviously, it is Plaintiff's position that

12 common issues of fact and law predominate with respect to that claim and, thus,

13 Plaintiff and the putative class are entitled to unpaid wages in the form of premium pay

14 for missed meal and rest breaks.  *See, e.g., Murphy v. Kenneth Cole Prods., Inc.*, 40

15 Cal. 4th 1094 (2007).

16      As for the 30-minute automatic deduction, Defendant admitted during the Rule

17 30(b)(6) deposition that it automatically deducts 30 minutes from all drivers (when

18 they work more than their scheduled shift – *i.e.* overtime) regardless of whether a meal

19 break is logged or not. (Llamas, 109:7-23, 110:6-14, 155:20-156:8, 160:12-17; Alfaro

20 45-49.)  This is a centralized and uniform practice that applies to all drivers.  (Id.)

21 Defendant did not obtain any written authorization for the deduction and there does not

22 appear to be any centralized method of reversing it.  (Alfaro 45-56; *see also e.g.*, de la

23

24 [12] As noted, Plaintiff filed an *ex parte* seeking leave to file a First Amended Complaint
25 to add causes of action for minimum wage and overtime violations based on the 30
minute deduct policy.  We brief that issue here because it is suitable for class
26 certification and should be allowed for the reasons set forth in Plaintiff's *ex parte*
application.  As noted, however, even if leave is denied, Plaintiff and the putative class
27 members should be allowed to recover the unpaid wages via the current complaint
(second and fourth causes of action).

28

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES

1    Cueva Decl. ¶ 18, Fauss Decl. ¶ 8, Pereze Decl. ¶ 12, Vasquez Decl. ¶ 7.)  Obviously,

2    if the alleged meal break is not duty free because of the issues discussed above, then

3    under no circumstances should Defendant be making this deduction and it is liable for

4    the premium pay and the 30 minutes that it deducted (at the applicable overtime rate).

5            Furthermore, even assuming arguendo that the meal break is deemed to be

6    *Brinker* compliant – and it is not – the drivers are still entitled to compensation for that

7    30 minute period if the employer "knew or reasonably should have known that the

8    worker was working through the authorized meal period." *Brinker*, 53 Cal. 4th at 1040

9    n.19 (citations omitted).  Here, again, there is ample evidence that Defendant was fully

10   aware that drivers were working through their alleged "breaks" and this can be proven

11   by common facts, such as Defendant's review of XATA reports showing that drivers

12   were not taking their breaks.  (See Exs. 60-62.)  Moreover, the ultimate liability issue

13   rises and falls on the common question of whether Defendant's practice of

14   automatically deducting 30 minutes of time (*i.e.*, pay) without first ensuring the driver

15   actually took a duty free meal break is legal under California law.  *See Brinker*, *supra*,

16   at 1040 n.19; Cal. Lab. Code §§ 221-224 (preventing claw backs, secretly paying less

17   wages due, and deductions without written authorization).  Defendant's 30(b)(6)

18   witness testified that she has <u>never</u> re-credited a driver with the 30 minutes deducted.

19   (Alfaro 45-49.)  It strains credulity for Defendant to claim that each driver did not on at

20   least one occasion fail to receive a meal period and thereby have wages forfeited.  But

21   ultimately the actual number of times Defendant made a deduction when it should not

22   have goes to the issue of damages – not liability.  Defendant has ample records (*e.g.*

23   XATA reports) to make that determination.  Thus, this claim is perfectly suited for

24   class certification as it challenges a centralized and uniform common practice.  *See*,

25   *e.g.*, *Dilts*, 267 F.R.D. at 634-35 (certifying class challenging this very practice).

26            *(c)   Predominance Exists With Respect To Plaintiff's Paystub*

27                   *Claims*

28   Plaintiff also brings claims for damages and/or statutory penalties pursuant to

1  California Labor Code § 226(a), which requires that an employer furnish to every
2  employee, along with each wage payment, an "accurate itemized statement in writing,"
3  containing specified information, including: "the total hours worked by the employee .
4  . ."; "all deductions, provided that all deductions made on written orders of the
5  employee may be aggregated as shown as one item"; "the name and address of the
6  legal entity that is the employer . . ."; and "all applicable hourly rates in effect during
7  the pay period and corresponding number of hours worked at each hourly rate by the
8  employee." *Id.* § 226(a)(2), (4), (8), (9).

9      Defendant's paystub – on a form that is uniform for all class members – did not
10  comply with subsections (a)(2), (a)(4), (a)(8), and (a)(9).  That is, the paystubs do not
11  accurately reflect the hours worked during the pay period, they do not show the 30
12  minute automatic deduction, they name of the employer is technically wrong (at least
13  up until 2011),[13] and they do not show all applicable hourly rates and corresponding
14  number of hours worked at that rate.  Examples of Plaintiff's paystubs are filed
15  concurrently herewith as Exhibits 102, 103, and 107.  Defendant's Rule 30(b)(6)
16  witness admitted that the paystubs do not accurately reflect the actual hours worked
17  because of the 30 minute automatic deduction.  (Alfaro 192:2-9.)  And the 30 minute
18  deduction is not reflected anywhere in the paystub.  (Exs. 102, 103, 107; Perez Decl.
19  Ex. B.)

