1  TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
   NATASHA CHESLER (S.B. #227540)
2  THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
   A Professional Corporation
3  11377 West Olympic Boulevard, Suite 500
   Los Angeles, California  90064-1683
4  Telephone: (310) 882-6407
   Facsimile: (310) 882-6359
5  E-Mail:  tmccaffrey@tbmlaw.net
   E-Mail:  nchesler@tbmlaw.net
6
   Attorneys for Plaintiff and Class
7  Representative Miguel de la Cueva

8

9              **UNITED STATES DISTRICT COURT**

10    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11

12 | MIGUEL DE LA CUEVA, on behalf of | CASE NO. CV12-01804 GHK (CWx) |
   | himself and those similarly situated, | |
13 | | **PLAINTIFF'S COMPENDIUM OF** |
   | Plaintiff, | **EVIDENCE IN SUPPORT** |
14 | | **PLAINTIFF'S MOTION FOR** |
   | vs. | **CLASS CERTIFICATION** |
15 | | |
   | ALTA DENA CERTIFIED DAIRY, | Hearing Date:      None Set |
16 | LLC, a Delaware Limited Liability | |
   | Company, ALTA-DENA CERTIFIED | Trial Date:      None Set |
17 | DAIRY, INC., a Delaware Corporation, | |
   | and DOES 1 through 10, inclusive, | |
18 | | |
   | Defendants. | |
19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S COMPENDIUM OF EVIDENCE IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>TABLE OF CONTENTS</u>

**Driver Declarations**

**Exhibit A** Declaration of Sylvester Arriaga………………… 1

**Exhibit B** Declaration of Wayne Chapman……………….. 4

**Exhibit C** Declaration of Dwayne Conedy………………… 7

**Exhibit D** Declaration of Miguel de la Cueva……………… 11

**Exhibit E** Declaration of Chris Dritz……………...………. 20

**Exhibit F** Declaration of Randy Fauss………………………. 24

**Exhibit G** Declaration of Benjamin Franklin……………….. 28

**Exhibit H** Declaration of Carlos Gutierrez…………………. 34

**Exhibit I** Declaration of Peter Lopez…………………………. 37

**Exhibit J** Declaration of Jeffery B. Mangan……………….. 42

**Exhibit K** Declaration of Kevin Onorato……………………. 46

**Exhibit L** Declaration of Scott Parker………………………. 50

**Exhibit M** Declaration of Juan Perez……………………….. 54

**Exhibit N** Declaration of Louis Vasquez……………………. 73

**Exhibit O** Declaration of Alan Wilford……………………... 77

**Attorney Declarations**

**Exhibit P** Declaration of Timothy B. McCaffrey, Jr……...... 79

**Exhibit Q** Declaration of Natasha Chesler……………....... 82

**Deposition Transcripts**

**Exhibit R** Deposition of Genoveva Alfaro………………… 86

**Exhibit S** Deposition of Jose Antonio Berrios……………… 140

**Exhibit T** Deposition of Ronnie Demler…………………… 148

**Exhibit U** Deposition of Daniel Deland Durkee…………… 152

**Exhibit V** Deposition of Satpal Gill………..……………… 177

**Exhibit W** Deposition of Jose Llamas……………………… 186

**Exhibit X** Deposition of Jose Martinez…..………………… 312

**Exhibit Y** Deposition of Humberto Rodqiguez...…………… 327

**Exhibit Z** Deposition of Jesse Sanchez……..…………… 385

**Deposition Exhibits**

**Exhibit 12**……………………………………… 434

**Exhibit 23**……..…………………………..…………… 435

**Exhibit 25**…………………………..…………… 441

**Exhibit 34**………………………………..…………… 443

**Exhibit 37 (Lodged Under Seal)**……..……………... 444

**Exhibit 51 (Lodged Under Seal)**……..…………… 454

**Exhibit 52**…………………………..…………… 501

**Exhibit 53**……………………..…………… 502

**Exhibit 54**……………………………… 504

**Exhibit 55**……………………………… 505

**Exhibit 56**……………………..…………… 511

**Exhibit 57**……………………………… 513

**Exhibit 58**…………………………..…………… 519

**Exhibit 59 (Lodged Under Seal)**……..…………... 530

**Exhibit 60 (Lodged Under Seal)**……..…………… 549

**Exhibit 61 (Lodged Under Seal)**……..…………… 557

**Exhibit 62 (Lodged Under Seal)**……..…………... 567

**Exhibit 63 (Lodged Under Seal)**……..…………… 579

**Exhibit 64 (Lodged Under Seal)**……..…………… 582

**Exhibit 65 (Lodged Under Seal)**……..…………… 584

**Exhibit 66 (Lodged Under Seal)**……..…………… 587

**Exhibit 67 (Lodged Under Seal)**……..…………… 610

PLAINTIFF'S COMPENDIUM OF EVIDENCE IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

**Exhibit 69 (Lodged Under Seal)**………..…………........ 621

**Exhibit 70**………………………………..…………… 626

**Exhibit 71 (Lodged Under Seal)**………..…………...... 628

**Exhibit 72 (Lodged Under Seal)**………..…………..... 632

**Exhibit 73 (Lodged Under Seal)**………..……………. 635

**Exhibit 74**………………………………..…………… 636

**Exhibit 75 (Lodged Under Seal)**………..…………...... 637

**Exhibit 76 (Lodged Under Seal)**………..…………..... 638

**Exhibit 77 (Lodged Under Seal)**………..……………. 640

**Exhibit 78 (Lodged Under Seal)**………..…………..... 641

**Exhibit 79**………………………………..…………… 642

**Exhibit 80**………………………………..…………… 648

**Exhibit 81 (Lodged Under Seal)**………..…………..... 651

**Exhibit 82 (Lodged Under Seal)**………..……………. 656

**Exhibit 83 (Lodged Under Seal)**………..……………. 661

**Exhibit 84 (Lodged Under Seal)**………..…………..... 679

**Exhibit 85 (Lodged Under Seal)**………..……………. 686

**Exhibit 89 (Lodged Under Seal)**………..……………. 687

**Exhibit 91 (Lodged Under Seal)**………..……………. 695

**Exhibit 92 (Lodged Under Seal)**………..……………. 698

**Exhibit 93 (Lodged Under Seal)**………..……………. 701

**Exhibit 95 (Lodged Under Seal)**………..…………..... 704

**Exhibit 96 (Lodged Under Seal)**………..……………. 706

**Exhibit 102**………………………………..…………… 708

**Exhibit 103**………………………………..…………… 734

**Exhibit 104**………………………………..…………… 761

**Exhibit 105**………………………………..…………… 796

PLAINTIFF'S COMPENDIUM OF EVIDENCE IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1      **Exhibit 106**…….…...……….……..…………..……………… 840

2      **Exhibit 107**…….…...……….……..…………..……………… 868

3      **Exhibit 109**…….…...……….……..…………..……………… 896

4      **Exhibit 112**…….…...……….……..…………..……………… 899

5      **Exhibit 113**…….…...……….……..…………..……………… 948

6      **Exhibit 115**…….…...……….……..…………..……………… 958

7      **Exhibit 116**…….…...……….……..…………..……………… 960

8      **Exhibit 121 (Lodged Under Seal)**…………..…………… 964

9      **Exhibit 122 (Lodged Under Seal)**…………..…………… 974

10     **Exhibit 124 (Lodged Under Seal)**…………..…………… 986

11     **Exhibit 125 (Lodged Under Seal)**…………..…………… 1024

12     **Exhibit 126 (Lodged Under Seal)**…………..…………… 1036

13     **Exhibit 127 (Lodged Under Seal)**…………..…………… 1096

14     **Exhibit 132 (Lodged Under Seal)**…………..…………… 1110

15     **Exhibit 133 (Lodged Under Seal)**…………..…………… 1124

16     **Exhibit 136 (Lodged Under Seal)**…………..…………… 1149

17     **Exhibit 137 (Lodged Under Seal)**…………..…………… 1170

18     **Exhibit 138 (Lodged Under Seal)**…………..…………… 1181

19

20     DATED: February 19, 2013            Respectfully submitted,

21                                        THE LAW OFFICES OF
                                          TIMOTHY B. McCAFFREY, JR.

22

23                                        By // TBM

24                                            Timothy B. McCaffrey, Jr.

25                                          Attorneys for Plaintiff and Class
                                            Representative Miguel de la Cueva

26

27

28

**EXHIBIT A**

TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
NATASHA CHESLER (S.B. #227540)
THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
A Professional Corporation
11377 West Olympic Boulevard, Suite 500
Los Angeles, California 90064-1683
Telephone: (310) 882-6407
Facsimile: (310) 882-6359

Attorneys for Plaintiff and Class Representative
Miguel de la Cueva

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL DE LA CUEVA, on behalf of himself and those similarly situated,<br><br>            Plaintiff,<br><br>    vs.<br><br>ALTA DENA CERTIFIED DAIRY, LLC, a Delaware Limited Liability Company, ALTA-DENA CERTIFIED DAIRY, INC., a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>            Defendants. | CASE NO. CV12-01804 GHK (CWx)<br><br>*Assigned to Hon. George H. King*<br><br>CLASS ACTION<br><br>**DECLARATION OF SYLVESTER ARRIAGA** |

EXHIBIT - A, PAGE 1

## DECLARATION OF SYLVESTER ARRIAGA

I, Sylvester Arriaga, declare as follows:

1.     If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief.  I previously worked as a driver for Swiss / Alta Dena Certified Dairy, LLC ("Alta Dena"), from approximately 2007 through 2011.

2.     During 2007 through August 2011, I was employed by Alta Dena as a Route Driver in its San Diego location.  My duties in this job were to deliver Alta Dena products from its San Diego location to other Alta Dena customers in Southern California, such as Walmart, Target, CVS, Rite Aid, and liquor stores.  My managers included Leo Barajas, Matthew Carroll, and Robert Hill (who was our foreman).

3.     My routes were very heavy.  I worked approximately 10-12 hours a day.  I often had 12-14 deliveries in a single day and sometimes even more.  We were expected to arrive at a delivery destination by a set time, which did not take into account stopping for a meal or rest break or any other reason.  If we did not timely arrive we faced a discussion with our manager and some form of reprimand.  In addition, we were also told to avoid overtime at all costs.  Thus, it was virtually impossible to take any duty free meal or rest breaks.  On the rare occasion I was able to take a meal break, it almost never was before my sixth hour of work.

4.     Managers constantly said there "should be no overtime."  We were supposed to notify them if overtime was needed, but managers would get very upset if this happened.  They constantly picked on how fast deliveries were made and assigned us too many routes to let us take any meal or rest breaks if we were to meet their delivery schedules.  I often heard my managers say things like, "Why are you taking so long?" or "This task should be 15 minutes.  Why did you take 20 minutes?"

5.     Thus, the nature of the routes provide to me, combined with comments by managers, made me feel pressured to make my deliveries by omitting my breaks.  The

1 nature of the routes also did not give me a reasonable opportunity to take my breaks –
2 and especially not before the sixth hour I worked.  As a result, I hardly ever took a
3 duty free meal break before the sixth hour of work (if at all), or two rest breaks in a
4 single day.

5     6.     I heard the subject of not being able to take our breaks because of the way
6 our routes were planned and assigned come up frequently by drivers with supervisors.
7 But nothing was ever done to change our routes or assignments so that we could have a
8 reasonable opportunity to take meal or rest breaks.  Supervisors would just say in
9 response that we were supposed to punch out for a break in XATA.  Showing that
10 there was a "break" in XATA was all that mattered.  Thus, most of the time I "punched
11 out" for a meal break into XATA but just kept working.  This was the only real choice
12 I had because if I didn't make the delivery schedule assigned to me on time, I would
13 get in trouble, but if I didn't "punch" a break into XATA, I would also get in trouble.
14 Still, there were also times where I didn't even get to "punch out" for my meal break at
15 all (and did not take it) because the workday was just too busy.

16     I declare under penalty of perjury under the laws of the State of California, and
17 the United States of America, that the foregoing is true and correct.

18     Executed February 13, 2012, at San Diego, California.

19
20                                         Sylvester Arriaga
21
22
23
24
25
26
27
28

DECLARATION OF SYLVESTER ARRIAGA

PLT 00345

**EXHIBIT B**

1  TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
   NATASHA CHESLER (S.B. #227540)
2  THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
   A Professional Corporation
3  11377 West Olympic Boulevard, Suite 500
   Los Angeles, California 90064-1683
4  Telephone: (310) 882-6407
   Facsimile: (310) 882-6359

5  Attorneys for Plaintiff and Class Representative
6  Miguel de la Cueva

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11 MIGUEL DE LA CUEVA, on behalf of      CASE NO. CV12-01804 GHK (CWx)
   himself and those similarly situated,
12                                        *Assigned to Hon. George H. King*
            Plaintiff,
13                                        CLASS ACTION
       vs.
14                                        **DECLARATION OF WAYNE
   ALTA DENA CERTIFIED DAIRY,             CHAPMAN**
15 LLC, a Delaware Limited Liability
   Company, ALTA-DENA CERTIFIED
16 DAIRY, INC., a Delaware Corporation,
   and DOES 1 through 10, inclusive,
17
            Defendants.
18

19

20

21

22

23

24

25

26

27

28
                                              EXHIBIT - B, PAGE 1
                                              CV12-01804 GHK (CWx)
   DECLARATION OF WAYNE CHAPMAN            PLT 00381

## DECLARATION OF WAYNE CHAPMAN

I, Wayne Chapman, declare as follows:

1.      If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief.  I previously worked as a driver for Dean Foods / Swiss Dairy ("Dean Foods") from approximately 2005 through 2010.

2.      I worked as a route driver and a relief driver in the Atlanta branch, which is now the Riverside branch in the High Desert.  I had my own route until approximately 2009, and delivered to schools, Walmart, Target, and some "Mom and Pop" stores.  From approximately 2009 through 2010, I worked as a relief driver, meaning I would work other drivers' routes when they were out sick, or on leave, or needed time off because of Department of Transportation ("DOT") regulations, etc. (In 2010, I was injured and then got laid off.)

3.      All of the routes I drove were very heavy.  I generally worked 12-14 hours most days.  Given the heavy load, I hardly ever was able to take a 30-minute duty free meal break or two 15 minute rest breaks.  In approximately 2009, XATA was implemented.  XATA was a GPS tracking system on our trucks that reported all our movement and we entered our tasks into the computer.  We were also told to record our meal and rest breaks in XATA.

4.      After XATA got implemented, I would log a meal break into XATA, but I didn't actually take the break.  This was because the way my routes were designed, there was no meaningful opportunity to take a meal or rest break (and definitely not at all before the sixth hour worked).  For example, most deliveries had a delivery window, which meant the driver had to arrive by a certain time.  Schools had to have milk at a certain time so they could have it in time for the children.  Stores like Walmart and Target also expected you at a certain time and if you didn't get there in that time, some of them wouldn't accept the delivery.  Thus, many times I was unable

EXHIBIT - B, PAGE 2
CV12-01804 GHK (CWx)
PLT 00382

1  to take a meal break, and if I was able to take it, it was almost always after the sixth
2  hour worked.  I also was hardly ever able to take rest breaks as well.

3       5.    Even though I was often unable to take a meal break, I would "log" one
4  into XATA.  No one at Dean Foods told me specifically to do this, but that was the
5  only choice the company gave me.  Otherwise I would get written up for not "logging"
6  a meal break.  But if I actually took my break, then I would get a call from my
7  supervisor on my Nextel saying, "Where you at?  What's taking so long?"  Drivers'
8  efficiency was always a big concern for the company.  Supervisors always stressed
9  getting things done timely.  Keeping customers happy was also important.  And if I got
10 delayed by my meal/rest breaks, then that meant the next day would only be heavier,
11 and ultimately I would be over my DOT maximum driving time, which also would be
12 a problem with the company.  So the only choice I was given considering all these
13 things, was to log a meal break into XATA, but to continue working during that time.

14      6.    No one ever told me that 30 minutes was being deducted from my
15 paycheck for a meal break.  I suspected that was going on because the hours on my
16 paycheck never seemed quite right, but no one at Dean Foods ever talked to me about
17 it.  And no one at Dean Foods ever provided me with any way to undo this automatic
18 deduction if I wasn't able to take my break.  I never received any pay for work done
19 during my "meal break" (logged in as a meal break but continuing to work) or for days
20 where I didn't even "log" a break at all (which also happened sometimes).  I also did
21 not receive any pay for meal breaks I wasn't able to take before the sixth hour worked,
22 or for the rest breaks I also was unable to take.

23      I declare under penalty of perjury under the laws of the State of California, and
24 the United States of America, that the foregoing is true and correct.

