TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
NATASHA CHESLER (S.B. #227540)
THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
A Professional Corporation
11377 West Olympic Boulevard, Suite 500
Los Angeles, California  90064-1683
Telephone: (310) 882-6407
Facsimile: (310) 882-6359

Attorneys for Plaintiff and Class
Representative
Miguel de la Cueva

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL DE LA CUEVA, individually and on behalf of other persons similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>ALTA DENA CERTIFIED DAIRY, LLC, a Delaware Limited Liability Company; ALTA-DENA CERTIFIED DAIRY, INC., a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>        Defendants. | CASE NO. CV12-01804 GHK (CWx)<br><br>*Assigned to Hon. George H. King*<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |

# **TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ............................................................................1

II.     CLASS CERTIFICATION IS PROPER ...........................................................4

        A.      Class Certification Is Appropriate Because Of The Company Wide
                Route Restriction Policy..............................................................................4

                1.      The Company Wide Route Restriction Policy Existed At All
                        Relevant Times......................................................................................4

                2.      Defendant Cannot Defeat Class Certification By Disputing Its
                        Own Company-Wide Policy ...............................................................6

                3.      Defendant's Inapposite Legal Authority ..........................................6

                4.      The Route Restriction Is Encompassed By The Current Complaint.........8

        B.      Defendant Failed To Authorize Or Permit Meal Breaks In The First
                Instance, Thus No Individualized Inquiry Is Necessary ........................9

                1.      Common Factual Questions Predominate The Issue Of Whether
                        Defendant's Company-Wide Meal Policy Complied With *Brinker* .......10

                2.      Common Questions Predominate As To Whether Defendant Had
                        A Uniform Policy/Practice Of Effectively Discouraging Drivers
                        From Taking Meal And/Or Rest Breaks ...........................................13

                3.      Defendant Fails To Address Plaintiff's Legal Authority
                        Supporting Class Certification ...........................................................15

        C.      The Rest Break Policy Suffers From Additional Infirmities...............18

        D.      The Legality Of The 30 Minute Automatic Deduction Is Another
                Uniform Policy And/Or Practice Suitable For Class Treatment .........19

        E.      Defendant's "Expert" Report Should Be Stricken And In Any Event Is
                Irrelevant......................................................................................................20

        F.      Plaintiff Is An Adequate Class Representative ...................................21

        G.      Plaintiff's Derivative Claims Are Suitable For Class Treatment And Do
                Not Defeat His Adequacy............................................................................23

        H.      Class Adjudication Is Manageable And Superior ...............................24

III.    CONCLUSION .................................................................................................26

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abdullah v. U.S. Security Associates, Inc.*, 2011 U.S. Dist. LEXIS 156685, at *27-28 (C.D. Cal. Jan. 11, 2011) ...................................................................................23

*Avilez v. Pinkerton Gov't Svcs.*, 286 F.R.D. 450, 460 (C.D. Cal. 2012) ...........................7, 20

*Brinker Restaurant Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1033 (2012) .............................. passim

*Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949, 963 (2005) ...................................15

*Cortez v. Best Buy Stores*, 2012 WL 255345 at *9 (C.D. Cal. Jan. 25, 2012) .....................7, 17

*Dailey v. Sears, Roebuck and Co.*, Case No. D061055 (Cal. Ct. App. March 20, 2013) ........16

*Espinoza v. Domino's Pizza, LLC*, 2009 WL 882845,*2-4, 6-7 (C.D. Cal. Feb. 18, 2009) ....................................................................................................15

*Gonzalez v. Officemax No. Am.*, 2012 WL 5473764 at *4-5 (C.D. Cal. Nov. 5, 2012 ...........17

*Harris v. Vector Mktg.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) ...................................22

*In re Hotel Telephone Charges*, 500 F.2d 86, 89 (9th Cir. 1974) .............................................24

*In re Taco Bell Wage & Hour Actions*, 2012 WL 5932833 at *6 (E.D. Cal. Nov. 27, 2012) ...................................................................................................7, 8, 9

*Krzesniak v. Cendant Corp.*, 2007 WL 1795703, *10 (N.D. Cal. June 20, 2007) ............23, 24

*Lanzarone v. Guardsmark Holdings*, 2006 WL 4393465 (C.D. Cal. Sept. 7, 2006) ................7

*Mendez v. R+L Carriers, Inc.*, 2012 WL 5868973, *15-20 (N.D. Cal. Nov. 19, 2012) ..6,15,16

*Munoz v. Giumarra Vineyards Corp.*, 2012 WL 2617553, *28 (E.D. Cal. July 5, 2012) .........7

*Nguyen v. BDO Seidman, LLP*, 2009 U.S. Dist. LEXIS 97525, at *28 (C.D. Cal. 2009) .......25

*Pina v. Con-Way Freight, Inc.*, 2012 WL 1278301, at *7 (N.D. Cal. 2012) ..........................15

*Polanco v. Schneider Nat'l Carriers, Inc.*, Case No. 2:10-CV-04565-GHK-JEM ......17, 18, 25

*Ross v. RBS Citizens, N.A.*, 2010 WL 3980113, at *5 (N.D. Ill. 2010)...................................22

*Social Svcs. Union, Local 535 v. County of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979) .................................................................................................23

*Stoudt v. E.F. Hutton & Co.*, 121 F.R.D. 36, 38 (S.D. N.Y. 1988)        25

*Sultan v. Medtronic*, 2012 U.S. Dist. LEXIS 107046 at *2-3 (C.D. Cal. July 23, 2012).........17

*Ugas v. H&R Block Enterprises, LLC*, 2012 U.S. Dist. LEXIS 156335 at *13-14) ...............17

*Vedachalam v. Tata Consultancy Servs., Ltd.*, 2012 WL 1110004, *12-13 (N.D. Cal. April 2, 2012) ..........................................................................................7

*Villa v. United Site Svcs. of Cal.*, 2012 WL 5503550, *8 (N.D. Cal. Nov. 13, 2012) ...............6

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2547 (2011) .............................................9, 17

*York v. Starbucks*, 2011 WL 8199987 at *10 (C.D. Cal. Nov. 23, 2011) ...................................9


**STATUTES**

California Labor Code § 226 ........................................................................................26

California Labor Code § 226(e)(2)(B) ...........................................................................26

California Labor Code § 226.7 .....................................................................................16


**RULES**

Rule 23 of the Federal Rules of Civil Procedure ....................................................4, 21

Rule 8 of the Federal Rules of Civil Procedure ............................................................9

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# I.    PRELIMINARY STATEMENT

Fittingly on Cesar Chavez day, Plaintiff Miguel de la Cueva ("Plaintiff") hereby submits his Reply in support of this class action to enforce his and his co-workers' statutory wage rights under the California Labor Code.  As explained in his Opening Brief and more fully below, this case is appropriate for class certification because there are common questions, which can be answered in "one stroke," including:

1.    Does Defendant's uniform "route-restriction" policy and/or practice fail to relieve drivers of all duty for meal and rest breaks as required by *Brinker*?

2.    Does Defendant's written meal break policy, which does not provide *when* a meal period is available but instead that supervisors will schedule meal periods, along with Defendant's admission that it: (a) did not believe the meal period law applied to class members until mid-2011; (b) did not schedule any meal or rest periods; (c) did not build any breaks into drivers' routes; and (d) failed to educate or train drivers regarding their right to an extra hour of premium pay if they were unable to take a meal break, satisfy *Brinker*?

3.    Coupled with the facts set forth in Subparagraph 2, does Defendant's stressing efficiency to drivers, creating heavy routes, and scoring drivers based on the number of deliveries and completion time constitute a policy/practice of effectively discouraging breaks under *Brinker*?