20      The paystub claim satisfies the predominance element on the basis of the content
21  of the paystubs alone, without reference to other issues for recovery under the statute.
22  See, e.g., *Wren*, 256 F.R.D. at 209 ("[T]here is a common question that predominates,
23  namely, does the standardized wage form that is used by [defendant] for all its
24  employees comply with the requirements of California Labor Code § 226 that
25  employers must provide properly itemized wage statements.  As to that claim, the

26  _____

27  [13] Plaintiff's paystubs show the employer as "Alta-Dena Certified Dairy, Inc." as
28  opposed to "Alta-Dena Certified Dairly, LLC." – i.e., "Inc." not "LLC."

1  commonality and predominance requirements of (a)(2) and (b)(3) are met.").

2  The only other issues on the paystub claim are whether the failure to include the

3  statutory information was "knowing and intentional" and whether the employees

4  suffered "injury." Cal. Lab. Code § 226(e). Common questions predominate as to

5  both issues (even though they need not for class certification purposes under *Wren*).

6  As far as whether the failure to include the required information was "knowing

7  and intentional," it could hardly be otherwise, since Defendant's uniform paystub form

8  does not show the requisite information. Regardless, that is a common question

9  applicable to all putative class members. As far as "injury," the statute makes clear

10  that an employee suffers injury if the employer "fails to provide accurate and complete

11  information" . . . "and the employee cannot promptly and easily determine from the

12  wage statement alone . . . : (i) The amount of the gross wages or net wages paid to the

13  employee during the pay period or any of the other information required to be provided

14  on the itemized wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of

15  subdivision (a); (ii) Which deductions the employer made from gross wages to

16  determine the net wages paid to the employee during the pay period. . . ; or (iii) The

17  name and address of the employer . . ." Cal. Lab. Code § 226(e)(2)(B)(i)-(iii).

18  Here, each of the putative class members suffered the same injury in the same

19  way as the result of the same uniform practices. To wit, no one can determine the

20  actual hours worked from the paystub alone because the paystubs do not actually show

21  the number of hours actually worked but instead the number of hours that are

22  essentially guaranteed (*i.e.*, 80 hours per pay period). The 30 minute automatic

23  deduction is not shown in any fashion even though it was routinely applied. Thus,

24  common issues of fact and law predominate.[14] Class certification as to Plaintiff's third

25

26  [14] In addition, if premium pay is due, the paystubs are also necessarily deficient
27  because they do not include any information for premium pay for on duty meal or rest
28  breaks.

1   cause of action is therefore appropriate.

2               *(d)     Predominance Exists For The Derivative Claims*

3        Plaintiff also alleges the following derivative claims which are perfectly suitable

4   for class treatment:

5        (1) Waiting Time Penalties – Plaintiff brings claims pursuant to California

6   Labor Code §§ 201-203, which provides for penalties if an employer willfully fails to

7   pay all wages due upon termination/resignation.[15]  Thus, if liability is established for

8   the meal/rest break or unpaid wages claims, then those affected (*i.e.* damaged) class

9   members are entitled to additional recovery.

10       (2) Unfair Competition – Plaintiff brings claims pursuant to California Business

11  & Professions Code §§ 17200 *et seq.* ("UCL") on the premise that Defendant's meal,

12  rest, and wage forfeiture violations constitute an unfair business practice.  If Plaintiff

13  establishes these violations, then the UCL provides a platform for drivers to recover

14  unpaid wages as a form of restitution, and also permits injunctive relief to be sought.

15  **IV.    CONCLUSION**

16       For the foregoing reasons, plaintiff Miguel de la Cueva respectfully submits that

17  the Court certify for class action all class based claims in this action.

18  DATED: February 19, 2013            Respectfully submitted,

19                                      THE LAW OFFICES OF
20                                      TIMOTHY B. McCAFFREY, JR.

21

22                                      By _____
                                        Timothy B. McCaffrey, Jr.
23
                                        Attorneys for Plaintiff and Class
24                                      Representative Miguel de la Cueva

25  _____
    [15] "… '[W]illful' within the meaning of Section 203 means the employer 'intentionally
26  failed or refused to perform an act which was required to be done.'  It does not mean
    that the employer's refusal to pay wages must necessarily be based on a deliberate evil
27  purpose to defraud workers of wages which the employer knows to be due." *Road
    Sprinkler Fitters v. G&G Fire Sprinklers, Inc.*, 102 Cal. App. 4th 765 (2002).
28