25      Executed February _14_, 2013, at ___Adelanto_____, California.

26

27                            *Wayne Chapman*
                           Wayne Chapman

28

DECLARATION OF WAYNE CHAPMAN

EXHIBIT - B, PAGE 3
CV12-01804 GHK (CWx)
PLT 00383

**EXHIBIT C**

1  TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
   NATASHA CHESLER (S.B. #227540)
2  THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
   A Professional Corporation
3  11377 West Olympic Boulevard, Suite 500
   Los Angeles, California 90064-1683
   Telephone: (310) 882-6407
4  Facsimile: (310) 882-6359

5  Attorneys for Plaintiff and Class Representative
   Miguel de la Cueva
6

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  MIGUEL DE LA CUEVA, on behalf of      CASE NO. CV12-01804 GHK (CWx)
    himself and those similarly situated,
12                                        *Assigned to Hon. George H. King*
              Plaintiff,
13                                        CLASS ACTION
         vs.
14                                        **DECLARATION OF DWAYNE
    ALTA DENA CERTIFIED DAIRY,            CONEDY**
15  LLC, a Delaware Limited Liability
    Company, ALTA-DENA CERTIFIED
16  DAIRY, INC., a Delaware Corporation,
    and DOES 1 through 10, inclusive,
17
              Defendants.
18

19

20

21

22

23

24

25

26

27

28
                                                    CV12-01804 GHK (CWx)
                    DECLARATION OF DWAYNE CONEDY

                                                    EXHIBIT - C, PAGE 1

                                                    PLT 00346

## DECLARATION OF DWAYNE CONEDY

I, Dwayne Conedy, declare as follows:

1.      If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief.  I previously worked as a driver for Alta Dena Certified Dairy, LLC ("Alta Dena"), for approximately 15 years – from approximately November 1993 through June 2008.

2.      I was employed by Alta Dena as a Class A Driver from approximately 1993 through 2008.  From approximately 1993 through 2006, I worked in Alta Dena's City of Industry location.  After that I worked as a Class A driver at the Highland location until I went out on disability leave.  I was terminated in 2008 because I was told I had no more available FMLA leave.

3.      My duties as a driver were to deliver Alta Dena products to Alta Dena customers in Southern California, including places like Smart & Final, Coffee Bean & Tea Leaf, Walmart, liquor stores, Alta Dena Drive Through Dairies, Starbucks, Whole Foods, etc.  My managers included Roger Barajas, Humberto Rodriguez (who we called "Beto"), Jessie Sanchez, and Ernie Cornwall.  (There was another supervisor also named Ernie, but I can't remember his last name.)

4.      My routes were very heavy and poorly routed as well.  We were expected to arrive at a delivery destination by a set time, which did not take into account stopping for a meal or rest break.  If we did not timely arrive we faced a discussion with our manager and some form of reprimand.  This resulted in giving little to no time to be able to take a 30-minute duty free meal break, let alone two rest breaks.  I often was forced to eat in my truck while driving to the next destination just so I could put some food in my stomach.

5.      The subject of not being able to take our meal and rest breaks came up at meetings. Managers would initially say, "well you have to take a break."  We would respond that we had so much to get done and had to be at certain places by certain

1  times that it made it impossible.  The attitude from management in response was

2  essentially, "I don't know what to tell you.  Sorry."

3       6.    I tried to suggest other routes to management, and heard other employees

4  make similar suggestions, that would alleviate the situation and enable us to take at

5  least some of our breaks (such as a meal break).  But our suggestions were ignored.

6  Nothing ever changed.

7       7.    Thus, the nature of the routes provided to me, combined with comments

8  by managers, made me feel pressured to make my deliveries by omitting my breaks.

9  The nature of the routes also did not give me a reasonable opportunity to take my

10  breaks.  As a result, I hardly ever took a meal break before the sixth hour of work, or

11  two rest breaks in a single day.  Indeed, I was lucky if I got one break.

12       8.    The practice was the same for Highland as well, however, my routes at

13  Highland were somewhat better and I was able to take breaks more often there.  I

14  estimate that while at City of Industry, I was not able to take timely duty-free meal and

15  rest breaks, if at all, approximately at least 90% of the time and while at Highland, I

16  was not able to take timely meal and rest breaks, if at all, approximately at least 25%

17  of the time.  This differential was not a result of a different company practice,

18  however, but just that the route I got at Highland was a less heavy route.  Still, though,

19  I did not get all my meal and rest breaks as a result of the routes the company assigned

20  to me and the pressure to get them timely done without taking any breaks.

21       9.    The heavy work-load Alta Dena gave me took a significant toll on me

22  physically.  I ultimately developed a blood-clot in my heart, among other issues, and

23  had to take a medical FMLA leave.  Then the company terminated me because it said I

24  had used up all my FMLA leave, which was grounds for termination since I was not

25  able to "timely" return to work.  I received no notification before getting terminated.

26  No one called me to see how I was doing, when I anticipated coming back, or if there

27  was anything that could be done to accommodate me short of termination.  All I got

28

1  was the letter while I was out on disability leave, terminating me after 15 years of
2  dedicated service.

3       10.    I recall hearing it mentioned in a meeting at one point that 30 minutes
4  were going to be deducted from my hours each day for a "meal break." But no one at
5  Alta Dena ever provided me with any way to undo this automatic deduction if I wasn't
6  able to take my break.  I never received any pay for meal breaks I was unable to take
7  or was unable to take until after my sixth hour worked.

8

9       I declare under penalty of perjury under the laws of the State of California, and
10  the United States of America, that the foregoing is true and correct.

11       Executed February 12, 2013, at San Bernadino, California.

12

13                                        Dwayne Conedy

14  `

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                      4                        CV12-01804 GHK (CWx)
                          DECLARATION OF DWAYNE CONEDY

**EXHIBIT D**

1  TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
   NATASHA CHESLER (S.B. #227540)
2  THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
   A Professional Corporation
3  11377 West Olympic Boulevard, Suite 500
   Los Angeles, California 90064-1683
4  Telephone: (310) 882-6407
   Facsimile: (310) 882-6359

5  Attorneys for Plaintiff and Class Representative
6  Miguel de la Cueva

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11 MIGUEL DE LA CUEVA, on behalf of        CASE NO. CV12-01804 GHK (CWx)
   himself and those similarly situated,
12                                          *Assigned to Hon. George H. King*
                 Plaintiff,
13                                          CLASS ACTION
           vs.
14                                          **DECLARATION OF PLAINTIFF
   ALTA DENA CERTIFIED DAIRY,               AND CLASS REPRESENTATIVE
15 LLC, a Delaware Limited Liability        MIGUEL DE LA CUEVA**
   Company, ALTA-DENA CERTIFIED
16 DAIRY, INC., a Delaware Corporation,
   and DOES 1 through 10, inclusive,
17
                 Defendants.
18

19

20

21

22

23

24

25

26

27

28
                                            EXHIBIT - D, PAGE 1

1

## **DECLARATION OF MIGUEL DE LA CUEVA**

2    I, Miguel de la Cueva, declare as follows:

3    1.    If called as a witness, I could and would competently testify to all facts

4    within my personal knowledge except where stated upon information and belief.

5    2.    In approximately 1990, I began working as a truck driver for Adohr

6    Farms.  Alta Dena Certified Dairy, LLC ("Alta Dena") (or some related entity)

7    acquired Adohr Farms in approximately 2004.  I continued to work for Alta Dena as a

8    truck driver from 2004 until December 27, 2010.

9    3.    I worked at the City of Industry location as a Route Driver and a

10    Shuttle/Relay Driver.  (I also worked at various points as a Relief Driver.)  My job

11    duties were to deliver Alta Dena product to its customers, such as Wal-Mart, or to

12    other Alta Dena locations (or distributors) in Southern California (and then pick up

13    empty trailers and bring them back to the City of Industry location).  My supervisors

14    included Jesse Sanchez, Joe Llamas, Craig Widlund, and Humberto Rodriguez (who

15    we called "Beto").  From approximately 2008 through 2010, I generally worked a 4-10

16    schedule, meaning I worked four days a week, ten hours each day.  Although,

17    sometimes I would work a 5-8 schedule, meaning I would work five days a week, eight

18    hours each day.

19    4.    The routes Alta Dena gave me were beyond difficult to complete in 10

20    hours – even without any breaks.  I often worked well beyond my shift.  Alta Dena

21    would assign the route specifically, where to go, in what order, etc.  Managers also

22    communicated how much time each part of the route (and the route in general) was

23    supposed to take.  But the amount of time managers gave me to complete my route left

24    no room to take a 30-minute duty free meal break and two 15-minute rest breaks until

25    my deliveries were complete and sometimes not at all.

26    5.    Alta Dena always stressed efficiency.  And customer satisfaction was also

27    extremely important.  Many customers had "delivery windows," meaning the delivery

28

EXHIBIT - D, PAGE 2

1

CV12-01804 GHK (CWx)

DECLARATION OF MIGUEL DE LA CUEVA

PLT 00385

1  had to arrive by a certain time, otherwise it might get delayed, refused, or cancelled.
2  Also, most places were closed for deliveries during lunch.  This meant that you had to
3  be sure you arrived there before noon or after 1:00 p.m. to keep your day on track.
4  Making delivery windows and keeping to the route time managers had assigned was
5  mandatory.  I always heard comments from supervisors stressing the importance of
6  doing things quickly such as "What's taking so long?" or "Hurry up."  On many
7  occasions, for example, Beto criticized me for taking too long making Wal-Mart
8  deliveries.  I told Beto repeatedly, "I'm going as fast as I can.  There's too much to do
9  on the route.  Please come with me or have another supervisor come so you can see
10  and if you can show me a better more efficient way to do it, please do so."  But no one
11  ever discussed it with me further or came with me, except on one occasion, Mr.
12  Sanchez (see below).

13      6.      Also, there were certain limits set by the Department of Transportation
14  ("DOT") that we had to follow.  This included that we could not work and drive more
15  than a certain amount of hours, approximately 14 hours total, before you had to be off
16  for at least 10 hours.  If you hit the 14 hour mark and you were still on the road, then
17  the company would have to send out a driver to come get you and drive you back.
18  You would also get in trouble with your supervisor.  The company did not always
19  abide by these rules though.  If another driver was not available, Alta Dena would just
20  tell you to drive back.  And if there were a lot of deliveries, Alta Dena would schedule
21  you for another shift with less than 10 hours off even though you had hit DOT
22  maximum.  But regardless, hitting DOT maximum hours worked meant trouble with
23  your supervisor.

24      7.      In approximately 2008 or 2009, Alta Dena began using a computer system
25  called XATA.  XATA was a GPS system placed on all the trucks that tracked our
26  movement.  Drivers were supposed to enter all tasks into XATA such as loading,
27  unloading, hooking trailers, meal and rest breaks, etc.

28

8.      While I was at Alta Dena, no one from the company ever told drivers when meal and rest breaks were available to us.  It never came up in any meetings or was in any paperwork given to us.  I was never assigned a meal or rest break time from my supervisors.  And no one ever even mentioned that it could or should be taken between the 4th and 6th hour worked.  Nor did anyone tell us that we were eligible for an extra hour of pay if we could not take a break.  And no one even mentioned that we were entitled to a second meal period if we worked more than 10 hours, which I also did many times.  With all the deliveries that had to get made and the tight time-frame Alta Dena gave us to do it in, it was almost impossible to take a 30-minute duty free meal break (if at all) before the 6th hour of my shift.  So I almost always waited until the end of my day, after <u>all</u> deliveries had been completed – and well after my 6th hour worked – to take my meal break.  This also meant that I hardly ever had time for two 15-minute rest breaks as well.

9.      Management knew that it was too difficult to take a duty free 30-minute meal break prior to the 6th hour worked.  For example, on April 19, 2010, my supervisor Mr. Sanchez came with me on a "Route Ride Along."  This meant that he did part of my route with me and reviewed my XATA records for the day to go over my performance, including my safety, efficiency, etc.  I began work that day at approximately 7:00 p.m.  (See documents attached hereto as Exs. 25 and 112 at p. 27.)  I did not take my meal break until approximately 1:54 a.m. – after I had been working nearly seven hours – and all my deliveries were finished and all I had left to do was drive back to the City of Industry facility finish post-trip work and clock out.  (Ex. 112 at pp. 27-29.)  This was the first (and only) break I got that day.  (Id. at pp. 27-29.)  In other words, I took no rest breaks.  (Id.)

10.     On my "Route Ride Along" performance review, Mr. Sanchez noted that I was "on target" for my breaks (Ex. 25 and 112 at pp. 27-28) even though I did not take a meal break until seven hours into my shift and even though I took no rest breaks at

EXHIBIT - D, PAGE 4

3
CV12-01804 GHK (CWx)
PLT 00387

1    all.  This is just one example of how it was made clear to me that the most important
2    thing to Alta Dena was to finish my deliveries first and only after all deliveries were
3    done could I stop for any kind of break – meal or rest.

4         11.    This was my general practice while at Alta Dena – make all deliveries and
5    then take a meal break, which was almost always after the sixth hour worked.  And
6    there were also occasions where I got so busy I didn't have time for any meal break at
7    all.  I didn't complain about this for a long time because I didn't even know that I was
8    entitled to take my meal break before a certain time.  The pay was good and I had been
9    a driver all my adult life.  I have a wife and three kids and providing for family was the
10   most important thing.

11        12.    After XATA was implemented, Alta-Dena became adamant that we must
12   log our breaks.  I discussed with other drivers on occasion between 2008 and 2010 that
13   our routes didn't give us enough time to take a 30-minute duty-free meal break and
14   two 15-minute rest breaks and complete it in Alta Dena's time expectations.  And if we
15   took too long doing something – even a matter of minutes – we definitely heard about
16   it from our supervisors and it wasn't good.  But then our supervisors would also
17   threaten to write us up if we didn't punch a meal break into XATA.  This meant you
18   were going to get into trouble either way – in trouble for taking too long or in trouble
19   for not punching in a break.  I heard that some other drivers would punch into XATA
20   as if they were on a meal/rest break, but then keep working – like unloading empties
21   when they came back to the yard.  This was because XATA would not let you punch in
22   a meal/rest break (or would kick you out if you were punched in on a break) if the
23   truck was in motion.  So I began doing that sometimes too on the days that were just
24   too busy for me to take a meal break at all.

25        13.    In approximately February 2009, I began suffering from a stomach illness
26   that was later diagnosed as diverticulitis.  I informed Susana Correa (from Human
27   Resources) and Mr. Llamas (one of my supervisors) of my need for time off and for

28

1  accommodations beginning in March 2009.  Not being able to eat for prolonged

2  periods of would give me horrible stomach pain.  I took a few days off of work here

3  and there to deal with doctor's appointments and surgery.  My stomach condition

4  lasted through 2009 and 2010 because it took a long time until I was properly

5  diagnosed and then it took a long time for the treatment to start working.  During this

6  entire time, the inability to take a meal break when I needed it (which was before the

7  seventh hour of work) was extremely tough on me physically.  On one occasion, I

8  believe in early 2010, I contacted my supervisor, Mr. Sanchez and told him that I had

9  been driving for nine hours and my stomach was in severe pain.  I explained again my

10 medical condition to him (even though I had made him aware about it several times

11 before starting in 2009).  I asked Mr. Sanchez for permission to pull over for 15

12 minutes to quickly eat something.  (Alta Dena always told us it was illegal to eat and

13 drive at the same time.)  Mr. Sanchez took a stern tone of voice and told me to

14 complete my deliveries and not take any breaks until they were done.  I listened to Mr.

15 Sanchez because I didn't want to get in trouble.

16     14.    On another occasion, I believe in approximately late November 2010, I

17 raised the issue about needing to take a meal break before seven hours into my shift

18 (and other issues) with Mr. Llamas.  But Mr. Llamas just got angry with me and raised

19 his voice stating, "Don't come to me with this bullshit!"  I did not want to anger a

20 supervisor, so I didn't push the issue any further.  Then, in a couple weeks later, Craig

21 Widlund (another manager) approached me.  Mr. Widlund said that Mr. Llamas had

22 asked him to give me a message, "No lunch until he finishes his work."  I took this as a

23 clear message that my managers were upset with my repeated requests for meal and

24 rest breaks.  I was suspended the following week and terminated thereafter.

25     15.    Alta Dena did not make a meal period available to me before the 6th hour

26 that I worked.  And sometimes Alta Dena did not make a meal period available to me

27 at all with the routes and time schedules it provided.  Alta Dena also did not provide

28

EXHIBIT - D, PAGE 6

5

CV12-01804 GHK (CWx)

PLT 00389

1  me with two 15-minute rest breaks given the routes and time restraints they gave me

2  and the constant pressure to do things fast.  As a result, I hardly ever took a meal break

3  before the 6th hour I worked and rarely took two 15-minute rest breaks.  I also never

4  took a second meal break when I would work over 10 hours because nobody ever told

5  me it was even available.  I never received any pay for the meal and/or rest breaks I

6  was unable to take, or meal breaks I was unable to take before the 6th hour worked, or

7  the second meal break I didn't get after I worked over 10 hours.

8      16.    I understand that some drivers have said that as a driver at Alta Dena it is

9  your own "choice" when to take a meal or rest break.  I almost laughed when I heard

10  this because it is not a real "choice."  Yes, we all have choices we make in life.  But if

11  you choose to keep the company happy (and keep your job), then you have to make

12  your deliveries on time, keep customers happy, move as quickly as possible, and take

13  your breaks – if at all – only after most of your day is done (and well past the sixth

14  hour of work).  When it came to the meal break, the only option was to take it near the

15  end of the day if you wanted to keep working there.  That's why I don't think this is

16  really a "choice."  And its especially hard to call it a choice when Alta Dena never

17  even told us we could or should take our meal break before the 6th hour worked or that

18  we should get an extra hour of pay if we could not.  In addition, no one at Alta Dena

19  ever told us that we could take a second meal break if we worked more that 10 hours.