4.    Did Defendant authorize and permit a second duty free meal break after 10 hours of work when it had no such official policy?[1]

5.    Does Defendant's rest break policy/practice, which provides for a second break after eight hours of work and allows for combining meal and rest breaks, comply with *Brinker*?

6.    Does Defendant's practice of automatically deducting 30 minutes of time (and, thus, pay) without regard to whether drivers actually took a duty free meal break create liability for straight or overtime pay under *Brinker* especially since Defendant knew that it could not comply with meal/rest break requirements and regularly reviewed records demonstrating that meal breaks were not being taken?

7.    Does Defendant's paystub comply with California Labor Code §226 given that it fails to show the appropriate legal entity that employed class members, the actual hours worked, the 30-minute deduction, or any premium pay for missed meal or rest breaks?

8.    In light of some or all of these violations, did Defendant fail to pay all wages due upon termination of employment in violation of California Labor Code § 203?

---

[1] Defendant does not address this issue, and, thus, apparently concedes it is appropriate for class certification.

1    In response, Defendant relies on inapposite case law and tries to disavow its own
2  policies and practices.  The central thrust of Defendant's Opposition is that this case
3  requires individualized inquiries because its drivers had "discretion" to take a break
4  whenever they wanted.  Per Defendant's theory, its drivers chose to take non-
5  compliant breaks at the end of the day when their route was complete because they
6  were on a diet, not hungry, preferred a certain restaurant, or wanted to visit a relative.
7  Thus, in essence, Defendant argues that any driver's failure to take a meal/rest break
8  (or take it late) was essentially a waiver of their right to a 30 minute duty free meal
9  period within the first six hours of their shift (a waiver that by law can only occur in
10  writing and if taking a compliant break is impracticable).

11    Defendant's argument puts the cart before the horse and is legally untenable.
12  Putting aside the legal requirements for a waiver per the Industrial Welfare
13  Commission Wage Orders, an employee cannot waive or voluntarily choose not to
14  exercise a right that he or she does not know exists.  Nor can an employee waive or
15  voluntary choose not to take a break that has never been provided in the first place.
16  Indeed, Defendant admitted that it did not even know the timing of the meal break law
17  applied to the class members until mid-2011.  Ergo, it could not possibly have
18  informed these class members of their rights, let alone complied with the law from
19  2008 until 2011.[2]

20    More importantly, the driver discretion argument is non-responsive to Plaintiff's
21  arguments regarding the route-restriction or deficiencies in Defendant's company-wide
22  policies/practices.  Defendant also fails to distinguish the case law Plaintiff cites
23  supporting class certification, instead merely dropping a footnote to the effect that the
24  cases are pre-*Brinker* and, thus, somehow inapplicable.  But the cases relied upon
25  apply the *Brinker* standard.  Moreover, Plaintiff cited post-*Brinker* cases, which

26  ──────────────────
27  [2] Defendant transferred these drivers to a sister-corporation in January 2011.  Thus, in
    reality there are no class members employed by this Defendant post January 2011.
28

1  Defendant simply ignored. Defendant has no answer for these authorities.

2      In addition, Defendant improperly attempts to introduce an "expert" report that

3  seemingly claims Plaintiff was able to take timely meal periods half the time. This

4  should not be accepted for at least three reasons including that it was not disclosed per

5  Rule 26 and it is premised on the wrong inquiry by at least an hour. The "expert"

6  apparently reviewed records to see how many times Plaintiff took a meal break by the

7  end of the sixth hour of work. Per *Brinker*, the relevant inquiry is whether the

8  employer authorized or permitted a meal break within the first <u>five</u> hours of work (*i.e.,*

9  before beginning the sixth hour of work). Moreover, Plaintiff's counsel's review of

10 Exhibits 104 and 105 reveal that Plaintiff <u>did not</u> take a meal break before beginning

11 the sixth hour of his shift at least <u>80.24%</u> of the time. (Supplemental Chesler Decl. ¶

12 2, Ex. A, filed concurrently herewith.) In addition, at no point did Plaintiff receive a

13 second meal break when he worked more than 10 hours in a day.

14     Finally, Defendant attempts to shift responsibility to Plaintiff and other class

15 members with two unmeritorious arguments. One, Defendant attempts to make waves

16 about the fact that Plaintiff and other drivers admitted to logging breaks in XATA to

17 satisfy Defendant even though they did not actually take the breaks (*i.e.,* they

18 continued to work). Defendant claims this shows a lack of credibility. But again

19 Defendant misses the mark. Unlike the authorities upon which Defendant relies,

20 neither Plaintiff nor any of the other declarants attempted to steal from Defendant (*i.e.,*

21 claimed they were working when they were not). In fact, they did just the opposite.

22 Moreover, many of Plaintiff's XATA entries show a meal period of at least 30

23 minutes, but then show him back in his truck driving again just a few minutes later,

24 *i.e.,* meal break logged at 6:30 a.m. for 30 minutes, but then truck back on the road at

25 6:40 a.m. It does not take a rocket scientist to figure out that Plaintiff could not take a

26 30 minute meal break in ten minutes time or that other putative class members were

27 logging breaks that they were not taking. Two, Defendant attempts to discredit

28 Plaintiff with a conflict that simply does not exist. Plaintiff has explained that he is

1  fully aware of his responsibilities as a class representative and that he is ready, willing,

2  and able to see this case through to the end.  Plaintiff is an adequate class

3  representative and even if he is not, the Court should allow leave to add Juan Perez as

4  a Class Representative.[3]

5       As set forth in Plaintiff's Opening Brief and further explained herein, the Court

6  should grant Plaintiff's motion for class certification.

7  **II.    CLASS CERTIFICATION IS PROPER**

8       Defendant does not raise any issues with respect to the prerequisites of

9  numerosity and adequacy of representation of counsel under Federal Rule of Civil

10  Procedure 23(a)(1) and (4).  Thus, Plaintiff does not address those issues any further.

11  Instead, Plaintiff addresses within each substantive section the arguments Defendant

12  makes with respect to commonality, typicality and predominance under Rule 23.

13  Plaintiff thereafter separately addresses Plaintiff's adequacy as class representative and

14  Defendant's remaining argument regarding manageability.

15       **A.    Class Certification Is Appropriate Because Of The Company Wide
        Route Restriction Policy**

16

17            **1.    The Company Wide Route Restriction Policy Existed At All
            Relevant Times**

18       As set forth in his Opening Brief, Defendant had a company-wide route-

19  restriction policy that resulted in on-duty meal and rest breaks.  (Opening Brief at 5,

20  14.) Defendant nonetheless misleadingly argues that there was no <u>written</u> "route

21  restriction" policy with respect to meal breaks at Alta Dena until 2011 (after putative

22  class members were transferred to a sister-corporation).  While there may have been no

23  <u>written</u> policy prior to 2011, the policy and/or practice certainly existed at Alta Dena

24  from <u>at least 2008 as confirmed by Alta-Dena's Rule 30(b)(6) Corporate</u>

25  <u>Representative</u> on this topic:

26  _____

27  [3] Plaintiff raised the addition of Juan Perez as a Class Representative in his Motion,
   which Defendant also did not address or otherwise oppose.

28

Q:  So **between 2008 to the present**, am I correct then, that all drivers had to stay within route limits within half a mile to a mile?

A:  That's correct.

Q:  Can't deviate from that at any time unless you contact a supervisor, correct?

A:  Well, I mean the driver can deviate, but there's probably going to be repercussions.

...

Q:  ... So it's a policy then –

A:  That's correct.

Q:  - the radius, a half mile to mile, yes?

A:  Yes.