20  There were "choices" we never even knew we had.

21      17.    Alta Dena also had a policy that required drivers to stay within one mile

22  of our route at all times – including any meal break.  It wasn't like you could really go

23  beyond a mile from your route anyway though given the time restrictions and

24  deliveries that had to be made.  But still this was the company policy that was told to

25  us.  My supervisors were very clear that this meant I could not deviate from the route

26  to take a break.  No one from Alta Dena ever said that it really meant just the truck.  Or

27  that I could have someone else pick me up and go off route.  The policy meant what it

28

EXHIBIT - D, PAGE 7

6

DECLARATION OF MIGUEL DE LA CUEVA

CV12-01804 GHK (CWx)

PLT 00390

1  said – drivers couldn't leave the route for more than a mile (or a half-mile)for any

2  reason.

3      18.    Alta Dena also deducted 30-minutes from my wages every day if I

4  worked more than my scheduled shift (*i.e.*, overtime).  But no one at Alta Dena ever

5  informed me that this was happening.  No one at Alta Dena ever got my permission to

6  do this.  And no one at Alta Dena ever told me that I could undo it or provided me with

7  any method to override this automatic deduction.  I don't recall discussing this with

8  any of the drivers during my employment.  It was just another thing Alta-Dena did that

9  I had to accept if I wanted to keep my job.

10      19.    I understand that I am the named class representative in this case.  I know

11  this is an important role and that I have duties towards the class of my fellow drivers.  I

12  understand this means that I must monitor the progress of the litigation, keep updated

13  on hearings, rulings, and other events, and review documents, filings, and other

14  paperwork.  I further understand that being a class representative also means I must be

15  continually supervising the case and that if I have a disagreement with my attorneys,

16  that I must address it by consulting another attorney or taking other appropriate steps.

17  I have been actively involved in the case, participated in meetings, telephonic

18  conversations, and other communications regarding case status, strategy, and discovery

19  responses.  Being a class representative takes up a lot of time, but I believe it is

20  important to stand up for myself and also for my co-workers.  Finally, I understand that

21  if this action is certified by the Court as a class action, that means that I (and any other

22  class representatives such as Juan Perez or Scott Parker) will be seeking to recover

23  damages (and other relief) not just on behalf of ourselves, but on behalf of the entire

24  class of those similarly situated to us (*i.e.* the other drivers in California).  I am ready,

25  willing, and able to take on this role and will vigorously pursue these claims.  And I

26  have no objection to Juan Perez or Scott Parker (or another driver) joining me in this

27  role.  In addition, I understand that I have also brought claims related to my

28

EXHIBIT - D, PAGE 8

7

CV12-01804 GHK (CWx)

PLT 00391

termination and disability (including failure to accommodate (by providing meal breaks for example) and discrimination).  I do not believe these claims create a conflict of interest for me in representing the potential class members.  I know that I cannot – and will not – settle my individual claims to the detriment of the class claims.  I also have no objection to the Court issuing a stay of my individual claims until the class claims are finally resolved.  If the Court refuses to certify the class because it believes that my individual claims make me an inadequate class representative – which I don't believe they do – I also have no objection to Juan Perez (or another driver) taking my place as representative on the class claims.

20.    I have read this declaration and it has also been translated to me in Spanish.

I declare under penalty of perjury under the laws of the State of California, and the United States of America, that the foregoing is true and correct.

Executed February 15, 2013, at Los Angeles, California.

_Miguel de la Cueva_
Miguel de la Cueva

**EXHIBIT E**

1   TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
    NATASHA CHESLER (S.B. #227540)
2   THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
    A Professional Corporation
3   11377 West Olympic Boulevard, Suite 500
    Los Angeles, California 90064-1683
    Telephone: (310) 882-6407
4   Facsimile: (310) 882-6359

5   Attorneys for Plaintiff and Class Representative
    Miguel de la Cueva
6

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11  MIGUEL DE LA CUEVA, on behalf of        CASE NO. CV12-01804 GHK (CWx)
    himself and those similarly situated,

12                                          *Assigned to Hon. George H. King*
                 Plaintiff,
13                                          CLASS ACTION
         vs.
14                                          **DECLARATION OF CHRIS DRITZ**
    ALTA DENA CERTIFIED DAIRY,
15  LLC, a Delaware Limited Liability
    Company, ALTA-DENA CERTIFIED
16  DAIRY, INC., a Delaware Corporation,
    and DOES 1 through 10, inclusive,
17
                 Defendants.
18

19

20

21

22

23

24

25

26

27

28
                                                    CV12-01804 GHK (CWx)
                      DECLARATION OF CHRIS DRITZ

                                               EXHIBIT - E, PAGE 1

                                                    PLT 00361

## DECLARATION OF CHRIS DRITZ

I, Chris Dritz, declare as follows:

1.     If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief. I previously worked as a driver for Alta Dena Certified Dairy, LLC ("Alta Dena").

2.     I began as a Route Driver in approximately October 1989 until I was laid off in 2007, but I believe my employment formally concluded in 2008. I began working at the Chatsworth facility and then moved back and forth during various periods from the Chatsworth facility to the City of Industry facility. The last year of my employment I was assigned to the City of Industry facility. During the last year of my employment, my supervisors included Roger Barajas and Humberto Rodriguez (who we called "Beto"). I delivered Alta Dena products to its customers in Southern California, such as Smart & Final, Starbucks, and health food stores.

3.     As a Route Driver at Alta Dena, there was a considerable workload. Routes were assigned to us with a structure of the order to go in. I estimate I averaged approximately 12-15 hours a day, with 8-10 deliveries. I often drove 300 miles a day making these deliveries. Many of my customers had delivery windows, which meant that I had to arrive at a certain time.

4.     During my employment with Alta Dena, nobody ever informed me about meal or rest breaks. I was not told by anyone at Alta Dena that I was entitled to a 30-minute duty free meal break or two 15-minute rest breaks. I knew, however, that I was entitled to a 30-minute meal break just from my own general knowledge. In addition, nobody at Alta Dena ever informed me that a 30-minute duty free meal break was available to me between the 4th and 6th hour of my workday.

5.     Given the amount of deliveries I had, and the time I had to do it in, it was too difficult to take a 30-minute meal break between the 4th and 6th hour of my workday and keep my deliveries on track. There were also days I was unable to take a

1
DECLARATION OF CHRIS DRITZ

CV12-01804 GHK (CWx)

EXHIBIT - E, PAGE 2

PLT 00362

1. 30-minute duty free meal break at all. When I did take a 30-minute duty free meal
2. break, it was almost always at the end of my workday, after all my deliveries were
3. completed. I also almost never took a rest break due to the nature of my route.

4.     6.    When I did take a meal break, I would note it in my log book, including
5. the time I took the break. Thus, my records would show me taking my meal break
6. well after the 6th hour worked.

7.     7.    Alta Dena never paid me for any meal breaks I was unable to take or
8. unable to take before the 6th hour worked due to the nature of my route, or for any rest
9. breaks I was similarly unable to take.

10.     8.    Nobody at Alta Dena ever informed me that I was entitled to a second
11. meal break if I worked over 10 hours. And there were many occasions where I did in
12. fact work more than 10 hours in a day. Indeed, I generally worked at least 12-14 hour
13. days. But I never took a second meal break on those occasions because I had no idea I
14. was entitled to it. Alta Dena also never paid me for these second meal breaks that
15. were not made available to me.

16.     9.    I ended up leaving the dairy delivery industry entirely – after
17. approximately 18 years – because I saw what it was slowly doing to me physically and
18. what it did to other drivers. A lot of guys had knee surgeries. Almost all our
19. deliveries weighed hundreds to thousands of pounds we had to physically move.
20. There were very few routes that had palettes that you could move with machinery. It
21. was a job that required brut strength. I came over to Alta Dena when I was 21. My
22. father had been working there for about 10 years at the time. (My father stayed for
23. approximately another five years.) I ultimately left in large part because I didn't want
24. to destroy my body and thought I should get out while I can. I am now a mortgage
25. broker.

2<br>DECLARATION OF CHRIS DRITZ

CV12-01804 GHK (CWx)

1    I declare under penalty of perjury under the laws of the State of California, and

2  the United States of America, that the foregoing is true and correct.

3    Executed February 15, 2013, at ____Ventura____, California.

4

5                                                        Chris Dritz

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT - E, PAGE 4

PLT 00364

**EXHIBIT F**

TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
NATASHA CHESLER (S.B. #227540)
THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
A Professional Corporation
11377 West Olympic Boulevard, Suite 500
Los Angeles, California 90064-1683
Telephone: (310) 882-6407
Facsimile: (310) 882-6359

Attorneys for Plaintiff and Class Representative
Miguel de la Cueva

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL DE LA CUEVA, on behalf of himself and those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALTA DENA CERTIFIED DAIRY, LLC, a Delaware Limited Liability Company, ALTA-DENA CERTIFIED DAIRY, INC., a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. CV12-01804 GHK (CWx)<br><br>*Assigned to Hon. George H. King*<br><br>CLASS ACTION<br><br>**DECLARATION OF RANDY FAUSS** |

EXHIBIT - F, PAGE 1

## DECLARATION OF RANDY FAUSS

I, Randy Fauss, declare as follows:

1.     If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief. I previously worked as a driver for Alta Dena Certified Dairy, LLC ("Alta Dena").

2.     I began working as a delivery driver for Adohr Farms in approximately 1995. Alta Dena merged (or took over the company) in approximately 2000. I remained a driver working for Alta Dena until approximately August 2009, when I had to go out on permanent disability.

3.     I worked at the San Diego facility as a route driver. My supervisors included Leo Barajas, Matt Carroll, and Bobby (whose last name I can't remember). I delivered Alta Dena products to places in San Diego including grocery stores, Target, coffee shops, and military stops. I generally worked either a 4-10 schedule, meaning I worked four days a week, ten hours each day or a 5-8, meaning I worked five days a week, at least eight hours a day. The routes Alta Dena gave me, however, were beyond difficult to complete in 10 hours – even without any breaks. I believe I averaged approximately 12 hours a day.

4.     To say the workload on my route was heavy is an understatement. It got so bad that my knees (which admittedly were bad to begin with) totally gave out and now I am on permanent disability.

5.     Getting things done quickly was always the number one concern for Alta Dena. I often heard Mr. Carroll say to other drivers, "How come you're staying out there so long?" There was also the issue with the Department of Transportation ("DOT") maximum hours, which I think was 15 hours, after which time a driver had to have at least 8 hours off. This meant that if you got too delayed and went over the DOT maximum, you would have to start your route later the following day, which then meant you were going to perpetually keep getting behind every day after that. (It also

1  meant that if you hit the maximum hours while you were out making a delivery or on

2  the road, you had to pull over and wait for Alta Dena to send another driver to

3  "relieve" you and drive you back.) So managers were always on us to do things in the

4  expected time frame and not to hit the DOT maximum limit.

5       6.     The nature of the routes Alta Dena provided me were so heavy and filled

6  with so many things drivers had to do (loading, unloading, meeting delivery windows,

7  stocking shelves, etc.) that I was not given a reasonable opportunity to take a 30-

8  minute duty free meal break before the sixth hour of work (if at all) or two rest breaks

9  either. Thus, I often went a whole workday without taking a duty free meal or rest

10  break.

11       7.     In approximately 2008, the XATA system was implemented, which had a

12  GPS system to track the movement of our trucks. Alta Dena required drivers to log

13  our various tasks into XATA. Drivers were also told to log our meal and rest breaks

14  into XATA too. But this was a Catch-22 situation because it was nearly impossible to

15  take a real 30-minute duty free meal break given my route. And if I didn't finish my

16  route on time, I would get in trouble with my supervisor. Yet, if I didn't log a meal

17  break into XATA, I would also get in trouble. Thus, the only choice Alta Dena gave

18  me was "log" a meal break into XATA, but continue working during that time. For

19  example, at the end of my route I would often log out as if I was taking a meal break,

20  but then unload my empties during that time, or I might "log" a meal break at another

21  time and set up merchandise in the back of the truck for the next stop. This wasn't

22  even really a "choice," but the only way to satisfy Alta Dena's expectations of me to

23  complete my deliveries in the time-frame they requested as well as the constant

24  message from managers that all they cared was that a meal was "logged." In other

25  words, my supervisors (including Mr. Carroll) never seemed to care about discussing

26  whether we actually *took* a break, just that it was *logged* into XATA.

27

28

DECLARATION OF RANDY FAUSS

EXHIBIT - F, PAGE 3
CV12-01804 GHK (CWx)
PLT 00332

1       8.    Alta Dena also had a policy of deducting 30-minutes from my wages

2   every day or if I worked more than my scheduled shift (*i.e.*, overtime). But no one at

3   Alta Dena ever told me that I could undo that or provided me with any method to

4   override this automatic deduction. I never received any pay for duty-free meal and/or

5   rest breaks that I was unable to take, or any meal breaks that I was unable to take prior

6   to the sixth hour worked.

7

8       I declare under penalty of perjury under the laws of the State of California, and

9   the United States of America, that the foregoing is true and correct.

10       Executed February 7, 2013, at  *SAN DIEGO* , California.

11

12                     Randy Fauss

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT G**

1  TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
   NATASHA CHESLER (S.B. #227540)
2  THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
   A Professional Corporation
3  11377 West Olympic Boulevard, Suite 500
   Los Angeles, California 90064-1683
   Telephone: (310) 882-6407
4  Facsimile: (310) 882-6359

5  Attorneys for Plaintiff and Class Representative
6  Miguel de la Cueva

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11 MIGUEL DE LA CUEVA, on behalf of        CASE NO. CV12-01804 GHK (CWx)
   himself and those similarly situated,
12                                          *Assigned to Hon. George H. King*
              Plaintiff,
13                                          CLASS ACTION
         vs.
14                                          **DECLARATION OF BENJAMIN
   ALTA DENA CERTIFIED DAIRY,               FRANKLIN**
15 LLC, a Delaware Limited Liability
   Company, ALTA-DENA CERTIFIED
16 DAIRY, INC., a Delaware Corporation,
   and DOES 1 through 10, inclusive,
17
              Defendants.
18

19

20

21

22

23

24

25

26

27

28

                                            CV12-01804 GHK (CWx)

1                  **DECLARATION OF BENJAMIN FRANKLIN**

2       I, Benjamin Franklin, declare as follows:

3          1.      If called as a witness, I could and would competently testify to all facts

4 within my personal knowledge except where stated upon information and belief. I

5 previously worked as a driver for Alta Dena Certified Dairy, LLC ("Alta Dena").

6          2.      I began working for Alta Dena as a route relief driver in approximately

7 1994 until approximately January 2010. I worked at the San Diego location. My

8 supervisors included Chuck Zhrinzo, Leo Barajas, and Matt Carroll, among others.

9          3.      As a route relief driver, I delivered Alta Dena products to its customers in

10 Southern California, including Wal-Mart, Rite-Aid, CVS, Smart & Final, Target, and

11 some "Mom & Pop" Stores. A "relief" driver, meant that I was filling in for other

12 drivers' routes. I worked approximately 13 hours a day on average. My duties

13 included route relief on both the day crew and night crew. After Adohr Farms merged

14 with us (which I believe was in approximately 2000), my deliveries increased

15 substantially and I made approximately an average of 17-20 deliveries in a day, which

16 continued until the end of my employment.

17          4.      In the beginning, Alta Dena did not provide me with any instructions on

18 how to complete the route. I used my own GPS to figure it out. But given the amount

19 of stops Alta Dena gave me and the amount of time I was supposed to complete it in, I

20 had tremendous difficulty completing everything in the time Alta Dena requested. I

21 repeatedly asked for help from supervisors on how to set up the route to ease this

22 difficulty. This included asking supervisors to come onto routes with me so they could

23 see and give me guidance. But no supervisor ever did anything to help me.

24          5.      Then in approximately 2008, Alta Dena began mapping out every single

25 place I was supposed to be going and the order and timeframe I was supposed to do

26 everything in. (This continued until my employment concluded.) There were many

27 time crunchers in performing my duties. From approximately 2000 until I left, we had

28

1   to stock shelves and rearrange product, in addition to loading and unloading deliveries.

2   We also had to set up our trucks for the deliveries before we left, which was a huge

3   chunk of the day and would take me about two hours right then at the beginning of my

4   day.  Some stores had delivery windows that meant that deliveries had to be made

5   within a certain time-frame or might be canceled.  Also, many stores were closed for

6   deliveries during lunch, so you couldn't arrive there between approximately 12-1 p.m.

7   because they wouldn't be available to receive the delivery and that would just delay

8   the whole rest of your day.