Q:  If you break it, you're considered, at least initially, to be in violation of company policy?

A:  That's correct.  (Llamas 66:25-67:21.)

Q:  Do the route limits apply to all drivers?

A:  Yes.  (Id. 71:22-25.)

Q:  Just to make sure we've got this down, it may have changed between a half mile to a mile, but some form between a half mile to a mile existed **between 2008 to the present**, correct?

A:  Correct.  (Id. 72:2-6.) (Emphasis added.)

The flaw in Defendant's argument is further proven by Exhibit 85 – the January 22, 2009 memo from Humberto "Beto" Rodriguez – the General Manager responsible for all three locations at issue in this case, which states:

"Breaks may be taken at any location, it is up to the driver's discretion where to take his breaks; however, it must be within the route limits.  Drivers may not break from his route more than one mile from route boundaries."  (Ex. 85.)

And while that memo was apparently not distributed, Alta Dena's Corporate Representative admitted that it accurately reflected the substance of the company's policy at that time. (Llamas 254:21-25, 256:1-23.)  So did putative class members that signed declarations for Defendant.  (Demler 51:10-52:15, 54:9-55:6; Gill 34:22-35:19; Martinez 34:11-35:14 attached as Exhibits C, D, E to Supplemental Chesler Declaration filed concurrently herewith).  Thus, there is substantial evidence that the route restriction applied to all drivers at all locations since 2008.

## 2.   Defendant Cannot Defeat Class Certification By Disputing Its Own Company-Wide Policy

Next, Defendant argues that notwithstanding the plain testimony of its Corporate Representative and Exhibit 85, the route restriction policy only applies to the vehicle, not the driver. But this argument is not supported by the evidence. Exhibit 85 makes no reference to any such exception. Neither does Defendant's 2009 Standard Operating Procedures which provides: "Take all breaks and lunch hours in field during weekday," which the Corporate Representative explained means while the driver is "out there on the route" from which they cannot deviate. (Ex. 83; Llamas 252:18; 253:1, 253:22-254:3; see also Opening Br. at 6, n.3.) And the 2011 version plainly provides "Driver may not drive off route for any reason. Lunches must be taken within a one-half mile radius of the drivers prescribed route unless approved by management." (Ex. 81.) There are no exceptions to this uniform policy.

Moreover, whether there was an exception to the route-restriction policy or whether such a policy is unlawful is for a jury to decide and does not change the fact that the existence of a uniform policy and/or practice makes this issue and, thus, this case suitable for class treatment. *See, e.g., Brinker Restaurant Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1033 (2012); *Mendez v. R+L Carriers, Inc.*, 2012 WL 5868973, *11 (N.D. Cal. Nov. 19, 2012).

## 3.   Defendant's Inapposite Legal Authority

The cases cited by Defendant are inapposite. In *Villa v. United Site Svcs. of Cal.*, 2012 WL 5503550, *8 (N.D. Cal. Nov. 13, 2012), plaintiff relied on a policy governing use of company vehicles (not specifically during meal breaks), which stated "unauthorized stops and side trips are prohibited." *Id.* The court found predominance lacking because the policy did not specify where breaks must be taken. *Id.* at *20-21. Nor did plaintiff have any evidence of a uniform official policy regarding the route restriction applying to meal/rest breaks or that the employer would not "authorize" a duty free break. *Id.* at *24-26. Here, however, Defendant's Corporate Representative

1   and Exhibits 81, 83, and 85 make clear this policy/practice specifically applies to meal

2   breaks for all drivers at all locations.

3        Likewise, Defendant's reliance on *Lanzarone v. Guardsmark Holdings*, 2006

4   WL 4393465 (C.D. Cal. Sept. 7, 2006), is similarly misplaced. In that case, Plaintiff

5   relied upon a conversation with his supervisor regarding the company's clothing

6   allowance. *Id.* at *7. Unlike here, there was no evidence of a uniform company policy

7   and/or practice that applied to all class members. *See id.* And *Cortez v. Best Buy*

8   *Stores*, 2012 WL 255345, *9 (C.D. Cal. Jan. 25, 2012), is inapplicable because the

9   company had a written *lawful* policy and to the extent it was violated it would have

10  been the result of "individual managers going 'off script' and presenting information to

11  the employees that was contrary to the company's general policy." Similarly, the

12  quote from *Munoz v. Giumarra Vineyards Corp.*, 2012 WL 2617553, *28 (E.D. Cal.

13  July 5, 2012), is inapplicable because that employer had no company-wide policy

14  regarding off-the-clock work and, thus, the Magistrate Judge correctly concluded

15  conflicting evidence from employees in the same shifts under the same supervisors

16  precluded class certification.

17        In contrast, here, <u>we have a uniform policy/practice that Defendant admits was</u>

18  <u>in place and applicable to all putative class members.</u> *See, e.g., Vedachalam v. Tata*

19  *Consultancy Servs., Ltd.*, 2012 WL 1110004, *12-13 (N.D. Cal. April 2, 2012)

20  (rejecting defendant's argument that "this policy was not always uniformly applied");

21  *In re Taco Bell Wage & Hour Actions*, 2012 WL 5932833 at *6 (E.D. Cal. Nov. 27,

22  2012) (where defendants admitted that there was a uniform policy but argued that "as a

23  matter of practice, the policy is carried out in a variety of ways," the court relied on

24  *Brinker* and found sufficient that there was "a corporate policy" equally applicable to

25  all employees).

26        And Defendant's argument that some drivers say such a policy would have no

27  impact on them or that they don't mind it is wholly irrelevant. As explained in *Avilez*

28  *v. Pinkerton Gov't Svcs.*, 286 F.R.D. 450, 460 (C.D. Cal. 2012): "[This argument

1  would] insulate every defendant-employer from a class action where the defendant-

2  employer introduced evidence that its employees 'like' the disputed policy – *even if the*

3  *policy is indisputably illegal.*  This result is absurd for two reasons.  First, class actions

4  already have a vehicle by which a class member who likes the current policy may

5  express this view:  the class member may simply opt-out.  Second, this result

6  undermines the enforcement of meal and rest break laws by eliminating the primary

7  mechanism by which those laws are enforced:  class actions."

8      **4.**   <u>**The Route Restriction Is Encompassed By The Current**</u>

9  <u>**Complaint**</u>

10         Finally, the route-restriction is not a "new theory" precluding class certification.

11  Plaintiff plainly alleges by his first cause of action that he and other class members

12  were not authorized and permitted to take a "duty free" meal or rest break in violation

13  of the California Labor Code.  (Complaint ¶ 44, Docket No. 1.)  The route restriction is

14  a company-wide policy that demonstrates that Plaintiff and the putative class were

15  never duty free.  (Opening Br. at 14:10-24.)  Under Rule 8 of the Federal Rules of

16  Civil Procedure, Defendant is on notice that Plaintiff is claiming he and the putative

17  class were denied duty free meal and rest breaks.  Plaintiff does not have to assert

18  every fact that supports this claim.  *See* Docket No. 48, Court Order of February 21,

19  2013 (denying Plaintiff's *ex parte* application in part because 30 minute deduction was

20  encompassed by Plaintiff's current complaint even though not specifically pled).[4]

21         Indeed, the route restriction argument should come as no surprise to Defendant.

22  It was a topic at every deposition.  Nor has Defendant demonstrated any prejudice (*i.e.,*

23  discovery it would have done differently, etc.).  *See In re Taco Bell Wage & Hour*

24  *Actions*, 2012 WL 5932833 at *3-4 (where complaint merely alleged failure to provide

25  breaks but did not specifically reference the allegedly unlawful meal break policy,

26  _____

27  [4] Plaintiff's proposed first amended complaint also made reference to the route
restriction out of an abundance of caution.