9        6.      Because my workday was so heavy and filled with so many things I had

10  to do and time-frames to meet, I hardly ever was able to take a 30-minute duty-free

11  meal break (and certainly not before the 6th hour I worked), or two 15-minute rest

12  breaks.  I never focused on my meal and rest breaks because Alta Dena made clear that

13  wasn't important to the company.  All that was important was getting things done

14  quickly.  For example, on one occasion I was called into the office by Mr. Barajas who

15  said (based on my XATA information) I looked like I was out there driving around in

16  circles.  I explained that I had trouble finding the stop (because I was route relief, this

17  was not my regular route).  It was so frustrating trying to keep up with Alta Dena's

18  methodology on how fast the route had to be completed because I felt like the

19  company did not assign the route with nearly enough time to get everything done.  I

20  often heard comments such as, "You're taking too long over here, over there, on the

21  dock, etc."  I heard comments from supervisors all the time about saving time on each

22  and every task, loading in the morning, making deliveries at the store, you name it.

23       7.      Doing things quickly was stressed constantly.  There was also a board in

24  the drivers' room that had XATA printouts of everyone's performance.  This included

25  the driver's name, speed, amount of cases, and a lot of other data.  Thus, if you didn't

26  perform as fast as Alta Dena expected, then your name would be up on that board for

27  everyone to see.

28

3

EXHIBIT - G, PAGE 3

PLT 00367

8.     I also complained on many occasions that I noticed some drivers were not stocking shelves properly, which I believed was also the result of the constant pressure put on us to be quick.  But still nothing was ever done to manage the assigned routes so that there was enough time to do everything properly and take meal and rest breaks.

9.     No one at Alta Dena ever assigned me a time-frame for my meal or rest breaks.  No one at Alta Dena ever told me when the meal or rest breaks were available to me.  All I heard was to take my breaks when and if I could.  And no one at Alta Dena ever even told me that I was entitled to a second meal break if I worked more than 10 hours or for any reason.  (There was no mention whatsoever of a "second" meal period at all.)  But I really couldn't take any breaks anyway given my workload.  At best, I generally took a couple five-minute rest breaks here and there.  I never had time to warm my food, or properly eat something for 30-minutes because I didn't like the fact that I was being yelled at anytime I was even slightly delayed for anything.  Being constantly berated for my time performance demoted me, it took me away fro my steady stride of 20 years in the industry, and it made me very depressed because I felt I was not being treated right.  Still, I felt like I had to maintain the status of being a "team player" to keep my job, which meant to keep the work going by omitting your meal and rest breaks because Alta Dena was going to fuss with me if I did take my breaks.  Taking a 30-minute duty free meal break and two 15-minute rest breaks was not an option given the workload.  You don't take that break.  You just keep on going.

10.    There were times I pushed into the XATA system that I was on a break (meal or rest), but I was working the product in the store, or emptying product from the back of the truck during that time.  That was because I didn't want to get in trouble for not "logging" a break into XATA.  The company definitely made me feel that all that was important to them was to log a break to protect them legally.  I don't recall specifically what was said, but remember that I felt very threatened that something punitive would happen to me if a meal break was not "logged" into XATA (regardless

4

CV12-01804 GHK (CWx)

1  of whether or not it was actually taken)[1].  And many times I would even log out of
2  XATA and finish work that was left over because I didn't want to get in trouble for
3  taking too long or needing overtime.  So this work I basically just did for free to keep
4  my job.  I never took a second meal break when I worked over 10 hours because I
5  never knew I was entitled to that.

6      11.    The job was also physically so stressful that I developed many cumulative
7  injuries that never really healed and I went out on disability in approximately
8  November 2009.  In January 2010, I got released for modified work from my specialist
9  with a note that it also required my general physician's sign off.  My general physician
10  believed I needed more time, which was also my opinion.  Then Alta Dena terminated
11  me in approximately August 2010 saying modified work was not an option, I either
12  had to come back to my full position right then or they were going to let me go.  They
13  didn't even ask me or my physician how much longer I needed to be out.  Instead they
14  just terminated me after at least 16 years while I was still out on disability.

15      12.    I had no idea that Alta Dena had a policy of deducting 30-minutes from
16  my wages every day or if I worked more than my scheduled shift (*i.e.*, overtime).
17  (And I often worked over my scheduled shift.)  No one from Alta Dena ever got my
18  permission to do this.  No one at Alta Dena ever told me that I could undo this or
19  provided me with any method to override this automatic deduction.

20      13.    I never received any pay for duty-free meal and/or rest breaks that I was
21  unable to take (whether I logged them into XATA or not), or any meal breaks that I
22  was unable to take prior to the sixth hour worked.  I also never received any pay for the
23  "second" meal breaks I never took after the 10th hour I worked.

24

25

26  [1] In fact, no one at Alta Dena ever discussed actually *taking* meal and rest breaks as opposing
27  to *logging* them.  I never heard anything like it's important that you feel rested, or have time
    to eat, or anything of that sort.

28

5

1       I declare under penalty of perjury under the laws of the State of California, and

2   the United States of America, that the foregoing is true and correct.

3       Executed February 14, 2013, at Murietta, California.

4

5                          Benjamin Franklin

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

PLT 00370

**EXHIBIT H**

TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
NATASHA CHESLER (S.B. #227540)
THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
A Professional Corporation
11377 West Olympic Boulevard, Suite 500
Los Angeles, California 90064-1683
Telephone: (310) 882-6407
Facsimile: (310) 882-6359

Attorneys for Plaintiff and Class Representative
Miguel de la Cueva

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL DE LA CUEVA, on behalf of himself and those similarly situated, | CASE NO. CV12-01804 GHK (CWx) |
| Plaintiff, | *Assigned to Hon. George H. King* |
| vs. | CLASS ACTION |
| ALTA DENA CERTIFIED DAIRY, LLC, a Delaware Limited Liability Company, ALTA-DENA CERTIFIED DAIRY, INC., a Delaware Corporation, and DOES 1 through 10, inclusive, | **DECLARATION OF CARLOS GUTIERREZ** |
| Defendants. | |

EXHIBIT - H, PAGE 1

PLT 00350

## DECLARATION OF CARLOS GUTIERREZ

I, Carlos Gutierrez, declare as follows:

1.      If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief. I previously worked as a driver for Alta Dena Certified Dairy, LLC ("Alta Dena").

2.      I worked for Alta Dena as a Route Driver for approximately one to two months in about 2010 or 2011. I quit after this short time because the job was just too demanding physically and the amount of time everything had to be done in. During the time I worked at Alta Dena, I was a probationary employee or in training because I was new. So I always worked with another driver. Sometimes I would drive the route, and sometimes I would be the passenger and help load and unload. We delivered Alta Dena products to its customers in Southern California, such as Target and navy bases. There were a lot of stops on the route – approximately 17-20. I worked at least 12 hours a day, sometimes even 14 hours.

3.      Alta Dena would give us paperwork with all the stops on the route and the order we were supposed to do it in. Some places also had a delivery schedule of a time we had to get there by. Everything on the route had to be done in a hurry. Alta Dena wanted everything done fast, fast, fast.

4.      The route had so many stops that had to be done so fast that many times there was no time to take a 30-minute meal break. When I could take a 30-minute meal break, it was almost always after working at least six hours. I saw the other driver that I worked with also miss his meal breaks too, or when we did take them it was after both of us had worked at least six hours.

5.      Alta Dena never paid me for the meal breaks I was unable to take because of the route assigned to me or that I was unable to take until working more than six hours because of the route assigned to me.

CV12-01804 GHK (CWx)

EXHIBIT - H, PAGE 2

PLT 00351

1        I declare under penalty of perjury under the laws of the State of California, and

2    the United States of America, that the foregoing is true and correct.

3        Executed February 13, 2013, at Calexico, California.

4

5        Carlos Gutierrez

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

DECLARATION OF CARLOS GUTIERREZ         CV12-01804 GHK (CWx)

EXHIBIT - H, PAGE 3

PLT 00352

**EXHIBIT I**

1 | TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
NATASHA CHESLER (S.B. #227540)
2 | THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
A Professional Corporation
3 | 11377 West Olympic Boulevard, Suite 500
Los Angeles, California 90064-1683
4 | Telephone: (310) 882-6407
Facsimile: (310) 882-6359

5 | Attorneys for Plaintiff and Class Representative
6 | Miguel de la Cueva

7

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | MIGUEL DE LA CUEVA, on behalf of himself and those similarly situated,

CASE NO. CV12-01804 GHK (CWx)

12 | Plaintiff,

*Assigned to Hon. George H. King*

13 | vs.

CLASS ACTION

14 | ALTA DENA CERTIFIED DAIRY, LLC, a Delaware Limited Liability
15 | Company, ALTA-DENA CERTIFIED DAIRY, INC., a Delaware Corporation,
16 | and DOES 1 through 10, inclusive,

**DECLARATION OF PETER LOPEZ**

17 | Defendants.

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF PETER LOPEZ

1

2       I, Peter Lopez, declare as follows:

3       1.      If called as a witness, I could and would competently testify to all facts

4  within my personal knowledge except where stated upon information and belief.  I

5  previously worked as a driver for Alta Dena Certified Dairy, LLC ("Alta Dena").

6       2.      I began working as a delivery driver for Adohr Farms in approximately

7  1992.  Alta Dena merged (or took over the company) in approximately 2000.  I

8  remained a driver working for Alta Dena until approximately 2009.  I worked at the

9  San Diego facility.

10      3.      From 2008 until I left the company in 2009, I worked as a route driver.

11  My supervisors included Leo Barajas and Matt Carroll.  I mostly delivered Alta Dena

12  products to stores in Southern California like Walmart, Target, CVS, and hospitals.  I

13  generally worked a 4-10 schedule, meaning I worked four days a week, ten hours each

14  day.  The routes Alta Dena gave me, however, were beyond difficult to complete in 10

15  hours – even without any breaks.  Indeed, I averaged approximately at least 12 hours a

16  day.  And there were many days (approximately 1-2 times a week) where I passed the

17  15 hour mark, which meant that under the Department of Transportation ("DOT")

18  rules I had to come in an hour later the following day because I needed more time off

19  before being legally able to drive again.  There were times I had about 18 delivery

20  stops on my route in a single day.

21      4.      Given the heavy nature of my route, most of the time I was unable to take

22  any duty free meal or rest breaks.  If I got hungry, I would just eat and drive.  Time

23  management was always stressed by managers.  If I was delayed for any reason, I

24  would quickly hear from my supervisor, Mr. Carroll, things like "What's the hold up?"

25  or "What's taking so long?"  Management also let us know that efficiency was a very

26  important factor in evaluating our job performance.

27

28

DECLARATION OF PETER LOPEZ

EXHIBIT L PAGE 2
CV12-01804-GHK (CWx)

PLT 00339

5.      Prior to 2009, Alta Dena did not require the drivers to record our meal and rest breaks (which I wasn't able to take anyway). Then, in approximately 2009, the XATA system was implemented. XATA included a GPS system that monitored where the truck was. Drivers had to input certain tasks into XATA, such as loading, unloading, etc. Alta Dena told the drivers to log meal and rest breaks into XATA. Given that I often couldn't take breaks because of my routes, I didn't always clock out for a meal or rest break at first. One day, Mr. Carroll approached me and said that he noticed I didn't clock out for lunch. He said, "you gotta clock out for lunch." I told him, "Look what time it is. I got a family. I gotta get home." I explained that my route was so heavy there was no time to take a meal break. Indeed, I barely had time to go home, eat, shower, sleep, before having to come right back the next day. But Mr. Carroll just replied that I "had to log it."

6.      The message I got from this discussion, and other similar comments from management, was that Alta Dena didn't care if I really took the meal or rest break, just that they were recorded in XATA. I understood from these discussions that the most important thing to Alta Dena was that I completed my routes timely. I discussed this issue with co-workers. They told me they would just "log out" for a meal break, but continue to work (and not eat or rest) because there wasn't time in their routes either. One co-worker told me that what he did was log the meal break when he got back to the yard and then take the empty containers out because that was a convenient time to clock it when the truck wasn't in motion. So that's what I started doing. I would generally wait until I got back to the yard and unload the empties and simply "log out for lunch" even though I was really working the entire time.

7.      I know that the company policy was that we weren't supposed to log a meal break if we didn't take it, but I didn't really have any other option. If I brought back product because I got too behind to deliver it, then that would just mean the next day would be even more behind, and then I would ultimately be pushing the DOT

1  maximum driving limit for a day.  All of these things (late deliveries, exceeding DOT

2  limits, etc.) would also mean getting in trouble with management.  But if I didn't "log

3  out for lunch" then I would also get in trouble with management.  Thus, it ended up

4  that the only "choice" Alta Dena gave me was to clock out for a fake meal break, but

5  keep working and keep my route on schedule.

6       8.     The nature of the routes provided to me, combined with the comments by

7  my managers, made me feel extremely pressured to make my deliveries without taking

8  any breaks (meal or rest).  And the nature of routes provided to me did not give me a

9  reasonable opportunity to take a 30 minute duty-free meal break before the sixth hour

10  of work (if at all), and did not give me any reasonable opportunity to take two rest

11  breaks.  In addition, if I was able to take a meal break, I was told that company policy

12  did not let me go more than one mile outside my assigned route.

13       9.     The subject of not being able to take our breaks came up frequently by

14  drivers in meetings with managers.  I heard many co-workers complain in these

15  meetings with our supervisors that the way Alta Dena assigned/planned the routes

16  made us unable to properly take our breaks.  Yet nobody ever investigated whether I

17  was able to take my breaks – or did anything to fix my route so that I could have

18  enough time to actually take a break.  The pressure Alta Dena management put on me

19  about getting things done as quickly as humanly possible was so high that after I

20  stopped working there I continued to have nightmares that I was still at work and

21  running late.

22       10.    Nobody from Alta Dena told me that company policy was to deduct 30-

23  minutes of pay from my wages when I worked over my daily shift (i.e., overtime).

24  And no one at Alta Dena ever provided me with any way to undo this automatic

25  deduction if I wasn't able to take my meal break.  I never received any pay for work

26  done during my "break" or for days where I didn't even "log" a break at all (or for

27  days where when I was actually able to take a break, it was not before the sixth hour of

28

1 | my work day).  Nor did I ever receive any pay for the rest breaks that I similarly was

2 | unable to take.

3 |     I declare under penalty of perjury under the laws of the State of California, and

4 | the United States of America, that the foregoing is true and correct.

5 |     Executed February 1⅞, 2013, at _____Escondido_____, California.

6 |

7 |                                     Peter Lopez

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

EXHIBIT 1, PAGE 5
CV12-01804-GHK(CWx)

PLT 00342

**EXHIBIT J**

rom: Law Offices of Timothi Fax: (310) 882-6359          To: +18584815861          Fax: +18584815861          Page 1 of 4  2/18/2013 10:21

1 | TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
  | NATASHA CHESLER (S.B. #227540)
2 | THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
  | A Professional Corporation
3 | 11377 West Olympic Boulevard, Suite 500
  | Los Angeles, California 90064-1683
4 | Telephone: (310) 882-6407
  | Facsimile: (310) 882-6359

5 | Attorneys for Plaintiff and Class Representative
6 | Miguel de la Cueva

7

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | MIGUEL DE LA CUEVA, on behalf of    CASE NO. CV12-01804 GHK (CWx)
   | himself and those similarly situated,
12 |                                    *Assigned to Hon. George H. King*
   |           Plaintiff,
13 |                                    CLASS ACTION
   |     vs.
14 |                                    **DECLARATION OF JEFFERY B.**
   | ALTA DENA CERTIFIED DAIRY,          **MANGAN**
15 | LLC, a Delaware Limited Liability
   | Company, ALTA-DENA CERTIFIED
16 | DAIRY, INC., a Delaware Corporation,
   | and DOES 1 through 10, inclusive,
17 |
   |           Defendants.
18 | ————————————————————

19

20

21

22

23

24

25

26

27

28

From: Law Offices of Timothi Fax: (310) 882-6359        To: +18584815861        Fax: +18584815861        Page 2 of 4 2/18/2013 10:21

## DECLARATION OF JEFFERY B. MANGAN

I, Jeffery B. Mangan, declare as follows:

1.     If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief. I previously worked as a driver for Alta Dena Certified Dairy, LLC ("Alta Dena").

2.     I worked as a Route Driver at the San Diego location for approximately 31 years. (I began with Adohr Farms, which then became Alta Dena in approximately 2000.) I retired in approximately December 2009. I delivered Alta Dena products to its customers in Southern California, including convenient stores, schools, hospitals, restaurants, and navy ships. I worked approximately 12-14 hours a day on average for most of my employment, and during the last six years, I worked approximately 10 hour a day on average. During 2008-2009, I made approximately 10-16 deliveries (or stops) on average.

3.     Alta Dena assigned the routes to me with specific instructions as to where I was supposed to go and in what order. In addition, many customers had delivery windows, which meant that the delivery was required to arrive between a certain time. The workload was very heavy and because of this I generally did not take any breaks – meal or rest. There wasn't any time with the route assigned to me to stop and rest. No one at Alta Dena ever assigned me a time to take a 30-minute duty free meal break or told me when I could or should take it. Instead, what I heard most of the time was why something took so long. Supervisors always stressed efficiency and getting deliveries done as fast as possible. Given all the things I had to get done on the route Alta Dena assigned me, and the time limitations they gave me to do it in, I rarely ever took a 30-minute duty-free meal break, and if I did take one it was not before the sixth hour I worked. I also hardly ever got to take two 15-minute rest breaks in a day either.