28

1  defendants were "hard-pressed" to assert they were not on notice of the claim based on

2  the extensive discovery conducted, nor did defendants demonstrate any prejudice, thus

3  there was no bar to proceeding with the claim).[5]  Defendant simply cannot escape that

4  Plaintiff has substantial evidence of a company-wide, uniformly applied

5  policy/practice perfectly suitable for class treatment.

6  **B.** **Defendant Failed To Authorize Or Permit Meal Breaks In The First Instance, Thus No Individualized Inquiry Is Necessary**

7

8  The gravamen of Defendant's Opposition is that individualized inquiries are

9  required to determine why drivers may have missed meal and/or rest periods and, thus,

10  preclude answering common questions with "one stroke."[6]  But Defendant misses a

11  crucial legal distinction here.  Plaintiff's argument is that Defendant had deficient and

12  unlawful company wide policies and practices that failed to authorize or permit duty

13  free meal breaks in the first instance.  (Opening Br. 2, 13-16.)

14  *In re Taco Bell Wage & Hour Actions*, 2012 WL 5932833 at *7, upon which

15  Defendant relies is instructive on this point.  "Defendants [] contend that liability

16

17  ───────────────

18  [5] In *York v. Starbucks*, 2011 WL 8199987 at *10 (C.D. Cal. Nov. 23, 2011), upon which Defendant relies, the plaintiff attempted to certify sub-classes for meal periods –

19  not on the basis of what the law required as plead in the operative complaint – but based on a new "implied-in-fact" contract and an "admissions" theory because some

20  employees received pay for a missed meal period.  The court in that case found that Starbucks was not given fair notice of these novel, unpled theories.

21  [6] Defendant makes much ado about Plaintiff's failure to cite *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2547 (2011).  But *Wal-Mart* had nothing to do with wage and

22  hour class actions and does not change the appropriateness of class certification here. In *Wal-Mart*, plaintiffs alleged defendant had a discriminatory corporate culture that

23  resulted in local managers discriminating against women in pay and promotions at 3,400 different locations.  The United States Supreme Court reversed certification

24  because evidence showed pay and promotion decisions were made at a local level based on individual managers' discretion and not pursuant to a corporate policy or

25  practice.  Indeed, in *Wal-Mart* the corporate policy forbade sex discrimination.  *Id.* at 2554.  The Court explained that common issues did not predominate because it was

26  unlikely all managers exercised their discretion in a common way, nor did plaintiffs identify a common mode of exercising discretion that pervaded the entire company.

27  *Id.* at 2554-55, 2557.  These facts have absolutely no bearing on the uniform meal and rest break company-wide policies and practices that exist here.

28

1  cannot be established in 'one stroke' because an individualized inquiry into the reason

2  *why* an employee took a late meal period is necessary for each day a late break is

3  recorded.  However, individual inquiries are unnecessary where, as here, the claim is

4  based on an invalid policy; i.e., one which never provided for a compliant break in the

5  first instance." *Citing Brinker v. Restaurant Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1033

6  (2012) ("No issue of waiver ever arises for a rest break that was required by law but

7  never authorized; if a break is not authorized, an employee has no opportunity to

8  decline to take it.").

### 1.   Common Factual Questions Predominate The Issue Of Whether Defendant's Company-Wide Meal Policy Complied With *Brinker*

11      The answer to the question of whether Defendant's meal (and rest) policy was

12  lawful can be answered in one stroke based on the following evidence, all of which can

13  and will be proven by common proof:

    (a)   Defendant never scheduled any break times for its drivers even though its policy said it would (Llamas Dep. 246:8-16 & Ex. 51 at 22.)

    (b)   Defendant did not believe the timing aspect of the meal break law applied to class members until mid-2011 (shortly after Defendant transferred putative class members to a sister company) when HR came and told the distribution department that they "had to try and make the effort to follow the California state law" (Llamas Dep. 102:21-103:12);

    (c)   Once it realized that it had to comply with the law, Defendant acknowledged that it could not comply with the meal period requirements or that it was extremely difficult for it to do so (id. 101:1-13, 114:16-22);[7]

    (d)   Defendant never adjusted any routes or otherwise built in time so that Plaintiff or other putative class members could take a compliant break (id. 102:15-20, 112:1-19);

---

[7] Defendant admitted that given the nature of work it was and is difficult to find time to take a meal period prior to the 6th hour worked.  (Llamas 114:16-22, 101:1-13 "Q:  Why would it be difficult to schedule all the drivers for their lunches? A:  Because now you have to build routes not based on customer needs, but now it's based on driver lunches.  Q:  Why couldn't you do that or the company do that?  A: Because you would probably have a negative impact on your customer base.").

2:12-cv-12-01804-GHK-CW

(e) Defendant never trained or informed its drivers that they were entitled to an extra hour's worth of premium pay if they were unable to take a compliant meal and/or rest break (see id. 259:4-260:7);

(f) Even though Defendant knew that drivers were not logging meal and/or rest breaks, Defendant never once paid premium pay under California Labor Code § 226.7 or reversed the automatic 30-minute deduction (id. 116:18-21; Alfaro Dep. 55-56);

(g) Defendant had (and has) a culture of "efficiency" that focuses on driver efficiency to the *minute*, thus, putting immense pressure on drivers to make deliveries by either omitting breaks or waiting until after the fifth hour worked (see §§ II.B.2 *infra*);

(h) For almost all of the class period (late 2008 until the present), Defendant tracked the driver's every move with an onboard GPS system known as XATA; and

(j) Defendant's policy did not even address the putative class members right to a second duty free meal period when drivers worked more than 10 hours in a shift (see Llamas 100:1-19).

Indeed, Defendant essentially admitted in its written discovery response that it did not comply with *Brinker*:

"Requiring drivers to take meal and rest breaks at specific time intervals during their shifts will interfere with services and routes, as Drivers may be in the process of servicing a customer, on the highway, or otherwise unable or unwilling to take their meal periods safely and without disrupting services during the time-period in which a meal or rest break should occur. In addition, factoring in the amount of time required for a Driver to find an appropriate location to stop for a meal or rest break, to shut down and re-start the vehicle, and to return to the route after the meal or rest break, [sic] California's meal and rest break requirements significantly reduce the number of driving hours that a Driver may engage in from the level set by relevant regulations. Accommodating these timing rules ... will either (a) result in substantial interference in the services Alta-Dena provides to its customers, (b) require that Alta-Dena completely re-arrange its routes in order to avoid such interference or (c) both. In any event, complying with such rigid requirements that Plaintiff seeks to impose would result in significantly higher labor, maintenance, fuel, and other costs for Alta-Dena and impact prices." (Ex. 113 at 2:9-24.)

...

Defendant "does not currently input specific time windows for driver meal and rest breaks in its ... routing program" [because] Drivers of commercial motor vehicles cannot simply stop and take off-duty breaks at pre-appointed times wherever they may be located and regardless of circumstances. Instead, drivers must take into account a variety of safety considerations such as traffic, road, and

weather conditions; the nature of the goods being transported; the size and weight of the load; and any applicable safety or traffic laws in the location where the drivers are traveling.  It can be difficult for drivers to find a safe and legal space to park a tractor trailer, depending on the location and the time of day.

In addition, Alta-Dena sometimes receives customer complaints when drivers are slow to leave customer facilities or attempt to take breaks in some customers' parking lots because their equipment may interfere with other deliveries and the customers' patrons' use of parking lots." (Id. at 3:22-23; 4:17-28.)