4.     At one point towards the end of my employment, I remember the subject of meal breaks coming up during meetings with co-workers and supervisors.

2

DECLARATION OF JEFFERY B. MANGAN

EXHIBIT - J, PAGE 2
CV12-01804 GHK (CWx)

PLT 00372

1   Supervisors said that we had to take a 30-minute meal break.  I heard other drivers
2   make comments such as "When?  We don't have time.  If we don't keep moving we
3   won't make it back to the yard....I can't do all this.  We need some help."  The
4   supervisors didn't really address this issue and in response would just say something
5   like, "Well take care of it."  In response to these comments, sometimes I would note in
6   my log book that I had taken a meal break when I didn't, just to make it look good.
7   But there were plenty of times that I did not log a meal break in my book at all
8   (because I didn't have time to take it due to the route).

9        5.    The routes were never restructured to alleviate the time pressure so that I
10   could have enough time for a duty free 30-minute meal break and two 15-minute rest
11   breaks.

12        6.    While I worked at Alta Dena nobody ever informed me that I was entitled
13   to take my meal break before the 6th hour worked.  All that was ever communicated to
14   me was to take my meal break whenever I could take it.  And, as previously explained,
15   because of the work I was assigned, this meant if I did take a meal break, it was almost
16   always after everything was done (*i.e.* after all my deliveries were finished) and well
17   after the 6th hour I worked.

18        7.    While I worked at Alta Dena nobody ever informed me that I was entitled
19   to a second duty-free meal break if I worked more than 10 hours.  Thus, I never took a
20   second meal break when I worked more than 10 hours because I never even knew I
21   was entitled to it.

22        8.    I knew that 30 minutes were being deducted from my paycheck, but I
23   don't recall anyone in management at Alta Dena discussing it with me.  I never gave
24   permission for the automatic deduction.  And no one at Alta Dena ever provided me
25   with any way to override this automatic 30-minute deduction.

26
27
28

EXHIBIT - J PAGE 3

3
DECLARATION OF JEFFERY B. MANGAN

PLT 00373

From: Law Offices of TimothrFax: (310) 882-6359     To: +18584815861     Fax: +18584815861     Page 4 of 4 2/18/2013 10:21

1  9.    I never received any pay for the meal breaks (first or second meal period)

2  I was unable to take (or those that I could not take before the sixth hour worked). I

3  also did not receive any pay for the rest breaks I was unable to take.

4      I declare under penalty of perjury under the laws of the State of California, and

5  the United States of America, that the foregoing is true and correct.

6      Executed February 18, 2013, at San Diego, California.

7

8                           Jeffery B. Mangan

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT J, PAGE 4
CV-12-01804-GHK (CWx)

PLT 00374

**EXHIBIT K**

TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
NATASHA CHESLER (S.B. #227540)
THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
A Professional Corporation
11377 West Olympic Boulevard, Suite 500
Los Angeles, California 90064-1683
Telephone: (310) 882-6407
Facsimile: (310) 882-6359

Attorneys for Plaintiff and Class Representative
Miguel de la Cueva

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL DE LA CUEVA, on behalf of himself and those similarly situated, | CASE NO. CV12-01804 GHK (CWx) |
| Plaintiff, | *Assigned to Hon. George H. King* |
| vs. | CLASS ACTION |
| ALTA DENA CERTIFIED DAIRY, LLC, a Delaware Limited Liability Company, ALTA-DENA CERTIFIED DAIRY, INC., a Delaware Corporation, and DOES 1 through 10, inclusive, | **DECLARATION OF KEVIN ONORATO** |
| Defendants. | |

EXHIBIT - K, PAGE 1

1

## DECLARATION OF KEVIN ONORATO

2  I, Kevin Onorato, declare as follows:

3  1.    I previously worked as a driver for Alta Dena Certified Dairy, LLC ("Alta
4  Dena"). If called as a witness, I could and would competently testify to all facts within
5  my personal knowledge except where stated upon information and belief.

6  2.    I began working for Adohr Farms in approximately 1986, which then
7  turned into Alta Dena in approximately 2000. I went out on disability leave in
8  approximately September 2010 and couldn't return because I had become permanently
9  disabled after that. I worked at the San Diego location as a Class A Driver. My
10  supervisors included Matt Carroll and Leo Barajas.

11  3.    From 2008 through the time I left in 2010, Alta Dena gave me a route that
12  was extremely overloaded. Indeed, while working as a driver for Alta Dena, I was
13  way overworked. It was a physical job, and people were often getting hurt. But Alta
14  Dena wouldn't bring in enough temps or workforce to handle the load, so the workload
15  of those out on leave (or out sick, on vacation, etc.) would fall on current employee's
16  shoulders. And our own routes were heavy enough to begin with. Thus, I often
17  worked approximately 15 hours a day. I delivered Alta Dena product to stores in
18  Southern California like Smart & Final.

19  4.    Given the heavy nature of my route, it was virtually impossible to take a
20  duty free 30-minute meal period, if at all. And if I could take such a meal period, it
21  certainly wasn't before the sixth hour worked. As a result, I hardly ever took any duty-
22  free meal breaks or rest breaks.

23  5.    Up until approximately 2008, Alta Dena had no computer tracking system
24  and drivers were not asked to "record" meal or rest breaks in any way. Then in
25  approximately 2009, we got the XATA system that used GPS to track the movement of
26  our trucks. We were told we had to log meal breaks into XATA. I didn't do this at
27  first because I was used to not taking breaks. But then I got written up for not

28

EXHIBIT - K, PAGE 2

recording a meal break.  I spoke with my supervisor, Mr. Carroll, and explained that the route Alta Dena gave me didn't give me enough time to take the meal break, particularly if I wanted to maintain a timely delivery schedule.  Mr. Carroll replied coldly that he "had to cover [his] ass."  But he made it clear – as did the entire company – that every minute mattered and that the most important thing was to timely deliver Alta Dena's product.  "Moving product" quickly was always stressed as number one.  It was like a game Alta Dena played with us – efficiency, *i.e.*, timely delivery was most important, but the route Alta Dena gave didn't give you enough time to take a 30-minute duty free meal break, yet you would get written up if you didn't "log" a meal break.  So it was a lose-lose situation.  Take a break and suffer the consequences of getting in trouble for not making deliveries on time, or log a fake break.  We all chose the latter.

6.     The message I got from Mr. Carroll (and other supervisors/management) was that I should "log" a meal break whether I was able to take it or not.  So that's what I did.  I tried to always "log" a meal break, but most of the time I was not able to take it.  Instead while I was "logged out" for a meal, I just continued working, moving product around, or unloading empties, etc.

7.     Mr. Carroll knew I was logging a meal break, but not taking it, because I actually discussed it with him.  On another occasion discussing meal breaks with Mr. Carroll, I asked him, "I haven't been able to take a lunch in fifteen years, how is it changing now?"  He said again that he had to cover his butt because of management in LA.  I told him flat out that I had too much work and if the company wouldn't lighten my load so that I actually could take a duty free meal break, then I was going to log it in XATA, but continue working during that time.  Mr. Carroll told me to do whatever I had to do.

8.     The nature of the routes Alta Dena provided to me, combined with the comments by my managers, made me feel pressured to make my deliveries without

EXHIBIT - K, PAGE 3
CV12-01804 GHK (CWx)
PLT 00377

1  taking any breaks (meal or rest).  And the nature of routes Alta Dena provided to me

2  did not give me a reasonable opportunity to take a 30-minute duty free meal break

3  before the sixth hour of work (if at all), and did not give me any reasonable

4  opportunity to take two rest breaks.

5       9.    Alta Dena also had a policy of deducting 30-minutes from my wage every

6  day or if I worked more than my scheduled shift (*i.e.*, overtime).  But no one at Alta

7  Dena ever told me that I could undo that or provided me with any method to override

8  this automatic deduction.  I never received any pay for duty-free meal and/or rest

9  breaks that I was unable to take.

10       I declare under penalty of perjury under the laws of the State of California, and

11  the United States of America, that the foregoing is true and correct.

12       Executed February *11*, 2013, at *Temecula*, California.

13

14  Kevin Onorato

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT L**

TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
NATASHA CHESLER (S.B. #227540)
THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
A Professional Corporation
11377 West Olympic Boulevard, Suite 500
Los Angeles, California 90064-1683
Telephone: (310) 882-6407
Facsimile: (310) 882-6359

Attorneys for Plaintiff and Class Representative
Miguel de la Cueva

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL DE LA CUEVA, on behalf of himself and those similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> ALTA DENA CERTIFIED DAIRY, LLC, a Delaware Limited Liability Company, ALTA-DENA CERTIFIED DAIRY, INC., a Delaware Corporation, and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. CV12-01804 GHK (CWx) <br><br> *Assigned to Hon. George H. King* <br><br> CLASS ACTION <br><br> **DECLARATION OF SCOTT PARKER** |

DECLARATION OF SCOTT PARKER

CV12-01804 GHK (CWx)

1    **DECLARATION OF SCOTT PARKER**

2    I, Scott Parker, declare as follows:

3    1.    If called as a witness, I could and would competently testify to all facts
4    within my personal knowledge except where stated upon information and belief. I
5    previously worked as a driver for Dean Foods of Southern California, LLC ("Dean
6    Foods") (known as "Heartland Farms") and later transferred to "Dean Transportation,
7    Inc.") (collectively the "Company"). All told, I worked at this job through various
8    corporate changes for approximately 15 years.

9    2.    During 2008 through June 2012, I worked at the City of Industry location.
10   During this time-frame, I worked either the City of Industry North ("COI-N") location,
11   which was considered Heartland Farms, or the City of Industry South ("COI-S")
12   location, which was considered "Alta Dena." But, regardless of whether I was at COI-
13   N or COI-S, I understood the employment policies and practices were the same
14   because we were all Dean Foods subsidiaries under their ultimate control. Despite the
15   various changes in who my "technical" employer was, the employment policies and
16   practices stayed uniform.

17   3.    My duties as a driver was to deliver dairy products from the City of
18   Industry location to other Company facilities in Southern California. My managers
19   included Neil Brown, Jesse Sanchez, Oscar Carrazco, and Ray Loya, who I understood
20   to be "Alta Dena" managers.

21   4.    My routes were extremely heavy. The Company expected drivers to
22   arrive at a delivery destination by a set time, that did not take into account stopping for
23   a meal or rest break or any other reason. If we did not timely arrive we faced a
24   discussion with our manager and some form of reprimand. The nature of the routes
25   provided to me made it virtually impossible to take a 30-minute duty free meal break
26   or two 15-minute rest breaks. On the rare occasion I was able to take a 30-minute duty
27   free meal break, it almost never was before my sixth hour of work. And rest breaks

28

EXHIBIT - L, PAGE 2

PLT 00354

1   were almost impossible to take as well.  Once in a while, I was able to stop for five

2   minutes or so to grab a soda, but this was also rare.

3       5.    The subject of not being able to take our meal and rest breaks came up in

4   meetings.  Managers would start by saying that it was company policy to take our

5   breaks and we had to do it, but then they would say the exact opposite – "hurry up and

6   get out there and get your route done."  When we expressed our confusion at the mixed

7   message, the response from managers was "just log something."  The message at the

8   end of the day was that the Company wanted us to finish our routes quickly – and that

9   was the most important thing – even if we had to skip meal or rest breaks to get it done

10  – and that if we did skip a meal/rest break, we were still supposed to "log" it into

11  XATA as if we had taken the break.

12      6.    Thus, I would often log out of XATA for a "meal break," even though I

13  was unable to take the duty free meal break.  The Company knew drivers were doing

14  this, because I even told my manager that on some occasions I would just log out of

15  XATA, but I was still not getting a real meal break because there was just too much

16  work given to me on my route.  But my manager didn't seem to care.   Plus, XATA

17  tracked all of my truck's movement, so the Company could still tell that I was

18  obviously not on a real "break," but making a delivery, unloading empties, etc. during

19  that entire time.

20      7.    The nature of the routes provide to me, combined with comments by

21  managers, made me feel pressured to make my deliveries by omitting my breaks.  The

22  nature of the routes also did not give me a reasonable opportunity to take my breaks.

23  As a result, I hardly ever took a 30-minute duty free meal break before the sixth hour

24  of work (if at all), or two rest breaks in a single day.  Indeed, I was lucky if I got one

25  rest break at all.

26      8.    Ultimately, I got terminated for taking the few rest breaks I could.  In

27  approximately June 2012, I was terminated for allegedly "stealing company time."  I

28

1  was told that my XATA records showed me taking five or ten minutes on a few

2  occasions away from my route.  I explained this was just so I could take a short break

3  to grab a soda.  Nor did I even get a meal break on some of these days.  Still, the

4  Company said taking such a break was "stealing" from the company and terminated

5  me after 15 years of dedicated service.  (And company policy also was that we were

6  not allowed to leave our route more than a mile for any reason, including during any

7  meal period.)

8      9.    Company policy was to deduct 30-minutes from my wages when I

9  worked more than my regular shift (*i.e.* overtime).  But no one at the Company ever

10  discussed this with me or got my written consent.  And no one at the Company ever

11  provided me with any way to undo this automatic deduction if I wasn't able to take my

12  break.  I never received any pay for duty-free meal and/or rest breaks that I was unable

13  to take, or any meal breaks that I was unable to take prior to the sixth hour worked.

14

15      I declare under penalty of perjury under the laws of the State of California, and

16  the United States of America, that the foregoing is true and correct.

17  Executed February 13, 2013, at Victorville , California.

18

19  _Scott Parker_

20

21

22

23

24

25

26

27

28

4

DECLARATION OF SCOTT PARKER

CV12-01804 GHK (CWx)

**EXHIBIT M**

TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
NATASHA CHESLER (S.B. #227540)
THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
A Professional Corporation
11377 West Olympic Boulevard, Suite 500
Los Angeles, California 90064-1683
Telephone: (310) 882-6407
Facsimile: (310) 882-6359

Attorneys for Plaintiff and Class Representative
Miguel de la Cueva

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL DE LA CUEVA, on behalf of himself and those similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>ALTA DENA CERTIFIED DAIRY, LLC, a Delaware Limited Liability Company, ALTA-DENA CERTIFIED DAIRY, INC., a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>        Defendants. | CASE NO. CV12-01804 GHK (CWx)<br><br>*Assigned to Hon. George H. King*<br><br>CLASS ACTION<br><br>**DECLARATION OF JUAN PEREZ** |

EXHIBIT - M, PAGE 1

## DECLARATION OF JUAN PEREZ

I, Juan Perez, declare as follows:

1.      If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief.  I previously worked as a driver for Alta Dena Certified Dairy, LLC (and then Dean Transportation, Inc.) ("Alta Dena") for approximately seven and a half years until I was recently terminated in January 2013.  In approximately 2011, the name of my employer changed from "Alta Dena" to Dean Transportation, Inc.  But this wasn't a real change.  I still performed the same job at the same location and reported to the same managers.  All that changed was the name of my employer.

2.      I worked at the City of Industry location as a route driver.  My job duties were to deliver Alta Dena product to its customers in California, such as Smart & Final.  My supervisors included Craig Widlund, Jesse Sanchez, Joe Llamas, and Vincent Beltrand.  I generally worked a 5-8 schedule, meaning I worked five days a week, and was scheduled for at least eight hours a day.  Usually I worked at least 10 hours a day and often more.  The routes Alta Dena gave me, however, were beyond difficult to complete in 10 hours – even without any breaks.  I made approximately 8-10 deliveries a day.  Alta Dena would assign the route specifically, where to go, in what order, etc.  Managers also communicated how much time each part of the route (and the route in general) was supposed to take.  But the amount of time managers gave me to complete my route left hardly any room – if at all – to take a 30-minute duty free meal break and two 15-minute rest breaks.

3.      Alta Dena always stressed efficiency.  And customer satisfaction was also extremely important.  Many customers had "delivery windows," meaning the delivery had to arrive by a certain time, otherwise it might get refused, or cancelled.  Also, most places were closed for deliveries during lunch.  This meant that you had to be sure you arrived there before noon or after 1:00 p.m. to keep your day on track.  Making

1   delivery windows and keeping to the route time managers had assigned was

2   mandatory.  I always heard (*i.e.*, too many occasions to count) questions from

3   supervisors of "Why are you late?"  If I said, "we had a meeting" for example, I would

4   hear back "I don't care.  We don't want a late delivery."  Thus, I often was unable to

5   take a 30-minute duty free meal break, or two 15-minute rest breaks.  And the times I

6   was able to take a meal break, it was well after the 6th hour of my shift (and almost

7   always after <u>all</u> my deliveries were completed – at least eight or nine hours into my

8   shift).  In approximately 2008 or 2009, XATA was implemented.  This was a

9   computerized system that had a GPS on the truck to track our movement.  And drivers

10  were required to enter all our tasks into XATA (such as loading, unloading, hooking

11  trailer, and meal and rest breaks).