Given these corporate admissions, Defendant cannot honestly believe that its drivers had "discretion" to take a meal break prior to the sixth hour of work despite what some hand-selected-current-drivers declare during a meeting with company lawyers.  And Defendant does not even address its failure to authorize or permit a second duty free meal break in its opposition.  Defendant provides no declarations (or other evidence) demonstrating that drivers were informed (at least prior to being transferred to another company in 2011) that they were entitled to a second meal period if they worked over 10 hours. (*Cf.* De la Cueva Decl. ¶ 8; Dritz Decl. ¶ 8; Franklin Decl. ¶ 9; Mangan Decl. ¶ 7; Perez Decl. ¶ 8.)  Indeed, Defendant admits it was not until 2011 that it informed drivers if they worked more than 12 hours, they had a mandatory, unwaivable second 30-minute unpaid meal break that had to be taken. (Llamas 99:4-20.)

Regardless, there is nothing individualized about proving these facts.  Nor is there any individualized inquiry regarding when the class members actually took their meal and/or rest breaks.  Defendant's policies and practices regarding meal and rest breaks applied to every type of driver at every location.  Defendant has the data and information available to it and whether and when class members took breaks is purely a function of calculating damages if Plaintiff succeeds on his theories of liability. If proven, a reasonable fact finder could conclude that Defendant did not authorize or permit (or dissuaded the class members from taking) a 30-minute duty free meal break within the first six hours of their shift, and/or a second meal duty free meal period after

1  ten (or 12) hours worked.

2    2. **Common Questions Predominate As To Whether Defendant Had A Uniform Policy/Practice Of Effectively Discouraging**
3      **Drivers From Taking Meal And/Or Rest Breaks**

4     If the Court is still unconvinced that the foregoing makes this case perfectly

5  suitable for class treatment, and assuming *arguendo* one gets to the "why" meal and/or

6  rest breaks were missed (or taken after the sixth hour worked), Plaintiff has adduced

7  enough evidence making this issue justiciable through common proof.  This is not a

8  case dealing with cashiers, salespersons, clerical employees, where making a meal

9  period available is quite as simple.  We are dealing with delivery drivers, whose work

10  makes finding time to stop for a meal break much more difficult – as even Defendant's

11  Corporate Representative admits.  (Llamas 114:16-22; Ex. 113)

12     And while there may be various types of drivers – those delivering to

13  warehouses, those to stores, those going to other of Defendant's facilities – they are all

14  doing essentially the same thing, delivering Defendant's products.  And Defendant

15  dictates the route for <u>all of these drivers</u> – where they are going, the order they are

16  supposed to go in, and the way they are taking for the most part, but <u>without providing</u>

17  <u>drivers any time for meal/rest breaks</u>.  (Llamas 65:20-66:4, 134:23-135:7, 253:10-20,

18  265:16-20, 266:14-19.)  Moreover, Defendant looks at various factors in determining

19  how long a driver's total route should take, yet it does not factor in meal or rest breaks.

20  (See id. 176:4-177:9, 238:3-24.)

21     Plaintiff has provided specific substantial evidence concerning Defendant's

22  uniform efforts to effectively dissuade all types of drivers from taking a meal period, if

23  at all, before the sixth hour worked.  For example:

24     (a) Defendant meets with drivers to discuss performance and specifically
25       reviews efficiency related items, such as how many deliveries were made
     in a day, whether delivery windows were met, and the same criteria applies
26       to all drivers in all locations.  (Llamas 77:1-13, 78:10-79:4, 86:23-87:12);

27     (b) Scorecards are given to drivers once a month with a brief discussion in
     which time management is reviewed and major component.  (Id. 201:12-
28       202:3.)

(c)   Defendant posts XATA reports in all drivers' rooms that show these efficiency related items and all drivers can see co-workers' efficiency status. (Id. 79:5-80:1.) Defendant takes no steps to inform drivers that meal and rest breaks are not counted on these reports. (Id. 1178:5-25, 86:13-19, 187:8-13.)

(d)   Defendant encourages drivers to be efficient and lets them know that time efficiency is very important; drivers are expected to "work smart" and be "productive." (Id. 80:3-8, 85:11-86:14, 204:16-25.)

(e)   Defendant has a uniform policy to monitor to ensure drivers have enough hours available to stay in compliance with DOT regulations, which limits drivers to 16 hours on the clock before having to have at least 10 hours off, and meal and rest breaks are included in that time worked, such that if a driver takes such breaks he will have less available hours under the DOT regulation. (Id. 48:17-25, 231:12-16, 228:21-229:20.)

(f)   Plaintiff and many declarants have testified with specifics as to criticism regarding time spent on any minute task and even supervisors who specifically instructed not to take any breaks until all deliveries were completed. (Arriaga Decl. ¶¶ 4, 6; Chapman Decl. ¶ 5, Conedy Decl. ¶ 5, de la Cueva Decl. ¶¶ 5, 12-14; Fauss Decl. ¶ 5; Franklin Decl. ¶¶ 6-9; Lopez Decl. ¶¶ 4-5, 9; Mangan Decl. ¶¶ 3-4; Onorato Decl. ¶¶ 5-7; Parker Decl. ¶¶ 4-5; Perez Decl. ¶¶ 3-4, 9)

(g)   Defendant was concerned with keeping time down, especially overtime, and the routes were rerouted to achieve this. (Llamas 278:9-16, 279:8-12, see also Exs. 91-93, 275:12-21, 276:9-13, Ex. 91.)

(h)   Defendant questioned the time drivers were putting into routes and wanted to create awareness to keep time down for people working more than 12 hours a day. (Id. 278:1-9, 276:21-277:9, Ex. 92.) If a driver was going to work over 12 hours in a day, then he needed to be sat down and counseled. (Rodriguez 205:11-15, 209:15-18, 210:3-6.)

Defendant's extreme view on time-management is evidenced by the myriad of emails and reports in which it criticizes time spent on tasks or otherwise looks to cut time. (See Exs. 34, 37, 59, 65, 67, 69-78, 91-93.) Every minute matters to Defendant because as it explained, two minutes can add up "[w]hen you're talking pennies..." (Llamas 86:15-22.)

Indeed, the perfect example of Defendant's conscious disregard of meal break timing requirements is Plaintiff's route-ride-along, where his supervisor (Jesse Sanchez) rode with him for the day on April 19, 2010 to monitor his performance, including his taking and logging a proper meal break. (Llamas 90:9-14, Sanchez 173:17-25, 174:1-4, 177:12-15, Ex. 25.) Mr. Sanchez noted that Plaintiff took his meal

break "on target," meaning in compliance. (Sanchez 175:18-22, 177:1-11, 177:25-178:14, Ex. 25.) Mr. Sanchez believes he was even with Plaintiff on the meal break and paid for the meal. (Sanchez 177:20-23.) Incredulously, however, Plaintiff's XATA trip report shows that on this day he began his shift at 6:55 p.m., but did not take his meal break until approximately 1:54 am – approximately seven hours into his workday – with his supervisor approvingly beside him. (Llamas 241:20-22, 242:24-243:20, Exs. 79, 104.) Yet Defendant never paid any premium pay under California Labor Code § 226.7.

This common evidence is sufficient for a jury to decide whether Defendant maintained a uniform practice of effectively discouraging drivers from taking meal breaks. *See, e.g., Mendez v. R+L Carriers, Inc.*, 2012 WL 5868973, *15-20 (N.D. Cal. Nov. 19, 2012); *Pina v. Con-Way Freight, Inc.*, 2012 WL 1278301, at *7 (N.D. Cal. 2012); *Dilts v. Penske Logisitics, LLC*, 267 F.R.D. 625, 629 (S.D. Cal. 2010)[8]; *Espinoza v. Domino's Pizza, LLC*, 2009 WL 882845,*2-4, 6-7 (C.D. Cal. Feb. 18, 2009); *Brinker, supra*, at 1040; *Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949, 963 (2005).