12      4.      If deliveries were late, customers would complain, and then I would get in

13  trouble with my supervisor.  But the way my route was assigned to me, it was almost

14  impossible take a 30-minute meal break (and definitely not a 15 minute rest break as

15  well) before the 6th hour without being late.  Anytime I was late to a customer, my

16  supervisor chastised me.  But if I didn't log a meal break into XATA, then my

17  supervisor would also get upset.  So it was a lose-lose situation.  Alta Dena gave me no

18  real choice other than logging a "fake break" and continuing to work.  Usually, this

19  was unloading empties, or making a delivery because XATA would not allow you to

20  log a meal/rest break while the truck was in motion.  And if the truck started moving

21  while you were logged on a meal/rest break, then it would log you out of the break.  So

22  I would do things like unload empties, or arrange product, make deliveries, etc. while I

23  was logged on a meal/rest break in XATA because those were things that you could do

24  with the truck engine off.

25      5.      Based on conversations and comments of other drivers - that was the same

26  thing with them.  I heard many drivers comment that did not have sufficient time to

27

28

EXHIBIT - M, PAGE 3

3

CV12-01804 GHK (CWx)

PLT 00395

1  take a rest or meal break and that they would also punch into XATA that they were on
2  a meal break, but would just continue working during that time.

3      6.      Alta Dena knew that I was unable to take duty-free meal and rest breaks
4  because of the nature of my route – and especially that I couldn't take a duty-free meal
5  break before the 6th hour.  Vincent Beltrand specifically told me on many occasions,
6  "Don't take any breaks until you finish all your deliveries."  My general practice was
7  to take my meal break after all deliveries were finished because otherwise I would get
8  in trouble with the customers and my supervisors for being late.

9      7.      For a very short time around 2011, Alta Dena told the drivers we had to
10 take lunch between the 4th and 6th hour.  (Before that time there was never any mention
11 about when drivers could  or should take breaks, just to take it whenever we could.)  I
12 tried a few times to take my 30-minute meal break between the 4th and 6th hour, but I
13 ended up being late to my deliveries and the customers complained and then I was
14 called in by my supervisors Craig Widlund and Vincent Beltrand and spoken to.
15 Again, I was told not to take breaks until I finished all my deliveries.  Within a month
16 or so after management asked us to take lunch between the 4th and 6th hour, they
17 eliminated that request.  It really was almost impossible to comply and keep the
18 assigned deliveries on track.  The nature of the routes Alta Dena provided me were so
19 heavy and filled with so many things drivers had to do (loading, unloading, meeting
20 delivery windows, etc.) that I was not given a reasonable opportunity to take a 30-
21 minute duty free meal break before the sixth hour of work (if at all) or two rest breaks
22 either.

23     8.      Also in approximately 2011, Alta Dena told the drivers that we were
24 entitled to a second meal period if we worked more than 10 hours in a day.  Nobody
25 from Alta Dena ever mentioned this to us before.  We were given the option to waive
26 this second meal period, which I did because given how difficult the company made it
27 to take the first meal period, taking a second was only twice as hard.  Plus, since Alta

28

1  Dena made clear that they didn't want us to take any breaks, I understood the company
2  didn't want me to take the second meal break either.  So it wasn't surprising to me that
3  Alta Dena specifically asked us to waive the second meal break in approximately
4  2011, which I did.

5      9.      Another way working as fast as possible was stressed was that Alta Dena
6  would post XATA reports showing our time performance (included with other things)
7  in the drivers' break room.  Alta Dena made clear that our job performance and, thus,
8  continued employment, was always measured by how fast we accomplished every
9  single task.

10      10.      Also, there were certain limits set by the Department of Transportation
11  ("DOT") that we had to follow.  This included that we could not work and drive more
12  than a certain amount of hours, approximately 14 hours total, before you had to be off
13  for at least 10 hours.  If you hit the 14 hour mark and you were still on the road, then
14  the company would have to send out a driver to come get you and drive you back.
15  You would also get in trouble with your supervisor.  The company did not always
16  abide by these rules though.  If another driver was not available, Alta Dena would just
17  tell you to drive back.  And if there were a lot of deliveries, Alta Dena would schedule
18  you for another shift with less than 10 hours off even though you had hit DOT
19  maximum.  But regardless, hitting DOT maximum hours worked meant trouble with
20  your supervisor.

21      11.      Alta Dena also had a policy that required drivers to stay within one mile
22  of our route at all times.  This also made taking a meal break problematic because if
23  you didn't see a place to eat, that meant you didn't eat.  On one occasion when I took a
24  break slightly off my route (because that was the closest place to find a safe place to
25  park), I got written up for it.  A true and correct copy of this write up is attached hereto
26  as Exhibit A.

27

28

12.     Alta Dena also had a policy of deducting 30-minutes from my wages every day if I worked more than my scheduled shift (*i.e.*, overtime).  But no one at Alta Dena ever told me that I could undo that or provided me with any method to override this automatic deduction.  I never received any pay for duty-free meal and/or rest breaks that I was unable to take, or any meal breaks that I was unable to take prior to the sixth hour worked.  And I never authorized this 30-minute deduction.  This deduction also does not appear on my paychecks.  (True and correct copies of my paychecks from Dean Transportation are attached hereto as Exhibit B.)

13.     I contacted Plaintiff's counsel in this case after I got the opt-out letter notifying me about the case.  I also have volunteered to be a class representative.  I understand that this is an important role and that I would have duties towards the class of fellow drivers.  I understand this means that I must monitor the progress of the litigation, keep updated on hearings, rulings, and other events, and review documents, filings, and other paperwork.  I further understand that being a class representative also means I must be continually supervising the case and that if I have a disagreement with our attorneys, that I must address it by consulting another attorney or taking other appropriate steps.  I know that this means being a class representative will take up a lot of time.  Finally, I understand that if this action is certified by the Court as a class action, that means that I (and any other class representatives such as Miguel de la Cueva) will be seeking to recover damages (and other relief) not just on behalf of ourselves, but on behalf of the entire class of those similarly situated to us (*i.e.* the other drivers in California).  I am ready, willing, and able to take on this role and will vigorously pursue the claims.

14.     I have read this declaration and it has also been translated to me in Spanish.

1

2        I declare under penalty of perjury under the laws of the State of California, and

3   the United States of America, that the foregoing is true and correct.

4        Executed February 15, 2013, at Los Angeles, California.

5

6                                          Juan Perez

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

EXHIBIT - M, PAGE 8

PLT 00400



**ALTA DENA**
*PURE. WHOLESOME. GOOD.*

# CORRECTIVE ACTION NOTICE

| EMPLOYEE NAME: | JOB TITLE AND DEPARTMENT/LOCATION: |
|---|---|
| Juan Perez | Route Driver, Distribution, City of Industry |

| DATE OF INCIDENT: | TYPE OF CORRECTIVE ACTION: | | |
|---|---|---|---|
| April 28th, 2012 | [X] VERBAL    [ ] WRITTEN    [ ] SUSPENSION | FROM : | RETURN TO WORK: |

**DESCRIPTION OF INCIDENT OF SITUATION:**

Failure to comply to Company Distribution Dept. "Standard Operating Procedures."  On Saturday April 28th 2012

when Juan finished his route he did not " proceed to the yard following the shortest distance" as per Company Distribution

Standard Operating Procedures, Juan drove eleven miles off his designated route to take his second break.

Juan also did not take his break in field of his route as instructed as per Company Distribution Standard Operating Procedures.

**PREVIOUS DISCUSSIONS OR COUNSELING CONCERNING THIS OR RELATED MATTERS:**

**CORRECTIVE STEPS REQUIRED BY EMPLOYEE AND/OR SUPERVISORS:**

Review Company Distribution Standard Operating Procedures "SOP"

**FUTURE ACTION:**

Failure to correct any further action may lead into further disciplinary action up to and including termination.

I have read and understand this Corrective Action Notice and I acknowledge receipt of a copy.

**EMPLOYEE SIGNATURE:** _[signature]_          Date: 05-07-12

**SUPERVISOR'S SIGNATURE:** _[signature]_          Date: 5/7/12

**WITNESS SIGNATURE:** _[signature]_          Date: 5-7-12

**HUMAN RESOURCES SIGNATURE:**          Date:

TDRIVE:counsel/ml

EXHIBIT - M, PAGE 9

PLT 00401

**EXHIBIT B**

EXHIBIT - M, PAGE 10

PLT 00402

# Earnings Statement

**ADP**

*DEAN TRANSPORTATION INC*
*14760 TRINITY BLVD.*
*FORT WORTH, TX 76155*

| | |
|---|---|
| Period Beginning: | 05/20/2012 |
| Period Ending: | 06/02/2012 |
| Pay Date: | 06/08/2012 |

00000000056
**JUAN PEREZ**
**4747 S. GRAPE ST.**
**PICO RIVERA CA 90660**

Taxable Marital Status: Married
Exemptions/Allowances:
Federal: 5
CA: 5

Social Security Number: ████████

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 25.7500 | 59.50 | 1,532.13 | 22,481.66 |
| Regular | 26.0000 | 12.50 | 325.00 | |
| Overtime | 38.6250 | 15.25 | 589.03 | 9,864.46 |
| Overtime | 39.0000 | 1.50 | 58.50 | |
| Holiday | 25.7500 | 8.00 | 206.00 | 822.32 |
| Holiday Worked ~ | 38.6250 | 7.50 | 289.69 | 984.95 |
| Discretion Bns | | | | 820.00 |
| Doubletime | | | | 25.75 |
| Flt Holiday | | | | 206.00 |
| Retroactive-Reg | | | | 905.65 |
| Sick | | | | 410.32 |
| Vacation | | | | 1,030.00 |
| **Gross Pay** | | | **$3,000.35** | 37,551.11 |

| Deductions | Statutory | this period | year to date |
|---|---|---|---|
| | Federal Income Tax | -244.40 | 3,337.42 |
| | Social Security Tax | -121.64 | 1,524.59 |
| | Medicare Tax | -42.00 | 526.35 |
| | CA State Income Tax | -68.45 | 993.59 |
| | CA SUI/SDI Tax | -28.95 | 362.84 |
| | **Other** | | |
| | Checking 1 | -2,142.94 | 27,348.60 |
| | Union Dental | -11.17* | 134.04 |
| | Union Dues 1 | -64.00 | 256.00 |
| | Union Health | -94.40* | 1,132.80 |
| | 401K Loan 1 | -182.40 | 1,459.20 |
| | Back Dues | | 128.00 |

| Other | this period | year to date |
|---|---|---|
| 401K Loan 2 | | 347.68 |
| **Net Pay** | **$0.00** | |

**\* Excluded from federal taxable wages**

Your federal taxable wages this period are
$2,894.78

**Other Benefits and Information**

| | this period | total to date |
|---|---|---|
| Group Term Life | 1.29 | 15.48 |
| Employee Id | | 0165764 |

©1998, 2006, ADP, Inc. All Rights Reserved

▼ TEAR HERE

EXHIBIT - M, PAGE 11

PLT 00403

# Earnings Statement  ADP®

DEAN TRANSPORTATION INC
14760 TRINITY BLVD.
FORT WORTH, TX 76155

Period Beginning:   06/03/2012
Period Ending:      06/16/2012
Pay Date:           06/22/2012

00000000056
**JUAN PEREZ**
**4747 S. GRAPE ST.**
**PICO RIVERA CA 90660**

Taxable Marital Status:   Married
Exemptions/Allowances:
Federal:   5
CA:        5

Social Security Number:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 25.7500 | 65.00 | 1,673.75 | 24,545.41 |
| Regular | 26.0000 | 15.00 | 390.00 | |
| Overtime | 38.6250 | 23.00 | 888.38 | 10,752.84 |
| Retroactive-Reg | | | 11.38 | 917.03 |
| Discretion Bns | | | | 820.00 |
| Doubletime | | | | 25.75 |
| Flt Holiday | | | | 206.00 |
| Holiday | | | | 822.32 |
| Holiday Worked | | | | 984.95 |
| Sick | | | | 410.32 |
| Vacation | | | | 1,030.00 |
| **Gross Pay** | | | **$2,963.51** | 40,514.62 |

| Deductions | Statutory | this period | year to date |
|---|---|---|---|
| | Federal Income Tax | -238.88 | 3,576.30 |
| | Social Security Tax | -120.09 | 1,644.68 |
| | Medicare Tax | -41.46 | 567.81 |
| | CA State Income Tax | -66.02 | 1,059.61 |
| | CA SUI/SDI Tax | -28.58 | 391.42 |
| | **Other** | | |
| | Checking 1 | -2,180.51 | 29,529.11 |
| | Union Dental | -11.17* | 145.21 |
| | Union Health | -94.40* | 1,227.20 |
| | 401K Loan 1 | -182.40 | 1,641.60 |
| | Back Dues | | 128.00 |
| | Union Dues 1 | | 256.00 |
| | 401K Loan 2 | | 347.68 |

**Net Pay**   $0.00

\* Excluded from federal taxable wages

Your federal taxable wages this period are $2,857.94

**Other Benefits and Information** | this period | total to date
Group Term Life | 1.29 | 16.77

Employee Id | | 0165764

**Important Notes**
YOUR HOURLY RATE HAS BEEN CHANGED FROM 25.7500 TO 26.2500.

©1998, 2006. ADP, Inc. All Rights Reserved.

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

DEAN TRANSPORTATION INC
14760 TRINITY BLVD.
FORT WORTH, TX 76155

Advice number:   00000250056
Pay date:         06/22/2012

**THIS IS NOT A CHECK**

Deposited to the account of | account number | transit ABA | amount
**JUAN PEREZ** | xxxxxx8743 | xxxx xxxx | $2,180.51

© 2000 ADP, Inc

**NON-NEGOTIABLE**

EXHIBIT - M, PAGE 12

PLT 00404

THE ORIGINAL DOCUMENT HAS AN ARTIFICIAL WATERMARK ON THE BACK. HOLD AT AN ANGLE TO VIEW WHEN CHECKING ENDORSEMENT.

NPU  020450  001640  ADCOI  0000270061

# Earnings Statement

ADP®

DEAN TRANSPORTATION INC
14760 TRINITY BLVD.
FORT WORTH, TX 76155

| | |
|---|---|
| Period Beginning: | 06/17/2012 |
| Period Ending: | 06/30/2012 |
| Pay Date: | 07/06/2012 |

00000000061
**JUAN PEREZ**
**4747 S. GRAPE ST.**
**PICO RIVERA CA 90660**

Taxable Marital Status:   Married
Exemptions/Allowances:
  Federal:      5
  CA:           5

Social Security Number:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 26.2500 | 62.50 | 1,640.63 | 26,649.79 |
| Regular | 26.5000 | 17.50 | 463.75 | |
| Overtime | 39.3750 | 23.50 | 925.31 | 11,678.15 |
| Retroactive-Reg | | | 57.25 | 974.28 |
| Discretion Bns | | | | 820.00 |
| Doubletime | | | | 25.75 |
| Flt Holiday | | | | 206.00 |
| Holiday | | | | 822.32 |
| Holiday Worked | | | | 984.95 |
| Sick | | | | 410.32 |
| Vacation | | | | 1,030.00 |
| **Gross Pay** | | | **$3,086.94** | 43,601.56 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -257.39 | 3,833.69 |
| | Social Security Tax | -125.27 | 1,769.95 |
| | Medicare Tax | -43.24 | 611.05 |
| | CA State Income Tax | -74.16 | 1,133.77 |
| | CA SUI/SDI Tax | -29.82 | 421.24 |
| | **Other** | | |
| | Checking 1 | -2,205.09 | 31,734.20 |
| | Union Dental | -11.17* | 156.38 |
| | Union Dues 1 | -64.00 | 320.00 |
| | Union Health | -94.40* | 1,321.60 |
| | 401K Loan 1 | -182.40 | 1,824.00 |
| | Back Dues | | 128.00 |
| | 401K Loan 2 | | 347.68 |

**Net Pay**                              **$0.00**

**\* Excluded from federal taxable wages**

Your federal taxable wages this period are
$2,981.37

## Other Benefits and Information

| | this period | total to date |
|---|---|---|
| Group Term Life | 1.29 | 18.06 |
| Employee Id | | 0165764 |

©1998, 2006, ADP, Inc. All Rights Reserved.