### 3. <u>Defendant Fails To Address Plaintiff's Legal Authority Supporting Class Certification</u>

Notably, Defendant fails to address any of these authorities. Defendant does not even attempt to distinguish them other than to say they pre-date *Brinker* or *Wal-Mart*. But *Brinker* does not change the applicability of these cases when it comes to class-certification. Indeed, the *Pina* court specifically addressed that *Brinker* would have no effect on its decision. *See* 2012 WL 1278301, at *6-7.

---

[8] While *Dilts* pre-dates *Brinker*, the proposition remains the same, that an employer must make a meal period available and an "illusory meal period where the employer effectively prevents an employee from having an uninterrupted meal period, does not satisfy this requirement." 267 F.R.D. at 638. Defendant does not otherwise even attempt to distinguish *Dilts* which is analogous and directly on point.

1    Similarly, in *Mendez*, which post-dates *Brinker* – the Court found class
2  certification appropriate.  In that case, despite defendant's facially compliant handbook
3  meal/rest break policy, plaintiffs argued that "in practice, drivers' schedules make it
4  difficult to adhere... [and] [i]nstead, drivers follow the informal break policies set by
5  dispatchers and managers at ever terminal." 2012 WL 5868973, at *8, 12.  Plaintiffs
6  submitted declarations of drivers showing they often felt pressured to skip breaks
7  because of their busy delivery schedules, and also highlighted defendant's scoring
8  system ranking drivers based on the number of pickups and deliveries made each
9  week. *Id.* Taken together, plaintiff argued these and other informal practices
10 amounted to a statewide policy of discouraging drivers from taking breaks. *Id.* The
11 *Mendez* court agreed and certified the class because the declarations from various
12 drivers describing the pressures they faced to skip breaks allowed the meal/rest break
13 claim to be proven through common proof. *Id.*

14    Likewise, in *Espinoza*, the court certified a meal/rest break class where plaintiff
15 provided declarations of putative class members stating routes were so demanding and
16 unpredictable, they placed drivers under constant, intense pressure, thus making it
17 impossible to take meal breaks, either timely or at all. 2009 WL 882845,*2-4, 6-7.
18 This case presents similar circumstances.

19    The new case Defendant recently brought to the Court's attention, *Dailey v.*
20 *Sears, Roebuck and Co.*, Case No. D061055 (Cal. Ct. App. March 20, 2013), does not
21 change this result.  In *Dailey*, plaintiff attempted to certify a class of managers and
22 assistant managers as being misclassified as exempt employees.  There was <u>no written</u>
23 <u>policy</u> for meal breaks for these employees. *Id.* at 39.  There was no evidence of a
24 policy or practice depriving these salaried employees of meal and rest periods. *Id.* at
25 40.  The lack of policies was not helpful to plaintiff in that case because it supported
26 defendant's contention that managers and assistant managers were exempt employees.
27 *Id.* at 41.  More importantly, all the court stated was that under the facts of that case,
28 the lack of policies alone did not necessarily imply a practice of depriving employees

1    of the meal/rest periods. *Id.*

2          As previously explained, Plaintiff is not relying on the absence of a written

3    policy. We actually have substantial evidence of deficient uniform policies and

4    practices that applied to all class members. It should be left to a jury to decide whether

5    the common factual issues amount to authorizing and permitting a duty-free meal

6    break under *Brinker* – and that can be answered in one stroke.[9]

7          As this Court aptly explained in *Polanco*: "Employees cannot waive a break

8    period that is not provided, and they certainly cannot after-the-fact state that any

9    breaks that were not taken were waived … Defendant cites no authority stating that

10   where employees find time to 'fit in' an unauthorized rest break, this fulfills the law's

11   requirement that employers provide or authorize ten-minute rest periods for every four

12   hours worked … While there may be some employees who found time within their

13   schedule to take additional breaks, this does not mean that these additional breaks were

14   provided, or, 'authorized.'" (*Polanco v. Schneider Nat'l Carriers, Inc.*, Case No. 2:10-

15   CV-04565-GHK-JEM, Def.'s Ex. B to Sklaver Decl., Order at 16.)

16         This is exactly what we have here. Defendant's uniform policy and practice

17   from at least 2008 until the drivers transferred to another company in 2011, was that

18   drivers were merely authorized to take meal (and rest) breaks "as they see fit."

19   (Llamas 266:14-24.) Whether this satisfies the legal requirement of authorizing and

_____

[9] Defendant's claim that the meal policy is not appropriate for class-certification
because it is a "discretionary" policy left up to managers is preposterous. As detailed
above, Defendant admits that its managers *do not* assign meal times as a matter of
practice. (Llamas 246:8-16.) Moreover, all the cases cited for this proposition are
distinguishable because they deal with companies that had a lawful policy in place and,
thus, to the extent unlawful practices occurred, they were in direct contravention to
stated policies. *Wal-Mart, supra*; *Sultan v. Medtronic*, 2012 U.S. Dist. LEXIS 107046
at *2-3 (C.D. Cal. July 23, 2012); *Cortez v. Best Buy Stores*, 2012 WL 255345 at *9
(C.D. Cal. Jan. 25, 2012). Similarly inapposite in *Gonzalez v. Officemax No. Am.*,
2012 WL 5473764 at *4-5 (C.D. Cal. Nov. 5, 2012) and *Ugas v. H&R Block
Enterprises, LLC*, 2012 U.S. Dist. LEXIS 156335 at *13-14) the plaintiffs never
identified any alleged unlawful policy and admitted essentially that any practice varied
depending on the manager.

1  permitting a meal period within the first six hours work under the circumstances is,

2  thus, a common legal question, capable of being uniformly answered without

3  individualized inquiries.

### C.   The Rest Break Policy Suffers From Additional Infirmities

5       As set forth in Plaintiff's Opening Brief, whether Defendant's rest break policy

6  complies with California law is a question suitable for class treatment.  (Opening Br. at

7  16:7-16.)  In response, Defendant claims that individual issues predominate because

8  we will have to examine why putative class members missed rest breaks.  But again

9  Defendant misses the mark for the reasons discussed above.  In addition, not only does

10  Defendant's rest break policy provide for the second rest break after eight hours (as in

11  *Brinker*), but Defendant admits in its opposition that it has a uniform policy/practice of

12  providing an aggregated rest (and meal) periods.  This is also reflected in Ex. 85,

13  confirmed by Defendant's Corporate Representative, and specifically highlighted in

14  Defendant's Evidence:  ("The drivers had, if they combine it, which was two fifteen-

15  minute breaks per eight-hour shift, would be 30 minutes to use at their discretion.

16  Chop it up however you want."  (Def. Ex. G, Llamas Dep. 98:9-99:1); (see also

17  Llamas Dep. 107:13-108:1, 272:16-273:2 ("Q:  So then the company has had a practice

18  from 2008 to the present for all drivers in all locations that they may combine their breaks,

19  breaks, correct?  A:  Yes.") (objections omitted); Beltran Decl., Def. Ex. 3 ¶ 7 ("Up

20  until June 20111 ... .If [drivers] wanted to combine their first lunch and their two fifteen

21  minute breaks into an hour break, they could.").)  As explained in *Polanco*, "This is

22  not a case in which Defendant had a policy authorizing rest periods but employees

23  sued based on Defendant's failure to *ensure* that employees availed themselves of rest

24  breaks.  Rather, this is a case in which [defendant] had a uniform policy of providing

25  an aggregated rest period that is either lawful or unlawful as to all employees."