▼ TEAR HERE

© 2000 ADP, Inc

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

DEAN TRANSPORTATION INC
14760 TRINITY BLVD.
FORT WORTH, TX 76155

| | |
|---|---|
| Advice number: | **00000270061** |
| Pay date: | 07/06/2012 |

THIS IS NOT A CHECK

| Deposited to the account of | account number | transit ABA | amount |
|---|---|---|---|
| **JUAN PEREZ** | xxxxx8743 | xxxx xxxx | $2,205.09 |

## NON-NEGOTIABLE

EXHIBIT - M, PAGE 13

THE ORIGINAL DOCUMENT HAS AN ARTIFICIAL WATERMARK ON THE BACK.   HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

NPo 020450 6b164d ADC0i 0000290005B 1

# Earnings Statement

**ADP**

*DEAN TRANSPORTATION INC*
*14760 TRINITY BLVD.*
*FORT WORTH, TX 76155*

| | |
|---|---|
| Period Beginning: | 07/01/2012 |
| Period Ending: | 07/14/2012 |
| Pay Date: | 07/20/2012 |

00000000060
**JUAN PEREZ**
**4747 S. GRAPE ST.**
**PICO RIVERA CA 90660**

Taxable Marital Status: Married
Exemptions/Allowances:
Federal: 5
CA: 5

Social Security Number: ▮▮▮▮▮

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 26.2500 | 58.50 | 1,535.63 | 28,543.17 |
| Regular | 26.5000 | 13.50 | 357.75 | |
| Overtime | 39.3750 | 15.25 | 600.47 | 12,338.25 |
| Overtime | 39.7500 | 1.50 | 59.63 | |
| Holiday | 26.2500 | 8.00 | 210.00 | 1,032.32 |
| Holiday Worked | 39.3750 | 8.50 | 334.69 | 1,319.64 |
| Discretion Bns | | | | 820.00 |
| Doubletime | | | | 25.75 |
| Flt Holiday | | | | 206.00 |
| Retroactive-Reg | | | | 974.28 |
| Sick | | | | 410.32 |
| Vacation | | | | 1,030.00 |
| **Gross Pay** | | | **$3,098.17** | 46,699.73 |

| Other | this period | year to date |
|---|---|---|
| Union Dues 1 | | 320.00 |
| 401K Loan 2 | | 347.68 |
| **Net Pay** | **$0.00** | |

* **Excluded from federal taxable wages**

Your federal taxable wages this period are
$2,992.60

**Other Benefits and Information**

| | this period | total to date |
|---|---|---|
| Group Term Life | 1.29 | 19.35 |
| Employee Id | | 0165764 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -259.08 | 4,092.77 |
| | Social Security Tax | -125.74 | 1,895.69 |
| | Medicare Tax | -43.42 | 654.47 |
| | CA State Income Tax | -74.91 | 1,208.68 |
| | CA SUI/SDI Tax | -29.92 | 451.16 |
| | **Other** | | |
| | Checking 1 | -2,276.13 | 34,010.33 |
| | D.R.I.V.E./ Pac | -1.00 | 1.00 |
| | Union Dental | -11.17* | 167.55 |
| | Union Health | -94.40* | 1,416.00 |
| | 401K Loan 1 | -182.40 | 2,006.40 |
| | Back Dues | | 128.00 |

©1998, 2006, ADP, Inc. All Rights Reserved.

TEAR HERE

© 2010 ADP, Inc.

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

DEAN TRANSPORTATION INC
14760 TRINITY BLVD.
FORT WORTH, TX 76155

Advice number: 00000290058
Pay date: 07/20/2012

**THIS IS NOT A CHECK**

| Deposited to the account of | account number | transit ABA | amount |
|---|---|---|---|
| **JUAN PEREZ** | xxxxxx8743 | xxxx xxxx | $2,276.13 |

## NON-NEGOTIABLE

EXHIBIT - M, PAGE 14

PLT.00406

THE ORIGINAL DOCUMENT HAS AN ARTIFICIAL WATERMARK ON THE BACK. | HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

# Earnings Statement

**ADP**

DEAN TRANSPORTATION INC
14760 TRINITY BLVD.
FORT WORTH, TX 76155

| | |
|---|---|
| Period Beginning: | 07/15/2012 |
| Period Ending: | 07/28/2012 |
| Pay Date: | 08/03/2012 |

00000000057
**JUAN PEREZ**
**4747 S. GRAPE ST.**
**PICO RIVERA CA 90660**

Taxable Marital Status:  Married
Exemptions/Allowances:
Federal:  5
CA:  5

Social Security Number: ███████

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 26.2500 | 65.00 | 1,706.25 | 30,646.92 |
| Regular | 26.5000 | 15.00 | 397.50 | |
| Overtime | 39.3750 | 20.00 | 787.50 | 13,125.75 |
| Discretion Bns | | | | 820.00 |
| Doubletime | | | | 25.75 |
| Flt Holiday | | | | 206.00 |
| Holiday | | | | 1,032.32 |
| Holiday Worked | | | | 1,319.64 |
| Retroactive-Reg | | | | 974.28 |
| Sick | | | | 410.32 |
| Vacation | | | | 1,030.00 |
| **Gross Pay** | | | **$2,891.25** | 49,590.98 |

| Other | | this period | year to date |
|---|---|---|---|
| 401K Loan 2 | | | 347.68 |
| **Net Pay** | | **$0.00** | |

\* Excluded from federal taxable wages

Your federal taxable wages this period are
$2,785.68

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -228.04 | 4,320.81 |
| | Social Security Tax | -117.06 | 2,012.75 |
| | Medicare Tax | -40.41 | 694.88 |
| | CA State Income Tax | -61.25 | 1,269.93 |
| | CA SUI/SDI Tax | -27.86 | 479.02 |
| | **Other** | | |
| | Checking 1 | -2,063.66 | 36,073.99 |
| | D.R.I.V.E./ Pac | -1.00 | 2.00 |
| | Union Dental | -11.17* | 178.72 |
| | Union Dues 1 | -64.00 | 384.00 |
| | Union Health | -94.40* | 1,510.40 |
| | 401K Loan 1 | -182.40 | 2,188.80 |
| | Back Dues | | 128.00 |

| Other Benefits and Information | this period | total to date |
|---|---|---|
| Group Term Life | 1.29 | 20.64 |
| Employee Id | | 0165764 |

©1998, 2006. ADP, Inc. All Rights Reserved.

© 2000 ADP, Inc

▼ TEAR HERE ▼

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM ▼

DEAN TRANSPORTATION INC
14760 TRINITY BLVD.
FORT WORTH, TX 76155

| | |
|---|---|
| Advice number: | 00000310057 |
| Pay date: | 08/03/2012 |

THIS IS NOT A CHECK

| Deposited to the account of | account number | transit ABA | amount |
|---|---|---|---|
| JUAN PEREZ | xxxxxx8743 | xxxx xxxx | $2,063.66 |

# NON-NEGOTIABLE

EXHIBIT - M, PAGE 15

PLT 00407

THE ORIGINAL DOCUMENT HAS AN ARTIFICIAL WATERMARK ON THE BACK.    HOLD AT AN ANGLE TO VIEW WHEN CHECKING ENDORSEMENT.

**Earnings Statement** **ADP**®

DEAN TRANSPORTATION INC
14760 TRINITY BLVD.
FORT WORTH, TX 76155

| CO | FILE | DEPT | CLOCK | VCHR NO. | 130 |
|----|------|------|-------|----------|-----|

Period Beginning: 07/29/2012
Period Ending: 08/11/2012
Pay Date: 08/17/2012

00000000057
JUAN PEREZ
4747 S. GRAPE ST.
PICO RIVERA CA 90660

Taxable Marital Status: Married
Exemptions/Allowances:
Federal: 5
CA: 5

Social Security Number:

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 26.2500 | 65.00 | 1,706.25 | 32,750.67 |
| Regular | 26.5000 | 15.00 | 397.50 | |
| Overtime | 39.3750 | 21.50 | 846.56 | 13,972.31 |
| Discretion Bns | | | | 820.00 |
| Doubletime | | | | 25.75 |
| Flt Holiday | | | | 206.00 |
| Holiday | | | | 1,032.32 |
| Holiday Worked | | | | 1,319.64 |
| Retroactive-Reg | | | | 974.28 |
| Sick | | | | 410.32 |
| Vacation | | | | 1,030.00 |
| **Gross Pay** | | | **$2,950.31** | 52,541.29 |

| Other | this period | year to date |
|-------|-------------|--------------|
| 401K Loan 2 | | 347.68 |
| **Net Pay** | **$0.00** | |

* Excluded from federal taxable wages

Your federal taxable wages this period are
$2,844.74

**Other Benefits and**
**Information** this period total to date
Group Term Life 1.29 21.93

Employee Id 0165764

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Income Tax | -236.90 | 4,557.71 |
| | Social Security Tax | -119.53 | 2,132.28 |
| | Medicare Tax | -41.26 | 736.14 |
| | CA State Income Tax | -65.15 | 1,335.08 |
| | CA SUI/SDI Tax | -28.45 | 507.47 |
| | **Other** | | |
| | Checking 1 | -2,170.05 | 38,244.04 |
| | D.R.I.V.E./ Pac | -1.00 | 3.00 |
| | Union Dental | -11.17* | 189.89 |
| | Union Health | -94.40* | 1,604.80 |
| | 401K Loan 1 | -182.40 | 2,371.20 |
| | Back Dues | | 128.00 |
| | Union Dues 1 | | 384.00 |

©1998, 2006, ADP, Inc. All Rights Reserved.

© 2000 ADP, Inc

◄ TEAR HERE

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

VOID VOID VOID

DEAN TRANSPORTATION INC
14760 TRINITY BLVD.
FORT WORTH, TX 76155

Advice number: 00000330057
Pay date: 08/17/2012

THIS IS NOT A CHECK

Deposited to the account of
JUAN PEREZ

| account number | transit ABA | amount |
|----------------|-------------|--------|
| xxxxx8743 | xxxx xxxx | $2,170.05 |

**NON-NEGOTIABLE**

EXHIBIT - M, PAGE 16

PLT 00408

THE ORIGINAL DOCUMENT HAS AN ARTIFICIAL WATERMARK ON THE BACK. HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

NPI 020459 001840 ADCO 00000350060

# Earnings Statement

**ADP**

DEAN TRANSPORTATION INC
14760 TRINITY BLVD.
FORT WORTH, TX 76155

Period Beginning:      08/12/2012
Period Ending:         08/25/2012
Pay Date:              08/31/2012

00000000060
**JUAN PEREZ**
**4747 S. GRAPE ST.**
**PICO RIVERA CA 90660**

Taxable Marital Status:   Married
Exemptions/Allowances:
   Federal:            5
   CA:                 5

Social Security Number:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 26.2500 | 65.00 | 1,706.25 | 34,854.42 |
| Regular | 26.5000 | 15.00 | 397.50 | |
| Overtime | 39.3750 | 19.25 | 757.97 | 14,730.28 |
| Discretion Bns | | | | 820.00 |
| Doubletime | | | | 25.75 |
| Flt Holiday | | | | 206.00 |
| Holiday | | | | 1,032.32 |
| Holiday Worked | | | | 1,319.64 |
| Retroactive-Reg | | | | 974.28 |
| Sick | | | | 410.32 |
| Vacation | | | | 1,030.00 |
| **Gross Pay** | | | **$2,861.72** | 55,403.01 |

| Other | this period | year to date |
|---|---|---|
| 401K Loan 2 | | 347.68 |
| **Net Pay** | **$0.00** | |

\* Excluded from federal taxable wages

Your federal taxable wages this period are
$2,756.15

| Other Benefits and Information | this period | total to date |
|---|---|---|
| Group Term Life | 1.29 | 23.22 |
| Employee Id | | 0165764 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -223.61 | 4,781.32 |
| | Social Security Tax | -115.81 | 2,248.09 |
| | Medicare Tax | -39.99 | 776.13 |
| | CA State Income Tax | -59.30 | 1,394.38 |
| | CA SUI/SDI Tax | -27.56 | 535.03 |
| | **Other** | | |
| | Checking 1 | -2,106.48 | 40,350.52 |
| | D.R.I.V.E./ Pac | -1.00 | 4.00 |
| | Union Dental | -11.17* | 201.06 |
| | Union Health | -94.40* | 1,699.20 |
| | 401K Loan 1 | -182.40 | 2,553.60 |
| | Back Dues | | 128.00 |
| | Union Dues 1 | | 384.00 |

©1998, 2006 ADP, Inc. All Rights Reserved.

© 2000 ADP, Inc.

TEAR HERE

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

DEAN TRANSPORTATION INC
14760 TRINITY BLVD.
FORT WORTH, TX 76155

Advice number:    00000350060
Pay date:         08/31/2012

**Deposited to the account of**
**JUAN PEREZ**

| | account number | transit ABA | amount |
|---|---|---|---|
| | xxxxxx8743 | xxxx xxxx | $2,106.48 |

THIS IS NOT A CHECK

VOID

**NON-NEGOTIABLE**

EXHIBIT - M, PAGE 17

PLT 00409

THE ORIGINAL DOCUMENT HAS AN ARTIFICIAL WATERMARK ON THE BACK. HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

**Earnings Statement** ADP®

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. | 130 |

DEAN TRANSPORTATION INC
14760 TRINITY BLVD.
FORT WORTH, TX 76155

Period Beginning:     08/26/2012
Period Ending:        09/08/2012
Pay Date:             09/14/2012

Taxable Marital Status:   Married
Exemptions/Allowances:
   Federal:      5
   CA:           5

00000000059
JUAN PEREZ
4747 S. GRAPE ST.
PICO RIVERA CA 90660

Social Security Number: [REDACTED]

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 26.2500 | 27.00 | 708.75 | 35,695.67 |
| Regular | 26.5000 | 5.00 | 132.50 | |
| Overtime | 39.3750 | 5.25 | 206.72 | 14,937.00 |
| Flt Holiday | 26.2500 | 8.00 | 210.00 | 416.00 |
| Holiday | 26.2500 | 8.00 | 210.00 | 1,242.32 |
| Vacation | 26.2500 | 40.00 | 1,050.00 | 2,080.00 |
| Discretion Bns | | | | 820.00 |
| Doubletime | | | | 25.75 |
| Holiday Worked | | | | 1,319.64 |
| Retroactive-Reg | | | | 974.28 |
| Sick | | | | 410.32 |
| **Gross Pay** | | | **$2,517.97** | 57,920.98 |

| Other | | this period | year to date |
|---|---|---|---|
| 401K Loan 2 | | | 347.68 |
| **Net Pay** | | **$0.00** | |

\* Excluded from federal taxable wages

   Your federal taxable wages this period are
   $2,412.40

**Other Benefits and**
**Information**          this period     total to date
Group Term Life          1.29            24.51

Employee Id                              0165764

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -172.05 | 4,953.37 |
| | Social Security Tax | -101.38 | 2,349.47 |
| | Medicare Tax | -35.00 | 811.13 |
| | CA State Income Tax | -36.61 | 1,430.99 |
| | CA SUI/SDI Tax | -24.12 | 559.15 |
| | Other | | |
| | Checking 1 | -1,795.84 | 42,146.36 |
| | D.R.I.V.E./ Pac | -1.00 | 5.00 |
| | Union Dental | -11.17* | 212.23 |
| | Union Dues 1 | -64.00 | 448.00 |
| | Union Health | -94.40* | 1,793.60 |
| | 401K Loan 1 | -182.40 | 2,736.00 |
| | Back Dues | | 128.00 |

©1998, 2006, ADP, Inc. All Rights Reserved.

© 2000 ADP, Inc

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

VOID        THIS IS NOT A CHECK        VOID

DEAN TRANSPORTATION INC
14760 TRINITY BLVD.
FORT WORTH, TX 76155

Advice number:     00000370060
Pay date:          09/14/2012

Deposited to the account of     account number     transit ABA     amount
JUAN PEREZ                       xxxxxx8743         xxxx xxxx       $1,795.84

**NON-NEGOTIABLE**

EXHIBIT - M, PAGE 18

PLT 00410

THE ORIGINAL DOCUMENT HAS AN ARTIFICIAL WATERMARK ON THE BACK.     HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

**Earnings Statement** ADP

DEAN TRANSPORTATION INC
14760 TRINITY BLVD.
FORT WORTH, TX 76155

| | | | |
|---|---|---|---|
| Period Beginning: | 12/16/2012 | | |
| Period Ending: | 12/29/2012 | | |
| Pay Date: | 01/04/2013 | | |

00000000002
JUAN PEREZ
4747 S. GRAPE ST.
PICO RIVERA CA 90660

Taxable Marital Status: Married
Exemptions/Allowances:
Federal: 5
CA: 5

Social Security Number:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 26.2500 | 64.50 | 1,693.13 | 2,103.88 |
| Regular | 26.5000 | 15.50 | 410.75 | |
| Overtime | 39.3750 | 29.75 | 1,171.41 | 1,171.41 |
| Doubletime | 52.5000 | .75 | 39.38 | 39.38 |
| Holiday | 26.2500 | 8.00 | 210.00 | 210.00 |
| **Gross Pay** | | | **$3,524.67** | 3,524.67 |

Your federal taxable wages this period are $3,416.02

**Other Benefits and Information**

| | this period | total to date |
|---|---|---|
| Group Term Life | 1.35 | 1.35 |
| Employee Id | | 0165764 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -322.59 | 322.59 |
| | Social Security Tax | -211.88 | 211.88 |
| | Medicare Tax | -49.55 | 49.55 |
| | CA State Income Tax | -103.64 | 103.64 |
| | CA SUI/SDI Tax | -34.16 | 34.16 |
| | **Other** | | |
| | Checking 1 | -2,443.80 | 2,443.80 |
| | D.R.I.V.E./ Pac | -2.00 | 2.00 |
| | Union Dental | -11.17* | 11.17 |
| | Union Dues 1 | -66.00 | 66.00 |
| | Union Health | -97.48* | 97.48 |
| | 401K Loan 1 | -182.40 | 182.40 |
| | **Net Pay** | | **$0.00** |

\* Excluded from federal taxable wages

©1998, 2006, ADP, Inc. All Rights Reserved.