26  (*Polanco*, Def.'s Ex. B to Sklaver Decl., Order at 15.)

27

28

**D.    The Legality Of The 30 Minute Automatic Deduction Is Another Uniform Policy And/Or Practice Suitable For Class Treatment**

Next, Defendant argues that the 30-minute deduction does not support commonality because there is no common proof that "Alta-Dena *knew or should have known*" that drivers either were not taking breaks, not taking them timely, or logging a break into XATA, but continuing to work. This argument does not pass the straight face test.[10]

The 30-minute automatic deduct applied to all putative class members. (Alfaro 45-49, 54.) Thus, it is a uniform policy and/or practice suitable for class treatment under Rule 23. As explained in Plaintiff's Opening Brief, if the route-radius restriction is unlawful or if Defendant's uniform meal policy is unlawful or if Defendant "discouraged" the taking of a compliant break, then Defendant should have never deducted 30 minutes of time (and, thus, pay) from class members. Defendant's knowledge or lack thereof of when breaks were taken is simply irrelevant.

But even assuming *arguendo* that all of Plaintiff's arguments are rejected, the 30-minute automatic deduction is still a uniform policy that is suitable for class treatment. Defendant admitted that supervisors monitor the trucks' movements through a GPS system in XATA. (Rodriguez 216:1-8; Llamas 207:25-208:11, 219:15-220:10.) Defendant also admitted that it reviewed the XATA records regularly to ensure compliance with meal breaks. (Id.) The XATA records Defendant has produced thus far demonstrate clearly that there are entries that any manager had to have known simply could not have meant a meal period was taken. The following are just a few examples from Exhibit 106:

---

[10] Neither does Defendant's claim that 30 minutes was deducted from Plaintiff's timecard (Kronos) but not his wages (Def. Opp. at 16 n. 20). Defendant calculates wages based on the timecards. (See Alfaro Dep. 42:6-25.) Thus, a deduction from the timecards means a deduction from wages.

1    • 3/3/09 – XATA shows Plaintiff logged a meal break beginning at approximately
2      6:03 a.m. for 31 minutes, but Plaintiff is back in the truck driving at 6:09 a.m.,
       then completing his post-trip inspection before clocking out. (Ex. 106 p. 2-3);
3    • 3/5/09 – XATA shows Plaintiff logged a meal break beginning at approximately
       3:06 a.m. for 33 minutes (during which time according to the same report he
4      also manages to complete dropping the trailer, an inspection post-trip report,
       hooking a trailer, and an inspection pre-trip report), but Plaintiff is back in the
5      truck driving at 3:24 a.m. (id. 11-12);
6    • 3/9/09 – XATA shows Plaintiff logged a meal break beginning at approximately
       5:36 a.m. for 30 minutes, but then is back in the truck driving at 5:43 a.m. and
7      then completing his post-trip inspection report before clocking out. (id. 17-18).

8    Thus, Defendant knew or should have known – based on its own records – that meal

9    breaks were not being taken. (See id.; see also Exs. 60-62.) Thus, Defendant is liable

10   at the least for straight (or overtime) pay under *Brinker*. 53 Cal. 4th at 1040, n. 19.[11]

11          **E.     Defendant's "Expert" Report Should Be Stricken And In Any Event
12                   Is Irrelevant**

13          Defendant also relies on the Declaration of Paul F. White and argues that the

14   evidence regarding Defendant's time pressure is inadequate. This argument should be

15   rejected for three reasons. First, it does nothing to address the legality of the route

16   restriction, Defendant's meal and rest policy, or 30-minute deduct. All this argument

17   goes to is the component of one theory that Defendant dissuaded or discouraged the

18   putative class from taking meal breaks. As previously explained, however, there exist

19   numerous common questions of fact to support this claim. Mr. White's declaration

20   does nothing to refute these common facts.

21          Second, Defendant *never* identified Mr. White in its Rule 26 disclosures or

22   produced his "report." Nor does Mr. White even explain with any detail exactly what

23   it is he looked at to derive his "report." Thus, Plaintiff submits the report should be

24   stricken. *See Avilez*, 286 F.R.D. at 458 (striking expert's survey and declarations

25

26   ───────────────

27   [11] At least one other declarant even specifically told his supervisor he was logging a
     meal break, but continuing to work due to the time pressure demands, to which the
28   supervisor merely told the employee to do whatever he had to. (Onorato Decl. ¶¶ 5-7.)

1  because neither the expert nor the declarants names or contact information were

2  produced pursuant to FRCP Rule 26).

3      Third, Mr. White's report is irrelevant and only punctuates Defendant's

4  misapprehension of the law.  Mr. White declares that he concluded that more than half

5  of Plaintiff's meal break punches occurred before "the end of the sixth hour of his

6  workday."  (Def. Ex. A to Bonn Decl. at 9.)  But this is not the relevant inquiry under

7  *Brinker*.  Per *Brinker*, the employer must authorize and permit a 30 minute duty free

8  meal period within the first five hours of work (*i.e.*, *before* the sixth hour of work).  53

9  Cal. 4th at 1041.  By opining about what Plaintiff did by the end of the sixth hour of

10  work (instead of the fifth), Mr. White is off by an hour and his conclusions irrelevant.

11      Moreover, per Exhibits 104 and 105, Plaintiff missed a time compliant first meal

12  break at least 80.24% of the time and a second meal break 100% of the time when he

13  worked more than 10 hours.  (Supplemental Chesler Decl. ¶ 2, Ex. A.)  Thus, there is

14  ample evidence to support the dissuaded/discouraged against argument and the Court

15  should simply reject Mr. White's "report" as improper and irrelevant.[12]

16  **F.    Plaintiff Is An Adequate Class Representative**

17      Defendant claims that Plaintiff is "dishonest" because of the times he logged a

---

19  [12] Defendant also uses Mr. White to argue that Plaintiff's submission of driver

20  declarations do not represent a sufficient cross-section of employees.  But it is common sense that current employees are reluctant to speak with outside counsel and

21  often afraid to speak out against their employer.  Defendant has not identified any "magic number" of declarations required nor has it ever explained its own method of

22  selecting declarants.  Thus, if this is a reason to reject Plaintiff's declarations, so too should it be a reason to reject Defendant's.  Plaintiff has submitted declarations of

23  more than ten percent of the putative class.  While two declarants were employed by different yet related entities, they were still subject to the same standard operating

24  procedures.  (*See* Llamas 22:13-25, 44:18-45:11, 163:15-19).  Notably, while Defendant produced many declarations of its current employees, the vast majority of

25  them state merely that they are allegedly able to take a break when they want – yet say nothing about having Defendant inform them (at least prior to 2011) that a meal period

26  was actually *available* before the 6th hour worked; nor do they say anything about being notified (prior to 2011) of their right to a second meal period for shifts over 10

27  hours.  Thus, even Defendant's declarations highlight that Defendant did not authorize and permit compliant meal or rest breaks.