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

DEAN TRANSPORTATION INC
14760 TRINITY BLVD.
FORT WORTH, TX 76155

Advice number: 00000010068
Pay date: 01/04/2013

THIS IS NOT A CHECK

| Deposited to the account of | account number | transit ABA | amount |
|---|---|---|---|
| JUAN PEREZ | XXXXX8743 | XXXX XXXX | $2,443.80 |

**NON-NEGOTIABLE**

EXHIBIT - M, PAGE 19

PLT.00411

THE ORIGINAL DOCUMENT HAS AN ARTIFICIAL WATERMARK ON THE BACK. HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

**EXHIBIT N**

TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
NATASHA CHESLER (S.B. #227540)
THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
A Professional Corporation
11377 West Olympic Boulevard, Suite 500
Los Angeles, California 90064-1683
Telephone: (310) 882-6407
Facsimile: (310) 882-6359

Attorneys for Plaintiff and Class Representative
Miguel de la Cueva

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL DE LA CUEVA, on behalf of himself and those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALTA DENA CERTIFIED DAIRY, LLC, a Delaware Limited Liability Company, ALTA-DENA CERTIFIED DAIRY, INC., a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. CV12-01804 GHK (CWx)<br><br>*Assigned to Hon. George H. King*<br><br>CLASS ACTION<br><br>**DECLARATION OF LOUIS VASQUEZ** |

EXHIBIT - N, PAGE 1

CV12-01804 GHK (CWx)
PLT 00334

### DECLARATION OF LOUIS VASQUEZ

I, Louis Vasquez, declare as follows:

1.     If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief.  I previously worked as a driver for Alta Dena Certified Dairy, LLC ("Alta Dena"), from approximately October 2006 through approximately November 2008.

2.     I was employed by Alta-Dena as a Class A Driver in its City of Industry location.  My job duties were to deliver Alta Dena products to customer warehouses in Southern California, such as Walmart, Coffee Bean, and "Mom & Pop" stores.  My managers included Ernie Cornwall, Jesse Sanchez, Joe Llamas, and Humberto Rodriguez (who called "Beto").  I worked approximately at least 11-12 hours a day, four days a week.  There were days were I worked as much as 14 hours.

3.     Almost all the deliveries Alta Dena assigned to me had "delivery windows" or "appointments," meaning I had to arrive at the warehouse at a specific time.  If I did not arrive on time, I faced a discussion with my supervisor.  My supervisors always stressed to me that the customer comes first.  Mr. Cornwall, Mr. Sanchez, and Mr. Rodriguez all told me generally that being late was not an option.  They said that if I was late for deliveries, the customers might cancel Alta Dena and then I would be fired because Alta Dena would have no more work for me.  This felt like I was being threatened.  And when I was delayed for traffic or some other reason, my supervisors would actually yell at me for being late.

4.     Alta Dena told me I was entitled to a 30-minute meal break, but the way Alta Dena assigned me my routes did not give me enough time to actually take a duty-free meal break before the 6th hour that I worked (if at all) and still make the delivery windows/appointments Alta Dena gave me.  (And it did not give me any time to take two 15-minute rest breaks either.)  Sometimes I would stop at a gas station for just five minutes or so and grab a bag of chips or something like that just to put some food in

my stomach to keep going.  I almost always took my meal break (when I was able to take one at all) at the end of my shift (well after at least eight hours of work).  And there were also days where I was unable to take a 30-minute duty free meal break at all.  I almost never got two 15-minute rest breaks either because of the tight schedule Alta Dena gave me.

5.    Sometimes I would log a meal break earlier in my shift (between the third and fifth hour) – even though I had not taken the break then – to avoid getting written up.  I also discussed this with Mr. Cornwall, Mr. Sanchez, and Mr. Rodriguez.  I told them that I did what they asked me to do – I logged a meal break in XATA earlier, but took the meal break at the end of the day after all my deliveries had been completed.  None of my supervisors told me in response that I should do it any differently.  It really felt like this was a "game" I had to play to save my job – make the customer a priority and get there on time, take a meal break (if at all) after all deliveries had been made, but put something in XATA that I took a duty free meal break between the third and fifth hour.

6.    Also, Alta Dena told me that I could not leave my route more than five or six blocks for any reason, including during any time I took a meal break.  And Alta Dena also told me that I was to keep my truck within view at all times, including during any meal break.

7.    Alta Dena policy also was to deduct 30 minutes of pay every day for the meal break anytime I worked more than my scheduled shift.  But no one from Alta Dena ever discussed this with me, or got my permission, or provided me with any way to reverse this 30-minute automatic deduction.  I never received any pay for meal breaks I was unable to take at all or unable to take before the sixth hour worked because of my route.  I never received any pay for the rest breaks I was similarly unable to take because of my route.

1       I declare under penalty of perjury under the laws of the State of California, and

2 the United States of America, that the foregoing is true and correct.

3       Executed February 12, 2013, at *Baldwin park* California.

5 Louis Vasquez

**EXHIBIT O**

1  TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
   NATASHA CHESLER (S.B. #227540)
2  THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
   A Professional Corporation
3  11377 West Olympic Boulevard, Suite 500
   Los Angeles, California 90064-1683
   Telephone: (310) 882-6407
4  Facsimile: (310) 882-6359

5  Attorneys for Plaintiff and Class Representative
6  Miguel de la Cueva

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  MIGUEL DE LA CUEVA, on behalf of       CASE NO. CV12-01804 GHK (CWx)
    himself and those similarly situated,
12                                          *Assigned to Hon. George H. King*
                    Plaintiff,
13                                          CLASS ACTION
            vs.
14                                          **DECLARATION OF ALAN
    ALTA DENA CERTIFIED DAIRY,              WILFORD**
15  LLC, a Delaware Limited Liability
    Company, ALTA-DENA CERTIFIED
16  DAIRY, INC., a Delaware Corporation,
    and DOES 1 through 10, inclusive,
17
                    Defendants.
18

19

20

21

22

23

24

25

26

27

28
                                                   CV12-01804 GHK (CWx)
                      DECLARATION OF ALAN WILFORD

EXHIBIT - O, PAGE 1

PLT 00379

## DECLARATION OF ALAN WILFORD

I, Alan Wilford, declare as follows:

1.     If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief.  I previously worked as a driver for Alta Dena Certified Dairy, LLC ("Alta Dena") from approximately mid-2008 through mid-2009.

2.     I worked as a Class B (bobtail) driver in the Highland location.  I delivered Alta Dena's products to customers in Southern California, such as Smart & Final, Wal-Mart, and a few "mom and pop" stores.

3.     No one at Alta Dena ever told me that my meal period was available before the sixth hour worked.  All I was told was to take a meal period "whenever I could."  Because my routes were very busy (with many stops and meeting specific delivery windows, etc.), I rarely was able to take a meal period before the sixth hour worked.  Most of the time, I got all my deliveries over with and then took my meal break at the end of the day, well after the sixth hour worked.  There were also many occasions where I couldn't take a meal period at all given the workload.

4.     I heard that 30 minutes was being deducted from my paycheck for a meal break, but no one at Alta Dena ever discussed it with me or asked my permission.  And no one at Alta Dena ever provided me with any way to undo this automatic deduction if I wasn't able to take my break or if I took it after the sixth hour worked.

I declare under penalty of perjury under the laws of the State of California, and the United States of America, that the foregoing is true and correct.

Executed February 14, 2013, at Hesperia, California.

Alan Wilford

1

DECLARATION OF ALAN WILFORD

CV12-01804 GHK (CWx)

EXHIBIT - O, PAGE 2

PLT 00380

**EXHIBIT P**

TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
NATASHA CHESLER (S.B. #227540)
THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
A Professional Corporation
11377 West Olympic Boulevard, Suite 500
Los Angeles, California 90064-1683
Telephone: (310) 882-6407
Facsimile: (310) 882-6359

Attorneys for Plaintiff and Class Representative
Miguel de la Cueva

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL DE LA CUEVA, on behalf of himself and those similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>ALTA DENA CERTIFIED DAIRY, LLC, a Delaware Limited Liability Company, ALTA-DENA CERTIFIED DAIRY, INC., a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>    Defendants. | CASE NO. CV12-01804 GHK (CWx)<br><br>*Assigned to Hon. George H. King*<br><br>CLASS ACTION<br><br>**DECLARATION OF TIMOTHY B. McCAFFREY, JR. IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

EXHIBIT - P, PAGE 1

## DECLARATION OF TIMOTHY B. McCAFFREY, JR.

I, Timothy B. McCaffrey, Jr., declare as follows:

1.      I am an attorney duly admitted to practice before this Court and an attorney of record for plaintiff and class representative Miguel de la Cueva.  If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief.

2.      I received my undergraduate degree from the University of Pennsylvania and graduated cum laude and Order of the Coif at Loyola Law School in Los Angeles in 1997.  I also had the distinction of serving as Editor of the Loyola Law Review. Upon graduation, I joined the firm of O'Melveny & Myers ("O'Melveny") as an associate in the labor and employment litigation department where I remained until 2005.

3.      Since that time, I have run my own practice, with a focus on labor and employment litigation.  I handle employment matters for both plaintiffs and management, have handled several trials, over 15 arbitrations, and countless wage and hour cases.  I was previously found adequate class counsel in a class certified for settlement purposes, *Geerhart v. California Insurance Guarantee Assoc.*, Los Angeles County Sup. Ct Case No. BC357078 (2007).  In addition, while at O'Melveny & Myers, I handled the defense of many wage and hour class action cases as well.

4.      In addition to gaining that experience at O'Melveny, I have since been recognized as a Rising Star in the Labor and Employment field in 2006, 2007, 2008, 2009, 2010.  I also authored one of the first briefs successfully challenging the constitutionality of California Labor Code § 2699 that led to the amendments to that statute, including the addition of Section 2699(e), which provides the Court discretion to reduce any civil penalty if the imposition of the civil penalty would be "unjust, arbitrary and oppressive, or confiscatory."

5.      From at least 2009 to the present, I have been an adjunct professor at Southwestern Law School teaching employment law.

6.      Thus, I believe that I am experienced and qualified to evaluate the class claims and viability of Defendant's arguments and defenses given my experiences handling similar matters to those presented here and knowledge of the applicable law.

7.      Thus far, Ms. Chesler and I have done a significant amount of work identify and investigating potential claims in the action.  We have reviewed over 40,000 documents, contacted putative class members, and taken many depositions. We also appropriately researched and successfully opposed Defendant's motion to dismiss the class claims based on the defense that the FAAAA preempts Plaintiff's wage and hour claims.  We further maintain a consistent effort to keep updated on legal developments in employment law, including wage and hour issues that may be presented here, such as attending seminars, CLE courses, reviewing publications, etc.

8.      We further have the resources to handle this case, including the assistance of outside counsel that we work with when the need arises, and fully commit these resources to the instant litigation.


I declare under penalty of perjury under the laws of the State of California, and the United States of America, that the foregoing is true and correct.

Executed February 19, 2013, at Los Angeles, California.


Timothy B. McCaffrey, Jr.

EXHIBIT - P, PAGE 3

2
McCAFFREY DECLARATION

CV 12-01804 GHK (CWx)

**EXHIBIT Q**

1  TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
   NATASHA CHESLER (S.B. #227540)
2  THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
   A Professional Corporation
3  11377 West Olympic Boulevard, Suite 500
   Los Angeles, California 90064-1683
   Telephone: (310) 882-6407
4  Facsimile: (310) 882-6359

5  Attorneys for Plaintiff and Class Representative
6  Miguel de la Cueva

7

8                 UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11 MIGUEL DE LA CUEVA, on behalf of        CASE NO. CV12-01804 GHK (CWx)
   himself and those similarly situated,
12                                         *Assigned to Hon. George H. King*
            Plaintiff,
13                                         CLASS ACTION
        vs.
14                                         DECLARATION OF NATASHA
   ALTA DENA CERTIFIED DAIRY,              CHESLER IN SUPPORT OF
15 LLC, a Delaware Limited Liability       PLAINTIFF'S MOTION FOR
   Company, ALTA-DENA CERTIFIED            CLASS CERTIFICATION
16 DAIRY, INC., a Delaware Corporation,
   and DOES 1 through 10, inclusive,
17
            Defendants.
18

19

20

21

22

23

24

25

26

27

28
                                              EXHIBIT - Q, PAGE 1
                                              CV12-01804 GHK (CWx)
                    CHESLER DECLARATION

## DECLARATION OF NATASHA CHESLER

I, Natasha Chesler, declare as follows:

1.     I am an attorney duly admitted to practice before this Court and an attorney of record for plaintiff and class representative Miguel de la Cueva. If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief.

2.     I contacted putative class members and am informed that no single one has brought an individual case. Nor did any putative class members express any desire in doing so. Juan Perez and Scott Parker have expressed an interest in joining this action as a class representative(s). In addition, based on my communications with putative class members I am unaware of any litigation concerning the controversy already begun by or against class members.

3.     I have been practicing for nine years exclusively in the area of labor and employment. I graduated from the University of Southern California with a Bachelor of Fine Arts degree in Writing in 1998. I received my Juris Doctor from Loyola Law School in 2003, and was admitted to the California State Bar that year. I graduated with honors and was also a member of the law review. Upon graduation from law school, I joined the firm of O'Melveny & Myers ("O'Melveny") as an associate in the labor and employment litigation department where I remained until 2005. While at O'Melveny, I participated in defending employers in wage and hour class actions. I also conducted legal research and assisted in drafting one of the first briefs successfully challenging the constitutionality of California Labor Code § 2699 that led to the amendments to that statute, including the addition of Section 2699.3, which requires notification to the Labor and Workforce Development Agency.

4.     Thereafter, I worked as a solo practitioner specializing in labor and employment matters. While on my own, I was approved along with my co-counsel (Kingsley & Kingsley) as adequate class counsel in connection with certification for

1  class-settlement purposes of a wage-and-hour class action, *Mayer v. Ameriquest*
2  *Mortgage Company*, Orange County Sup. Ct. Case No. 05CC00027.  In addition, I
3  performed work on wage-and-hour class actions for Spiro & Moss, a firm specializing
4  in wage and hour class actions.

5       5.    In 2008, I joined Mr. McCaffrey's firm, where we only handle
6  employment litigation for both plaintiff employees and defendant employers.  I have
7  handled several trials/arbitrations and countless wage-and-hour claims.  In addition, I
8  am involved in the Labor & Employment legal community, and currently serve on the
9  Los Angeles County Bar, Labor & Employment Section, Dinner Program Committee.

10       6.    Thus, I believe that my co-counsel Tim McCaffrey and I are experienced
11  and qualified to evaluate the class claims and viability of Defendant's arguments and
12  defenses given our respective experiences handling similar matters to those presented
13  here and knowledge of the applicable law.

14       7.    Thus far, Mr. McCaffrey and I have done a significant amount of work
15  identify and investigating potential claims in the action.  We have reviewed over
16  40,000 documents, contacted putative class members, and taken many depositions.
17  We also appropriately researched and successfully opposed Defendant's motion to
18  dismiss the class claims based on the defense that the FAAAA preempts Plaintiff's
19  wage and hour claims.  We further maintain a consistent effort to keep updated on
20  legal developments in employment law, including wage and hour issues that may be
21  presented here, such as attending seminars, CLE courses, reviewing publications, etc.

22       8.    We further have the resources to handle this case, including the assistance
23  of outside counsel that we work with when the need arises, and fully commit these
24  resources to the instant litigation.

25       9.    Attached hereto as Exhibit R is a true and correct copy of portions of the
26  deposition transcript of Genovea Alfaro.

27
28

EXHIBIT - Q, PAGE 3
PAGE 84

2
CV12-01804 GHK (CWx)
CHESLER DECLARATION

10.    Attached hereto as Exhibit S is a true and correct copy of portions of the deposition transcript of Jose Antonio Berrios.

11.    Attached hereto as Exhibit T is a true and correct copy of portions of the deposition transcript of Ronnie Demler.

12.    Attached hereto as Exhibit U is a true and correct copy of portions of the deposition transcript of Daniel Deland Durkee.

13.    Attached hereto as Exhibit V is a true and correct copy of portions of the deposition transcript of Satpal Gill.

14.    Attached hereto as Exhibit W is a true and correct copy of portions of the deposition transcript of Jose Llamas.

15.    Attached hereto as Exhibit X is a true and correct copy of portions of the deposition transcript of Jose Martinez.

16.    Attached hereto as Exhibit Y is a true and correct copy of portions of the deposition transcript of Humberto Rodriguez.

17.    Attached hereto as Exhibit Z is a true and correct copy of portions of the deposition transcript of Jesse Sanchez.

18.    Attached hereto are true and correct copies of the deposition exhibits, except for those lodged as part of Plaintiff's application to file under seal.

I declare under penalty of perjury under the laws of the State of California, and the United States of America, that the foregoing is true and correct.

Executed February 19, 2013, at Los Angeles, California.

Natasha Chesler

EXHIBIT - Q, PAGE 4
PAGE 86