---

1  meal break, but continued to work.  If this disqualified a plaintiff from being a class-

2  representative as Defendant would like, then there could never be any class-actions for

3  alleged off-the-clock work.  Indeed, credibility and integrity concerns do not

4  automatically make a proposed class representative inadequate.  *See Harris v. Vector*

5  *Mktg.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010).  The alleged credibility or integrity

6  issues must place the interests of absent class members at risk.  *Id.*; *see also Ross v.*

7  *RBS Citizens, N.A.*, 2010 WL 3980113, at *5 (N.D. Ill. 2010) (plaintiff "need not be

8  perfect, only adequate").  Defendant solely relies on *Polanco* for the proposition that

9  engaging in off-the-clock work raises dishonesty issues precluding adequacy.  But that

10  is not what this Court said in *Polanco*.  Instead, in that case the plaintiff was logged

11  *into* work when he was actually sleeping or taking an extended break.  (Def.'s Ex. B to

12  Sklaver Decl Order at 7.)  Here, on the other hand, Plaintiff was logged *out* of work,

13  yet continued to perform his duties.  He was not trying to get paid for time spent

14  sleeping or on a break – to the contrary, he was *not getting paid* for time actually spent

15  *working*.  And other putative class members similarly performed off-the-clock work as

16  a result of the pressures placed on them by Defendant.  (Arriaga Decl. ¶ 6; Chapman

17  Decl. ¶ 5; Fauss Decl. ¶ 7; Franklin Decl. ¶ 10; Lopez Decl. ¶¶ 5-6; Onorato Decl. ¶¶

18  5-7; Perez Decl. ¶ 4; see also Ex. 113.)

19      Defendant also seizes on one line of Plaintiff's deposition testimony that his

20  number one interest in this litigation is getting his job back.  While Plaintiff explained

21  that he has stronger feelings to what he experienced personally with respect to his

22  employment, he also recognizes that he cannot sacrifice one for another, and is willing

23  to place his individual claims on a stay if necessary.  (De La Cueva Decl. ¶ 19.)[13]

24

25  [13] Defendant also makes brief reference in a footnote that Plaintiff's claims are atypical

26  because Plaintiff was only a relay driver working out of one of three facilities.
Defendant's Corporate Representative, however, made clear that uniform policies and

27  practices with respect to the meal/rest break issues applied at all locations for all
drivers.  (See, *e.g.*, Llamas 15:19-16:2; Rodriguez 90:13-17.)

28

1  Defendant is merely speculating at this point about any potential conflict that may

2  develop. "[M]ere speculation as to conflicts that might develop at the remedy stage

3  [are] insufficient to support denial of initial class certification. *Social Svcs. Union,*

4  *Local 535 v. County of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979); *see also*

5  *Krzesniak v. Cendant Corp.*, 2007 WL 1795703, *10 (N.D. Cal. June 20, 2007)

6  (plaintiff adequate representative for wage and hour class action while also pursuing

7  individual retaliation claim, any conflict could be addressed if and when it arose).

8        Finally, to the extent the Court still believes Plaintiff is an inadequate class

9  representative – which it should not – then Plaintiff submits that the Court should still

10  conditionally certify the class and permit Plaintiff time to add an alternative class

11  representative such as Juan Perez, who is ready, willing, and able to participate as a

12  Class Representative. (Perez Decl. ¶ 13.)

13      **G.**    **Plaintiff's Derivative Claims Are Suitable For Class Treatment And**

14          **Do Not Defeat His Adequacy**

15        Defendant argues that paystub violations are not suitable for class treatment

16  because the injury requirement would necessitate individualized inquiries. As this

17  Court explained, however, in *Abdullah v. U.S. Security Associates, Inc.*, 2011 U.S.

18  Dist. LEXIS 156685, at *27-28 (C.D. Cal. Jan. 11, 2011), in certifying a class action

19  including a sub-class for wage statements, lost wages are a form of damages

20  recoverable under the statute and, thus, if on account of meal/rest break violations class

21  members did not receive their full wage, they have suffered injury. And California

22  Labor Code § 226 was specifically amended effective 2012 to clarify what satisfies the

23  "injury" requirement, which basically consists of the employer's failure to provide a

24  wage statement with the required information. *See* Cal. Lab. Code § 226(e)(2)(B).

25  Thus, no individualized inquiry is required. The deficient paystubs speak for

26

27

28

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1    themselves.[14]

2        Similarly, this Court in *Abdullah* also explained that waiting time penalties
3    under California Labor Code § 203 are also derivative theories appropriately certified
4    when the underlying meal/rest break claim is certified. *Id.* at *29.

5        Finally, Defendant's claim that Plaintiff is further inadequate because he is a
6    former employee is similarly misplaced. *See, e.g., Krzesniak,* 2007 WL 1795703, at
7    *11 ("[N]ot only are former employees adequate representatives of current employees
8    in class actions seeking at least in part declaratory and/or injunctive relief, but ... former
9    employees provide superior representation in bringing claims against the
10   employer ... Far from being inadequate class representatives, plaintiffs whose
11   relationships with the defendant have been terminated may be more forceful advocates
12   because they will be free from pressure and reprisals by the defendant.") (citations
13   omitted).

14   **H.    Class Adjudication Is Manageable And Superior**

15       Finally, Defendant argues class certification will result in several mini-trials, per
16   supervisor, per branch. This simply is not true. Class action is superior in this case.
17   (Opening Br. at 11-12.) There are only three branches at issue here. Defendant does
18   not even identify how many supervisors would supposedly be involved (by our count it
19   is no more than 3-5). And Defendant's reliance on *In re Hotel Telephone Charges,*
20   500 F.2d 86, 89 (9th Cir. 1974) as a comparator is ridiculous. In that case, there were
21   millions of class members and hundreds of defendants with different facts as to each.
22   This case is a far cry from that.

23       As explained in *Polanco* in finding superiority under Rule 23(b)(3), "Wage and
24   hour disputes are often considered appropriate for resolution on a classwide basis

25

26   [14] While Plaintiff may lack standing with respect to *penalties* under California Labor
27   Code § 226, he does not lack standing with respect to *damages.* Moreover, this too can
     be remedied by adding an additional class representative, such as Juan Perez.
28

1  where, as here, they involve employer policies that are uniform as to all

2  employees...Requiring each employee to file an individual claim would result in

3  duplicative discovery and filings, particularly given that many of the claims hinge on

4  determinations common to each claim...This case is also manageable as a class action.

5  Defendant's records for each employee concerning their payroll history, hours worked,

6  and so forth can be analyzed readily to determine any issues related to the claims and

7  damages." *Polanco*, *supra*, Order at 8.  Our case is the same here.

8       The remaining cases cited by Defendant are too inapposite.  In *Nguyen v. BDO*

9  *Seidman, LLP*, 2009 U.S. Dist. LEXIS 97525, at *28 (C.D. Cal. 2009), plaintiff sought

10  class certification concerning whether employees were appropriately classified as

11  exempt.  This obviously necessitated individualized inquiries and added to making a

12  class action unmanageable.  Similarly inapposite, in *Stoudt v. E.F. Hutton & Co.*, 121

13  F.R.D. 36, 38 (S.D. N.Y. 1988), there was no superiority for a proposed class action

14  concerning an alleged tax shelter in which plaintiff invested at least $60,000.

15  Obviously, all putative class members (investors in this scheme) had substantial

16  damages and, thus, likely had the means to bring individual actions.  Here, however,

17  there is no evidence as to the specific value of putative class members claims.

18  (Notably, Defendant possesses the XATA records from which these figures can be

19  derived.)  While Plaintiff's individual wage claim may potentially be worth a lot, this

20  is the result of his length of employment and hours worked.  Other employees may

21  have worked for Defendant for a shorter length of time (thus having less damages).

22  This factor should not preclude certification.  Indeed, class actions often afford the best

23  protection for employees in redressing wage and hour wrongs.

24

25

26

27

28

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

III.   **CONCLUSION**

For all the foregoing reasons and those set forth in Plaintiff's Opening Brief, Plaintiff respectfully requests that the Court grant his motion for class certification.

DATED: April 1, 2013                    Respectfully submitted,

                                        THE LAW OFFICES OF
                                        TIMOTHY B. McCAFFREY, JR.


                                        By //TBM_____
                                            Timothy B. McCaffrey, Jr.

                                            Attorneys for Plaintiff and Class
                                            Representative
                                            Miguel de la Cueva